# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN
VOTERS OF MICHIGAN, et al.,

       Plaintiffs,               CASE NO. 17-14148
                                        HON. DENISE PAGE HOOD

v.

RUTH JOHNSON, in her official
capacity as Michigan Secretary of
State,

       Defendant.
_____/

## ORDER GRANTING IN PART AND DENYING IN PART NON-PARTY MOVANTS' MOTIONS TO QUASH [#27; #46]

This matter is before the Court on two motions to quash Plaintiffs' subpoenas instructing non-party legislative bodies ("Legislative Bodies"),[1] officials and staff ("Legislative Personnel")[2] (collectively, "Non-party Movants") to

---

[1] The Legislative Bodies are comprised of non-parties Michigan House Business Office, Michigan Senate Business Office, Michigan Senate Republican Caucus, Michigan Senate Republican Communications Office, Michigan Senate Republican Policy Office, Michigan House Republican Caucus, Michigan House Republican Communications Office, Michigan House Republican Policy Office, Clerk of the Michigan House, and Secretary of the Michigan Senate. The Legislative Bodies are groups of Legislators and legislative staff members that are affiliated with the Michigan Senate and House of Representatives.

[2] The Legislative Personnel is comprised of three groups: (1) *Legislators*: Senator Dave Hildenbrand, Senator Joe Hune, Senator Rick Jones, Senator Jim Marleau, Senator John Proos, Senator Randy Richardville, Representative Jase Bolger, Representative Marty Knollenberg (now a Senator), Representative Pete Lund, Representative Ed McBroom, Representative Rick Outman, Representative Al Pscholka; (2) *Legislative Staff*: William Carney, Jeff Cobb (now Secretary of the Senate), Scott Jones, James Kinsey, Terry Marquardt, Brian Began, Ralph Fiebig, J. Lohrstorfer, Daniel McMaster, Gary Randall (now Clerk of the House), and Sharon Tyler; and (3) *Legislative Attorneys*: Shelly Edgerton and Frederick Hall.

produce documents related to the introduction, consideration, or passage of Michigan's current apportionment plan. [Doc # 27; Doc # 46] The Non-party Legislative Personnel filed a Motion to Quash on March 8, 2018. [Doc # 27] The Non-party Legislative Bodies' Motion was filed on March 30, 2018. [Doc # 46] All Responses and Replies have been filed.

For the reasons that follow, the present Motions to Quash are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This suit was brought against Ruth Johnson, in her official capacity as Michigan Secretary of State, on December 22, 2017. [*Id.*] Plaintiffs claim that Michigan's current apportionment plan—constituting three redistricting maps adopted from the passage of Michigan Senate Bill 498 (2011) and Michigan House Bill 4780 (2011) ("2012 Michigan Redistricting Legislation")—violates Plaintiffs' First Amendment free speech and association rights and Fourteenth Amendment equal protection rights. [Doc # 1, Compl. ¶ 1] Specifically, Plaintiffs allege that the apportionment plan intentionally places Michigan Democrats in voting districts that reduce or eliminate the power of Democrat votes and burdens their representational rights because of their political party affiliation. [*Id.*]

## II. CONTROLLING LAW

Rule 45 of the Federal Rules of Civil Procedure governs the service of subpoenas. Rule 45(d)(3)(A) dictates that a court, upon a timely motion, must

quash or modify a subpoena if the subpoena: (i) fails to allow a reasonable time for compliance, (ii) requires a non-party to travel more than 100 miles from where they reside, (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden. "The party seeking to quash a subpoena bears a heavy burden of proof." *United States v. Wells*, No. 06-10589, 2006 WL 3203905, at *2 (E.D. Mich. Nov. 3, 2006) (citing *Irons v. Karceski*, 74 F.3d 1262, 1264, 316 (D.C. Cir. 1995)).

Rule 26(b) defines the scope of discovery for tools of discovery, including subpoenas issued pursuant to Rule 45. *Sys. Prod. & Sols., Inc. v. Scramlin*, No. 13-CV-14947, 2014 WL 3894385, at *9 (E.D. Mich. Aug. 8, 2014). "Rule 26(b) allows a party to obtain discovery concerning any non-privileged matter that is relevant to any party's claim or defense." *Id.*; Fed. R. Civ. P. 26(b). "Evidence is relevant if[] it has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence." FED. R. EVID. 401. If, however, a district court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," the court must limit the scope of discovery. FED. R. CIV. P. 26(b)(2)(C)(iii).

Rule 26(c) governs the issuance of protective orders. "The court may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c). Such an order may forbid discovery or disclosure altogether or limit discovery to certain matters. *Id.* "The burden of establishing good cause for a protective order rests" with the party seeking the order. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001). "To show good cause, a movant for a protective order must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Id.* (citations and internal quotation marks omitted).

### III. ANALYSIS

Plaintiffs mailed subpoenas *duces tecum* to the Legislative Personnel on February 21, 2018, and to the Legislative Bodies on March 15, 2018. [Doc # 27-2; Doc # 46-2] Plaintiffs seek, in part, all documents, notes, data and analysis related to the 2012 Michigan Redistricting process. Non-party Movants argue that the legislative privilege granted under the Speech or Debate Clause of the United States Constitution and the Michigan Constitution, other Michigan constitutional and statutory law, and the legislative privilege granted under federal common law, mandate quashing the subpoenas or granting a protective order. [Doc # 27, Pg. 17–18; Doc # 46, Pg. 16] They also contend that the subpoenas seek information that is irrelevant to the present case, are overly burdensome and without temporal limitation, and will have a chilling effect on legislative activity. [Doc # 27, Pg. 17; Doc # 46, Pg. 16] The Legislative Personnel assert that the subpoenas directed

toward them seek information that is protected by the attorney-client privilege. [Doc # 27, Pg. 17] The Legislative Bodies assert that the subpoenas sent to them are vague. [Doc # 46, Pg. 16] Plaintiffs argue, among other things, that the present issues are governed by federal common law and the Court should apply a qualified legislative privilege balancing test. [Doc # 41, Pg. 6; Doc # 49, Pg. 3–5] Plaintiffs add that the factors under the balancing test favor denying the present Motions, the subpoenas are not overly broad or unduly burdensome, and not all of the information sought is subject to privilege. [Doc # 41, Pg. 6; Doc # 49, Pg. 1–6]

### A. Federal Common Law Governs the Claims of Legislative Privilege

Members of Congress "shall not be questioned in any other Place" for "any Speech or Debate in either House." U.S. CONST. art. I, § 6, cl. 1. The purpose of the Speech or Debate Clause is to preserve the separation of powers. *See Powell v. McCormack*, 395 U.S. 486, 502 (1969) ("[T]he purpose of this clause was to prevent intimidation (of legislators) by the executive and accountability before a possibly hostile judiciary."). "Congress enjoys absolute privilege from testimony and absolute immunity from liability under the Speech or Debate Clause." *Jackson Municipal Airport Authority v. Bryant*, No. 3:16-cv-246-CWR-FKB, 2017 WL 6520967, at *4 (S.D. Miss. Dec. 19, 2017) (citing *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502-04 (1975)). When construing the legislative privilege, a legislator and her aide are to be "treated as one." *Gravel v. United States*, 408 U.S.

606, 616 (1972). The Michigan Constitution contains a clause affording state legislators similar protections. MI. CONST. art. IV, § 11.

A recent case before the United States District Court for the Eastern District of Michigan, *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2018 WL 1465767 (E.D. Mich. Jan. 4, 2018), addressed which law governs the existence of legislative privilege for state legislators in federal question cases. In that case, the district court determined that federal common law governs claims of legislative privilege for state legislators in federal question cases because neither the federal Speech or Debate Clause nor the Michigan Speech or Debate Clause protects state legislators from interference by the federal government. *Id.* at *3. This Court agrees. Federal common law governs the existence of legislative privilege in this case. *See* FED. R. EVID. 501 (In federal question cases, "[t]he common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless" the U.S. Constitution, a federal statute, or rules prescribed by the Supreme Court provide otherwise.). *See also United States v. Gillock*, 445 U.S. 360, 374 (1980) ("The Federal Speech or Debate Clause, of course, is a limitation on the Federal Executive, but by its terms is confined to federal legislators. The [state] Speech or Debate Clause is in terms a limit only on the prosecutorial powers of that State.").[3]

---

[3] The Legislative Personnel and the Legislative Bodies' claims of legislative privilege are governed by federal common law. Accordingly, their claims of legislative privilege under Michigan constitutional and statutory law are unpersuasive.

### B. Federal Courts Apply a Qualified Legislative Privilege

Non-party Movants argue that state legislators enjoy an absolute legislative privilege. Plaintiffs argue that state legislators have only a qualified legislative privilege under federal common law. This Court agrees with Plaintiffs.

Federal common law extends the absolute legislative immunity granted by the Federal Speech or Debate Clause to state legislators. *Bradley v. Mallory*, 871 F.2d 1087 (6th Cir. 1989) (citing *Tenney v. Brandhove*, 341 U.S. 367 (1951)). Legislative privilege is related to legislative immunity, but is a distinct concept.[4] *Favors v. Cuomo*, 285 F.R.D. 187, 209 (E.D.N.Y. 2012). For state legislators involved in federal question cases, legislative privilege protects state legislators and their legislative staff from compelled disclosure of documentary or testimonial evidence relating to actions taken within the scope of legitimate legislative activity. *Id.* (citing *Kay v. City of Rancho Palos Verdes*, No. CV 02-03922 MMM RZ, 2003 WL 25294710, at *9–11 (C.D. Cal. Oct. 10, 2003) and *Rodriguez v. Pataki*, 280 F. Supp. 2d 89, 93–94, 95 (S.D.N.Y. 2003)). The privilege, however, is not absolute.

State legislators are afforded a qualified legislative privilege against being required to provide records or testimony concerning legislative activity. *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *4. The privilege can be overcome where important federal interests are at stake. *Id.* Federal courts have

---

[4] Under federal common law, legislative immunity affords state legislators absolute immunity from civil liability. *Favors v. Cuomo*, 285 F.R.D. 187, 208 (E.D.N.Y. 2012). The present Motions are discovery matters. Non-party Movants' arguments regarding legislative immunity are immaterial.

applied a qualified legislative privilege in cases involving constitutional challenges to state legislation. *See, e.g.*, *Nashville Student Org. Comm. v. Hargett*, 123 F. Supp. 3d 967, 969 (M.D. Tenn. 2015); *Rodriguez*, 280 F. Supp. 2d at 100; *Florida v. United States*, 886 F. Supp. 2d 1301, 1303–04 (N.D. Fla. 2012) ("To be sure, a state legislator's privilege is qualified, not absolute; a state legislator's privilege is not coterminous with the privilege of a member of Congress under the Constitution's Speech and Debate Clause."); *Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14CV852, 2015 WL 3404869, at *9 (E.D. Va. May 26, 2015); *N. Carolina State Conference v. McCrory*, No. 1:13CV658, 2015 WL 12683665 (M.D.N.C. Feb. 4, 2015) ("legislative privilege is not absolute, but rather requires a flexible approach that considers the need for the information while still protecting legislative sovereignty and minimizing any direct intrusion into the legislative process."); *Perez v. Perry*, No. SA-11–CA–360, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014) ("While the common-law legislative immunity for state legislators is absolute, the legislative privilege for state lawmakers is, at best, one which is qualified.") (citations and internal quotation marks omitted); *Favors*, 285 F.R.D. 187, 211 (E.D.N.Y. 2012); *Comm. for a Fair & Balanced Map v. Ill State Bd. of Elections*, No. 11 C 5065, 2011 WL 4837508, at *7 (N.D. Ill, Oct. 12, 2011). *But see In re Grand Jury*, 821 F.2d 946, 958 (3d Cir. 1987) (rejecting even a qualified speech or debate privilege for state legislators, reasoning that such a privilege "would not realistically serve the purposes that the Speech or Debate

Clause is intended to advance."). Courts presiding over such cases have found that the qualified legislative privilege did not shield state legislators from producing at least some responsive records or deposition testimony. *E.g.*, *Nashville Student Org. Comm.*, 123 F. Supp. 3d at 969 (citations omitted).

### C. Application of the Five *Rodriguez* Factors

Federal courts typically use a five-factor balancing test to determine whether the legislative privilege should apply in a given case. *See, e.g.*, *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2018 WL 1465767 (E.D. Mich. Jan. 4, 2018); *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015); *N. Carolina State Conference of the NAACP v. McCrory*, No. 1:13CV658, 2014 WL 12526799, at *2 (M.D.N.C. Nov. 20, 2014); *Perez v. Perry*, No. SA-11-CV-360-OLG-JES, 2014 WL 106927, at *2 (W.D. Tex. Jan. 8, 2014); *Favors v. Cuomo*, 285 F.R.D. 187, 217 (E.D.N.Y. 2012); *Comm. for a Fair & Balanced Map v. Illinois State Bd. of Elections, No. 11 C 5065*, 2011 WL 4837508, at *7 (N.D. Ill. Oct. 12, 2011). The factors considered are: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the "seriousness" of the litigation and the issues involved; (4) the role of government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. *Rodriguez*, 280 F. Supp. 2d at 101.

### 1. *The Relevance of the Evidence*

On the issue of relevance, the Supreme Court's decision in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), is instructive. Intent is an element of Plaintiffs' First Amendment and Equal Protection claims. *See David v. Bandemer*, 478 U.S. 109, 127 (1986) (requiring proof of discriminatory intent in partisan gerrymandering cases); *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (holding that retaliatory animus is a required element of a cognizable First Amendment claim). In *Arlington Heights*, the Supreme Court outlined three categories of direct and circumstantial evidence courts should consider to determine whether discriminatory intent existed in cases involving claims under the Equal Protection Clause: (1) the impact of the challenged action; (2) the historical background or sequence of events leading up to the action; (3) the legislative history of the action. *Id.* at 264–68. The Court held that the legislative history of an action taken by lawmakers "may be highly relevant" to determine whether "invidious discriminatory purpose was a motivating factor" for the action, "especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports." *Id.* at 268.

The Supreme Court has also cautioned that "[w]hen the issue is simply the interpretation of legislation," courts may look to statements made by legislators in determining the purpose of the legislature, but should "eschew guesswork" when asked to void an otherwise constitutional statute based on the comments of a small

number of legislators. *Hunter v. Underwood*, 471 U.S. 222, 228 (1985). The *Arlington Heights* Court held that, even in the rare case where legislators might be called to testify concerning the purpose of an official action, the testimony "frequently will be barred by privilege." *Arlington Heights*, 429 U.S. at 268.

This case is not a mere matter of interpretation. Plaintiffs seek, in part, all documents, notes, data and analysis related to the 2012 Michigan Redistricting process to prove discriminatory intent and a discriminatory effect. *See Bandemer*, 478 U.S. at 127. The requests are certainly relevant to the present case. The question of whether state legislators sought to dilute the votes of Democrats by pursuing specific voting population percentages is critical to this case. The first factor weighs in favor of disclosure.

**2.** *The Availability of Other Evidence*

Regarding the availability of other evidence, Plaintiffs likely have access to direct and circumstantial evidence to support their claims. A considerable amount of material relating to the redistricting process is publicly available, including testimony regarding the redistricting process that took place in the public forum, public statements, analyses, amendments, bills, and other information regarding the legislation and its historical context. Some courts, however, have held that the availability of other evidence does not render evidence regarding legislators' direct deliberations irrelevant "given the practical reality that officials seldom, if ever, announce on the record that they are pursuing a particular course of action because

11

of their desire to discriminate" against a particular group. *Bethune-Hill*, 114 F. Supp. 3d at 341 (quoting *Veasey v. Perry*, No. 2:13-CV-193, 2014 WL 1340077, at *3 (S.D. Tex. Apr. 3, 2014)). In the redistricting context, "[t]he real proof is what was in the contemporaneous record in the redistricting process." *Page v. Virginia State Bd. of Elections*, 15 F. Supp. 3d 657, 667 (E.D. Va. 2014). Given that intent is a critical element of Plaintiffs' claims, the second factor weighs in favor of disclosure.

### 3. *The Seriousness of the Litigation and the Role of Government*

The third and fourth factors also weigh in favor of disclosure. This case involves questions regarding the impact of Michigan's current apportionment plan on the constitutional rights of Michigan citizens under the Equal Protection Clause and the First Amendment. In addition, the government is a direct participant in this action. Ruth Johnson is Michigan's Secretary of State and chief election officer, and is being sued in her official capacity. She is the lone defendant in this case. *See Michigan State A. Philip Randolph Inst., 2018 WL 1465767,* at *7.

### 4. *The Possibility of Future Timidity by Government Employees*

The possibility of future timidity by government employees, who will be forced to recognize that their secrets are violable, favors granting the present Motions to Quash. "Open dialogue between lawmakers and their staff would be chilled if their subjective, preliminary opinions and considerations are potentially subject to public disclosure and critique." *Citizens Union of City of New York v.*

*Attorney Gen. of New York*, No. 16CV09592RMBKHP, 2017 WL 3836057, at *29 (S.D.N.Y. Sept. 1, 2017). Both present and further legislators and their staff will likely "refrain from engaging in the frank and candid deliberation about, and analysis of," proposed legislation if Plaintiffs are granted access to state legislators' private communications with other legislators, committee members, or their staff "regarding the introduction, consideration, or passage" of the 2012 Michigan Redistricting Legislation. *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *7. The fifth factor weighs in favor of quashing the subpoenas.

### A. The *Rodriguez* Factors Favor Disclosure With Limitations

This Court finds that application of the five factors developed in *Rodriguez* suggest that Plaintiffs' need for the documents and communications requested in the subpoenas is sufficient to overcome the legislative privilege.[5] This Court, however, acknowledges the need to preserve the legislative privilege for documents unrelated to the intent element of Plaintiffs' First Amendment and Equal Protection claims. The subpoenas seek information that is unrelated to the intent element and would otherwise be protected by the legislative privilege.

---

[5] Federal courts considering a qualified legislative privilege have varied greatly in their application of the five *Rodriguez* factors. Recently, in *Michigan State A. Philip Randolph Inst. v. Johnson*, No. 16-CV-11844, 2018 WL 1465767 (E.D. Mich. Jan. 4, 2018), a case involving constitutional challenges to a Michigan voting statute under the Equal Protection Clause of the Fourteenth Amendment, Magistrate Judge Mona Majzoub found that three of the five factors weighed in favor of quashing the plaintiffs' subpoenas. *Id.* at *5–7. Alternatively, in *Bethune-Hill v. Virginia State Bd. of Elections*, 114 F. Supp. 3d 323 (E.D. Va. 2015), a case in which the plaintiffs challenged twelve Virginia House of Delegates districts as unlawful racial gerrymanders in violation of the Equal Protection Clause of the Fourteenth Amendment, United States District Judge Robert Payne found that four of the five factors weighed in favor of disclosure. *Id.* at 339–42.

"Courts following *Rodriguez* have found that the privilege applies to any documents or information that contains or involves opinions, motives, recommendations or advice about legislative decisions between legislators or between legislators and their staff." *Bryant*, 2017 WL 6520967, at *7 (citations and quotations omitted). The legislative privilege also applies to information that would reveal legislators' opinions and motives. "This includes any procedures used by lawmakers in the legislative process as well as the identification of any specific legislators that were involved in any particular step in the process." *Id.*

Some categories of documents and communications are not protected by the legislative privilege. Documents and communications related to non-legislative tasks are not protected by the legislative privilege. *See, e.g.*, *Eastland*, 421 U.S. at 516–17. Fact-based documents and communications are not protected by the legislative privilege. *See, e.g.*, *Bethune-Hill*, 114 F. Supp. 3d at 343 ("All documents or communications reflecting strictly factual information—regardless of source—are to be produced."). Documents and communications created after the date of enactment are outside the scope of the legislative privilege as well. *Id.* ("The privilege only protects 'integral steps' in the legislative process and does not extend to commentary or analysis following the legislation's enactment."). Communications between legislators or staff members and third parties consulted during the redistricting process are not protected by the legislative privilege. *Michigan State A. Philip Randolph Inst.*, 2018 WL 1465767, at *7 (citing *Bryant*,

2017 WL 6520967, at *7)).  For any relevant documents or information that were shared with third parties sought by Plaintiffs, that might have been protected by the legislative privilege, the privilege is waived.  *See Bryant*, 2017 WL 6520967, at *8.  The Legislative Personnel and Legislative Bodies must produce the otherwise privileged information shared with third parties, and non-privileged information, responsive to the subpoenas that is within their possession, custody, or control.

### B. Legislative Personnel Have Not Met Their Burden to Establish the Attorney-Client Privilege or the Attorney Work-Product Doctrine

The Legislative Personnel contend that Plaintiffs' request for legislative counsel's notes, summaries, reports, minutes, and miscellaneous documents are barred by the attorney-client privilege and the attorney work-product doctrine. [Doc # 27, Pg. 39]  Under the law of the Sixth Circuit, courts evaluating a claim of attorney-client privilege must consider:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998).  "The burden of establishing the existence of the [attorney-client] privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999).  In addition, the attorney work-product doctrine does not protect documents that were not developed during or in anticipation of litigation.  The Legislative Personnel have

not provided facts or argument regarding any documents, communications, or items protected by the attorney-client privilege or the attorney work-product doctrine.

Under the Federal Rules of Civil Procedure Rule 45 and Rule 26, a non-party asserting a privilege must not only expressly make the claim, but must also "describe the nature of the documents, communications, or tangible items" that are privileged or protected. FED. R. CIV. P. 45(e)(2)(A)(ii); FED. R. CIV. P. 26(b)(5)(A)(ii). The Legislative Personnel have not met the requirements of Rule 45 or Rule 26. The legislators, legislative attorneys, and legislative staff reserve their right to assert claims of privilege or protection at a later time.

### C. Remaining Issues

Regarding Non-party Movants' assertions that Plaintiffs' subpoenas are overbroad, unduly burdensome, lack temporal proximity, and vague, the Court finds that the subpoenas are not vague and are not overbroad. In addition, this Order will effectively reduce the substantive and temporal scope of the subpoenas.

### IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the aforementioned law and analysis call for the following disclosure requirements and procedures:

1. The Legislative Personnel and Legislative Bodies must disclose any of the requested documents or communications created after the 2012 Michigan Redistricting Legislation's date of enactment.

2. The Legislative Personnel and Legislative Bodies must produce any of the requested documents or communications pertaining to the 2012 Michigan Redistricting process shared with, or received from, any individual or organization outside the employ of the individual legislators or standing committees of the Michigan Legislature.

3. The following requested documents or communications "internal" to the Michigan Legislature that were generated before the 2012 Michigan Redistricting Legislation's enactment are subject to the following conditions:

    - All documents or communications reflecting strictly factual materials and information available to lawmakers at the time the legislation was enacted—irrespective of the source—should be disclosed.

    - All documents or communications produced by committee, technical, or professional staff for the legislators, excluding the personal staff of legislators, that reflect opinions, recommendations, or advice are to be produced. Comments,

requests, or opinions expressed by legislators or their aides in communication with such staff may be redacted, subject to the disclosure below.

1. All Michigan Redistrict Plans on record must be disclosed. All proposed redistricting plans developed during the 2012 Michigan Redistricting process must be disclosed.

2. All documents or communications produced by legislators or their immediate aides before the redistricting legislation was enacted (except those in paragraph "3" above which must be produced) may be withheld, except to the extent that any such document pertains to, or reveals an intent to or awareness of: discrimination against voters on the basis of their known or estimated political party, sorting of voters according to their known or estimated political party affiliation, the impact of redistricting upon the ability of voters to elect a candidate of their choice, or the impact of redistricting upon the representation of a political party in Congress or the state legislature. This Court will not require the disclosure of documents or communications produced by legislators or aides that merely reference or contain demographic data. Such data should be produced as "factual information" consistent with the requirement above unless such information is inextricably intertwined

with non-factual content that is not otherwise subject to disclosure pursuant to this Order.

3. The Legislative Personnel and Legislative Bodies may withhold any responsive privileged information that is unrelated to the introduction, consideration, or passage of the 2012 Michigan Redistricting Legislation. The Legislative Personnel and Legislative Bodies will produce a privilege log that complies with Federal Rule of Civil Procedure 26(b)(5) regarding the privileged information withheld.

**IT IS FURTHER ORDERED** that the Non-party Legislative Personnel's Motion to Quash Subpoenas (Doc # 27) is **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion.

**IT IS FURTHER ORDERED** that the Non-party Legislative Bodies' Motion to Quash Subpoenas (Doc # 46) is **GRANTED IN PART** and **DENIED IN PART** consistent with this opinion.

    ENTERED: May 23, 2018

    s/Denise Page Hood
    Signed for and on behalf of the panel:

    HONORABLE ERIC L. CLAY
    United States Circuit Judge

    HONORABLE DENISE PAGE HOOD
    United States District Judge

    HONORABLE GORDON J. QUIST
    United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 23, 2018, by electronic and/or ordinary mail.

                         S/LaShawn R. Saulsberry
                         Case Manager