UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, ROGER J. BRDAK, FREDERICK C. DURHAL, JR., JACK E. ELLIS, DONNA E. FARRIS, WILLIAM "BILL" J. GRASHA, ROSA L. HOLLIDAY, DIANA L. KETOLA, JON "JACK" G. LASALLE, RICHARD "DICK" W. LONG, LORENZO RIVERA and RASHIDA H. TLAIB, | Case No. 17-cv-14148<br><br>Hon. Eric L. Clay<br>Hon. Denise Page Hood<br>Hon. Gordon J. Quist |
| Plaintiffs, | **Defendant's Reply Brief in Further Support of Her Motion to Dismiss Plaintiffs' Claims Concerning Michigan Senate Plan** |
| v. | |
| RUTH JOHNSON, in her official capacity as Michigan Secretary of State, | |
| Defendant. | |

_____/

Joseph H. Yeager, Jr. (IN 2083-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
Jay.Yeager@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
*Counsel for Plaintiffs*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: (248) 483-5000
Fax: (248) 483-3131
MBrewer@goodmanacker.com
*Counsel for Plaintiffs*

Dickinson Wright PLLC
Peter H. Ellsworth (P23657)
Ryan M. Shannon (P74535)
*Special Assistant Attorneys General*
215 S. Washington Sq., Suite 200
Lansing, MI 48933
(517) 371-1700
PEllsworth@dickinsonwright.com
RShannon@dickinsonwright.com
*Attorneys for Defendant*
_____/

# DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF HER MOTION TO DISMISS PLAINTIFFS' CLAIMS CONCERNING MICHIGAN SENATE PLAN

I.  INTRODUCTION

Plaintiffs filed their Complaint on December 22, 2017. By their own admission, the Complaint was filed too late to affect the 2018 election. Plaintiffs thus seek no relief with regard to the 2018 election. Because the Senate portion of the Apportionment Plan will last be used in the 2018 election, and because Plaintiffs seek no relief as to the 2018 election, Defendant seeks to dismiss Plaintiffs' claims as they pertain to the Senate Plan.

In response, Plaintiffs argue that there *might* be a need for an out-of-cycle special election prior to the institution of a new districting plan for the Senate following the 2020 census. Alternatively, Plaintiffs argue now (but did not seek such relief in their Complaint) that if they are successful on the merits, the Court *could* order a special remedial election for the Senate in 2020.

In practical terms, Plaintiffs' alternative theory of relief would be to invalidate multiple elections as to an unspecified number[1] of Senate seats *two years* after the original vote in 2018. Plaintiffs' path to relief *in general* is already a steep one, given that federal courts should "exercise extraordinary caution" in reviewing state

---

[1] Plaintiffs assert that they will demonstrate that special remedial elections for 2020 are appropriate for "*some* Michigan Senate districts." (PageID.1076.) As to the scope of districts at issue, this is an apparent softening of their position articulated in the Complaint, where Plaintiffs allege that they challenge the Senate Plan "district by district and in its entirety." (PageID.16.)

redistricting plans.[2] This Court should not entertain further litigation as to the Senate given the extreme and unprecedented nature of the relief Plaintiffs seek.

Such relief is not countenanced by Plaintiffs' cited authority, particularly where, as here, Plaintiffs purposefully delayed the filing of their suit – for several *years* – such that they could not possibly obtain relief with regard to the regularly-scheduled 2018 election cycle. Under these circumstances, and as set forth more fully below, this Court should, respectfully, dismiss Plaintiffs' Complaint as it pertains to the Michigan Senate Plan.

## II. ARGUMENT

### A. Plaintiffs' Reliance On *Covington* Is Misplaced

Plaintiffs place the substantial majority of their eggs in the *North Carolina v Covington*, 137 S.Ct. 1624 (2017), basket. (*See* PageID.1074, 1076, 1080-1083.) In that decision, the Supreme Court did not proceed nearly as far as Plaintiffs suggest.

As an initial matter, the Court made clear that it "has *never* addressed *whether or when* a special election may be a proper remedy for a *racial* gerrymander…." 137

---

[2] See *Miller v. Johnson*, 515 U.S. 900, 915-916 (1995) (finding further that review of state redistricting "represents a serious intrusion on the most vital of local functions"). The Court in *Miller*, citing Fed. R. Civ. P. 12(b), stated that "courts must … recognize these principles, and the intrusive potential of judicial intervention into the legislative realm, when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various stages of litigation and determining whether to permit discovery or trial to proceed."

2

S.Ct. at 1625-26 (emphasis added). Thus, even if the matter *sub judice* were a racial gerrymander case (and it is not), *Covington* provides no foundation for the proposition that a special remedial election is even a permissible remedy.[3] While the Supreme Court identified "obvious considerations" for the lower court to analyze with regard to a request for a special election, the decision of the Court was simply to vacate the lower court order requiring a special election. *Id.*

The subsequent decision (on remand) likewise does little to further Plaintiffs' arguments. *Covington v. North Carolina,* 270 F. Supp.3d 881 (M.D.N.C. 2017). The court held: "the effects of the racial gerrymanders identified … are widespread, serious, and longstanding" and that "the constitutional violations at issue justify the intrusion on state sovereignty that a special election would entail." *Id.* at 894, 898. And yet the court "nonetheless conclude[d] that a special election would significantly interfere with the ordinary processes of state government" and denied the request for a special election. *Id.* at 899, 901-02. Even in the face of a severe *racial* gerrymander, special elections were not deemed appropriate.

This is not a racial gerrymander case, but a partisan gerrymander case that includes novel theories of injury. The holdings of the *Covington* cases provide no precedent upon which Plaintiffs can here rely.

---

[3] Plaintiffs provide to this Court no authority, from any court in the country, suggesting that a special remedial election is a permissible remedy in a *partisan* gerrymandering case.

3

### B. Invalidating Michigan's Senate Elections Would Be Unprecedented

Having found some aspect of a state's voting methods unconstitutional, federal courts have nonetheless refused to invade impending or ongoing elections. See *Pileggi v. Aichele,* 843 F.Supp.2d 584, 593 (E.D. Pa. 2012) (gathering authorities).[4] "The Supreme Court has exhorted courts to exercise 'proper judicial restraint' before making 'precipitate changes' to election procedures and policies when an impending election is imminent and a State's election machinery is already in progress."[5] *Ohio Republican Party v Bruner*, 544 F.3d 711, 732 (6th Cir. 2008) (Moore, J., dissenting, joined by Martin, Daughtrey, Cole, and Clay, JJ.) (quoting *Reynolds v. Sims*, 377 U.S. 533, 585-86 (1964)), order vacated 555 U.S. 5 (2008).

Plaintiffs' urged "special election" of the Michigan Senate would include invalidation of an election two years *after* voting was completed and two years before the end of the terms of all 38 members were elected in 2018; it would be a

---

[4] "Equity demands that a federal court stay its hand when judicial relief makes no sense." *MacGovern v. Connolly*, 637 F. Supp. 111, 116 (D. Mass. 1986). In the face of impending elections and plaintiffs' own delay in bringing claims, the *MacGovern* court held that it should not intervene to prevent elections from occurring under a state Senate plan that was allegedly invalid due to unequal population between districts. *Id.*

[5] "Interference with *impending* elections is extraordinary, and interference with an election *after voting has begun* is *unprecedented*." See, e.g., *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (citing *Reynolds v. Sims*, 377 U.S. at 585) (emphasis added).

4

more severe remedy, than, e.g., a federal court enjoining an *ongoing* vote. Even where special elections are *theoretically* possible, dismissal for mootness is appropriate where a challenge is made after an election has been completed under an allegedly unconstitutional redistricting scheme. *Lopez v. City of Houston*, 617 F.3d 336, 340-341 (5th Cir. 2010). This Court should not countenance Plaintiffs' delayed and exceptional request for relief.

### C. This Court Should Determine, As A Matter Of Law, That Plaintiffs Can Obtain No Relief With Regard To The Senate Plan

Even if this Court were to conclude that ordering a special remedial election is a *potential* remedy in a partisan gerrymandering case, the Court should nonetheless conclude that no such potential remedy is available to Plaintiffs here.

As an initial matter, Plaintiffs did not request relief in the form of a special remedial election in their Complaint. *Cf.* Complaint at 32-33 (PageID.32-33). Indeed, despite submitting multiple previous briefs to this Court, no mention of a request for a special election had ever been voiced until Plaintiffs responded to the instant Motion to Dismiss. On its face, Plaintiffs' Complaint seeks only to invalidate – *after* 2018 – a Senate Plan which will last be used *in* 2018. On that basis alone, the Complaint fails to state a claim upon which relief can be granted.

Plaintiffs' "new" proposal of a special Senate election in 2020 under a re-drawn map (and suspension of ordinary state election procedures) should be rejected

5

because any such request is necessitated solely by Plaintiffs' inexcusable delay in bringing suit. Plaintiffs allege in their Complaint that

> based on 2014 election results, the Michigan state senate map is more biased toward one political party than the bias observed in 95% of 727 U.S. legislative upper house elections for which data is available dating back to 1972.

(PageID.3.)[6] Accepting those allegations as true solely for purposes of this Motion, Plaintiffs have known since at least *early* 2015 that Michigan's Senate Plan was (allegedly) an egregious partisan gerrymander. And yet they purposely chose to file their Complaint at the *end of 2017*, admittedly too late to have any effect on regularly scheduled 2018 elections.

Under the precedent cited by Plaintiffs in their brief, any consideration of a special election remedy reduces to "what is necessary, what is fair, and what is workable." *Covington*, 270 F.Supp.3d at 901. As it pertains to the Senate Plan, Plaintiffs' delay in bringing suit is both unconscionable, and irrefutable.

### D. Plaintiffs Cannot Seek Relief As To Alleged Future Injury That May Never Occur

Plaintiffs argue that "[e]ven if this Court does not ultimately order special elections as a remedy, the potential of a special election occurring anyway warrants the litigation of the claims and the creation of a remedial [Senate] map."

---

[6] See also PageID.22 ("The actual efficiency gap for the Current Senate Plan in 2014 was . . . extreme, . . . the widest in the country for upper houses with single-member districts in the current decade for which we have election data.").

6

(PageID.1085.) But Plaintiffs concede, as they must, that a statutory special election for the Senate prior to 2022 may well never occur. (PageID.1086.)

When a potential harm is only speculative, this Court lacks jurisdiction to adjudicate the claim. *See Susan B. Anthony List v. Driehous*, 134 S.Ct. 2334, 2341 (2014). And "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…." *Lujan v Defenders of Wildlife*, 504 U.S. 555, 564 (1992).

Plaintiffs ask this Court to deny Defendant's Motion because there *might* be a statutory special election in the Senate after 2018, and it *might* be with regard to a subset of districts that *might* be redrawn should Plaintiffs prevail. But then again, it is just as likely (or more so) that none of these possibilities come to pass. The hypotheticals proffered by Plaintiffs fall well short of that which is required to pursue a claim seeking a remedy for an alleged harm that may well never occur.

### III.  CONCLUSION

For the reasons set forth above, this Honorable Court should, respectfully, dismiss with prejudice Plaintiffs' claims as they concern the Michigan Senate Plan.

Respectfully submitted,<br>
DICKINSON WRIGHT PLLC

Dated: July 11, 2018

/s/ Peter H. Ellsworth
Peter H. Ellsworth
Attorneys for Defendant

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2018, I caused to have electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted,

/s/ Ryan M. Shannon