IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, et al.,

          Plaintiffs,

v.

          Civil Action No. 17-cv-14148

          Hon. Eric L. Clay
          Hon. Denise Page Hood
RUTH JOHNSON, in her official          Hon. Gordon J. Quist
capacity as Michigan Secretary of State

          Defendant.
_____/

## MOTION TO INTERVENE BY INDIVIDUAL MICHIGAN LEGISLATORS

Proposed Intervenors Representative Lee Chatfield, in his official capacity as Speaker Pro Tempore of the Michigan House of Representatives and Representative Aaron Miller, in his official capacity as Chairman of the Elections and Ethics Committee of the Michigan House of Representatives, each a Member of the Michigan Legislature (collectively, "Legislative Intervenors" or "Applicants"), by their undersigned counsel, respectfully request that they be permitted to intervene as Defendants in this matter pursuant to Federal Rule of Civil Procedure 24.

In support of this Motion, Applicants submit the accompanying Brief in Support. Applicants also submit a proposed Answer to Plaintiffs' Complaint for

Declaratory and Injunctive Relief pursuant to Fed. R. Civ. P. 24(c), a copy of which is attached as Attachment 1.

In accordance with LR 7.1(a), Applicants sought but did not obtain Defendant's concurrence by the time this Motion was filed. Prior to filing this Motion, Applicants explained the nature of this Motion to Plaintiffs and requested, but were denied, their concurrence in the relief sought.

WHEREFORE, Applicants respectfully request that the Court grant their Motion and allow them to intervene as Defendants in this matter.

Respectfully submitted,

**Holtzman Vogel Josefiak Torchinsky PLLC**

*/s/ Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
Phillip Gordon
45 North Hill Drive, S 100
Warrenton, Virginia 20106
(540) 341-8800
JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law
Attorneys for Applicants

Date:  July 12, 2018

**Clark Hill PLC**

*/s/ Charles R. Spies*
Charles R. Spies
Brian D. Shekell (P75327)
212 E. Cesar Chavez Ave.
Lansing, MI 48906
(517) 318-3100
cspies@clarkhill.com
bshekell@clarkhill.com
Attorneys for Applicants

2

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, et al.,

                Plaintiffs,

                                        Civil Action No. 17-cv-14148

v.

                                        Hon. Eric L. Clay
                                        Hon. Denise Page Hood

RUTH JOHNSON, in her official          Hon. Gordon J. Quist
capacity as Michigan Secretary of State

                Defendant.
_____

## BRIEF IN SUPPORT OF MOTION TO INTERVENE BY INDIVIDUAL MICHIGAN LEGISLATORS

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

WHETHER THIS COURT SHOULD GRANT APPLICANTS'
MOTION TO INTERVENE AS A MATTER OF RIGHT
PURSUANT TO RULE 24(a)(2), OR IN THE ALTERNATIVE, BY
PERMISSIVE INTERVENTION UNDER RULE 24(b).

Applicants answer: Yes

Plaintiffs answer: No

This Court should answer: Yes

# <u>CONTROLLING OR MOST APPROPIATE AUTHORITY</u>

## <u>Rules</u>

Fed. R. Civ. P. 24(a)(2)

Fed R. Civ. P. 24(b)

## <u>Cases</u>

*Jansen v. Cincinnati*, 904 F.2d 336 (6th Cir. 1990)

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)

*Triax Co. v. TRW, Inc.*, 724 F.2d 1224 (6th Cir. 1984)

# **INTRODUCTION**

On December 22, 2017, the League of Women Voters of Michigan, Roger J. Brdak, Frederick C. Durhal, Jr., Jack E. Ellis, Donna E. Farris, William "Bill" J. Grasha, Rasa L. Holliday, Diana L. Ketola, Jon "Jack" G. Lasalle, Richard "Dick" W. Long, Lorenzo Rivera and Rashida H. Tlaib (collectively, "Plaintiffs") filed a two-count Complaint for Declaratory and Injunctive Relief. (ECF No. 1). Plaintiffs' Complaint asserts that the current legislative and congressional apportionment plans ("Current Apportionment Plans") are unconstitutional pursuant to 42 U.S.C. § 1983, § 1988 and the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs contend that by continuing to implement the Current Apportionment Plans, Defendant Ruth Johnson, in her official capacity as Michigan's Secretary of State, has impermissibly discriminated against Plaintiffs as an identifiable political group (likely Democratic voters). Plaintiffs assert that Defendant's actions violate the Equal Protection Clause of the Fourteenth Amendment, and unreasonably burdened Plaintiffs' right to express their political views and associate with the political party of their choice in contravention of the First Amendment. Plaintiffs seek to enjoin the further implementation of the Current Apportionment Plans in the 2020 congressional and state legislative elections. *See* Pls' Resp. to Motion for Stay, at 2 (ECF No. 15).

1

Applicants should be permitted to intervene in this matter. Representatives Lee Chatfield, the Speaker Pro Tempore of the Michigan House of Representatives and Aaron Miller, the Chairman of the Elections and Ethics Committee of the Michigan House of Representatives, stand to be irrevocably harmed by the invalidation of the duly enacted legislative and congressional apportionment plans. Established Supreme Court precedent makes clear that Applicants have significant, particularized interests in this litigation because: (1) Plaintiffs seek a court order regulating Applicants' official conduct; (2) they and their successors stand to be economically harmed due to resulting increased costs of election or reelection; (3) their reelection or their successors' chances of election may be reduced as a result of redrawing the Current Apportionment Plan; and (4) they will be forced to expend significant public funds and resources to have the Legislature engage the necessary processes to comply with any remedial order.

Applicants' interests are also not adequately and fairly represented by any existing party to this action. Applicants' unique interest in defending a validly enacted law and the legislative process is directly adverse to Plaintiffs' interests and different from that of Secretary Johnson, whose office lacks the ability to enact new legislation. If this Court were to order any remedy, the laws at issue cannot simply be abandoned. Federal law would require the Legislature to act and attempt to devise a remedy in accordance with any order of this Court. This would require

2

the significant expenditure of public funds and resources.

Applicants' intervention will promote and ensure the presentation of complete and proper evidence and legal arguments in this matter. Their participation will assist this Court in lending finality to the adjudication of the merits of this lawsuit. They should be permitted to intervene as Defendants.

## ARGUMENT

**I.     APPLICANTS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT**

Pursuant to Federal Rule of Civil Procedure Rule 24(a)(2), intervention as a matter of right is appropriate when, upon a timely motion, a party "Claims an interest relating to the property or transaction that is the subject of the actions, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

The United States Court of Appeals for the Sixth Circuit has recognized a "rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997). "As a general rule, a person cannot be deprived of his or her legal rights in a proceeding to which such a person is neither a party nor summoned to appear in the legal proceeding." *Jansen v. Cincinnati*, 904 F.2d 336, 340 (6th Cir. 1990). Therefore, "the need to settle claims among a disparate group of affected persons militates in

3

favor of intervention." *Id.*

The Court of Appeals for the Sixth Circuit has developed a four-factor test to determine whether a party should be granted intervention as of right. *See Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984); *see also Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004). These rules are to be "construed broadly in favor of the applicants." *Miller*, 103 F.3d at 1246; *see also United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), cert. denied, *Makah Indian Tribe v. United States*, 501 U.S. 1250 (1991)).

Granting a motion for intervention is appropriate upon a showing that: (1) the application for intervention is timely; (2) the applicant has a substantial, legal interest in the subject matter of the pending litigation; (3) the applicant's ability to protect that interest is impaired; and (4) the present parties do not adequately represent the applicant's interest. *Grubbs*, 870 F.2d at 345.

Applicants readily meet each of the four criteria. They should be permitted to intervene in this matter.

### A.    Applicants' Motion to Intervene Is Timely

The timeliness of a motion to intervene "should be evaluated in the context of all relevant circumstances." *Jansen*, 904 F.2d at 340 (citing *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987)). The Sixth Circuit has outlined five factors to be considered when assessing the timeliness of a motion to intervene: (1) the stage

of the proceeding; (2) the purpose of intervention; (3) the length of time between when the applicants knew or should have known of their interest and moved to intervene; (4) prejudice that any delay may have caused the parties; and (5) the reason for any delay. *Jansen*, 904 F.2d at 340 (citing *Grubbs*, 870 F.2d at 345). In this instance, Applicants satisfy all five factors.

"The mere passage of time—even 30 years—is not particularly important" when considering timeliness, instead the "proper focus is on the stage of the proceedings and the nature of the case." *United States v. Detroit*, 712 F.3d 925, 931 (6th Cir. 2013). Currently, the proceeding is in its most nascent stages, with an Answer to Plaintiffs' Complaint filed just over one month ago. *See* Answer, filed May 30, 2018 (ECF No. 59). Trial is still over seven months away and Motions for Summary Judgment are not due for another three months. *See* Case Management Order (ECF No. 53). There have been only minimal substantive actions taken by the Court.

The prejudice inquiry is related to timeliness, as the "analysis must be limited to the prejudice caused by the untimeliness, not the intervention itself." *See Detroit*, 712 F.3d at 933. Here, the Complaint was filed on December 22, 2017, and the only substantive actions taken by the Court thus far is an Order Granting and Denying in part Defendant's Motion to Dismiss, *see* Opinion and Order (ECF No. 54), and an Order Granting and Denying in part Non-Party Movants' Motions

to Quash, *see* Order (ECF No. 58). The Court's Case Management Order sets forth a timeline that is easily adhered to by Applicants. Trial is still over seven months away. *See* Case Management Order (ECF No. 53).

There are two months left to conduct discovery. *See id*. Applicants are also already covered parties under various third-party discovery requests. Allowing them to intervene as a party at this stage in the litigation could not possibly result in undue delay to any of the currently named parties.[1] *See* Motion to Quash (ECF No. 46); Reply in Response to Motion to Quash (ECF No. 52); Order (ECF No. 58).

Plaintiffs seek to overturn a validly enacted law and enjoin both state legislative and congressional members from seeking reelection in the districts they currently represent. This Plan has been in effect since 2011 and relied upon for three election cycles. Permitting Applicants to intervene in this matter will result in no prejudice to the parties. In fact, Applicants' intervention at this point will allow them to assert their defenses without any delay or disruption to the litigation.

For all these reasons, Applicants' Motion is timely.

**B.    Applicants Have A Sufficient Interest Which May Be Impaired by the Disposition of this Case**

The second and third requirements under Rule 24(a) are that Applicants

---

[1] Applicants maintain, and will continue to maintain, that subjecting them to discovery for official actions taken as state legislators is contrary to law and Supreme Court precedent.

must have an interest in the litigation and that the disposition of this suit will impair those interests. "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Miller*, 103 F.3d at 1247. Applicants are not required to show "that impairment will inevitably ensue from an unfavorable disposition; the would be intervenors need only show that the disposition *may* impair or impede their ability to protect their interest." *Purnell*, 925 F.2d at 948 (emphasis in original) (internal quotations and modifications omitted).

Applicants possess several legitimate interests that justify their intervention in this matter. These interests include: (1) Plaintiffs seek a Court order which, if granted, would regulate the official conduct of Applicants; (2) the economic harm to Applicants and their successors that is caused by increasing costs of election and reelection; (3) the reduction in Applicants' or their successors' reelection chances that may result from any redrawing of the Current Apportionment Plan; and (4) Applicants will be forced to expend significant public funds and resources to fulfill the remedial orders sought by Plaintiffs. None of these interests may be deemed a property interest and Movants' explicitly state that they are not claiming a property interest in their elected positions.

This matter concerns the congressional and legislative districting plans

enacted and implemented by the Michigan Legislature, which allegedly violate the First and Fourteenth Amendments of the United States Constitution. (See Comp. at ¶1). Michigan's House of Representatives is one of two legislative bodies bestowed with the constitutional obligation to prepare and enact legislation "to regulate the time, place and manner" of elections. Mich. Const. art. II, § 4; *see also* Mich. Const. art. IV, § 1 (vesting the general legislative power with the Legislature); Mich. Comp. Laws §4.261 (setting out the authority and procedure for conducting reapportionment).

As ranking members of the Michigan Legislature, Applicants' would be required to play an integral part in drawing and enacting the remedial plans required to comply with any order of this Court. (*See Id*. at ¶18). Indeed, Plaintiffs request, *inter alia*, that the Court "declare Michigan's Current Apportionment Plan unconstitutional and invalid" and "in the absence of a state law establishing a constitutional apportionment plan adopted by the Legislature" the Court should do so. (*Id.* at 33 ¶¶ (b), (d)).

Apportionment "is primarily a matter for legislative consideration and determination and . . . judicial relief becomes appropriate only when a legislature fails to reapportion . . . ." *Reynolds v. Sims*, 377 U.S. 533, 586 (1964). Therefore, the Michigan Legislature, led in part by House Speaker Pro Tempore Lee Chatfield

and House Elections and Ethics Committee[2] Chairman Rep. Aaron Miller, would be directly impacted by any Order of this Court requiring a modification or redrawing of the Current Apportionment Plans. Applicants thus have a sufficient interest in the subject matter of this litigation that is materially distinguishable from the generalized interest shared by all citizens. *See Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 194 (1972) (recognizing that state legislators have the right to intervene because the State Legislature would be directly affected by a district court's orders.).

Applicants also have a distinct economic interest in the litigation. An economic interest is the quintessential injury in fact under Article III and therefore certainly enough to warrant intervention. *Barlow v. Collins*, 397 U.S. 159, 163-64, 172, n.5 (1970) (Brennan, J., dissenting); *see also Democratic Party v. Benkiser*, 459 F.3d 582, 586-88 (5th Cir. 2006) (an injury in fact exists when "campaign coffers" are "threatened"). If the electoral maps are changed, Applicants or their successors will necessarily need to expend additional funds to adapt and engage with new constituents within new boundaries. The likelihood of Applicants' or their successors' "campaign coffers" being threatened is a sufficient interest to warrant intervention.

Applicants or their successors' interest in their reelection chances further

---

[2] The Elections and Ethics Committee would be the House Committee where any potential remedial plans would be developed and considered.

highlights the need for intervention. This type of interest has been long noted in the context of Article III standing. *See Wittman v. Personhuballah*, 136 S. Ct. 1732 (2016) (evidence of impairment of reelection prospects can constitute an Article III injury for standing purposes); *Meese v. Keene*, 481 U.S. 465, 475 (1987); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004) (diminishment of political power is sufficient for the purposes of standing); *Smith v. Boyle*, 144 F.3d 1060, 1061-63 (7th Cir. 1998); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (Conservative Party official had standing to challenge the ballot position of an opponent); *Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981) (holding that the "potential loss of an election" is an injury in fact); *Democratic Party of the U.S. v. National Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (three-judge panel), *aff'd in part and rev'd in part on other grounds sub nom. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 489-90 (1985).

Should this Court order any remedy sought by Plaintiffs, the Applicants also would be required to, in their official capacities, expend significant legislative funds and resources towards the extraordinary costs of developing apportionment plans and adding unscheduled session days to the legislative calendar. Expenses involved with redistricting include, but are not limited to, acquiring the software and databases necessary to process and map statewide data, engaging numerous

skilled personnel and consultants, holding several fully-staffed public hearings, and opportunity costs.

Even if this occurred during regular sessions of the legislature, the time and attention of legislative branch staff normally assigned to handle other matters would have to be reassigned to handle what is otherwise only a decennial matter. Additionally, depending on the timing of any order of this Court, the Legislature will likely be required to hold special sessions and disrupt ongoing construction projects at the Capitol in order to engage in redistricting. The House Business Office estimates that the daily cost of a special session of the Legislature at this time is approximately $65,000 per day.

Applicants have shown sufficient interest in the adjudication and disposition of this matter. They should be permitted to intervene.

### C.   No Current Party Adequately Represents the Applicants' Interests.

The fourth factor in the intervention analysis is whether the "present parties . . . adequately represent the applicant's interest." *Grubbs*, 870 F.2d at 345. Applicants need only prove that the "representation of [their] interest *may be* inadequate." *Trbovich v. UMW*, 404 U.S. 528, 538, n.10 (1972) (emphasis added); *Miller*, 103 F.3d at 1247 (quoting and citing *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311 (6th Cir. 1992).

No current party to the litigation adequately represents the interests of

11

Applicants. Plaintiffs' interests are adverse to the Current Apportionment Plan, and the existing Defendant does not adequately represent the same institutional or individual interests Applicants have in defending the plan. The interests of the Applicants is to defend a validly enacted law of the Michigan Legislature while ensuring that the Court affords due deference—including a presumption of good faith afforded to all legislative enactments—to the Legislature. *See Abbott v. Perez*, No. 17-586, slip op. at 21 (June 25, 2018).

Applicants also have an interest – and are required to play an integral role - in the redrawing of a remedial plan, should the Court so order. Indeed, Plaintiffs request that the Court, *inter alia*, "[i]n the absence of a state law establishing a constitutional apportionment plan adopted by the Legislature . . . in a timely fashion, establish legislative and congressional apportionment plans that meet the requirements of the U.S. Constitution and other applicable law." (Compl. at 33 ¶d).

The Defendant Secretary of State cannot represent the interest of Applicants in establishing a new court ordered plan as a matter of law, as the power to enact laws and exercise legislative authority is outside the Secretary's constitutional duties. *See* Mich. Const. art. 4, § 1. The interest of the Secretary of State is merely that of the chief elections officer of the state. *See* MCL §§ 168.21.

The current Secretary of State is also constitutionally term limited, and will no longer be the Secretary of State once trial begins in this case. *See* Mich. Const.

art. V, § 30; *see also* Case Management Order (ECF No. 53) (setting trial for February 2, 2019). There also exists a significant possibility that the newly elected Secretary of State would be less inclined to defend the 2011 apportionment, which is not an uncommon occurrence when elected officials are involved. *See, e.g., Harris v. Arizona. Indep. Redistricting Comm'n*, 136 S. Ct. 1301 (Oral Arg. Tr. 26:16-27:13) (Dec. 8, 2015) (A newly elected Attorney General of Arizona declined to defend a map which his predecessor had defended); *Brat v. Personhuballah*, 883 F.3d 475, 478 (4th Cir. 2018) (summarizing how the Commonwealth of Virginia refused to defend the lawsuit on appeal after a change in partisan control of the Attorney General's Office so that the responsibility was left to legislative intervenors); *North Carolina v. N.C. Conf. of the NAACP*, 137 S. Ct. 1399 (2017) (statement of Chief Justice Roberts respecting denial of cert. disclaiming any opinion on the merits) (noting the actions of the newly elected Governor and Attorney General moving to dismiss a case that was already before the Supreme Court on a petition for writ of certiorari).

Applicants possess significantly different authority and strategic interests than those of the Secretary of State. *Compare, e.g.,* Def.'s Answer ¶¶ 17, 42, 47, 49 with Proposed Intervenors' Answer ¶¶ 17, 42, 47, 48, 49, 50 (denying that there is ever such a thing as a "wasted" vote and that the so called efficiency gap supports an inference of partisan gerrymandering). Additionally, Applicants differ from the

Secretary in affirmative defenses. Applicants contend that there are no judicially manageable standards to evaluate Plaintiffs' claims and therefore this Court should dismiss Plaintiffs' claims as non-justiciable. Proposed Answer Aff. Def. ¶ 7.

Applicants have a substantial interest in defending the Current Apportionment Plan that is not possessed by any currently named party. Furthermore, Applicants' interests in intervention are materially distinguishable from the generalized interests in this litigation shared by all citizens of Michigan. While all citizens may have an interest in participating in the 2020 election, Applicants uniquely stand to have their official conduct regulated, their or their successors' reelection efforts hindered and made costlier, and their administration of legislative funds and resources superintended. In sum, the interests of Applicants in the adjudication and disposition of this matter are both sufficient and exclusive. They should be permitted to intervene accordingly pursuant to Federal Rule of Civil Procedure 24(a)(2).

## II.   ALTERNATIVELY, APPLICANTS ARE ENTITLED TO PERMISSIVE INTERVENTION

Even if this Court determines that Applicants are not permitted to intervene in this lawsuit as a matter of right, Applicants should be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). This Rule provides for permissive intervention where a party timely files a motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed.

14

R. Civ. P. 24(b)(1)(B).

Intervention under Rule 24(b) is a "discretionary power" left to the judgment of the district court. *Bradley v. Milliken*, 828 F.2d 1186, 1193 (6th Cir. 1987). In exercising its broad discretion under this Rule, the Court must consider whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

For the reasons outlined above, Applicants have established their right to permissively intervene in this matter. Applicants have filed their Motion early in this litigation and have already been subject to third-party discovery. Inclusion of Applicants as intervenors will not cause any delay or prejudice on the current parties.

Applicants possess claims and defenses related to the Current Apportionment Plan and will be directly and irrevocably impacted by any change to the Current Apportionment Plan.

Not allowing Applicants to intervene would also prejudice their interests and rights. This matter requires the Court to rule on the validity of the Current Congressional Apportionment Plan, and possibly order that it be redrawn – without the participation of the parties responsible for creation of the Plan. The only way to protect the fairness of the litigation and lend credibility and finality to the Court's decision on the merits is to permit Applicants to intervene.

## CONCLUSION

For the foregoing reasons, Applicants' Motion to Intervene should be granted and Applicants permitted to intervene as Defendants in order to protect their exclusive interests in the subject matter and outcome of this litigation concerning the constitutionality of the Current Apportionment Plan.

**Holtzman Vogel Josefiak Torchinsky PLLC**

*/s/ Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
Phillip Gordon
45 North Hill Drive, S 100
Warrenton, Virginia 20106
(540) 341-8800
JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law
Attorneys for Applicants

**Clark Hill PLC**

*/s/ Charles R. Spies*
Charles R. Spies
Brian D. Shekell (P75327)
212 E. Cesar Chavez Ave.
Lansing, MI 48906
(517) 318-3100
cspies@clarkhill.com
bshekell@clarkhill.com
Attorneys for Applicants

Date: July 12, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all of the parties of record.

**CLARK HILL PLC**

*/s/ Charles R. Spies*

16

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, et al.,

              Plaintiffs,

v.

              Civil Action No. 17-cv-14148

              Hon. Eric L. Clay
              Hon. Denise Page Hood
RUTH JOHNSON, in her official    Hon. Gordon J. Quist
capacity as Michigan Secretary of State

              Defendant.

_____

## DEFENDANT-INTERVENORS' ANSWER TO PLAINTIFFS' COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendant-Intervenors, Representative Lee Chatfield, in his official capacity as Speaker Pro Tempore, and Representative Aaron Miller, in his official capacity as Chairman of the House Elections and Ethics Committee, through their counsel, submit the following Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief ("Complaint"):

## INTRODUCTION

1.    Denied.

2.    Denied.

3.    Denied.

4.    Defendant-Intervenors deny the allegations contained in the first

sentence of Paragraph 4. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

5.     Defendant-Intervenors admit that Paragraph 5 contains quotes from a Supreme Court opinion, but deny their applicability to this matter. By way of further answer, Defendant-Intervenors respectfully refer the court to the full text of the cited case.

6.     Paragraph 6 asserts a statement of Plaintiffs' intentions to prove their case, to which no response is required. To the extent a response is required, the allegations are denied.

## Parties

7.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

8.     In response to the first sentence of Paragraph 8, Defendant-Intervenors admit only that the Court determined that the League had standing to challenge the current apportionment plan on a district by district basis, affirmatively aver that the Court determined that the League lacks standing to bring statewide claims on behalf of its members and lacks standing to bring statewide claims on its own behalf. All remaining allegations are denied.

9.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

2

219936426.1

10.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

    a.  Defendant-Intervenors deny that voters have been cracked and that there is a gerrymandered district. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

    b.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

    c.  Defendant-Intervenors deny that voters have been cracked and that there is a gerrymandered district. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

    d.  Defendant-Intervenors deny that voters have been cracked or packed. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

    e.  Defendant-Intervenors deny that voters have been cracked or packed. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

    f.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

3

g.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

h.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

i.  Defendant-Intervenors deny that voters were cracked. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

j.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

k.  Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

11.   Defendant-Intervenors admit only the allegations contained in the first two sentences of Paragraph 11. Defendant-Intervenors deny the allegations in the last sentence.

## Jurisdiction and Venue

12.   Paragraph 12 contains a statement of law, to which no response is required. To the extent a response is required, Defendant-Intervenors deny that Plaintiffs have standing to bring a statewide challenge.

13.   Admitted.

14.   Admitted.

4

<u>**General Allegations**</u>

**Answer to: "How Gerrymandering Works"**

15.    Defendant-Intervenors admit that Paragraph 15 contains a quote from a Supreme Court opinion, but deny it supports Plaintiffs' claims in this lawsuit. By way of further answer, Defendant-Intervenors respectfully refer the court to the full text of the cited case.

16.    Defendant-Intervenors admit that Paragraph 16 contains a quote from a Supreme Court opinion, but deny it supports Plaintiffs' claims in this lawsuit. By way of further answer, Defendant-Intervenors respectfully refer the court to the full text of the cited case. Defendant-Intervenors deny all remaining allegations in this paragraph.

17.    Denied.

**Answer to: "Michigan's 2011 Legislature Gerrymandered
the State's Legislative and Congressional Maps"**

18.    Defendant-Intervenors admit that redistricting occurs after every 10-year census, admit that redistricting is provided for by statute, and admit that Michigan's legislative and congressional plans following the 2010 census were a result of legislative enactments, but deny that all new districting plans result from legislative enactments.

19.    Defendant-Intervenors admit that a majority in each house and the governor were Republicans in 2001, admit that the 2001 districting plans are no

longer in effect, and deny all remaining allegations.

20.     Defendant-Intervenors admit that Michigan enacted the alleged legislative and congressional districting plans in 2011, admit that at the time, Republicans held a majority in each house, admit that the bills were signed by Governor Snyder, a Republican, and deny all remaining allegations.

21.     Denied.

Answer to: "*The Michigan Process was Flawed*"

22.     Defendant-Intervenors deny the allegations in the first sentence, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the remaining sentence.

23.     Denied.

24.     Defendant-Intervenors admit only that SB 498 and HB 4780 were introduced, voted on, and enacted. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

25.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations.

26.     Admitted.

27.     Admitted.

28.     Denied.

29.     Denied.

6

Answer to*: "The Gerrymander Created Oddly Shaped Districts
Contrary to Neutral Redistricting Principles"*

30.     The first two sentences purport to summarize opinions in court decisions, to which no response is required. By way of further answer, Defendant-Intervenors respectfully refer the court to the full text of the cited case. To the extent a response is required, Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences, and deny the allegations in the last sentence.

31.     Denied.

32.     Denied.

33.      Defendant-Intervenors are unable to verify the source or accuracy of the graphic in this paragraph, and therefore deny these allegations.

34.     Denied.

35.      Defendant-Intervenors are unable to verify the source or accuracy of the graphic in this paragraph, and therefore deny these allegations.

36.     Denied because Plaintiffs do not have an individual plaintiff in each challenged district.

Response to*: "Objective Data Confirm the Gerrymander's Continuing Durable
and Severe Burden on Michigan Democrats"*

37.     Denied.

38.     Defendant-Intervenors deny the allegations contained in the first

7

sentence, and lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence.

39.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

40.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

41.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

42.     Defendant-Intervenors deny the allegations in the first sentence. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

43.     Denied.

44.     Plaintiffs purport to quote and characterize Justice Kennedy's concurring opinion in *Vieth v. Jubelirer*, 541 U.S. 267, 312-13 (2004) (Kennedy, J., concurring), to which no response is required. By way of further answer, Defendant-Intervenors respectfully refer the court to the full text of the cited case. To the extent a response is required. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences, and deny the allegations in the last sentence.

45.     Denied. By way of further answer, the cited case, *Whitford v. Gill*,

8

218 F. Supp. 3d 837, 903-10 (W.D. Wis. 2016), has been vacated and remanded. *See Gill v. Whitford*, No. 16-1161, 2018 U.S. LEXIS 3692 (U.S. June 18, 2018).

46.    Denied.

47.    Denied.

48.    Denied. Defendant-Intervenors also respectfully refer the Court to Justice Stevens opinion in *LULAC v. Perry*, 548 U.S. 399, 466 (2006) (Stevens, J., concurring) for a full and complete understanding of that opinion.

49.    Denied.

50.    Denied.

51.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

52.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

53.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

54.    Denied.

55.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

Answer to: "*The Michigan Plan Cannot Be Justified by Legitimate State Interests*"

56.    The first two sentences purport to characterize the U.S. Supreme

9

Court's decision in *Reynolds v. Sims*, which opinion speaks for itself, and to which no response is required. Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations.

57.    Plaintiffs purport to characterize a Michigan Supreme Court decision, to which no response is required. To the extent a response is required, that decision speaks for itself.

58.    Plaintiffs purport to characterize a Michigan Supreme Court decision, to which no response is required. To the extent a response is required, that decision speaks for itself.

59.    Admitted.

60.    Defendant-Intervenors admit the allegations in the first sentence. The remaining sentences include Plaintiffs' purported characterization of a Michigan Supreme Court decision, to which no response is required. To the extent a response is required, that decision speaks for itself.

61.    Denied.

62.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

63.    Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

64.    Defendant-Intervenors lack knowledge or information sufficient to

form a belief as to the truth of these allegations.

65.     Defendant-Intervenors lack knowledge or information sufficient to form a belief as to the truth of these allegations.

## Answer to: "Michigan's Current Apportionment Plan Violates the Constitution"

66.     Plaintiffs purport to characterize two U.S. Supreme Court's decisions, to which no response is required. To the extent a response is required, those decisions speak for themselves. Plaintiffs also purport to characterize the holding of a district court opinion, to which no response is required. To the extent a response is required, that opinion's validity has been questioned by the U.S. Supreme Court. *See Gill v. Whitford*, No. 16-1161, 2018 U.S. LEXIS 3692 (U.S. June 18, 2018).

67.     Plaintiffs purport to characterize and quote U.S. Supreme Court opinions and a district court opinion, to which no response is required. To the extent a response is required, those opinions speak for themselves. By way of further answer, the district court opinion cited in this paragraph may no longer be good law. *See Gill v. Whitford*, No. 16-1161, 2018 U.S. LEXIS 3692 (U.S. June 18, 2018) (vacating and remanding *Whitford v. Gill*, 218 F. Supp. 3d 837 (W.D. Wis. 2016).

68.     Plaintiffs purport to characterize and quote a U.S. Supreme Court opinion, to which no response is required. To the extent a response is required, the

11

opinion speaks for itself.

69.    Plaintiffs purport to characterize a U.S. Supreme Court decision, to which no response is required. To the extent a response is required, the decision speaks for itself. Defendant-Intervenors deny the remaining allegations.

70.    Denied.

71.    Denied.

72.    Defendant-Intervenors admit only that the quoted language appears in the cited case and deny all other allegations and inferences therefrom.

73.    Denied.

## Count I – First Amendment

74.    Defendant-Intervenors incorporate their answers to paragraphs 1 through 73 as if fully set forth here.

75.    Defendant-Intervenors admit that Plaintiffs and all Democratic voters have First Amendment rights, affirmatively aver that all voters have First Amendment rights, aver that general statements as to the parameters of rights do not require an answer, but if deemed to require an answer, the Speaker and Chairman lack knowledge of information sufficient to form a belief as to the truth of these allegations. By way of further answer, Defendant-Intervenors deny that Plaintiffs or Democratic voters have had their First Amendment rights violated.

76.    Denied.

12

77.  Denied.

78.  Denied.

79.  Denied.

80.  Denied.

## Count II – Equal Protection

81.  Defendant-Intervenors incorporate their answers to paragraphs 1 through 80 as if fully set forth here.

82.  Denied.

83.  Denied.

84.  Denied.

85.  Denied.

## RELIEF REQUESTED

WHEREFORE, Defendant-Intervenors respectfully request that the Complaint be dismissed with prejudice and that they be awarded costs, reasonable attorney fees, and such further relief as the Court deems just and equitable.

## AFFIRMATIVE DEFENSES

1.  Plaintiffs have failed to state a claim upon which relief can be granted.

2.  Plaintiffs' claims are barred, in whole or in part, by the doctrine of laches.

13

3.    Control of district apportionment is reserved to the Congress rather than the courts. U.S. Const., Art. I, § 4.

4.    The claims of Plaintiff Durhal are barred by res judicata.

5.    Plaintiffs do not have standing to bring a statewide challenge because they do not have a plaintiff in every district.

6.    In light of the Supreme Court's recent decisions, Plaintiffs lack standing to bring a partisan gerrymandering claim.

7.    Plaintiffs' claims are non-justiciable because there is no manageable standard for this Court to adjudicate Plaintiffs' claims.

Defendant-Intervenors reserve the right to add additional affirmative defenses as the result of discovery or otherwise.

Respectfully submitted,

**Holtzman Vogel Josefiak Torchinsky PLLC**

*/s/ Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
Phillip Gordon
45 North Hill Drive, S 100
Warrenton, Virginia 20106
(540) 341-8800
JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law
Attorneys for Applicants

Date:  July 12, 2018

**Clark Hill PLC**

*/s/ Charles R. Spies*
Charles R. Spies
Brian D. Shekell (P75327)
212 E. Cesar Chavez Ave.
Lansing, MI 48906
(517) 318-3100
cspies@clarkhill.com
bshekell@clarkhill.com
Attorneys for Applicants

14