**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

LEAGUE OF WOMEN
VOTERS OF MICHIGAN, *et al.*,

        Plaintiffs,        CASE NO. 17-14148
                                        HON. DENISE PAGE HOOD

v.

RUTH JOHNSON, in her official
capacity as Michigan Secretary of
State,

        Defendant.
_____/

**<u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS [#63]</u>**

Before the Court is Defendant Ruth Johnson's Motion to Dismiss Plaintiffs' Claims as to the Michigan Senate filed on June 6, 2018. [Doc # 63] Plaintiffs filed a Response on June 27, 2018. [Doc # 64] Johnson filed a Reply on July 6, 2018. [Doc # 69]

Johnson argues that Plaintiffs have failed to state a claim for relief with respect to the Michigan Senate because the Senate portion of the Michigan apportionment plan will not be used to elect the Senate again after November 6, 2018. [Doc # 63, p. 4, ¶¶ 10–11] Johnson alternatively asserts that this Court lacks subject matter jurisdiction, arguing that Plaintiffs' claims are moot because this challenge will not provide relief for the 2018 election cycle. [*Id.* ¶ 12]

1

For the reasons that follow, the present Motion to Dismiss is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

Plaintiffs brought this suit against Ruth Johnson, in her official capacity as Michigan Secretary of State, on December 22, 2017. Plaintiffs claim that Michigan's current apportionment plan—constituting three redistricting maps adopted from the passage of Michigan Senate Bill 498 (2011) and Michigan House Bill 4780 (2011) ("2012 Michigan Redistricting Legislation")—violates Plaintiffs' First Amendment free speech and association rights and Fourteenth Amendment equal protection rights. [Doc # 1, Compl. ¶ 1] Specifically, Plaintiffs allege that the apportionment plan intentionally places Michigan Democrats in voting districts that reduce or eliminate the power of the Democrat votes and burdens their representational rights because of their political party affiliation. [*Id.*]

Members of the Michigan Senate are elected to four-year terms during even number years falling between each United States presidential election. *See* MICH. CONST. art. V, § 21. Every member of the Michigan Senate is up for reelection on November 6, 2018, and the elected members will serve four-year terms until 2022. The Michigan legislature must enact a new redistricting plan for the Senate by November 1, 2021. MICH. COMP. LAWS § 4.261. The 2022 Michigan Senate elections will be held under a new apportionment plan. The Plaintiffs have

acknowledged that they seek a remedy for the 2020 elections, not the 2018 elections. [Doc # 15, p. 16; Doc # 64, p. 10]

## II. ANALYSIS

Defendant seeks to have Plaintiffs' claims dismissed with respect to the Michigan Senate under Rule 12(b)(1) by challenging this Court's subject matter jurisdiction, or 12(b)(6) by challenging whether Plaintiffs have stated claims for relief. The Court first considers Defendant's arguments under Rule 12(b)(1), since challenges brought pursuant to Rule 12(b)(6) become moot if this Court lacks subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Autho.*, 895 F.2d 266, 269 (6th Cir. 1990). Essentially, Defendant argues that Plaintiffs have not brought an actionable case or controversy with respect to the Michigan Senate redistricting plan because Plaintiffs are not pursuing relief for the 2018 elections and the Senate portion of the apportionment plan will not be used to elect the Senate again after November 6, 2018. We disagree with Defendant.

### A. Standards of Review

#### 1. *Rule 12(b)(1)*

Whether a court has subject matter jurisdiction is a threshold issue that determines whether a plaintiff can bring their claims in a specific court. *American Telecom Co., L.L.C. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of

subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *Cartwright v. Garner*, 751 F.3d 752, 759–60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). In the case of a facial attack, the court takes the allegations of the complaint as true to determine whether the plaintiff has alleged a basis for subject matter jurisdiction. *Id.*

In the case of a factual attack, a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* Plaintiff bears the burden of establishing that subject matter jurisdiction exists. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Jurisdiction must be established by a preponderance of the evidence. *Wright v. United States,* 82 F.3d 419, 1996 WL 172119 (6th Cir. 1996).

Article III, Section 2 of the United States Constitution provides that the jurisdiction of federal courts is limited to "Cases" and "Controversies." Further, a controversy must be present during all stages of a case brought in federal court. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013) (citation omitted). A case becomes moot if an intervening event or "circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit." *Id.* (citation and quotations

4

omitted). The Sixth Circuit defines mootness as occurring when a plaintiff seeks (1) a judgment on a "pretended controversy" where none exist, (2) a decision in advance regarding a right before it has been asserted or contested, or (3) a judgment that cannot have any "practical legal effect" on a "then existing controversy" when rendered. *Parsons Inv. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972) (citing *Ex Parte Steele*, 162 F. 694, 701 (N.D. Ala. 1908)).

### 2. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, [and] accept its allegations as true . . . ." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible

5

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Possibility of Relief

Defendant's arguments rest entirely on the assertion that it is impossible for this Court to grant effectual relief to Plaintiffs with respect to the portion of the apportionment plan enacted for the Michigan Senate elections. That assertion is incorrect. If this Court were to find the Michigan apportionment plan or any of its portions to be the product of unconstitutional partisan gerrymandering, this Court could issue an order to remedy the harm caused by the unconstitutional violations.

"Relief in redistricting cases is 'fashioned in the light of well-known principles of equity.'" *North Carolina v. Covington*, 137 S. Ct. 1624, 1625 (2017) (quoting *Reynolds v. Sims,* 377 U.S. 533, 585 (1964)). Courts have taken various actions to remedy errors in a state's redistricting process, such as ordering that voting district maps be redrawn and ordering special elections. *See, e.g.*, *North Carolina v. Covington*, 138 S. Ct. 2548, 2554 (2018) (holding the federal district court's appointment of special master to draw remedial voting map was not an abuse of discretion where the state assembly previously failed); *Garrard v. City of Grenada, Miss.*, No. 3:04CV76-B-A, 2005 WL 2175729, at *3 (N.D. Miss. Sept. 8, 2005) (finding the special election procedure to be the most appropriate remedy); *Arbor Hill Concerned Citizens v. Cty. of Albany*, 357 F.3d 260, 262 (2d Cir. 2004) (citing

*Goosby v. Town Board of the Town of Hempstead,* 180 F.3d 476, 498 (2d Cir.1999)) ("It is within the scope of [the court's] powers to order a governmental body to hold special elections . . . ."); *Vera v. Bush*, 933 F. Supp. 1341, 1347–59 (S.D. Tex. 1996) (holding that state legislature's failure to act after the district court found congressional districts unconstitutional warranted imposition of interim redistricting plan, despite that an election was scheduled to be held approximately three months from the date of the court order); *Burton v. Hobbie*, 561 F. Supp. 1029, 1036 (M.D. Ala. 1983) (ordering that a special election be held in part because "[the] Court has a solemn duty to relieve the citizens of [the] state" from deprivations of their legal rights). In *North Carolina v. Covington*, 137 S. Ct. 1624 (2017), the Supreme Court wrote, ". . . in the context of deciding whether to truncate existing legislators' terms and order a special election, there is much for a court to weigh." *Id.* at 1625.

We note that the Supreme Court has never addressed whether or when a special election may be an appropriate remedy for unconstitutional partisan gerrymandering. The Court has, however, provided some factors courts should consider when determining the adequacy of such a remedy. *Id.* at 1626.

Among the relief requested by Plaintiffs in the Complaint, Plaintiffs ask that this Court, ". . . establish legislative and congressional apportionment plans that meet the requirements of the U.S. Constitution and other applicable law" and "[g]rant further relief as the Court deems just and proper." [Doc # 1, Compl. p. 33] In the Response to the present Motion, Plaintiffs argue that remedial special elections and

7

a remedial voting map are needed to remedy the alleged constitutional harms. Even though the Michigan Senate will not be subject to another election under the current apportionment plan after the November 6, 2018 elections, the redistricting plan enacted for the Michigan Senate could be found to be unconstitutional, and redrawn for use in a special election of the Michigan Senate. Plaintiffs have requested a possible relief.

Notably, the November 6, 2018 elections have not passed. This case could end before that date. The present Motion is premature. Defendant's arguments under Federal Rule of Civil Procedure 12(b)(1) lack merit at this stage in the case. Defendant's arguments under Rule 12(b)(6) also lack merit.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Claims as to the redistricting plan for the Michigan Senate (Doc # 63) is **DENIED WITHOUT PREJUDICE**.

ENTERED:
    s/Denise Page Hood
Signed for and on behalf of the panel:

HONORABLE ERIC L. CLAY
United States Circuit Judge

HONORABLE DENISE PAGE HOOD
United States District Judge

HONORABLE GORDON J. QUIST
United States District Judge