UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>RUTH JOHNSON, in her official capacity as Michigan Secretary of State, )<br><br>Defendant. )<br>_____ ) | No. 2:17-cv-14148<br><br>ORDER |

**ORDER DENYING MOTION TO INTERVENE
BY INDIVIDUAL MICHIGAN LEGISLATORS**

Before the Court is a Motion to Intervene By Individual Michigan Legislators ("Applicants"). [Dkt. No. 70.] Applicants seek to intervene pursuant to Rule 24(a)(2) and Rule 24(b) of the Federal Rules of Civil Procedure. We DENY Applicants' motion to intervene.

### FINDINGS

1. Applicants' attempt to intervene is in tension with the principle of separation of powers. Insofar as Applicants claim an official interest in this

1

litigation, Applicants' interest is a component of the state's overall interest and is exclusively represented by the executive. *See* Mich. Const. art. 3, § 2 ("No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution."). Representing the State of Michigan in court—whether against a challenge to the validity of a state law or a threat to state resources—is an executive function. *See, e.g.*, Mich. Const. art. 5, §§ 1 ("The executive power is vested in the governor."), 8 ("The governor shall take care that the laws be faithfully executed" and "may initiate court proceedings in the name of the state to enforce compliance with any constitutional or legislative mandate"). The Michigan legislature has correctly recognized this function as belonging to the executive. *See, e.g.*, M.C.L. §§ 14.29 ("It shall be the duty of the attorney general, at the request of the governor, the secretary of state, the treasurer or the auditor general, to prosecute and defend all suits relating to matters connected with their departments."); 21.162 ("Whenever it shall be necessary to protect or assert the right or title of the state to any property so received or derived as aforesaid, or to collect or reduce into possession any bond, note, bill or chose in action, the attorney general is directed to take the necessary and proper proceedings and to bring suit in the name of the state in any court of competent jurisdiction, state or federal, and to prosecute all such suits[.]").

    2.    Separation of powers concerns are particularly acute in a matter

where, as here, Michigan's executive branch has accepted the responsibility of defending the state's interests.

3. Applicants fail to address the separation of powers issue. Representing state interests in court is a power that is not typically available to the legislature, and we are not persuaded that current circumstances warrant intervention by the legislative branch or that Applicants, as individual members of the legislative branch, are authorized to participate in this matter on behalf of the state. *Cf. United States v. Windsor*, 570 U.S. 744, 754 (2013) (endorsing intervention by "the Bipartisan Legal Advisory Group (BLAG) of the House of Representatives" where the executive decided not to participate in the litigation, the executive recognized an "interest in providing Congress a full and fair opportunity to participate in the litigation," BLAG "voted to intervene," and the executive "did not oppose limited intervention").

4. Applicants' motion is premature. Although Applicants speculate about the "possibility" that the executive branch will end its participation in this matter, [R. 70 at PageID #1221], Applicants' argument presupposes events that have not yet come to pass, including but not limited to the executive branch ending its participation in this case and the legislative branch voting to fill the adversarial void. Assuming, without deciding, that there are circumstances in which the

legislative branch may permissibly represent the state's interests in court, Applicants' current motion is premature. *See United States v. Windsor, supra*.

5. Despite bringing this motion in their official capacities as members of the Michigan legislature, Applicants attempt to assert non-official interests in support of intervention. Applicants assert, for instance, that they have an interest in this litigation arising out of their current or prospective campaigns for reelection. [*See, e.g.*, R. 70 at PageID #1217 ("The likelihood of Applicants' or their successors' 'campaign coffers' being threatened is a sufficient interest to warrant intervention. . . . Applicants or their successors' interest in their reelection chances further highlights the need for intervention.").] But in Michigan's republican form of government, members of the legislature serve at the will of the people and have no official interest in maintaining their elective offices. *See, e.g.*, Mich. Const. art. 4, § 3.

6. Despite expressly disclaiming any "property interest in their elected positions," Applicants attempt to assert an interest in maintaining their "or their successors' reelection chances." [R. 70 at PageID #1215.] This purported interest is grounded in either partisanship, notions of elective office as property, or both. As such, this purported interest is not cognizable for purposes of Applicants' motion to intervene. *See Gamrat v. Allard*, No. 1:16-CV-1094, 2018 WL

1324467, at *5 (W.D. Mich. Mar. 15, 2018) (citing *Attorney Gen. v. Jochim*, 99 Mich. 358, 367, 58 N.W. 611, 613 (1894)).

7. In citing support for their proffered interest in "reelection chances," [R. 70 at PageID #1218], Applicants cite *Wittman v. Personhuballah*, 136 S. Ct. 1732 (2016), for the proposition that "evidence of impairment of reelection prospects can constitute an Article III injury for standing purposes." [R. 70 at PageID #1218.] But in *Wittman*, the Supreme Court *rejected* standing for members of the Virginia legislature, explaining that it "need not decide when, or whether, evidence of the kind of injury they allege [potential harm to reelection prospects] would prove sufficient for purposes of Article III's requirements." *Wittman*, 136 S. Ct. at 1734. Applicants cite several other cases in support of their purported interest in their prospects of reelection, none of which persuades the Court.

8. To the extent that Applicants have any legitimate official interest in this litigation, such as the proffered "economic interest," [R. 70 at PageID #1217; *see also id.* at 1218–19 ("Applicants also would be required to, in their official capacities, expend significant legal funds and resources towards the extraordinary costs of developing apportionment plans . . . .")], such interest belongs to the state and is adequately represented by the executive.

9. Granting Applicants' motion to intervene could create a significant likelihood of undue delay and prejudice to the original parties. Any delay caused

by Applicants' intervention would be undue in light of Applicants' lack of cognizable interest in this matter. Furthermore, Applicants assert that they disagree with the executive's litigation strategy and "possess significantly different . . . strategic interests[.]" [*Id.* at 1222–23.] Insofar as Applicants' litigation strategy could conflict with that of the executive, Applicants' intervention could be prejudicial to the executive's representation of state interests.

10. For the above-stated reasons, Applicants do not satisfy the requirements to intervene under Rule 24(a)(2) or Rule 24(b) of the Federal Rules of Civil Procedure.

## ORDER

It is hereby ORDERED that:

A. The Motion to Intervene By Individual Michigan Legislators [Dkt. No. 70] is DENIED.

B. Applicants may file a second motion to intervene if the executive abandons its participation in this matter.

ENTERED: August 14, 2018

s/Gordon J. Quist
Signed for and on behalf of the panel:

HONORABLE ERIC L. CLAY
United States Circuit Judge

HONORABLE DENISE PAGE HOOD

6

United States District Judge

HONORABLE GORDON J. QUIST
United States District Judge