# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 17-cv-14148 |
| | : | |
| v. | : | Hon. Eric L. Clay |
| | : | Hon. Denise Page Hood |
| | : | Hon. Gordon J. Quist |
| RUTH JOHNSON, in her official capacity as Michigan Secretary of State | : | |
| | : | |
| Defendant. | : | |
| | : | |

## PROPOSED LEGISLATIVE INTERVENORS LEE CHATFIELD AND AARON MILLER'S MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 8(a)(1)(A), and for the reasons outlined in the attached Memorandum in Support, Proposed Legislative Intervenors Lee Chatfield and Aaron Miller move this Court to stay the case pending Proposed Legislative Intervenors' appeal to the United States Court of Appeals for the Sixth Circuit.

Pursuant to Local Rule 7.1(a), Proposed Intervenors have consulted with Plaintiffs' counsel and Defendant's counsel concerning the substance of this Motion. Plaintiffs do not consent to the relief sought in this Motion. Defendant

consents to the relief sought in this Motion. Defendant does not, however, consent

to any relief that would require discovery to be reopened.

Dated: August 24, 2018                          Respectfully Submitted,


**HOLTZMAN VOGEL JOSEFIAK**          **CLARK HILL PLC**
**TORCHINSKY PLLC**


*/s/  Jason Torchinsky*                          */s/ Charles R. Spies*
Jason B. Torchinsky                              Charles R. Spies
Shawn T. Sheehy                                  Brian D. Shekell
Phillip M. Gordon                                212 E. Cesar Chavez Ave.
45 North Hill Drive, Suite 100                   Lansing, MI 48906
Warrenton, Virginia 20186                        P: 517-318-3100
Phone: 540-341-8808                              E: cspies@clarkhill.com
Email: JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 17-cv-14148 |
| | : | |
| v. | : | Hon. Eric L. Clay |
| | : | Hon. Denise Page Hood |
| | : | Hon. Gordon J. Quist |
| RUTH JOHNSON, in her official capacity as Michigan Secretary of State | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PROPOSED LEGISLATIVE INTERVENORS LEE CHATFIELD AND AARON MILLER'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR STAY PENDING APPEAL**

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

WHETHER THIS COURT SHOULD STAY THIS CASE PENDING
LEGISLATORS' APPEAL TO THE SIXTH CIRCUIT.

Movants answer: Yes

Plaintiffs answer: No

This Court should answer: Yes

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Rules

Fed. R. Civ. P. 24(a)(2)

Fed. R. Civ. P. 24(b)

Fed. R. App. P. 8(a)(2)

### Cases

*Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006)

*Crookston v. Johnson*, 841 F.3d 396 (6th Cir. 2016)

*Jansen v. Cincinnati*, 904 F.2d 336 (6th Cir. 1990)

*Michigan State AFL-CIO v. Miller*, 103 F.3d 1240 (6th Cir. 1997)

*Triax Co. v. TRW, Inc.,* 724 F.2d 1224 (6th Cir. 1984)

*United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005)

## INTRODUCTION

Proposed Intervenors Representative Lee Chatfield, in his official capacity as Speaker Pro Tempore of the Michigan House of Representatives, and Representative Aaron Miller, in his official capacity as Chairman of the Elections and Ethics Committee of the Michigan House of Representatives, each a Member of the Michigan Legislature (collectively, "Legislators" or "Proposed Intervenors"), by their undersigned counsel, respectfully request this case be stayed pending the resolution of their appeal in the United States Court of Appeals for the Sixth Circuit.

This Court's Order Denying Intervention, (ECF No. 91), was contrary to this Circuit's precedents and without support in the laws of the United States. Therefore, it is in the interest of all parties that this case be stayed so that, once intervention is granted by the Court of Appeals, any delay and prejudice to Legislators or the parties is diminished due to the improper denial of intervention.

## ARGUMENT

### I.      This Case Should be Stayed Pending Appeal.

Four factors govern whether a stay should be granted: "(1) the likelihood that the party seeking the stay will prevail on the merits; (2) the likelihood that the moving party will be irreparably harmed; (3) the prospect that others will be harmed by the stay; and (4) the public interest in the stay." *Crookston v. Johnson*,

841 F.3d 396, 398 (6th Cir. 2016) (citing *Coal. to Defend Affirmative Action v. Granholm*, 472 F.3d 237, 244 (6th Cir. 2006)). "All four factors are not prerequisites but are interconnected considerations that must be balanced together." *Coal. to Defend Affirmative Action*, 472 F.3d at 244. The facts of this case, when "balanced together," lead inevitably to the conclusion that this case should be stayed. *See id.* For example, a strong showing of possibility of success on the merits can overcome a weak showing of the other factors and *vice versa*. *See Coalition to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 252 (6th Cir. 2006); *Americans United for Separation of Church & State v. Grand Rapids*, 922 F.2d 303, 306 (6th Cir. 1990).

"It is well established that the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Ricketts v. Consumers Energy Co*. No.  16-13208, 2017 U.S. Dist. LEXIS 82501, *5 (E.D. Mich. May 31, 2017) (citing and quoting  *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936) (Cardozo, J.)). To obtain a stay, the balance of the equities must tip in favor of the movant and the movant must show that granting the stay "will further the interest in economical use of judicial time and resources." *Ricketts* 2017 U.S. Dist. LEXIS 82501, *4-5 (E.D. Mich. May 31, 2017) (citing and quoting *F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 627-28 (6th Cir. 2014)).

### a.  Legislators Are Likely to Succeed on the Merits

### i.  Legislators are Entitled to Intervene as a Matter of Right.

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is required when: (1) the application for intervention is timely; (2) the applicant has a substantial legal interest in the subject matter of the litigation; (3) the applicant's ability to protect that interest will be impaired if intervention is denied; and (4) the present parties do not adequately represent the applicant's interest. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989).

This Court briefly addressed only two of the intervention factors.[1] First, this Court held that the Motion to Intervene is premature because the Secretary adequately represents Legislators' interests. ECF No. 91 ¶ 4. Second, the Legislators have no official interest in their elective offices. ECF No. 91 ¶ 5-8. Both of these grounds for denial are unsupportable on this record. Each of these contentions are addressed in turn.

### A. Legislators' Interests are Not and May Not Be Adequately Represented.

To intervene the Legislators need only prove that the "representation of [their] interest *may be* inadequate." *Trbovich v. UMW*, 404 U.S. 528, 538 n.10

---

[1] This Court did not address timeliness or the ability of Legislators to protect their interest. Since this Court did not address these elements, Legislators simply reiterate and incorporate by reference the arguments made in their Memorandum in Support of their Motion to Intervene (ECF No. 70 at 4-11) and their Brief in Reply (ECF No. 85).

(1972) (emphasis added). This burden is *minimal*. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997). The current party Defendant, Secretary of State, does not adequately represent the Legislators' interest. The Legislators have several significant interests that are not currently represented. These include, *inter alia*, defending a validly enacted law that the legislature itself passed; the drawing and passage of any new plan; and the defense of their authority under the U.S. Constitution's Elections Clause to make time, place, and manner restrictions. *See* U.S. Const. art. I, § IV, cl. 1.

Furthermore, regardless of whether the Legislators' interests are currently represented, it is undisputed that they *may not be* adequately represented. The current Secretary of State is term limited and will not be the Secretary of State at the time of trial. *See* Mich. Const. art. V, § 30; *see also* Case Management Order (ECF No. 53) (setting trial for February 5, 2019). The Democratic candidate for Secretary of State is a speaker at League of Women Voters' events and is unlikely to vigorously defend the current Michigan apportionment plans. *League of Women Voters Ann Arbor Newsletter*: October 2nd, 2018, http://myemail.constantcontact.com/News-from-the-League-of-Women-Voters-of-the-Ann-Arbor-Area.html?soid=1109132130187&aid=miQBDZpAarQ (last visited Aug. 20, 2018). The Court admits in its Order Denying Intervention that this possibility exists. ECF No. 91 at 6 ¶ B ("Applicants may file a second motion

to intervene if the executive abandons its participation in this matter."). In direct opposition to this Court's contention that Legislators' motion is premature, the future tense of the adequate representation analysis is crafted precisely so that "proposed intervenors need show only that there is a *potential* for inadequate representation." *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) (emphasis added); *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005) ("The burden has been described as minimal because it need only be shown that there is a *potential* for inadequate representation." (emphasis in original) (internal quotations and citation omitted)). It is undisputed by the Plaintiffs, and all but admitted by this Court, that the *potential* exists for inadequate representation by the Secretary and therefore intervention and stay are appropriate. To compel legislators to wait until January when a new Secretary is sworn into office would compel legislators to wait until the eve of trial to intervene. This prejudices Proposed Intervenors who would then have approximately one month to prepare for trial on a record they were forbidden from helping to build.

## B. Legislators' Have Substantial Interests In this Litigation.

Legislators have repeatedly offered significant, protectable, and legally cognizable interests that justify their intervention. These interests include: (1) the regulation of Legislators' official conduct; (2) the economic harm to Legislators caused by increasing costs of election and reelection; (3) the reduction in

10

Legislators or their successors' reelection chances that may result from a redrawing of the Michigan map; and (4) the Legislators will be forced to expend significant public funds and resources to comply with the remedial orders sought by Plaintiffs.

As an initial matter, partisanship is a fundamental truth of this litigation, therefore it cannot possibly be the case that partisan interests are not cognizable. Democratic Voters are bringing claims of *partisan* gerrymandering—effectively seeking less Republicans in the congressional delegation and state legislature— which includes proposed intervenors. *See* Complaint, ECF No. 1. If, as the Court maintains, partisan interests are no interest at all, *see* ECF No. 91 ¶ 6, then this case should be immediately dismissed for lack of standing on behalf of Plaintiffs.

First, Plaintiffs are seeking through this Court's order the regulation of the official conduct of Legislators. While the Court's Order Denying Intervention does not address this unique interest, *see generally* ECF No. 91, it is undisputed that, should a new map be ordered, it will require the official action of Legislators. Mich. Const. art. II, § 4; *see also* Mich. Const. art. IV, § 1 (vesting the general legislative power with the Legislature); Mich. Comp. Laws §4.261 (setting out the authority and procedure for conducting reapportionment). The Legislators are leadership members of the Michigan House of Representatives and the specific committee that will be charged with passing any remedial plan. *See* Mich. Const. art. II, § 4; Mich. Const. art. IV, § 1; Mich. Comp. Laws §4.261. The Secretary of

State, on the other hand, is simply the individual charged with enforcing the election laws. *See* Mich. Const. art. 4, § 1;  MCL §§ 168.21.

Second, economic injury is sufficient to warrant intervention. *See Barlow v. Collins*, 397 U.S. 159, 163-64, 172 n.5 (1970) (Brennan, J., dissenting); *see also Democratic Party v. Benkiser*, 459 F.3d 582, 586-88 (5th Cir. 2006) (an injury in fact exists when "campaign coffers" are "threatened"). This interest is differentiated from an interest in reelection chances and is instead based on well settled principles of constituent services. "Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator." *McCormick v. United States*, 500 U.S. 257, 272 (1991). Constituent services are simply the act of assisting constituents with, in part, "navigating public-benefits bureaucracies." *See Evenwel v. Abbott*, 136 S. Ct. 1120, 1132 (2016). Seeking to engage with new constituents in newly drawn districts will necessarily require the expense of public and private funds.

Third, diminishment of reelection chances is a cognizable interest. As the Court points out, the *Wittman* legislators were denied standing. *See Wittman v. Personhuballah*, 136 S. Ct. 1732, 195 L. Ed. 2d 37, 43 (2016).  Standing was denied, however, due to the lack of *evidence* of injury not, as this Court contends, because diminishment of election chances is a per se insufficient injury. *Compare Wittman*, 195 L. Ed. 2d at 43 (denying intervention of Congressmen whose alleged

injury was diminished electoral chances because there was no record evidence that these specific Congressmen's districts would be harmed because the parties were focused on other districts); *with* ECF 91 ¶ 7 (stating that *Wittman* stands for the proposition that there is no standing for an alleged harm to the diminishment of electoral chances). But there are plenty of other examples of diminishment of election chances constituting sufficient injury. *See e.g., Meese v. Keene*, 481 U.S. 465, 475 (1987); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 423 (E.D. Mich. 2004) (diminishment of political power is sufficient for the purposes of standing); *Smith v. Boyle*, 144 F.3d 1060, 1061-63 (7th Cir. 1998); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (Conservative Party official had standing to challenge the ballot position of an opponent); *Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981) (holding that the "potential loss of an election" is an injury in fact); *Democratic Party of the U.S. v. National Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (three judge panel), *aff'd in part and rev'd in part on other grounds sub nom. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.*, 470 U.S. 480, 489-90 (1985).

Fourth, the expenditure of funds is most certainly an interest that belongs to the legislature and *not* the executive. *Compare See* Mich. Const. art. IV, § 31 (stating that appropriations shall be passed by the legislature); *with* ECF No. 91 ¶ 8. It is fundamental of Michigan law that the power of the purse belongs to the

state legislature. *See* Mich. Const. art. IV, § 31; Mich. Const. art. IX, § 17 ("No money shall be paid out of the state treasury except in pursuance of appropriations made by law.").

Fifth, and finally, the U.S. Constitution vests Michigan's legislative branch with the power to enact time, place, and manner restrictions in elections. *See* U.S. Const. art. I, § 4. Members of the legislature have a federal constitutional right to defend the legislature's sovereign decisions.

### ii. Permissive Intervention Is Appropriate In this Case.

"To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005). Once timeliness and a common question of law or fact are determined, "the district court must then balance undue delay and prejudice to the original parties . . . and any other factors to determine whether, in the court's discretion, intervention should be allowed." *Id.*; *see also Ohio A. Philip Randolph Institute v. Smith*, No. 1:18-cv-357 (S.D. Oh. Aug. 16, 2018) (three-judge court) (Order Granting Intervention ECF No. 42). Permissive intervention is reviewed for abuse of discretion. *Purnell v. City of Akron*, 925 F.2d 941, 951 (6th Cir. 1991).

Here, the Court only addressed the possibility of undue delay and prejudice to the original parties. *See* ECF No. 91 ¶ 9. The Court relies on two contentions:

(1) "intervention is undue in light of [Legislators'] lack of cognizable interest in this matter"; and (2) Legislators' defending its interests via litigation strategy could conflict with and prejudice the Secretary's "representation of state interests." *Id*. Both of these contentions are a clear abuse of discretion and are likely to be reversed on appeal.

First, the Court confuses or conflates permissive intervention and intervention as of right. *Compare* Fed. R. Civ. P. 24(a); *with* Fed. R. Civ. P. 24(b). The question in the permissive intervention context is not the Legislators' cognizable interest—or lack thereof—but is instead the prejudice on the existing parties. Undue delay and prejudice in this context is about the delay and prejudice experienced by the parties as a result of the intervention itself. *See Michigan*, 424 F.3d at 445. To put it another way, cognizable interest in the context of permissive intervention is quite simply beside the point.

Second, the contention that permitting the Legislators to intervene could prejudice the executives' representation is absurd. For permissive intervention, "[t]he existence of a zone of discretion does not mean that the whim of the district court governs." *Michigan State AFL-CIO*, 103 F.3d  at 1248. The Secretary of State concurred with Legislators Motion to Intervene. ECF No. 79 at 2 ("Defendant Ruth Johnson states that she supports [Legislators'] intervention for the reasons stated in the motion and brief filed by the proposed intervenors."). The

Secretary cannot possibly be prejudiced by the intervention of a party she agrees
should be permitted to intervene.

### iii.  The District Court's Separation of Powers Rationale Is No Bar To Intervention.

There is no law or constitutional doctrine that precludes the Legislators'
intervention in this matter. In fact, the only case the Court cites in support of their
separation of powers rationale is *United States v. Windsor*, 570 U.S. 744, 754
(2013). *See* ECF No. 91 ¶ 3. *Windsor*, as the Court acknowledges, stands *for* the
proposition that individual legislators *may* intervene. *See Windsor*, 570 U.S. at 754.
Similar to *Windsor*, the federal constitution gives the Michigan legislature the
express authority to redistrict. *See* U.S. Const. art. I, § IV ("The Times, Places and
Manner of holding Elections for Senators and Representatives, shall be prescribed
in each State by the Legislature thereof . . . ."). State constitutional concerns over
the separation of powers can have no weight when the Federal Constitution makes
a specific grant of authority to, in this case, the Michigan State Legislature.

### iv.  The Court's Invitation to Refile Only Highlights that Denial of Intervention Was Improper.

The Court, in its Order Denying Intervention, states that Legislators "may
file a second motion to intervene if the executive abandons its participation in this
matter." ECF No. 91 at 6 ¶ B. First, as discussed *supra*, the threshold question in
the adequate representation inquiry is that the *possibility* exists that Legislators'

interests will not be represented. *See Michigan*, 424 F.3d at 443. The "executive adandon[ing] its participation in this matter" is the exact event the Court's Order portends and one of the events that necessitates—and is sufficient enough to justify—this intervention. *See Grutter*, 188 F.3d at 400; *see also* ECF No. 91 at 6¶ B. Because of the Court's denial of intervention, a plethora of harms are certain to occur to Proposed Intervenors. The Legislators will be harmed in the following ways: (1) they will be unable to engage in the same discovery they have been subjected to; (2) they will not be able to participate in *any* dispositive pretrial motions; (3) they will have an insufficient time to become familiar with the copious production of records and discovery necessary for any trial strategy; and (4) they will necessarily need to seek extensions of time to prepare for trial and offer up their own expert discovery, the pursuit of which would be held against them when seeking intervention. The end result is that the Court's Order sets in motion a series of events that can only result in the continued waste of judicial resources.

### b. Legislators Will Be Irreparably Harmed Absent a Stay and a Stay Will Result in No Harm to the Other Parties.

In evaluating irreparable harm, the court looks at the following three factors: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Michigan Coalition of Radioactive*

*Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). All three of these factors support a stay in this case.

The injury to the Legislators is substantial. There are several fast approaching and potentially outcome determinative deadlines. For example, in less than a month, summary judgment motions are due, ECF No. 53 at 1-2, and discovery—to which Legislators have already been subject—concluded on August 24th. *Id*. Furthermore, without a stay and even on an expedited appeal Legislators are certain to be unable to participate in these essential proceedings.

Just as injury to Legislators is certain absent a stay, the potential harm to the existing parties is minimal should one be granted. There is sufficient time within the current schedule that a short delay pending this appeal would have minimal, if any, effect on the February 5, 2018 trial date in this case. *Id*. In the unlikely event that the trial date must be moved due to this stay, there would still be more than sufficient time to bring appeals and implement any remedial map.[2] *See, e.g., Benisek v. Lamone*, No. 17-333 (U.S. June 18, 2018) (jurisdictional statement filed September 1, 2017 and decision obtained June 18, 2018).

---

[2] It is also pertinent that Plaintiffs waited more than six years and three election cycles to bring this lawsuit. Any issues related to the timing thereof should be credited against the Plaintiffs. *See Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) (unreasonable delay in bringing a claim and close proximity to an election counsels against the granting of an injunction).

### c. The Public Interest Counsel's in Favor of Granting a Stay

The public interest favors settling the Legislators' status as a party now. "[T]he public interest lies in a correct application of the federal constitutional and statutory provisions upon which the claimants have brought this claim and ultimately . . . upon the will of the people of Michigan being effected in accordance with Michigan law." *Coalition to Defend Affirmative Action*, 473 F.3d at 252 (internal quotation and citation omitted). Given the uncertain status of the Secretary of State, the only way to ensure that there is a full and complete airing of the issues is by permitting the Legislators intervention.

### d. Staying the Litigation Is the Best Use of Judicial Resources.

A district court can abuse its discretion in deciding whether to grant or deny a request for a stay. *Ohio Environmental Council v. United States Dist. Court, Southern Dist.*, 565 F.2d 393, 396 (6th Cir. 1977) (holding that the district court abused its discretion in granting a stay). District courts have granted stays of litigation pending the outcome of an appeal that will directly impact the litigation in the district court. *See Benisek v. Lamone*, 266 F. Supp. 3d 799, 801 (D. Md. 2017) (three-judge court) (granting stay of partisan gerrymandering litigation pending U.S. Supreme Court's ruling in *Gill v. Whitford*).

Here, to preserve judicial resources, this Court should stay the litigation pending the outcome of Proposed Intervenors' appeal. A denial of the requested

stay would risk this case continuing to summary judgment motions without Proposed   Intervenors input. If the Court of Appeals reverses and grants intervention, Proposed Intervenors will want to file their own motion for summary judgment and participate at trial. Denying the stay would result in duplicative action, having two due dates for summary judgment filings and potentially two oral argument hearings.[3]

Proposed Intervenors will also need time to comprehend discovery in this case and prepare for trial. It is better to preserve judicial resources now and grant the stay pending appeal as opposed to permitting the case to go forward towards trial. Denying the stay risks requiring that this Court move the trial date later so that Proposed Intervenors may obtain discovery, file a motion for summary judgment, and adequately prepare for trial.

## CONCLUSION

For the aforementioned reasons this Court should stay proceedings pending appellate review in the United States Court of Appeals for the Sixth Circuit.

---

[3] Legislators have made every attempt to make clear that they were willing to participate in the case as it stood at the time intervention was requested and/or granted. ECF No. 85 at 3 ("Legislators are prepared to work in any expedited schedule the Court may order to prevent any such prejudice."). The Court's denial of intervention, and not the will of the Legislators, makes any potential future delay necessary.

Dated: August 24, 2018                              Respectfully Submitted,


**HOLTZMAN VOGEL JOSEFIAK**            **CLARK HILL PLC**
**TORCHINSKY PLLC**


*/s/  Jason Torchinsky*                              */s/ Charles R. Spies*

Jason B. Torchinsky                                 Charles R. Spies
Shawn T. Sheehy                                     Brian D. Shekell
Phillip M. Gordon                                   212 E. Cesar Chavez Ave.
45 North Hill Drive, Suite 100                      Lansing, MI 48906
Warrenton, Virginia 20186                           P: 517-318-3100
Phone: 540-341-8808                                 E: cspies@clarkhill.com
Email: JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law

## Certificate Of Service

I hereby certify that on August 24, 2018 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all of the parties of record.

**HOLTZMAN VOGEL JOSEFIAK TORCHINSKY, PLLC**

/s/ Jason Torchinsky
Jason Torchinsky