# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: August 30, 2018

Mr. Mark C. Brewer
17000 W. Ten Mile Road, Second Floor
Southfield, MI 48075-0000

Mr. Matthew K. Giffin
Ryan Hurley
Ms. Harmony Mappes
Faegre Baker Daniels
Mr. Joseph H. Yeager Jr.
300 N. Meridian Street, Suite 2700
Indianapolis, IN 46204

Mr. Jeffrey P. Justman
Faegre Baker Daniels
90 S. Seventh Street, Suite 2200
Minneapolis, MN 55402

Mr. Brian D. Shekell
Clark Hill
500 Woodward Avenue, Suite 3500
Detroit, MI 48226

Mr. Jason Brett Torchinsky
Holtzman Vogel Josefiak Torchinsky
45 N. Hill Drive, Suite 100
Warrenton, VA 20186

      Re: Case No. 18-1437, *League of Women Voters of MI, et al v. Ruth Johnson, et al*
         Originating Case No. : 2:17-cv-14148

Dear Counsel,

  The court today announced its decision in the above-styled case.

 Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

             Yours very truly,

             Deborah S. Hunt, Clerk


             Cathryn Lovely
             Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0194p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

LEAGUE OF WOMEN VOTERS OF MICHIGAN; ROGER J. BRDAK; FREDERICK C. DURHAL, JR.; JACK E. ELLIS; DONNA E. FARRIS; WILLIAM "BILL" J. GRASHA; ROSA L. HOLLIDAY; DIANA L. KETOLA; JON "JACK" G. LASALLE; RICHARD "DICK" W. LONG; LORENZO RIVERA; RASHIDA H. TLIAB,

        *Plaintiffs-Appellees*,

 *v.*

RUTH JOHNSON, in her official capacity as Michigan Secretary of State,

        *Defendant*,

JACK BERGMAN; BILL HUIZENGA; JOHN MOOLENAAR; FRED UPTON; TIM WALBERG; MIKE BISHOP; PAUL MITCHELL; DAVID TROTT, Republican Congressional Delegation,

        *Proposed Intervenors-Appellants*.

No. 18-1437

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cv-14148—Eric L. Clay, Circuit Judge; Denise Page Hood, Chief District Judge; and Gordon J. Quist, District Judge.[*]

Argued: August 1, 2018

Decided and Filed: August 30, 2018

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

---

[*] Pursuant to 28 U.S.C. § 2284, the United States Court of Appeals for the Sixth Circuit designated Judge Eric L. Clay and Judge Gordon J. Quist to serve with Chief Judge Denise Page Hood in this matter.

---

**COUNSEL**

---

**ARGUED:** Jason Brett Torchinsky, HOLTZMAN VOGEL JOSEFIAK TORCHINSKY, Warrenton, Virginia, for Appellants. Ryan M. Hurley, FAEGRE BAKER DANIELS LLP, Indianapolis, Indiana, for Appellees. **ON BRIEF:** Jason Brett Torchinsky, HOLTZMAN VOGEL JOSEFIAK TORCHINSKY, Warrenton, Virginia, Brian D. Shekell, CLARK HILL, Detroit, Michigan, for Appellants. Joseph H. Yeager, Harmony Mappes, Jeffrey P. Justman, Matthew K. Giffin, FAEGRE BAKER DANIELS LLP, Indianapolis, Indiana, Mark Brewer, GOODMAN ACKER P.C., Southfield, Michigan, for Appellees.

SILER J., delivered the opinion of the court in which GRIFFIN, J., joined. MOORE, J. (pp. 11–15), delivered a separate dissenting opinion.

---

**OPINION**

---

SILER, Circuit Judge. In this suit, Democratic voters from Michigan and a nonpartisan voting-rights organization allege that the state's congressional and legislative districts are unconstitutionally gerrymandered in favor of Republicans. Eight Republican Congressmen from Michigan moved to intervene, seeking to defend the lawfulness of the state's apportionment schemes. The three-judge district court panel denied the Congressmen's motion, finding they were not entitled to intervene as a matter of right (under Rule 24(a)) or with the court's permission (under Rule 24(b)). Because the district court abused its discretion by denying permissive intervention, we REVERSE and REMAND.

I.

Following the 2010 census, Michigan's Republican-controlled government created and enacted new legislative and congressional districting plans. Plaintiffs allege the district maps violate the Equal Protection Clause by diluting the voting power of Democratic voters in Michigan. Specifically, they claim the district lines "pack" some Democratic voters "into a few supermajority districts" and "crack[]" other Democratic voters "into a large number of districts where [Republicans] can command a safe but more modest majority of the vote." The result, Plaintiffs say, is a scheme that "destroys fair and effective representation, minimizing

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 121 filed 08/30/2018 PageID.2137 Page 5 of 18
Case: 18-1437 Document: 37-1 Filed: 08/30/2018 Page: 5 (5 of 18)

No. 18-1437        *League of Women Voters of Mich., et al. v. Johnson, et al.*        Page 3

[Democratic] voters' ability to influence elections and to have a fair chance to affect the political process." Plaintiffs also claim the apportionment plan "violates the First Amendment because it intentionally diminishes and marginalizes the votes of [Democrats] . . . based on party affiliation." If left unchanged, the current maps will remain in effect through 2020.

Plaintiffs brought suit in December 2017 against the Michigan Secretary of State, Ruth Johnson, "the 'chief election officer' . . . responsible for the conduct of Michigan elections." They ask the three-judge district court to declare the current district maps unconstitutional and to enjoin Johnson from allowing any state or federal representatives to be elected or nominated based on those maps in the 2020 election cycle.

In January 2018, Johnson moved to dismiss the suit for lack of standing. She also asked the district court to stay the case pending the Supreme Court's decision in two then-pending redistricting cases, *Gill v. Whitford*, 138 S. Ct. 1916 (2018), and *Benisek v. Lamone*, 138 S. Ct. 1942 (2018).

In February, while the district court's decision on Johnson's motion was pending, eight Republican Congressional representatives from Michigan moved to intervene. The Congressmen pursued both intervention of right under Federal Rule of Civil Procedure 24(a) and permissive intervention under Rule 24(b). They argued that they stood "to be irrevocably harmed by any redrawing of congressional districts" and asserted that none of the original parties to the action adequately represented their interests. Attached to the Congressmen's motion to intervene were two proposed motions, one to dismiss and one to stay. Johnson supported the Congressmen's motion to intervene, but Plaintiffs did not.

In March, while the Congressmen's motion to intervene was being briefed, the district court denied Johnson's motion to stay. Recognizing that "[v]oting rights litigation is notoriously protracted" and that a remedial plan would have to be in place by March 2020 if Plaintiffs succeeded, the court found there was "a fair possibility that a stay would prejudice Plaintiffs as well as the public interest."

In April, the district court denied the Congressmen's motion to intervene. As to intervention of right, the district court found that the Congressmen's asserted interests—

protecting their relationships with constituents and avoiding spending money to learn about new districts—were "not materially distinguishable from the generalized interest shared by all citizens." The court held that the Congressmen's "legitimate, generalized interest in this litigation will be adequately represented by [Johnson's] interest in protecting the current apportionment plan and other governmental actions from charges of unconstitutionality." As to permissive intervention, the court found that "the complex issues raised by the parties, the need for expeditious resolution of the case, and the massive number of citizens who share the [Congressmen's] interest" weighed against intervention because "granting the [Congressmen's] motion to intervene could create a significant likelihood of undue delay and prejudice to the original parties." This interlocutory appeal followed.

II.

As a threshold matter, we have jurisdiction to entertain the Congressmen's appeal. Ordinarily, "an order completely denying intervention is immediately reviewable by way of an interlocutory appeal." *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989). Of course, this is no ordinary case; because Plaintiffs' action "challeng[es] the constitutionality of the apportionment of congressional districts," this appeal comes to us from a three-judge district court panel. 28 U.S.C. § 2284(a). In such cases, the parties "may appeal to the Supreme Court from an order granting or denying . . . an interlocutory or permanent injunction." 28 U.S.C. § 1253. The Supreme Court interprets § 1253 to extend to orders that have "the 'practical effect' of granting or denying an injunction." *Abbot v. Perez*, 138 S. Ct. 2305, 2319 (2018).

The order from which the Congressmen appeal does not have such an effect. The district court barred the Congressmen from defending Michigan's current apportionment plans; it did not rule upon the Plaintiffs' constitutional challenge to the merits of those plans. That challenge is still ongoing below, and Plaintiffs' request for injunctive relief remains pending. Therefore, § 1253 does not deprive us of jurisdiction. *Cf. Hays v. Louisiana*, 18 F.3d 1319, 1321 (5th Cir. 1994) (appeal of three-judge district court's denial of intervention "very likely was properly before" the Fifth Circuit before the court ruled on the merits).

III.

Here, as below, the Congressmen claim they are entitled to both intervention of right and permissive intervention. Because the Congressmen are entitled to permissive intervention, we address only those arguments.

Federal Rule of Civil Procedure 24(b)(1) provides that, "On timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." In deciding whether to allow a party to intervene, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "So long as the motion for intervention is timely and there is at least one common question of law or fact, the balancing of undue delay, prejudice to the original parties, and any other relevant factors is reviewed for an abuse of discretion." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997).

The parties agree the Congressmen's motion to intervene was timely. Further, the Congressmen's motion made clear that they intended to raise common questions of law and fact. In their proposed motion to dismiss, the Congressmen argued (among other things) that Plaintiffs lacked standing to challenge Michigan's districting plans. This was the same argument that Johnson had previously raised in her own motion to dismiss. So the only remaining question is whether the district court abused its discretion in finding that the Congressmen's intervention "could create a significant likelihood of undue delay and prejudice to the original parties."

It did. At the outset, "[t]hough the district court operates within a 'zone of discretion' when deciding whether to allow intervention under Rule 24(b), the district court nevertheless 'must, except where the basis for the decision is obvious in light of the record, provide enough of an explanation for its decision to enable [us] to conduct meaningful review.'" *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018) (quoting *Miller*, 103 F.3d at 1248). Here, with respect to permissive intervention, the district court observed only that there was a risk of delay and prejudice in light of three factors: "the complex issues raised by the parties, the need for expeditious resolution of the case, and the massive number of citizens who share the [Congressmen's] interest in this litigation." But the court did not explain how the "complex

issues" would delay the case or prejudice Plaintiffs. It did not explain how allowing the Congressmen to intervene would frustrate an expeditious resolution. And it did not explain how the shared interests of the Congressmen and the citizens of Michigan were relevant to the delay-and-prejudice calculus. Thus, it is a challenge for us to conduct meaningful review on the permissive intervention issue based upon the district court's bare-bones order.

More to the point, though, none of the three factors cited by the district court actually weigh against permissive intervention. First, at the time the district court denied the Congressmen's motion, the legal issues in the case were not particularly novel or complex. Johnson had moved to stay the case pending the Supreme Court's decisions in *Gill* and *Benisek* and had moved to dismiss based upon Plaintiffs' alleged lack of standing. To that, the Congressmen proposed to add three issues: the justiciability of Plaintiffs' claims, the legitimate state interests justifying Michigan's current districting maps, and the doctrine of laches. While these issues do not arise in every case, they are common in redistricting cases. *See, e.g.*, *Raleigh Wake Citizen's Ass'n v. Wake Cty. Bd. of Elections*, 827 F.3d 333, 348 & n.9 (4th Cir. 2016) (justiciability); *Harris v. Ariz. Indep. Redistricting Comm'n*, 136 S. Ct. 1301, 1307-10 (2016) (state interest); *Sanders v. Dooly Cty.*, 245 F.3d 1289, 1291 (11th Cir. 2001) (per curiam) (laches).

Indeed, once the district court worked through the standing issue—which it eventually did, holding that Plaintiffs had standing to challenge Michigan's apportionment plan on a district-by-district, but not statewide, basis—the next natural question was whether Plaintiffs' partisan gerrymandering claims were in fact justiciable. The Supreme Court has never definitively answered this question, and specifically avoided it in *Gill*, opting instead to remand for further consideration of the plaintiffs' standing. 138 S. Ct. at 1929, 1934. And, had the district court found Plaintiffs' claims justiciable, it would have almost certainly had to address Michigan's interest in maintaining its districting scheme, and may have also had to address the laches defense. Thus, the new issues that would have arisen had the Congressmen been allowed to intervene would likely have arisen anyway during the natural course of the litigation.

Second, there was little risk that allowing the Congressmen to intervene would have interfered with the court's ability to reach an expeditious resolution. Because many of the

Congressmen's defenses overlapped with Johnson's, adding the Congressmen would not have placed any unnecessary or unexpected burden upon the district court. The court could have disposed of both motions to dismiss in the same opinion. The same logic applies to Plaintiffs—because the issues were identical, Plaintiffs' responsive arguments to Johnson and the Congressmen would likely have been identical as well.

On this point, Plaintiffs' main objection is that injecting the Congressmen (and their attorney) into the case "will almost surely lead to more discovery fights, more evidentiary issues, longer trial testimony, and other case complexities that are lacking with just one defendant." They correctly point out that, if allowed to intervene, the Congressmen intend to re-litigate the standing issue already decided by the district court in light of *Gill*.

This argument misapprehends the nature of the question before us. We are not called to decide whether it would be an abuse of discretion for the district court to deny permissive intervention as the case currently stands. Rather, our question is whether it was an abuse of discretion for the district court to deny permissive intervention as the case stood in February 2018, when the Congressmen moved to intervene. At that time, no scheduling order was in place and discovery had not yet begun. The district court had not ruled on Johnson's motion to stay or her motion to dismiss. Put simply, the case was in its infancy. If the Congressmen had been allowed to intervene from the outset, they would have been allowed input into scheduling matters, and duplicative discovery and motion practice would have been unnecessary. Any delay attributable to the Congressmen's presence in the case would have been minimal at best, especially since they are all represented by the same attorney.

We fully recognize that allowing the Congressmen to intervene at this stage will require the district court to adjust the discovery and dispositive motion deadlines currently in place. And perhaps the trial, currently set for February 2019, will have to be pushed back as well. But again, this delay would not have occurred if the district court had allowed the Congressmen to intervene when they asked. And, even if the trial must be delayed, we are confident that the parties and the court can resolve this case before the March 2020 deadline.

Third, the Congressmen's interest in this litigation is different than that of Michigan's citizenry at large or its Secretary of State. This question is more pertinent to intervention of right. *See* Fed. R. Civ. P. 24(a)(2). Still, we have recognized that identity of interest is one of several "relevant criteria" under Rule 24(b), *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007), and "[t]he fact that [a proposed intervenor's] position is being represented counsels against granting permissive intervention," *Bay Mills Indian Cmty. v. Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018).

Here, the Congressmen identify several interests they seek to protect by intervening, chief among them "the relationship between constituent and representative." We need not decide whether these interests amount to "substantial legal interest[s]" to entitle them to intervention of right, *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005); it is enough to say, contrary to the district court's assertion, that the Congressmen's interests differ from those of Johnson and the citizens of Michigan.

Johnson, according to the district court, seeks to "provid[e] fair and smooth administration of elections" and "protect[] the current apportionment plan and other governmental actions from charges of unconstitutionality." The contours of Michigan's district maps do not affect Johnson directly—she just ensures the maps are administered fairly and accurately. In contrast, the contours of the maps affect the Congressmen directly and substantially by determining which constituents the Congressmen must court for votes and represent in the legislature.

The district court also found that the "citizens of Michigan share a generalized interest in this litigation insofar as they have the right to vote, run for office, and otherwise participate in the 2020 election." In the Court's view, the Congressmen's interest in this litigation is "not materially distinguishable from the generalized interest shared by all citizens." Not so. As elected representatives, the Congressmen "[s]erv[e] constituents and support[] legislation that will benefit the district and individuals and groups therein." *McCormick v. United States*, 500 U.S. 257, 272 (1991). The citizens of Michigan do not share this representative interest.

Case 2:17-cv-14148-ELC-DBF-GJQ Case: 18-1437 Document: 67-1 ECF No. 101 Filed: 08/30/2018 filed 08/30/18 Page: 11 PageID.2143 (11 of 18) Page 11 of 18

No. 18-1437        *League of Women Voters of Mich., et al. v. Johnson, et al.*        Page 9

Nor is it enough to say that, even though the Congressmen's interests differ from those of Johnson and the citizens of Michigan, their interests are still adequately protected by Johnson's participation in the case. As noted earlier, Johnson raised only Plaintiffs' alleged lack of standing in her initial motion to dismiss. In the Congressmen's proposed motion to dismiss, they added several defenses not mentioned by Johnson. This should have signaled to the district court that the Congressmen intended to make sure all available defenses to the apportionment plans were raised. True enough, Johnson eventually filed an answer in which she pleaded essentially the same defenses urged by the Congressmen. But her answer did not come until after the district court had denied the Congressmen's motion to intervene. Therefore, Johnson's answer could not have played a part in the district court's decision, and the court could not have known that Johnson's defenses would be the same as the Congressmen's.

We also note that the upcoming elections will bring about change in Michigan's state government. Johnson, having served two terms as Secretary of State, is not eligible to run for re-election. If the new Secretary takes office in January 2019 and decides not to further pursue the state's defense of its apportionment schemes, the district court will have to appoint someone to take the Secretary's place. And if that occurs, the Congressmen's case for intervention would be even stronger, since no other party in the case would be seeking to uphold the district maps.

We do not suggest that the uncertainty surrounding the upcoming election for Michigan Secretary of State, standing alone, entitles the Congressmen to intervene now, since we do not typically allow intervention based upon "what will transpire in the future." *Michigan*, 424 F.3d at 444 (emphasis removed). We merely point out that any delay attributable to allowing the Congressmen to intervene now is surely less than the delay that will occur if the Congressman must intervene in January 2019. Under these unique circumstances, where timeliness is a particularly weighty concern, allowing intervention now may very well prove more efficient for all involved.

Finally, we decline to affirm on the independent ground that the Congressmen failed to satisfy Rule 24(c) because they did not attach to their motion "a pleading that sets out the claim or defense for which intervention is sought." We "take[] a lenient approach to the requirements of Rule 24(c)," and Plaintiffs identify no "prejudice [that] would result from granting the motion

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 201 filed 08/30/18 PageID.2144 Page 12 of 18
Case: 18-1437 Document: 67-1 Filed: 08/30/2018 Page: 11 (12 of 18)

No. 18-1437     *League of Women Voters of Mich., et al. v. Johnson, et al.*     Page 10

to intervene despite the failure to attach a pleading." *Providence Baptist Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 314 (6th Cir. 2005).

## IV.

When a motion for permissive intervention under Rule 24(b) is timely, the decision is left to the discretion of the district court. *Miller*, 103 F.3d at 1248. But "[t]he existence of a zone of discretion does not mean that the whim of the district court governs." *Id.* Here, the district court provided only a cursory explanation of its reasons for denying permissive intervention, and what little justification it did provide is unsupported by the record. This amounts to an abuse of discretion, requiring us to REVERSE and REMAND to the district court for further proceedings.

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 201 filed 08/30/18 PageID.2145 Page 13 of 18
Case: 18-1437 Document: 67-2 Filed: 08/30/2018 Page: 14 (13 of 18)

No. 18-1437       *League of Women Voters of Mich., et al. v. Johnson, et al.*       Page 11

---

### DISSENT

---

KAREN NELSON MOORE, Circuit Judge, dissenting. The "abuse of discretion standard of review is highly deferential." *Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 267 (6th Cir. 2001). "It is more than the substitution of the judgment of one tribunal for that of another." *NLRB v. Guernsey-Muskingum Elec. Co-op., Inc.*, 285 F.2d 8, 11 (6th Cir. 1960). To reverse a district court under this standard of review, we must conclude that the district court "relie[d] on clearly erroneous findings of fact, applie[d] the wrong legal standard, misapplie[d] the correct legal standard when reaching a conclusion, or ma[d]e a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006). None of those errors occurred here. Instead, the district court reasonably concluded that the Congressmen's efforts to intervene in this case could unduly interfere with plaintiffs' efforts to litigate their claims and denied the Congressmen's motion for permissive intervention on that ground. As this decision was not an abuse of discretion, I would affirm.

As the majority acknowledges, a district court "operates within a 'zone of discretion' when deciding whether to allow intervention under Rule 24(b)." *Kirsch v. Dean*, 733 F. App'x 268, 279 (6th Cir. 2018) (quoting *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997)). "So long as the motion for intervention is timely and there is at least one common question of law or fact," the district court has significant leeway in balancing considerations "of undue delay, prejudice to the original parties, and any other relevant factors." *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1248 (6th Cir. 1997). Though we generally require district courts to explain the reasoning behind their discretionary decisions, we have also made clear that prolonged discussion is not necessary "where the basis for the decision is obvious in light of the record." *Id.*

Here, the record contains ample support for the district court's denial of the Congressmen's motion to intervene. As the district court explained in an earlier order denying Johnson's motion to stay the case, "[v]oting rights litigation is notoriously protracted," and it was critical that this case move quickly. R. 35 (Order at 2) (Page ID #613). If plaintiffs prevail on

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 201 filed 08/30/18 PageID.2146 Page 14 of 18
Case: 18-1437 Document: 67-2 Filed: 08/30/2018 Page: 14 (14 of 18)

No. 18-1437          *League of Women Voters of Mich., et al. v. Johnson, et al.*          Page 12

the merits, both parties agree that a remedial plan would need to be established by March 2020 to be effective for the November 2020 election. *Id.* Yet, as the district court recognized, there exists a real risk that this case cannot be resolved by that time even if it proceeds along its regular course. *Id.* at 2–3 (Page ID #613–14). Despite the district court's airing of these concerns, the Congressmen nevertheless refused to "agree to not file duplicative briefs" or to "confer with Defendants' [sic] prior to filing any briefs." R. 39 (Reply Br. in Support of Mot. to Intervene at 7) (Page ID #653). Although the Congressmen offered "to abide by the discovery plan now in effect," *id.*, this overture rings hollow, as no discovery schedule was in place at that time. R. 53 (Case Mgmt. Order No. 1 at 1) (Page ID #939). Given the district court's concerns and the Congressmen's representations—which are "obvious in light of the record," *see Miller*, 103 F.3d at 1248—the district court had ample reason to conclude that intervention would undercut "the need for expeditious resolution of the case." *See* R. 47 (Order at 2) (Page ID #903). Eight more defendants would mean more discovery, more motions, and more time. Indeed, the district court's decision seems prescient now, as the Congressmen have informed this court that they plan to relitigate issues already decided by the district court if they are permitted to intervene, *see* D.E. 24 (Letter dated June 18, 2016))—a maneuver that would surely slow down the district-court proceedings. As district courts do not abuse their discretion by denying intervention that "would unduly delay the adjudication of the original parties' rights," *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 760 (6th Cir. 2013), the district court's decision was well within the proper bounds.

Plainly, if the majority were reviewing the Congressmen's motion in the first instance, it would have reached a different conclusion. "[T]here was little risk that allowing the Congressmen to intervene would have interfered with the court's ability to reach an expeditious resolution," the majority asserts, because "many of the Congressmen's defenses overlapped with Johnson's." Maj. Op. at 6–7. As a purely factual matter, there was less overlap between the Congressmen's proposed pre-trial motions and Johnson's than the majority suggests—a point the Congressmen have taken pains to stress before this court. *See* Reply Br. at 23–24. But more importantly, I do not see how the district court abused its discretion simply because it weighed the potential overlap in defenses less heavily than the majority would have done. We usually require a "definite and firm conviction that the trial court committed a clear error of judgment"

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 201 filed 08/30/18 PageID.2147 Page 15 of 18
Case: 18-1437 Document: 67-2 Filed: 08/30/2018 Page: 14 of 18

No. 18-1437   *League of Women Voters of Mich., et al. v. Johnson, et al.*   Page 13

before we reverse a district court for abuse of discretion. *See Amernational Indus., Inc. v. Action-Tungsram, Inc.*, 925 F.2d 970, 975 (6th Cir. 1991) (quoting *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990)). Here, the majority requires only that it disagrees.

For the same reason, I reject the Congressmen's suggestion that a recent order granting different Congressmen's motion for permissive intervention in a different gerrymandering case before a different district court in a different jurisdiction ought to govern our review here. *See* D.E. 33 (Rule 28(j) Letter, Appendix A) (citing Order, *Ohio A. Philip Randolph Institute v. Smith*, No. 18-cv-357 (S.D. Ohio Aug. 16, 2018)). The core premise of abuse-of-discretion review is that one court may exercise its discretion differently than another. "[J]ust because some district courts have allowed [certain conduct] does not mean that it was an abuse of discretion for the district court in this case not to follow suit." *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 508 (6th Cir. 2017).

Even apart from our deferential standard of review, the factual distinctions between *Smith* and this case render the Congressmen's reliance on *Smith* misplaced. In *Smith*, the proposed intervenors repeatedly represented that they would not "delay the[] proceedings" or "disrupt the case schedule," and that they would "not need any prolonged discovery" and would "comply with the discovery deadline." Order, *Ohio A. Philip Randolph Institute v. Smith*, No. 18-cv-357 (S.D. Ohio Aug. 16, 2018), at 8 n.1 (citation omitted). Here, by contrast, the Congressmen have made clear that they intend to reopen issues that have already been resolved, raise issues that they believe have not yet been adequately addressed, and limit their cooperation and coordination with Johnson. *See* D.E. 24 (Letter dated June 18, 2016)); Reply Br. at 23–24; R. 39 (Reply Br. in Support of Mot. to Intervene at 7) (Page ID #653). Absent the sort of assurances from the proposed intervenors that the district court received in *Smith*, it was entirely reasonable for the district court here to anticipate that the Congressmen's entrance into this case "could create a significant likelihood of undue delay and prejudice to the original parties" and to deny the Congressmen's motion on that ground. *See* R. 47 (Order at 2) (Page ID #903).

Other aspects of the majority's opinion are similarly overreaching. For instance, there is no need to consider whether the "upcoming elections" may "bring about change in Michigan's

Case 2:17-cv-14148-ELC-DPH-GJQ ECF No. 201 filed 08/30/18 PageID.2148 Page 16 of 18
Case: 18-1437 Document: 67-1 Filed: 08/30/2018 Page: 14 Page (16 of 18)

No. 18-1437       *League of Women Voters of Mich., et al. v. Johnson, et al.*       Page 14

state government." *See* Maj. Op. at 9. The majority believes that Johnson's defense *may* prove insufficient because she *may* be replaced by a new Secretary from the Democratic Party in the 2018 election who *may* decline to defend the current districting maps. But we have cautioned against such speculative musings before. *See United States v. Michigan*, 424 F.3d 438, 444 (6th Cir. 2005) ("Rather than identifying any weakness in the state's representation in the current phase of the proceedings, the proposed intervenors seem more concerned about what will transpire *in the future* . . . . While the proposed intervenors may be legitimately concerned about these future issues, they are not now, and possibly never will be, before the district court."). The majority nevertheless insists that "allowing intervention now may very well prove more efficient for all involved," as a future change in Michigan's government may entitle the Congressmen to intervene of right. Maj. Op. at 9. What would be far more efficient, of course, is to realize that the district court has not abused its ample discretion in denying the Congressmen an opportunity to intervene now and to allow the case to proceed as planned. The majority hamstrings the district court's smooth administration of this case and then offers, in consolation, that it could have been worse.

By the same token, the majority errs in suggesting that the Congressmen's interest in this case is relevant to our review under Rule 24(b). *See* Maj. Op. at 8–9. It is intervention of right under Rule 24(a), not permissive intervention under Rule 24(b), that requires the proposed intervenor to establish "a substantial legal interest in the subject matter of the case" and to prove "a potential for inadequate representation." *Michigan*, 424 F.3d at 443 (emphasis omitted). Rule 24(b), by contrast, "plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation." *SEC v. U.S. Realty & Imp. Co.*, 310 U.S. 434, 459 (1940)); *see also* 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1911 (3d ed. 1998) ("Close scrutiny of the kind of interest the intervenor is thought to have seems especially inappropriate under Rule 24[b] since it makes no mention of interest. The rule requires only that the intervenor's claim or defense share a common question of law or fact with the main action."). Rather, "Rule 24(b) grants the district court discretionary power to permit intervention if the motion is timely and if the 'applicant's claim or defense and the main action have a question of law or fact in common.'" *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) (internal citation omitted) (quoting Fed. R. Civ. P.

24(b)(2)). To the extent we have intimated otherwise in dicta, *see Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 784 (6th Cir. 2007), we have erred. The majority's discussion of Rule 24(a) factors in its Rule 24(b) analysis is therefore misplaced.

Finally, the majority oversteps when it predicts that its decision "will require the district court to adjust the discovery and dispositive motion deadlines currently in place" and may require the district court to "push[] back" the trial schedule. Maj. Op. at 7. "Federal courts have the authority to apply appropriate conditions or restrictions on an intervention," and nothing in the majority's opinion should be read to cabin that authority in this case. *Friends of Tims Ford v. Tennessee Valley Auth.*, 585 F.3d 955, 963 n.1 (6th Cir. 2009). Thus, even after reversing a district court for "denying intervention outright," we have explained that "the district court retains broad discretion in setting the precise scope of intervention" going forward. *United States v. City of Detroit*, 712 F.3d 925, 932–33 (6th Cir. 2013). "[T]he scope of intervention can be limited on a prospective basis, allowing appeal of recently issued orders and participation in new matters." *Id.* at 932. Those principles apply with equal force here, particularly given the majority's recognition that "timeliness is a particularly weighty concern" in this case. Maj. Op. at 9. The three judges overseeing this case in the district court, not we, dictate the terms of the Congressmen's intervention on remand.

All in all, the district court did not abuse its discretion in denying the Congressmen's motion to intervene under Rule 24(b). As the majority sees it differently, I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 18-1437

LEAGUE OF WOMEN VOTERS OF MICHIGAN;
ROGER J. BRDAK; FREDERICK C. DURHAL, JR.;
JACK E. ELLIS; DONNA E. FARRIS; WILLIAM
"BILL" J. GRASHA; ROSA L. HOLLIDAY; DIANA
L. KETOLA; JON "JACK" G. LASALLE; RICHARD
"DICK" W. LONG; LORENZO RIVERA; RASHIDA H. TLIAB,

    Plaintiffs - Appellees,

    v.

RUTH JOHNSON, in her official capacity as Michigan Secretary of State,

    Defendant,

JACK BERGMAN; BILL HUIZENGA; JOHN MOOLENAAR;
FRED UPTON; TIM WALBERG; MIKE BISHOP; PAUL
MITCHELL; DAVID TROTT, Republican Congressional Delegation,

    Proposed Intervenors - Appellants.

```
                            FILED
                         Aug 30, 2018
                      DEBORAH S. HUNT, Clerk
```

Before: SILER, MOORE, and GRIFFIN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of the Congressmen's motion to intervene is REVERSED, and the case is REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk