# UNITED STATE DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK"
G. LASALLE, RICHARD "DICK"
W. LONG, LORENZO RIVERA
and RASHIDA H. TLAIB,

          Plaintiffs,

v.

RUTH JOHNSON, in her official
Capacity as Michigan
Secretary of State,

          Defendant.

Case No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

**NONPARTIES' MOTION FOR
PLAINTIFFS TO SHARE
DISCOVERY COSTS**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

Mark Brewer (P35661)
Counsel for Plaintiff
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Jeffrey P. Justman
Counsel for Plaintiff
FAEGRE BAKER DANIELS LLP
90 S. Seventh Street, Suite 2200
Wells Fargo Center
Minneapolis, MN 55402
612-766-7000
Jeff.justman@faegrebd.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Counsel for Plaintiff
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Fax: 317-237-1000
Jay.Yeager@FaegreBD.com
Harmony.Mappes@FaegreBD.com

Peter Ellsworth (P23657)
Robert P. Young, Jr. (P28789)
Ryan M. Shannon (P74535)
Counsel for Defendant Ruth Johnson
DICKINSON WRIGHT, PLLC
215 S. Washington Square
Suite 200
Lansing, MI 48933
517-371-1730
pellsworth@dickinsonwright.com
ryoung@dickinsonwright.com
rshannon@dickinsonwright.com

Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Counsel for Nonparties
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
ggordon@dykema.com
jhanselman@dykema.com

## **NONPARTIES' MOTION FOR PLAINTIFFS TO SHARE DISCOVERY COSTS**

The Nonparty Legislative Bodies, by and through their attorneys, Dykema Gossett PLLC, respectfully move this Court for entry of an order requiring Plaintiffs to help pay discovery-related costs incurred by the Nonparties in

complying with Plaintiffs' discovery requests. In support of this Motion, the Nonparties rely on the facts, law, and argument set forth in the accompanying Brief in Support.

Pursuant to Fed. R. Civ. P. 26(c)(1) and E.D. Mich. L.R. 7.1(a), on September 7, 2018 and on previous occasions, the Nonparties' counsel conferred in good faith with Plaintiffs' counsel in an effort to resolve this matter without Court action, but was unable to obtain concurrence to the relief sought herein, thus necessitating the filing of this Motion.

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date:  September 7, 2018

By: */s/ Gary P. Gordon*
     Gary P. Gordon (P26290)
     Counsel for Nonparties
     201 Townsend Street, Suite 900
     Lansing, MI  48933
     Telephone:  (517) 374-9100
     ggordon@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

## UNITED STATE DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK"
G. LASALLE, RICHARD "DICK"
W. LONG, LORENZO RIVERA
and RASHIDA H. TLAIB,

         Plaintiffs,

v.

RUTH JOHNSON, in her official
Capacity as Michigan
Secretary of State,

         Defendant.

Case No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

**<u>NONPARTIES' BRIEF IN
SUPPORT OF MOTION FOR
PLAINTIFFS TO SHARE
DISCOVERY COSTS</u>**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

Mark Brewer (P35661)
Counsel for Plaintiff
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Jeffrey P. Justman
Counsel for Plaintiff
FAEGRE BAKER DANIELS LLP
90 S. Seventh Street, Suite 2200
Wells Fargo Center
Minneapolis, MN 55402
612-766-7000
Jeff.justman@faegrebd.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Counsel for Plaintiff
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Fax: 317-237-1000
Jay.Yeager@FaegreBD.com
Harmony.Mappes@FaegreBD.com

Peter Ellsworth (P23657)
Robert P. Young, Jr. (P28789)
Ryan M. Shannon (P74535)
Counsel for Defendant Ruth Johnson
DICKINSON WRIGHT, PLLC
215 S. Washington Square
Suite 200
Lansing, MI 48933
517-371-1730
pellsworth@dickinsonwright.com
ryoung@dickinsonwright.com
rshannon@dickinsonwright.com

Gary P. Gordon (P26290)
Jason T. Hanselman (P61813)
Counsel for Nonparties
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
ggordon@dykema.com
jhanselman@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## <u>TABLE OF CONTENTS</u>

ISSUE ........................................................................................................vi

INTRODUCTION ......................................................................................1

BACKGROUND ........................................................................................2

ARGUMENT ..............................................................................................4

    I.    Law ................................................................................................4

    II.    Analysis ........................................................................................6

          A.    Step 1, Whether Expenses Shift: The Court should shift expenses because, for the Nonparties, $300,000 in discovery expenses is significant..................................................................7

          B.    Step 2, How Much Shifts: Equity demands that the Court shift at least half of those expenses ....................................................8

CONCLUSION ...........................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bell Inc. v. GE Lighting, LLC*,
2014 U.S. Dist. LEXIS 56170 (W.D. Vir. April 23, 2014)..................................4

*Callwave Commc'ns, LLC v. Wavemarket, Inc.*,
2014 WL 2918218 (N.D. Cal. June 26, 2014).....................................................6

*Ford Motor Co. v. Edgewood Properties, Inc.*,
257 F.R.D. 418 (D.N.J. 2009)...........................................................................12

*Hennigan v. Gen. Elec. Co.*,
2012 WL 13005370 (E.D. Mich. 2012)..............................................................6

*In re Modern Plastics Corp.*,
2017 U.S. Dist. LEXIS 155001 (W.D. Mich. Sept. 22, 2017) ........................4, 5

*In re Modern Plastics Corp.*,
536 B.R. 783 (W.D. Mich. Bankr. Ct. Aug. 26, 2015)...............................5, 6, 8

*In re Modern Plastics Corp.*,
890 F.3d 244 (6th Cir. 2018) ..........................................................................5, 6

*Legal Voice v. Stormans Inc.*,
738 F.3d 1178 (9th Cir. 2013) ........................................................................5, 8

*Linder v. Calero-Portcarrero*,
180 F.R.D. 168 (D.C. 1998) ............................................................................10

*Linder v. Calero-Portocarrero*,
251 F.3d 178 (D.C. Cir. 2001)...................................................................5, 7, 10

*R.J. Reynolds Tobacco v. Philip Morris, Inc.*,
29 F. App'x 880 (3d Cir. 2002) ........................................................................5

*Tech v. United States*,
284 F.R.D. 192 (M.D. Penn. 2012) ...................................................................4

*United States v. Blue Cross Blue Shield of Mich.*,
2012 U.S. Dist. Lexis 146403 (E.D. Mich. Oct. 11, 2012) ........................passim

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

**RULES**

Fed. R. Civ. P. 45 ..................................................................................passim

**OTHER AUTHORITIES**

American Heritage College Dictionary (4th ed. 2007)............................................7

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## ISSUE

To protect nonparty subpoena recipients from significant discovery expenses, Fed. R. Civ. P. 45 requires a court to shift expenses to the requesting party. The discovery expenses imposed upon the Legislative Bodies and, by extension, Michigan taxpayers, approach $300,000. Given that the Legislative Bodies are not parties to this action, the parties can bear discovery expenses, and Plaintiffs refused to compromise with the Legislative Bodies during discovery, should the Court order Plaintiffs to bear at least half of the significant discovery expenses imposed on the Legislative Bodies?

Plaintiffs answer "No"

The Legislative Bodies answer "Yes"

The Court should answer "Yes"

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

# INTRODUCTION

Rule 45 protects nonparties from significant discovery expenses by requiring the Court to shift some or all of their expenses to the requesting party.  A mere bystander involuntarily complying with burdensome discovery requests, the logic goes, should not have to pay as though it has skin in the game.

For the past several months, the Legislative Bodies (the "Nonparties") have exhausted all efforts to comply with this Court's order regarding Plaintiffs' onerous discovery demands.  In doing so, the Nonparties, in addition to expending internal resources and countless hours of legislative staff time, have incurred a substantial bill—currently almost $300,000 and counting.  Of course, Michigan taxpayers ultimately bear the burden of those expenses.  Moreover, throughout the discovery process, Plaintiffs refused to compromise on discovery terms and timelines, insisting instead that the Nonparties proceed as Plaintiffs wished.  It would be unjust to require the Nonparties—and functionally the taxpayers—to bear these significant discovery costs needlessly inflated by Plaintiffs.  In view of the fairness and equity required by Rule 45, Plaintiffs should shoulder at least half the Nonparties' significant discovery expenses.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

## BACKGROUND

The Nonparties[1] have exhaustively detailed elsewhere their tremendous discovery efforts.[2]  Because the Court is intimately familiar with that arduous process, the Nonparties will not recount all of it, but will merely summarize it.

When the Court issued its May 23 Order denying the Nonparties' Motion to Quash, the Nonparties immediately began to comply with it and the discovery subpoenas.  The Nonparties' counsel conferred with Plaintiffs' counsel about acceptable search parameters—e.g., what years to search, what search terms to use, etc.  Plaintiffs' counsel wished to search nearly ten years of legislative records using extremely broad terms on hundreds of user accounts.  The Nonparties' counsel explained that doing so would sweep up an enormous number of documents, the vast majority of which—due to the Nonparties' file-retention policies—would be unresponsive.[3]  But as Plaintiffs insisted, the Nonparties acquiesced.

The Nonparties first collected over 1,000,000 electronic documents and as many "hard copy" files as possible from hundreds of current and former legislators and staff.  Deduplicating these document left almost 500,000.  Plaintiffs' search

---

[1] In previous filings "the Nonparties" referred to both the Legislative Bodies and the Legislative Personnel.  Here, however, because only the Legislative Bodies are seeking discovery expenses, "the Nonparties" refers only to them.

[2] *See* The Nonparties' Supplemental Resp. to Pls.' Mot. for Civil Contempt, ECF # 67.

[3] Declaration of Jason Hanselman, Ex.1.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

terms run on these documents yielded about 75,000.  To review those documents according to the Court's instructions, and to prepare production sets and privilege logs, the Nonparties' counsel assigned 24 attorneys and two paralegals to review them:  nine of the Nonparties' counsel's own attorneys—both partners and associates; 15 contract attorneys; and two paralegal litigation support specialists (the Nonparties' counsel's employees), all in addition to legislative attorneys. Many of these attorneys—supported by administrative staff—worked through nights, weekends, holidays, and summer vacations to expedite the discovery process.  As a result of this all-hands-on-deck effort, the Nonparties' counsel finished reviewing those documents on August 17.  And as predicted, they found relatively few responsive documents—only about 1,500.[4]

Expending that much time and that many resources on Plaintiffs' requested document review came at a significant cost.  As shown in Exhibit 1, to collect, search, and review 1,000,000 documents and produce about 1,500 documents, the Nonparties have already spent nearly $300,000, an amount that is expected to rise until discovery is complete.

---

[4] All of these figures are supported by Ellen Kain's declaration.  *See* Ex. 2.

# ARGUMENT

## I.    <u>Law</u>

Fed. R. Civ. P. 45 governs whether a court shifts nonparty discovery expenses.   It states that when a court issues an order requiring a nonparty to comply with a discovery subpoena, the court "*must* protect" that nonparty "from significant expense resulting from compliance."[5]    The Rule 45 Advisory Committee Notes on the 1991 Amendment explain that this strong, mandatory protection exists because nonparty subpoena recipients provide "involuntary assistance to the court."    Rule 45 nonparties are specially protected against discovery expenses specifically *because* they are nonparties—i.e., innocent bystanders to litigation in which they have little to no interest.[6]

In light of Rule 45's strong and unequivocal "must protect" language, the Third, Ninth, and D.C. circuits have articulated a non-discretionary, two-element test to determine whether a court should shift expenses under Rule 45: (1)

---

[5] Rule 45(d)(2)(B)(ii) (emphasis added).

[6] *See In re Modern Plastics Corp.*, 2017 U.S. Dist. LEXIS 155001, *20–21 (W.D. Mich. Sept. 22, 2017) (stating that Rule 45's special protections treat nonparties more carefully than parties because nonparties "have no interest in the litigation"); *Bell Inc. v. GE Lighting, LLC*, 2014 U.S. Dist. LEXIS 56170, *39, (W.D. Vir. April 23, 2014) (holding that "Rule 45 provides additional protections to nonparties"); *Tech v. United States*, 284 F.R.D. 192, 198 (M.D. Penn. 2012) (stating that in light of these concerns, federal courts are specially willing to protect nonparties).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

"whether the subpoena imposes expenses on the non-party," and (2) "whether those expenses are 'significant.'"[7]

Element (1) is self-explanatory, but element (2) is more opaque.  Judges have broad discretion to determine whether expenses are significant.[8]  This is a fact-intensive question requiring a holistic approach.  Although tests vary across jurisdictions, one common factor is the identity of the nonparty, i.e., the type of entity the nonparty is.[9]

But deciding *whether* expenses shift is just step 1 of 2.  The Court must also decide *how much* of the expenses to shift.  To start step 2's analysis, some courts, including this Court, consider an equitable, three-factor test:

> [T]he court must balance the equities of the particular case, including "[1] whether the putative nonparty actually has an interest in the outcome of the case, [2] whether it can more readily bear its cost than the requesting party; and [3] whether the litigation is of

---

[7] *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001).  *See also Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (adopting *Linder*'s test because "the plain language of the rule . . . provides no exceptions" and "no room for doubt"); *R.J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 883 (3d Cir. 2002) (same).  While the Sixth Circuit has not affirmatively adopted *Linder*'s test, a few months ago it noted that certain E.D. Mich. courts have.  *In re Modern Plastics Corp.*, 890 F.3d 244, 252 n.6 (6th Cir. 2018) [hereinafter "*In re Modern Plastics Corp. (6th Cir.)*"].  However, because *Linder*'s test merely recasts Rule 45's language as elements, the Nonparties confidently use it even absent explicit adoption.  *See Linder*, 251 F.3d at 182 ("The rule is susceptible of no other interpretation.")

[8] *See, e.g.*, *United States v. Blue Cross Blue Shield of Mich.*, 2012 U.S. Dist. Lexis 146403, *8–9 (E.D. Mich. Oct. 11, 2012) (emphasizing that it is within the sound "discretion of the court").

[9] *Id.*; *Legal Voice*, 738 F.3d at 1182–83; and *In re Modern Plastics Corp.*, 536 B.R. 783, 787 (W.D. Mich. Bankr. Ct. Aug. 26, 2015) [hereinafter "*In re Modern Plastics Corp. (Bankr. Ct.)*"].

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

> public importance." *In re Exxon Valdez*, 142 F.R.D. 380,
> 383 (D.D.C. 1992).[10]

A fourth sometimes-included factor is to what extent the requesting party

collaborated with the producing party to ease the latter's burden.[11]

## II.  Analysis

For the Nonparties, $300,000 is a significant expense.  The Court should

shift at least half of it to Plaintiffs because, first, the Nonparties are not parties to

the action; second, both sides can, and Plaintiffs should, bear the expenses; and

third, Plaintiffs consistently refused to compromise on discovery parameters,

thereby dramatically inflating discovery expenses.

---

[10]  *Blue Cross*, 2012 U.S. Dist. Lexis 146403, at *8.  *See also Callwave Commc'ns, LLC v. Wavemarket, Inc.*, 2014 WL 2918218, at *6 (N.D. Cal. June 26, 2014) (applying the same test).

The Nonparties note that before 1991, Rule 45 did not say that a Court "must" protect nonparties—its language was discretionary.  In light of this discretionary language, courts developed this three-factor test articulated in *Blue Cross* to assess both whether and how much discovery expenses should shift.  Amended Rule 45's unequivocal "must" language shrank the test's role to determining only how much shifts.  Unfortunately, some decisions ignore amended Rule 45's language and rely on the pre-1991 test to decide whether expenses shift.  *See, e.g.*, *Hennigan v. Gen. Elec. Co.*, 2012 WL 13005370 (E.D. Mich. 2012).  The Sixth Circuit acknowledged this confusion in *In re Modern Plastics Corp. (6th Cir.)*, 890 F.3d at 252:

> [B]efore the 1991 amendment to Rule 45, courts applied a number
> of equitable factors to determine whether to exercise discretion to
> shift the cost of production to the requesting party. 302 F.R.D. at
> 534-36. Some district courts have continued to consider three
> equitable factors in making that determination . . . .

Here, the Court should emulate *Blue Cross* and, recognizing amended Rule 45's "must," use this three-factor test solely to determine how much of, not whether, the expenses should shift.

[11]  *See, e.g.*, *In re Modern Plastics Corp. (Bankr. Ct.)*, 536 B.R. at 787 (justifying a high shifting, in part, because the requesting party did not work with the nonparty to lower expenses). This factor is, in the Nonparties' view, the most important in this case.

### A. Step 1, Whether Expenses Shift: The Court should shift expenses because, for the Nonparties, $300,000 in discovery expenses is significant.

*Element (1)*.   Exhibit 1 shows that the Nonparties have incurred nearly $300,000 in expenses to complete the document review required by the subpoenas and the Court's May 23 order.   Thus, the question becomes whether, to the Nonparties, $300,000 is significant.

*Element (2)*.   The Court should find that $300,000 is significant for two reasons.  First, $300,000 is an objectively significant sum.  The American Heritage College Dictionary (4th ed. 2007) defines significant (in the quantifiable sense) as "fairly large" or "important."   No one could reasonably argue that, even for the Nonparties, $300,000 is not a "fairly large" sum.  And $300,000 would assuredly be an "important" deficiency in their budget, which could be well-deployed in other ways for the benefit of the public.  This is especially true given that, in this case, it is not really the entity that is paying, but the taxpayers.

Second, two analogous cases—*Linder*, the D.C. Circuit's watershed Rule 45 case, and *Blue Cross*, this Court's apposite Rule 45 case—show that, here, $300,000 is significant.  In *Linder*, the court had "no trouble" finding $200,000 in discovery expenses significant for the CIA, and the CIA's budget surely dwarfs that of the Nonparties.[12]   And in *Blue Cross*, this Court found that $14,000 and

---

[12] *Linder*, 251 F.3d at 182.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

$16,000 were significant expenses for two of Michigan's largest healthcare providers whose budgets also dwarf the budget of the Nonparties.[13]  Given this, there is no doubt that $300,000 in discovery costs is significant, and especially for the Nonparties.[14]

Because the expenses imposed on the Nonparties are significant, the Court must now determine how much of them Plaintiffs must bear to make the Nonparties' expenses insignificant.[15]

### B. Step 2, How Much Shifts: Equity demands that the Court shift at least half of those expenses.

As mentioned above, four factors guide the Court's equitable analysis:

*Factor (1)—the Nonparties' Interests*.  Given the Court's recent order that found that members of the Legislative Branch have no standalone official interests in this litigation, the Court should hold that the Nonparties, too, have no official interests here.  A few weeks ago, the Court denied individual Michigan legislators' motion to intervene.  August 14, 2018, Order Denying Motion to Intervene, ECF # 91.  Regarding the legislator's claim of "official interest," the Court held that such an interest is merely "a component of the state's overall interest and is exclusively

---

[13] *Blue Cross*, 2012 U.S. Dist. Lexis 146403, at *9.

[14] *See also id.* (citing two cases that found, respectively, $60,000 and $9,000 to be significant expenses); *Legal Voice*, 738 F.3d at 1182–83 (holding that $20,000 was significant); and *In re Modern Plastics Corp. (Bankr. Ct.)*, 536 B.R. at 787 (holding that $165,000 was significant).

[15] *Legal Voice*, 738 F.3d at 1184.

8

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

represented by the executive" branch. *Id.* at 2 (citing Mich. Const. art. 3, § 2). This reasoning applies squarely to the Nonparties because, as legislative institutions, all of their interests are "official interests."

The Nonparties note that the Sixth Circuit's August 30, 2018, Opinion—which reversed and remanded the Court's April 4, 2018, order denying the Republican Congressional Delegation's motion to intervene—does not change this calculus. First, the August 30 opinion discussed *personal* interests of *individual* legislators, not *official institutional* interests. Second, the Court's August 14 Order discussed the interests of Michigan legislators as determined by the state constitution, while the August 30 Opinion discussed the interests of federal representatives. In sum, given the Court's August 14 Order—the law of the case—factor (1) weighs strongly in favor of shifting expenses.

*Factor (2)—Who Can Bear the Expenses.* In addition to the resources of the eleven individual Plaintiffs, the League of Women Voters has millions of dollars in annual revenue and assets. These substantial resources are dedicated to carrying out the League's mission of "non-partisan redistricting reform."[16] The Nonparties also have considerable dollars allocated to them in the yearly budget to carry out their legislative functions. While they expect that occasional litigation will consume some of those dollars, their budget does not easily absorb $300,000 *in*

---

[16] Pl.'s Compl. ¶ 8.

*discovery expenses*, especially in a case to which they are not even parties. Because Plaintiffs have ample resources and the costs of this litigation further their core mission, they can more readily bear the significant discovery expenses at issue.

In considering analogous case law, *Linder*—in which a nonparty governmental institution incurred $200,000 in discovery expenses—is particularly instructive. In *Linder*, two individual plaintiffs subpoenaed the CIA as nonparties under Rule 45.[17]   The CIA's discovery-production expenses were about $200,000.[18] The district court, in an opinion upheld by the D.C. Circuit, ordered the individual plaintiffs to cover 50% of those expenses.[19]  Here, the Nonparties' combined budgets are a fraction of the CIA's budget, and Plaintiffs in this case have significantly more assets than the two individual plaintiffs in *Linder*.

Additionally, the Court should take into account the need to protect Michigan's public fisc.  The Nonparties recognize that litigation may naturally consume a certain portion of their budgets (hence why they requesting only a partial shift of expenses).  But $300,000 of their budgets spent on a case to which they are not even parties is far too much.  If the Nonparties failed to attempt to

---

[17] *Linder*, 251 F.3d at 179.

[18] *Id.* at 182.

[19] *Id.* at 183.  *See also Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 177 (D.C. 1998).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

recoup these expenses, they would be doing a disservice to the taxpayers and citizens—incidentally, the very people Plaintiffs say they are trying to help.  The Nonparties should not have to bear these unreasonable discovery expenses alone.

In sum, the question for factor (2) is, as the Court has said, who can "bear the cost of production."[20]  Here, Plaintiffs can more readily bear those costs, and for the public fisc's sake, they should.

*Factor (3)—Litigation is of Public Importance.*  Although redistricting litigation generally may be of public importance, this litigation specifically is not. Former President Obama's Department of Justice and a three-judge panel have already approved of Michigan's redistricting lines.  It is therefore highly unlikely that this litigation will succeed, and doomed litigation is not publicly important. Factor (3) weighs in favor of shifting.

*Factor (4)—The Requesting Party's Compromise.*  More than any other factor, this weighs in favor of shifting discovery expenses to Plaintiffs.  Plaintiffs' refusal to compromise with the Nonparties on the temporal and substantive scope of discovery needlessly and severely inflated discovery expenses.  Plaintiffs repeatedly refused to limit both the number of years the Nonparties had to search and the search terms used within those years.

---

[20] *Blue Cross*, 2012 U.S. Dist. Lexis 146403, at *11.

The Nonparties' counsel warned Plaintiffs' counsel several times that refusing to cooperate and limit the search to better terms would increase time and expense.   But Plaintiffs' counsel insisted, so the Nonparties ran Plaintiffs' requested search terms, in part to avoid further time and expense in resolving those disputes through motion or otherwise.  Consistent with the Nonparties' prediction, the initial document search identified approximately 75,000 potentially responsive documents, only 1,500 of which were responsive.

Critically, the overwhelming majority of the approximately 1,500 responsive documents the Nonparties have produced would have been captured by the Nonparties' proposed timeframe and search terms had Plaintiffs agreed to use them.  Truncating discovery as the Nonparties suggested would have resulted in a fraction of the time and expense with functionally the same result.[21]   In sum, Plaintiffs' recalcitrance directly, demonstrably, and substantially increased the Nonparties' already significant discovery expenses.

*How much should shift*?   In view of these factors, how much of the approximately $300,000 should be shifted?  In *Blue Cross*, this Court examined three factors, finding that two militated strongly against the nonparties and the

---

[21] That the Nonparties had a better idea than Plaintiffs of their own records is not surprising.  *See Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (noting that a producing party is in "the best position to determine" how to "collect documents" and whether "documents have been preserved and maintained").  What is surprising, however, is that Plaintiffs ignored the Nonparties advice, insisted that the Nonparties conduct burdensome discovery, and now balk when asked to shoulder some of the expenses their obstinacy inflated.

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

third was neutral. Even then, this Court awarded the nonparties 15% of the expenses. Here, all of the factors militate in favor of the Nonparties. Given how much stronger these Nonparties' claim is than the nonparties in *Blue Cross*, the Nonparties believe that shifting at least half of the discovery expenses is equitable.

## CONCLUSION

Throughout the discovery process, the Nonparties have gone the extra mile to accommodate Plaintiffs. They used Plaintiffs' search terms within Plaintiffs' timeframe and exhausted all efforts to try to accommodate Plaintiffs' arbitrary discovery deadline. Because the Nonparties bent over backwards, Plaintiffs got their expedited, 1,000,000-document review. But now it is time to pay up. Rule 45 provides that the Court *must* protect the Nonparties—nonparty subpoena recipients involuntarily assisting the Court—by equitably shifting significant discovery expenses. Nearly $300,000 in discovery expense is unarguably significant, and transferring at least half of it to Plaintiffs is decidedly equitable.

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date: September 7, 2018

By: */s/ Gary P. Gordon*
Gary P. Gordon (P26290)
Counsel for Nonparties
201 Townsend Street, Suite 900
Lansing, MI 48933
Telephone: (517) 374-9100
ggordon@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 7, 2018, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

By: */s/ Gary P. Gordon*
Gary P. Gordon (P26290)
Counsel for Nonparties
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
ggordon@dykema.com

4832-0142-3216.3
116331\000001

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933