# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR., JACK
E. ELLIS, DONNA E. FARRIS,
WILLIAM "BILL" J. GRASHA,
ROSA L. HOLLIDAY, DIANA L.
KETOLA, JON "JACK" G. LASALLE,
RICHARD "DICK" W. LONG,
LORENZO RIVERA and RASHIDA H.
TLAIB,

        Plaintiffs,

v.

RUTH JOHNSON, in her official capacity
as Michigan Secretary of State,

        Defendant.

Case No. 17-cv-14148
Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

**DEFENDANT'S RESPONSES TO
PLAINTIFFS' SECOND SET OF
INTERROGATORIES AND
DOCUMENT REQUESTS**

_____/

Joseph H. Yeager, Jr. (IN 2083-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: (317) 237-0300
Fax: (317) 237-1000
Jay.Yeager@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
*Counsel for Plaintiffs*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: (248) 483-5000
Fax: (248) 483-3131
MBrewer@goodmanacker.com
*Counsel for Plaintiffs*

Dickinson Wright PLLC
Peter H. Ellsworth (P23657)
Ryan M. Shannon (P74535)
*Special Assistant Attorneys General*
215 S. Washington Sq., Suite 200
Lansing, MI 48933
(517) 371-1700
PEllsworth@dickinsonwright.com
RShannon@dickinsonwright.com
*Attorneys for Defendant*

_____/

## DEFENDANT'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES AND DOCUMENT REQUESTS

Defendant, Ruth Johnson, in her official Capacity as Michigan Secretary of State, in response to Plaintiffs' Second Set of Interrogatories and Document Requests (collectively, the "Requests"), states as follows:

## GENERAL OBJECTIONS AND STATEMENT

1.    Defendant objects to the Requests to the extent that they seek to impose obligations upon Defendant beyond those provided under the Federal Rules of Civil Procedure, or to the extent that they go beyond the bounds of reasonable discovery.

2.    Defendant objects to the Requests to the extent that they purport or require Defendant to provide information or produce documents that are not within her possession, custody, or control.

3.    Defendant objects to the Requests to the extent that they seek information not relevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

2

4.   Defendant objects to the Requests to the extent that they seek information that is disproportional to the needs of the case.

5.   Defendant objects to the Requests to the extent they are overly broad, unduly burdensome, unreasonable, harassing, or oppressive.

6.   Defendant objects to the Requests to the extent that they seek information that is already in Plaintiffs' possession, custody, or control.

7.   Defendant objects to the Requests that are compound, vague, ambiguous, or otherwise unclear as to the precise information or documents sought.

8.   Defendant objects to the Requests to the extent that they seek privileged or confidential attorney work product, confidential trade secret or propriety information, or information that is otherwise protected from discovery.  Inadvertent production of such information or documents shall not constitute a waiver of any privilege or any other ground for objection to discovery with respect to any other information or documents.

Each of the foregoing General Objections interposed by Defendant is applicable to and hereby is incorporated into each and every response, and any response by Defendant to the discovery requests is made without waiving any of the General Objections made herein.  In certain responses, Plaintiff has restated a particular objection for emphasis. Defendant's undersigned counsel is willing to discuss objections in greater detail.

The production and responses set forth below are based on a diligent search and review of records available to the Defendant. Discovery in this case is ongoing. Accordingly, Defendant reserves the right to amend and/or supplement these responses as additional facts or documents are uncovered or as trial strategy is determined based on review of materials previously or the future produced by Plaintiffs or third parties in this matter.

## **INTERROGATORIES**

**Interrogatory No. 1:** With respect to the Secretary's expert witness Dr. Thomas Brunell, state or otherwise provide: the date upon which Dr. Brunell was retained; the first date upon which he performed work related to this case; whether other individuals worked at Dr. Brunell's direction and if so, their identity; the total amount charged by Dr. Brunell as of July 17, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Dr. Brunell (or his firm) to the extent related to this case; all time entries recorded by Dr. Brunell and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Response**:

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b). Defendant further

objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).

Preserving general and specific objections, Defendant states that Dr. Brunell was first retained and commenced work on or about June 14, 2018.  A copy of his invoice for June of 2018, including time entries, is enclosed at SECTWO000001; invoices for subsequent time have not yet issued.  This invoice reflects the amounts actually invoiced as of July 17, 2018.  No individuals worked at his direction in his preparation of his report.

**Interrogatory No. 2:** With respect to the Secretary's expert witness David Doyle, state or otherwise provide: the date upon which Mr. Doyle was retained; the first date upon which he performed work related to this case; whether other individuals worked at Mr. Doyle's direction and if so, their identity; the total amount charged by Mr. Doyle as of July 17, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Mr. Doyle (or his firm) to the extent related to this case; all time entries recorded by Mr. Doyle and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b).  Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).

Preserving general and specific objections, Defendant states that Mr. Doyle was first retained and commenced work on or about June 6, 2018.  He directed Alexa Warford, an employee of Marketing Resource Group, Inc. (517.372.440, 225 S. Washington Sq., Lansing, MI 48933), in preparing his report.  A copy of his June 2018 invoice, including time descriptions, is enclosed at SECTWO000006 invoices for subsequent time have not yet issued. The invoice reflects amounts actually invoiced as of July 17, 2018.

**Interrogatory No. 3:** With respect to the Secretary's expert witness Dr. Douglas Johnson, state or otherwise provide: the date upon which Dr. Johnson was retained; the first date upon which he performed work related to this case; whether other individuals worked at Dr. Johnson's direction and if so, their identity; the total amount charged by Dr. Johnson as of July 17, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Dr. Johnson (or his firm) to the extent related to this case; all time entries

recorded by Dr. Johnson and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Response**:

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b). Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).

Preserving general and specific objections, Defendant states that Dr. Johnson was first retained and commenced work on or about June 6, 2018. A copy of his invoice for June through early August of 2018, including time entries, is enclosed at SECTWO000011; invoices for subsequent time have not yet issued. This invoice reflects the amounts actually invoiced as of July 17, 2018. No individuals worked at his direction in his preparation of his report.

**Interrogatory No. 4:** With respect to the Secretary's expert witness Dr. Yan Liu, state or otherwise provide: the date upon which Dr. Liu was retained; the first date upon which he performed work related to this case; whether other individuals worked at Dr. Liu's direction and if so, their identity; the total amount charged by Dr. Liu as of July 17, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Dr. Liu (or

7

his firm) to the extent related to this case; all time entries recorded by Dr. Liu and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b). Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).

Preserving general and specific objections, Defendant states that Dr. Liu was first retained and started work on or about June 19, 2018. A copy of his invoices for June and July of 2018, including time entries, are enclosed at SECTWO000029 and SECTWO000013; invoices for subsequent time have not yet issued. This invoice reflects the amounts actually invoiced as of July 17, 2018. No individuals worked at his direction in his preparation of his report.

**Interrogatory No. 5:** With respect to the Secretary's expert witness Jeff Timmer, state or otherwise provide: the date upon which Mr. Timmer was retained; the first date upon which he performed work related to this case; whether other individuals worked at Mr. Timmer's direction and if so, their identity; the total amount charged by Mr. Timmer as of July 17, 2018, including amounts charged for work by

8

other individuals working at his direction, if applicable; any and all invoices submitted by Mr. Timmer (or his firm) to the extent related to this case; all time entries recorded by Mr. Timmer and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b).  Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).

Preserving general and specific objections, Defendant states that Mr. Timmer was first retained and started work on or about June 4, 2018.  A copy of his invoice for June of 2018, including time entries, is enclosed at SECTWO000018; invoices for subsequent time have not yet issued.  This invoice reflects the amounts actually invoiced as of July 17, 2018.  No individuals worked at his direction in his preparation of his report.

**Interrogatory No. 6:** As to each of your experts:

a.      Identify or produce any treatises, texts, resources, prior testimony, or other materials received, consulted, or used by them in relation to the expert's work in this litigation;

b.    Identify any person the expert supervised or managed in relation to the work performed by them in this litigation, and provide a detailed summary of the person's role in relation to the expert's work in this litigation;

c.    Identify any person with whom the expert consulted or who gave the expert information, including other experts, in relation to the expert's work in this litigation, and provide a detailed summary of the information provided by each person identified.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b). Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a). Defendant further objects to the interrogatory to the extent it seeks information concerning non-testifying experts.

Preserving general and specific objections, Defendant states as follows:

a.    To the extent noted in their respective reports, Defendant's testifying experts received and considered the reports of Plaintiffs' experts. Further responses are set forth for each expert as follows:

Mr. Doyle:   Mr. Doyle identifies and attaches to his report race characterizations and information prepared by Inside Michigan Politics

(Appendix A to his report) and material prepared by the Michigan House Democratic Campaign Committee (Appendix B).

<u>Dr. Brunell</u>: Dr. Brunell describes sources he reviewed in his report, and works cited are listed at page 21.

<u>Mr. Timmer</u>:  Mr. Timmer's report identifies and attaches resources he reviewed including the Apol correspondence from 1982 attached to his report as Exhibit A.  Mr. Timmer additionally reviewed the following publicly available resources:

- Map of the 2011 Enacted Congressional Plan (https://www.michigan.gov/documents/cgi/house10statewide_371473_7.pdf)

- Map of the 2011 Enacted Senate Plan (http://www.senate.michigan.gov/2011_maps/Statewide.pdf)

- Map of the 2011 Enacted House Plan (https://www.michigan.gov/documents/cgi/house10statewide_371473_7.pdf)

- Map of the 2001 Enacted Congressional Plan (https://www.michigan.gov/documents/Congress01-state-E_43697_7.pdf)

- Map of the 2001 Enacted Senate Plan (https://www.michigan.gov/documents/CGI_Senate01-state-E_117281_7.pdf)

- Map of the 2001 Enacted House Plan (https://www.michigan.gov/documents/House01-state-E_117278_7.pdf)

- Map of the 1992 Enacted Congressional Plan (https://www.michigan.gov/documents/congr_dist_20137_7.pdf)

- Map of the 1992 Enacted House Plan (https://www.michigan.gov/documents/house_dist_19354_7.pdf)

- Map of the 1992 Enacted Senate Plan (https://www.michigan.gov/documents/senate_dist_19391_7.pdf)

- Michigan Legislature - Michigan Manual 2017-2018

- Michigan House and Senate Journal

- 2011 Census data.

<u>Dr. Liu</u>: Dr. Liu lists sources reviewed and cited at pages 29-30 of his report.  He also discusses the sources he reviewed and on which he relied throughout his report.  He further reviewed background materials at Wikipedia concerning Michigan's congressional districts and Michigan's House of Representatives.

<u>Dr. Johnson</u>: Dr. Johnson identifies sources he reviewed at paragraph 10 of his report.

b.   With the exception of Mr. Doyle, as noted above, none of the experts supervised or managed others in relation to their work in this litigation.  Mr. Doyle supervised Ms. Warford, an employee of the Michigan Resource Group; Ms. Warford provided research support in tabulating which districts fell below and above 55% MRBD.  Her contact information is stated above.

c.   Counsel provided copies of Plaintiffs' experts' reports to the extent noted in the respective reports of Defendant's experts.  Counsel also provided access to the stipulated CSS database to Drs. Brunell and Johnson, and access to the preliminary code and data provided by Plaintiffs to Drs. Liu and Brunell.

As to Mr. Doyle, he consulted with and/or received information from the following:

- Ralph Fiebig, 2207 College Rd., Holt, MI 48842, (517.373-0371).  Mr. Fiebig obtained and provided to Mr. Doyle education election results from DTMB.  Copies of these materials are enclosed at SECTWO000032, SECTWO000033, and SECTWO000035.

12

- Brian Bellgowan.   1362 Blaisdell Dr., DeWitt, MI 48820, (517.449.7058).  Mr. Bellgowan provided data on election results in legislative and congressional districts.  Copies of these materials are enclosed at SECTWO000034.

- Colleen Pero.  520 Seymour, Lansing, MI 48933.  (517) 487.5413. Ms. Pero provided information concerning Democratic campaigns; this information was not used by Mr. Doyle in his report.

- Andrew Bitely.  425 N. Jenison Ave., Lansing, MI 48915. (202) 689-9266  Mr. Bitely provided data on Senate district election results.  A copy of this data is enclosed at SECTWO000036.

Drs. Brunell, Johnson, and Liu did not consult with or receive additional information from others in performing their work.

Mr. Timmer consulted with Terry Marquardt (who is known to Plaintiffs) concerning the introduction timeline of proposed redistricting legislation, and to request records related to the 2011 map drawing, though Mr. Marquardt was not able to provide such information.

**Interrogatory No. 7**: State the factual bases, if any, for your denials of paragraphs 20–22, 28–29, 31–32, and 43 of Plaintiffs' Complaint.

**Response**:

Defendant objects on the basis that the request is overly broad and unduly burdensome.  Defendant further objects on the basis that the information sought is more appropriate for deposition rather than interrogatory discovery; interrogatory responses are meant to list the basic facts of a case.   Defendant further objects to the extent the interrogatory seeks information that is already in Plaintiffs' possession or

13

knowledge, or is a matter of public record, or duplicates information provided or to be provided in mandatory disclosures under FRCP 26.  Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law.

Preserving the general and specific objections, Defendant states that Defendant's denials in paragraphs 20-22, 28-29, 31-32, and 43 of the Complaint are both legal and factual in nature.  Defendant refers Plaintiffs to the facts and assertions set forth in Defendant's Answer to the Complaint. Answering further, the factual bases for the denial include the following:

As concerns Plaintiffs' claims that the Legislature intentionally adopted a persistent and extreme gerrymander in paragraphs 20, 21, 22, 28, 31, 32, and 43 of the Complaint, Defendant's denial is supported by the fact that the Michigan Legislature's principal goal in drawing the Michigan Apportionment Plan was compliance with state and federal law, including adherence to neutral, traditional redistricting criteria. These traditional criteria and legal requirements (e.g., of the Voting Rights Act) were not subordinated to partisanship.  Furthermore, Plaintiffs' attempts to frame the combination of traditional criteria (e.g., following municipal and county lines) with Michigan's natural political geography (wherein persons who tend more often to vote for Democrats more often live in larger cities) as "packing" or "cracking" is

14

misguided. Defendant relies on and incorporates Mr. Timmer's expert report as previously served in this matter. Further, testimony of legislators, staff, and/or map-drawers will support Defendant's denials as respects Plaintiffs' claims of intentional and extreme partisan gerrymandering.

The maps adopted in the Michigan Apportionment Plan are furthermore competitive, or, to the extent they are not, the imbalance is not the result of partisan gerrymandering but other factors. Plaintiffs claim in paragraph 28 of the Complaint that "[i]n each of the state legislative bodies and the congressional delegation, Democratic candidates now have to win many more votes statewide than Republican candidates in order for their party to win the same number of seats," but either party can in the future and could have in prior elections carried a majority of seats in the Michigan Senate, the Michigan House, or the Congress by winning more than 50% of the vote in a majority of jurisdictions only. Particular elections are influenced by a variety of factors (e.g., strength of candidates, fundraising, incumbency, influences from down-ballot or up-ballot races, weather, national mood, local issues) and Plaintiffs' claims of extreme or persistent gerrymandering are unsupported by the tests their experts have advanced. Defendant incorporates the expert reports of David Doyle, Thomas Brunell, Yan Liu, and Douglas Johnson in this regard.

As concerns Defendant's denial of Plaintiffs' claims in paragraph 22 that the legislature adopted the Michigan Apportionment Plan in a "façade of transparency,"

Defendant bases its denial on the fact that the enacted Plans were the result of a legislative process that was conducted in the ordinary course with public hearings. The legislative process included bipartisan input and bipartisan deal-making. Further, testimony of legislators, staff, and/or map-drawers will support Defendant's denials as respects Plaintiffs' claims of intentional and extreme partisan gerrymandering.

As concerns Defendant's denial of Plaintiffs' claims in paragraph 29 of the Complaint that the enacted House plan disproportionately pitted more incumbent Democrats against one another than Republican incumbents and that this was in "indication" of intentional partisan manipulation, Defendant's denial is based on the fact that such pairing does not indicate partisan manipulation. Among other things, the City of Detroit lost significant population as well as House seats; increased incumbent pairings in and near Detroit were thus inevitable. Further, testimony of legislators, staff, and/or map-drawers will support Defendant's denials as respects Plaintiffs' claims of intentional and extreme partisan gerrymandering.

**Interrogatory No. 8**: State the factual and legal bases, if any, for the affirmative defenses asserted in your Answer.

**Response:**

Defendant objects on the basis that the request is overly broad and unduly burdensome. Defendant further objects on the basis that the information sought is more appropriate for deposition rather than interrogatory discovery; interrogatory

responses are meant to list the basic facts of a case. Defendant further objects to the extent the interrogatory seeks information that is already in Plaintiffs' possession or knowledge, or is a matter of public record, or duplicates information provided or to be provided in mandatory disclosures under FRCP 26.  Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law

Preserving the general and specific objections, Defendant states as follows:

As to Defendant's affirmative defense that Plaintiffs have failed to state a claim upon which relief may be granted, the asserted content of Plaintiffs' pleading is a matter known to both parties equally.  Defendant's affirmative defense is based, among other things, on the non-justiciability of partisan gerrymandering claims, including but not limited to the fact that such claims involve political questions, which the courts are not situated to address, and that the Constitution reposes regulatory authority over state redistricting in Congress rather than the Courts.  Defendant's affirmative defense is further based upon Plaintiffs' failure to make district-specific allegations of harm or effect.

Defendant's affirmative defense of laches is based on Plaintiffs' delay in filing their suit until December of 2017, when the legislation enacting the Michigan Apportionment Plan was completed in August of 2011 and fully implemented prior to

the 2012 election.   Depositions and responses collected by Plaintiffs in this case already show that memories have faded as to crucial elements of Plaintiffs' case and that records have been lost or destroyed due to Plaintiffs' delay in initiating suit.   By the time this case proceeds to trial, four elections will have occurred under the enacted Michigan Apportionment Plan; voters and candidates will have come to rely on those districts, and, further, there will be no election of the Michigan Senate under the map again after 2018.

Defendant's affirmative defense that U.S. Const Art I, § 4 reserves regulation of gerrymandering to Congress rather than the Courts is self-explanatory.   See *Vieth v. Jubelirer*, 541 U.S. 267; 275-77 (2004).

Defendant's affirmative defense that Plaintiff Fred Durhal's claims are barred by res judicata is based on his presence as a plaintiff in *NAACP et al. v. Snyder et al.,* Eastern District of Michigan Case No. 11-15385.   Plaintiff Durhal's equal protection claims, which concerned redistricting and vote dilution claims, were dismissed on the pleadings in that matter.

## **REQUESTS FOR PRODUCTION**

**Document Request No. 1:** All documents discussed, relied upon, or identified connection with any of your responses to the above Interrogatories.

**Response:**

18

Defendant objects on the basis that the request is overly broad and unduly burdensome.  Defendant further objects to the extent the interrogatory seeks information that is already in Plaintiffs' possession or knowledge, or is a matter of public record, or duplicates information provided or to be provided in mandatory disclosures under FRCP 26.  Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law.  Defendant further objects on the basis that the information sought is not proportional to the needs of this case.

Preserving general and specific objections, and without producing materials covered by objections to the extent they exist, Defendant incorporates her objections and responses to the foregoing interrogatories.  Defendant further relies on her experts' reports as well as the documents identified and referred to in her above responses, as well as the enclosures.

**Document Request No. 2**: All documents or information provided to, and considered by, your expert(s), broken down by expert.

**Response**:

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b).  Defendant further objects to the extent this interrogatory seeks information already provided in the

19

experts' reports as served or in excess of the information required by FRCP 26(a). Defendant further objects to the interrogatory to the extent it seeks information concerning non-testifying experts.

Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law.  Defendant further objects on the basis that the information sought is not proportional to the needs of this case.

Preserving general and specific objections, and without producing materials covered by objections to the extent they exist, Defendant refers Plaintiffs to the interrogatory responses given above which describe information provided and considered and reference where same is attached to these responses.

**Document Request No. 3:** All engagement letters for expert(s) retained by you in connection with this case, if applicable to this case.

**Response:**

Preserving general objections, Defendant has produced each testifying expert's engagement letter.   See SECTWO000007, SECTWO000014, SECTWO000023, SECTWO000025, and SECTWO000002.

**Document Request No. 4**: Copies of any source code, software, or electronic programs/applications used by any of your experts in connection with this litigation.

To the extent such items were not developed by your expert but are commercially available for purchase, please identify the code, software, programs, or applications.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b). Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a). Defendant further objects to the interrogatory to the extent it seeks information concerning non-testifying experts.

Preserving general and specific objections, Defendant states that its testifying experts made use of standard Microsoft Office and/or Adobe products, or similar word processing software, as well as standard web browsing software.

Dr. Johnson made additional use of Stata and Maptitude for Redistricting.

Dr. Liu made additional use of the following publicly available software:

- Java SE Development Kit 8, Update 172 (JDK 8u172): (http://www.oracle.com/technetwork/java/javase/downloads/index.html)

- R (https://cran.r-project.org/)

- LaTeX editor TexShop for Mac (http://pages.uoregon.edu/koch/texshop/)

- GNU C compiler version 7.3.0 (https://gcc.gnu.org/)

- GDAL v2.2.3 for GIS processing (https://www.gdal.org/)

- QGIS v2.18 for viewing GIS data (http://www.kyngchaos.com/software/archive)

**Document Request No. 5**: The complete file of each of your experts related to work performed in this litigation, including all notes and work papers, to the extent not protected from disclosure by Fed. R. Civ. P. 26.

**Response**:

Defendant objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a). Defendant further objects to the interrogatory to the extent it seeks information concerning non-testifying experts.

Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law. Defendant further objects on the basis that the information sought is not proportional to the needs of this case.

Preserving general and specific objections, and without producing materials covered by objections to the extent they exist, Defendant refers Plaintiffs to the interrogatory responses given above which describe information provided and considered and reference where same is attached to these responses.

**Document Request No. 6:** To the extent not produced in the file, all data and facts received and considered by any of your testifying experts, even if not ultimately

used in the report prepared by your expert(s), including intermediate results and compilations of raw data generated by or for your expert(s), broken down by expert.

**Response:**

Defendant objects to this interrogatory to the extent it seeks information privileged or otherwise protected from production by FRCP 26(b).  Defendant further objects to the extent this interrogatory seeks information already provided in the expert reports as served or in excess of the information required by FRCP 26(a).  Defendant further objects to the interrogatory to the extent it seeks information concerning non-testifying experts.

Defendant further objects to the extent the interrogatory seeks information that is privileged or protected under the attorney-client privilege, work product doctrine, or another privilege recognized at law.  Defendant further objects on the basis that the information sought is not proportional to the needs of this case.

Preserving general and specific objections, and without producing materials covered by objections to the extent they exist, Defendant refers Plaintiffs to the interrogatory responses given above which describe information provided and considered and reference where same is attached to these responses.

**Document Request No. 7:** Any engagement letter setting the terms of the engagement between Peter H. Ellsworth and the Michigan Redistricting Resource Institute, as referred to in Mr. Ellsworth's affidavit in support of his motion to quash

non-party subpoena (Dkt. No. 65), or any other contract or document evidencing the nature of Mr. Ellsworth's engagement with the Michigan Redistricting Resource Institute.

**<u>Response</u>:**

    Preserving general objections, see attached SECTWO000030.

As to objections only,

DICKINSON WRIGHT PLLC

Dated: August 20, 2018                     */s/ Ryan M. Shannon*
                                           Peter H. Ellsworth (P23657)
                                           Ryan M. Shannon (P74535)
                                           *Special Assistant Attorneys General*
                                           215 S. Washington Sq., Suite 200
                                           Lansing, MI 48933
                                           (517) 371-1700
                                           PEllsworth@dickinsonwright.com
                                           RShannon@dickinsonwright.com
                                           *Attorneys for Defendant*

As to factual answers to interrogatories, I verify that I am an authorized designee of the Defendant, verify the attached answers to Plaintiffs' interrogatories on behalf of the Defendant, and that I am duly authorized to do so.  In verifying these answers, I state that the facts stated in the answers are not necessarily within my own personal knowledge, but have been assembled by authorized agents or counsel of the Defendant and that I am informed that they are true.  Defendant reserves the right to make changes to these answers if it appears at any time that omissions or errors have been made or that more accurate information is available.

August 20, 2018

Printed Name: _MICHAEL  J. SENYKO_

26

## Certificate of Service

I hereby certify that on August 20, 2018, copies of the foregoing were served

on counsel named below via email and first-class U.S. mail:

Joseph H. Yeager, Jr.
Harmony A. Mappes
Jeffrey P. Justman
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204

Mark Brewer
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075

/s/ *Ryan M. Shannon*