UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MICHIGAN
                         SOUTHERN DIVISION
_____

LEAGUE OF WOMEN VOTERS OF
MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR., JACK E.
ELLIS, DONNA E. FARRIS, WILLIAM
"BILL" J. GRASHA, ROSA L.              Case No. 17-CV-14148
HOLLIDAY, DIANA L. KETOLA, JON
"JACK" G. LASALLE, RICHARD "DICK"      Hon. Eric L. Clay
W. LONG, LORENZO RIVERA and            Hon. Denise Page Hood
RASHIDA H. TLAIB,                      Hon. Gordon J. Quist

           Plaintiffs,

      -vs-

RUTH JOHNSON, in her official
capacity as Michigan Secretary of
State,

           Defendant.
_____

          Deposition of KENNETH R. MAYER, Ph.D.,

taken at the instance of the Defendant, under and

pursuant to the Federal Rules of Civil Procedure, before

Tammy L. Uhl, RPR, CRR, CRC, a Notary Public in and for

the State of Wisconsin, at Quarles & Brady LLP,

33 East Main Street, Suite 900, Madison, Wisconsin, on

August 1, 2018, commencing at 9:27 a.m. and concluding at

3:40 p.m.



1        A P P E A R A N C E S

2

3    FAEGRE BAKER DANIELS LLP, by
     MR. JOSEPH H. YEAGER, JR. and MR. KEVIN M. TONER,
4    300 N. Meridian Street, Suite 2700,
     Indianapolis, Indiana  46204-1750,
5         appeared on behalf of the Plaintiffs.

6    JONES DAY, by
     MR. MICHAEL A. CARVIN,
7    51 Louisiana Avenue, N.W.,
     Washington, D.C. 20001-2113,
8         appeared on behalf of the Defendant.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

I N D E X

| | | |
|---|---|---|
| Examination: | | Page |
| By Mr. Carvin | | 4 |

| | | | |
|---|---|---|---|
| Exhibits Identified: | | | Page |
| 1 | Evaluation of Michigan Congressional and State Legislative District Plans by Kenneth R. Mayer, Ph.D., dated June 1, 2018 | | 5 |
| 2 | *The University of Chicago Law Review* article titled *Partisan Gerrymandering and the Efficiency Gap* | | 119 |

| | | | |
|---|---|---|---|
| Requests: | | | Page |
| 1 | Files sent from Professor Chen to Professor Mayer | | 159 |

(The original exhibits were attached to the original transcript and PDFs were provided to counsel)

(The original transcript was filed with Attorney Peter H. Ellsworth)

```
                   1              KENNETH R. MAYER, Ph.D., called as
                   2        a witness, being first duly sworn, testified
                   3        on oath as follows:
                   4                       EXAMINATION
09:27AM            5    BY MR. CARVIN:
                   6    Q   Good morning, Professor Mayer.
                   7    A   Good morning.
                   8    Q   Have you had your deposition taken before?
                   9    A   Yes.
09:27AM           10    Q   How many times?
                  11    A   Probably ten.
                  12    Q   And has that always been in an expert witness
                  13        capacity?
                  14    A   Yes.
09:27AM           15    Q   Okay.  So you know how this works.  I'll just go
                  16        through a couple of preliminaries.  You're not
                  17        under any medication or any other reason that you
                  18        can't testify fully and truthfully today; is that
                  19        correct?
09:27AM           20    A   That's correct.
                  21    Q   And because the court reporter -- I'm going to
                  22        need verbal responses from you, either yes or no,
                  23        rather than nodding your head.  Do you understand
                  24        that?
09:27AM           25    A   I understand.
```

4

|   |   |   |
|---|---|---|
| | 1 | number in a specific article. |
| | 2 | Q No. Just specific number generally? |
| | 3 | MR. YAEGER: Objection. Vague and |
| | 4 | ambiguous. |
| 10:22AM | 5 | A I mean, I can't tell you specifically whether the |
| | 6 | advantage is 4.5 or 5.3, but it is positive. It |
| | 7 | is correct to say that incumbents -- I would say |
| | 8 | not usually. They almost always win when they run |
| | 9 | for reelection. |
| 10:23AM | 10 | Q And competitive districts are generally viewed as |
| | 11 | beneficial? |
| | 12 | A That depends on who you ask. |
| | 13 | Q I'm asking your opinion. |
| | 14 | A I think generally speaking a district that is |
| 10:23AM | 15 | competitive, those are generally considered to be |
| | 16 | normatively good things. |
| | 17 | Q All right. Let's turn to that specific issue, I |
| | 18 | guess, at this point. If you could turn to page 9 |
| | 19 | of your report. I'm going to start reading. This |
| 10:24AM | 20 | is the second -- third full paragraph on page 9. |
| | 21 | *The primary effect of gerrymandering is that* |
| | 22 | *it violates both principles. It disrupts the* |
| | 23 | *relationship between the number of votes a party* |
| | 24 | *receives and the number of seats it wins, and* |
| 10:24AM | 25 | *violates the core democratic principle that the* |

41

|  |  |  |
|---|---|---|
| 1 | A | I think that's incorrect.  As we've talked about |
| 2 |  | before, the baseline gives you the starting point. |
| 3 | Q | Right.  And now I'm asking you about the end |
| 4 |  | point.  In the real word, have you made any |
| 5 |  | predictions or done any analysis with any of these |
| 6 |  | standard errors of measure about how many seats |
| 7 |  | democrats are likely to win in the 2018 or 2020 |
| 8 |  | elections in the state house anywhere in your |
| 9 |  | report? |
| 10 | A | In terms of a forecast, specific forecast of |
| 11 |  | district level outcomes, no. |
| 12 | Q | Okay.  And in terms of a general forecast for |
| 13 |  | statewide voting, you haven't made a prediction |
| 14 |  | with a standard error of measure about what their |
| 15 |  | statewide voting percentage will be in the state |
| 16 |  | house elections in 2018 or 2020; is that correct? |
| 17 | A | That's correct. |
| 18 | Q | And the answer is the same for both state senate |
| 19 |  | and congress? |
| 20 | A | That's correct. |
| 21 | Q | So you're saying it's widely accepted in the |
| 22 |  | political science community not to use endogenous |
| 23 |  | races to assess or predict elections outcomes? |
| 24 | A | Again, it depends.  When I was using the term, |
| 25 |  | again, my recollection is that it was a |

96

|  |  |  |
|---|---|---|
| 1 |  | right? |
| 2 | A | That's the conclusion, yes. |
| 3 | Q | And that's the correct conclusion.  And the reason |
| 4 |  | is pretty obvious, isn't it?  Do you know what the |
| 5 |  | efficiency gap is for a 51-49 district?  Haven't |
| 6 |  | you wasted 49 votes if you lose 51-49? |
| 7 |  | MR. YAEGER:  Objection. |
| 8 | Q | And you only wasted 1 percent of votes if you -- |
| 9 | A | So the efficiency gap is not calculated for a |
| 10 |  | single district.  The efficiency gap is calculated |
| 11 |  | for a plan. |
| 12 | Q | Maybe we can answer the question.  What would the |
| 13 |  | efficiency gap be for a 51 to 49 district? |
| 14 | A | Well, the number -- |
| 15 |  | MR. YAEGER:  I object to your |
| 16 |  | characterization.  He did answer the |
| 17 |  | question.  I'm going to object that the |
| 18 |  | question makes no sense as he's explained. |
| 19 |  | You may answer. |
| 20 | A | So the number of wasted votes would change from |
| 21 |  | essentially 1 to 49. |
| 22 | Q | So it would be a 48 percent efficiency gap.  A |
| 23 |  | huge efficiency gap for that district? |
| 24 | A | An efficiency gap is not calculated for a single |
| 25 |  | district.  An efficiency gap is calculated for a |

168

```
1  STATE OF WISCONSIN )
                      ) ss.
2  COUNTY OF DANE     )

3

4      I, Tammy L. Uhl, Certified Realtime Reporter
5  and Notary Public in and for the State of Wisconsin,
6  do hereby certify that the foregoing deposition of
7  KENNETH R. MAYER, Ph.D. was taken before me on
8  August 1, 2018, and reduced to writing by me, a
9  professional court reporter and disinterested person,
10 approved by all parties in interest and thereafter
11 converted to typewriting using computer-aided
12 transcription.
13     I further certify that I am not related to nor
14 an employee of counsel or any of the parties to the
15 action, nor am I in any way financially interested in
16 the outcome of this case.
17     IN WITNESS WHEREOF, I have hereunto set my hand
18 and affixed my notarial seal of office at Madison,
19 Wisconsin, this 2nd day of August, 2018.
```

_Tammy L. Uhl_
Notary Public, State of Wisconsin
My Commission Expires 8/18/2020

Digitally signed by Sarah Pichette, Notary Public - Commission Expires 6/14/19
DN: serialNumber=04q67488mf572spt, c=US, st=Wisconsin, l=Waunakee, o=For the Record, Inc., cn=Sarah Pichette, Notary Public - Commission Expires 6/14/19
Date: 2018.08.02 19:14:02 -05'00'

For The Record Inc. — Excellence In Court Reporting

208

WWW.FTRMADISON.COM
FOR THE RECORD, INC.   /   MADISON, WISCONSIN   /   (608) 833-0392