# APPENDIX E

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS )
OF MICHIGAN, ROGER J. BRDAK, )
FREDERICK C. DURHAL, JR., )
JACK E. ELLIS, DONNA E. )
FARRIS, WILLIAM "BILL" J. )    No. 2:17-cv-14148
GRASHA, ROSA L. HOLLIDAY, )
DIANA L. KETOLA, JON "JACK" )    Hon. Eric L. Clay
G. LASALLE, RICHARD "DICK" )    Hon. Denise Page Hood
W. LONG, LORENZO RIVERA )    Hon. Gordon J. Quist
and RASHIDA H. TLAIB, )
                    )
                    )
       Plaintiffs, )
                    )
    v. )
                    )
RUTH JOHNSON, in her official )
Capacity as Michigan )
Secretary of State, )
                    )
       Defendant. )

## PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANT RUTH JOHNSON'S FIRST SET OF INTERROGATORIES AND DOCUMENT REQUESTS TO PLAINTIFFS

Plaintiffs, the League of Women Voters of Michigan, Roger J. Brdak,

Frederick C. Durhal, Jr., Jack E. Ellis, Donna E. Farris, William "Bill" J. Grasha,

Rosa L. Holliday, Diana L. Ketola, Jon "Jack" G. LaSalle, Richard "Dick" W.

long, Lorenzo Rivera, and Rashida H. Tlaib (collectively, "Plaintiffs"), by counsel, hereby submit their Objections and Responses to Defendant Ruth Johnson's (the "Secretary") First Set of Interrogatories and Document Requests to Plaintiffs, pursuant to Fed. R. Civ. P. 33 and 34.

## **Supplementation**

Plaintiffs have not yet completed discovery in this matter, nor have they completed their preparation for trial.  In addition, as Plaintiffs informed the Court in their June 29, 2018 motion for civil contempt against the Legislative Bodies and Legislative Personnel non-party defendants, *see* Dkt. No. 66, and their July 6, 2018, Request for Deferral of Ruling, *see* Dkt. No. 68, Plaintiffs only last week began to receive document productions in response to the subpoenas and requests for production served on these non-party defendants more than three months ago. Accordingly, their response is based only upon such information and documents as are presently available and specifically known to Plaintiffs at the time of this response.  Further investigation, discovery, and analysis may lead to substantial additions to, changes in, and variations from the responses set forth below.  The following responses are given without prejudice to Plaintiffs' right to produce evidence of subsequently discovered information, and Plaintiffs respectfully reserve the right to supplement and/or change their responses in accordance with their obligations under Federal Rules of Civil Procedure 26, 33, and 34.

US.118796811.01

## OBJECTIONS AND RESPONSES

**Interrogatory No. 1**: As to each Michigan House district 1-110, each Michigan Senate district 1-38, and each Congressional district 1-14, state the following, identifying to which district the response relates:

a. All facts of which you are aware that support your claims in the Complaint or on which you intend to rely to show that a particular district is an impermissible partisan gerrymander.  This includes not only identifying the particular portion of any expert report that relates to the particular district challenged, but also any anecdotal, testimonial, statistical, or non-statistical proofs not included in the reports.

b. Separately identify all facts of which you are aware that relate to your claims in the Complaint, to the extent not identified as responsive to subpart (a);

c. Identify all persons with knowledge, including but not limited to, witnesses you intend to call as to a particular district to establish the facts listed under subpart (a).  As to those you intend to call as witnesses, provide a detailed summary of the substance and scope of their anticipated testimony, indicate to which district(s) their anticipated testimony will relate, and identify and produce the documents they will refer to or use in their testimony.

d. Identify and produce each Document or portion of any Document on which you intend to rely to establish the facts identified under subpart (a), identifying to which particular district(s) the Document relates.

e. To the extent not identified in subpart (d), separately identify and produce each Document of which you are aware that relates to your claims in the Complaint.

**Objections**:

**Overbreadth and Undue Burden**.  Plaintiffs object that Interrogatory No. 1 is overbroad and unduly burdensome.

US.118796811.01

**Premature Contention Discovery**.  Plaintiffs specifically object to this Interrogatory because it seeks information about Plaintiffs' contentions regarding matters at issue in this lawsuit.  Contention discovery is premature given the very early stage of discovery.

**Public Documents**.  Plaintiffs object to this Interrogatory to the extent that it seeks information that is publicly available, is a matter of public record, or duplicates the information provided in Plaintiffs' mandatory disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A) & (a)(2)(B).

**Privilege and Work Product**.  Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

4

Plaintiffs understand this Interrogatory regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action.  To the extent the Interrogatory is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Definition of "Plaintiffs"**.  Plaintiffs object to the Secretary's definition of the term "Plaintiffs," in that the Secretary defines the League to include, among other things, its "affiliates," its "parents," and "present or former officers, directors, employees, or agents." This definition is vague and overbroad. The League is the Michigan chapter of a national organization that "affiliates," in the everyday sense of that term, with numerous other organizations and individuals. Likewise, the League's present or former officers, directors, employees, or agents—especially when taking into account nationwide affiliates—are so numerous that a literal reading of the Secretary's definition would violate the relevance and proportionality standards of Fed. R. Civ. P. 26.

**Response**:  Without prejudice to, and expressly preserving, the foregoing objections, Plaintiffs respond as follows to Interrogatory No. 1.

- Plaintiffs' expert reports from Christopher Warshaw, Kenneth Mayer, and Jowei Chen conclusively demonstrate, *inter alia*, the degree to which the Michigan Legislature packed and cracked Senate, House and congressional districts to benefit the Republican party in 2011; that the resulting partisan

5

asymmetry is reflected in every metric commonly used by political scientists; that the resulting asymmetry is not the result of the housing or political geography patterns in the State of Michigan; that the partisan asymmetry is not the result of compliance with the Apol criteria or any other traditional redistricting criteria; and that the gerrymander has direct impacts on the ability of Plaintiffs and other Michigan voters to translate their wishes into state policy at the legislative level and to have their policy wishes reflected in the Michigan congressional delegation.

- The expert reports also demonstrate that the intent of the Michigan legislature in the 2011 gerrymander was specifically to advantage Republican candidates at the expense of Democratic candidates and Democratic voters.

- The 2011 Michigan gerrymander was durable in its impact, as demonstrated in detail in the expert reports.

- The Michigan Legislature had help from the national Republican party in the form of the REDMAP initiative.  As demonstrated in a 2012 REDMAP summary report:

> "the effectiveness of REDMAP is perhaps most clear …. The 2012 election was a huge success for Democrats at the statewide level in Michigan:  voters elected a Democratic U.S. Senator by more than twenty points and reelected President Obama by almost ten points.  But Republicans at the state level maintained majorities in both chambers of the legislature and

6

voters elected a nine-five Republican majority to represent them in Congress."

REDMAP summary report, **Attachment 1** hereto at RSLC00002048.

- The national project was specifically focused on redistricting. *See* RSLC North Carolina Political Update, **Attachment 2** hereto at RSLC00002613.

- Consultants to the Michigan Legislature left a written trail of not only partisan intent but in fact partisan animus. On May 26, 2011, Robert LeBrant wrote to Jeff Timmer, the contracted consultant for Republican gerrymandering, that while the RNC had drawn a 10-4 map for a congressional delegation, "we needed for legal and PR purposes a good looking map that did not look like an obvious gerrymander." Timmer000043, **Attachment 3** hereto.

- In the same document a Republican congressional staffer, Jack Daly, says to LeBrant and Timmer that certain people in Wayne County should be swapped for an equal number of people in West Bloomfield to satisfy "the obvious objective – putting dems in a dem district and reps in a gop district." *Id*. The staffer continued, "It will help increase the black population in the black districts because the former is 17% black while the latter is only 6% black." *Id*.

- The same staffer (signing his email as "Chief of Staff, U.S. Representative Thaddeus G. McCotter" and "Madison fellow, Heritage Foundation,

7

Hillsdale College & Federalist Society") asks consultant Timmer to generate population and election results reports for a certain map.  He follows up later the same day saying,

> "In a glorious way that makes it easier to cram **ALL of the Dem garbage** in Wayne, Washtenaw, Oakland and Macomb counties into only four districts.  Is there anyone on our side who doesn't recognize that dynamic?"

Timmer000344, **Attachment 4** hereto.  Emphasis supplied.

- Another participant in the process emailed with Jeff Timmer in June of 2011 regarding the shape of certain proposed Congressional districts.  Recognizing that one district had a finger-shaped extension away from the body of the district "between Mound and Vandyke down to 15 mile," the staffer told Timmer "perfect.  it's giving the finger to sandy levin.  I love it." [sic; Sandy Levin is a Democratic member of congress affected by this district.] Timmer000208, **Attachment 5** hereto.

- Michael Vatter will testify *inter alia* to several instances of Republican staff acknowledging political motives in the drawing of districts.

- State Rep. Lisa Brown's district was dismantled in retaliation when she refused to vote for the Republican house map.  *See* David A. Lieb, "Analysis: Voting District Lines Favor GOP," Associated Press, June 25, 2017, **Attachment 6** hereto.

8

- Plaintiff Fred Durhal will also testify about retaliation against African-American State House representatives from Detroit who refused to vote for the Republican gerrymander.

- Even the incomplete production of documents to date demonstrates conclusively that the GOP map drawers were focused on creating maps that helped their party.

**Interrogatory No. 2:** As to each Michigan House district 1-110, each Michigan Senate district 1-38, and each Congressional district 1-14, state the following, identifying to which district the response relates:

   a. Identify the members of the League living in that district;

   b. List events, presentations, or other programs that the League has held in the district since January 1, 2015;

   c. Identify all facts and all Documents (and produce such Documents) on which you intend to rely to support the League's standing with respect to each identified district.

   d. To the extent not identified under subpart (c), identify all facts and all Documents (and produce such Documents) of which you are aware that relate to the League's standing with respect to each identified district.

   e. Identify and produce any and all Communications between the Plaintiffs and/or the League, and its members in each district.

**Objections**:

**Vague and Overbroad**.  Plaintiffs object to subparts (c) and (d) of Interrogatory No. 2 on the grounds that they are vague and overbroad. Nearly all facts that would be "related" to Plaintiffs' claims in each district on their merits are

also "related" to the issue of the League's standing. Plaintiffs therefore object to this undifferentiated, overbroad, and premature interrogatory.

Plaintiffs further object to subpart (e) on the grounds that it is overbroad in that it calls for the identification and production of all communications between the League (as vaguely and broadly defined by the Secretary) and its members in *every* Michigan House, Michigan Senate, and U.S. House district in Michigan on *every* topic. The Secretary has made no effort to tailor this request to communications relevant to the subject matter of this litigation.

**Premature Contention Discovery**.  Plaintiffs specifically object to this Interrogatory because it seeks information about Plaintiffs' contentions regarding matters at issue in this lawsuit.  Contention discovery is premature given the very early stage of discovery.

**Privilege and Work Product**.  Plaintiffs object to this Interrogatory to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal

10

conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

Plaintiffs understand this Interrogatory regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action.  To the extent the Interrogatory is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Definition of "Plaintiffs"**.  Plaintiffs object to the Defendant's definition of the term "Plaintiffs," in that the Secretary defines the League to include, among other things, its "affiliates," its "parents," and "present or former officers, directors, employees, or agents." This definition is vague and overbroad. The League is the Michigan chapter of a national organization that "affiliates," in the everyday sense of that term, with numerous other organizations and individuals. Likewise, the League's present or former officers, directors, employees, or agents—especially when taking into account nationwide affiliates—are so numerous that a literal reading of the Secretary's definition would violate the relevance and proportionality standards of Fed. R. Civ. P. 26.

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

11

a. Plaintiff League attaches hereto as **Attachment 7** a list of current members and the districts in which they live.

b. Both in direct response and pursuant to Fed. R. Civ. P. 33(d) the league attaches hereto as **Attachment 8** league records identifying its activities the league has held in various districts in the state since January 1, 2015.

**Interrogatory No. 3:** In relation to Christopher Warshaw, state or otherwise provide: the date upon which Mr. Warshaw was retained; the first date upon which he performed work related to this case; whether other individuals worked at Mr. Washaw's direction and if so, their identity; the total amount charged by Mr. Warshaw as of June 1, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Mr. Warshaw (or his/her firm) to the extent related to this case; all time entries recorded by Mr. Warshaw and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Objections**:  Plaintiffs object to Interrogatory No. 3 to the extent that it seeks information that duplicates or exceeds the contents of Plaintiffs' expert disclosures required under Fed. R. Civ. P. 26(a)(2)(B).

Plaintiffs further object to the interrogatory to the extent that it invades the work product privileges and protections explicitly accorded expert trial-preparation materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C).

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

12

Dr. Warshaw's engagement letter dated April 4, 2018 is attached hereto as

**Attachment 9.**  Dr. Warshaw was contacted with regard to his work as an expert in

this case and began his work at approximately the same date as the letter.

Dr. Warshaw did not have other individuals working at his direction.  Pursuant to

Fed. R. Civ. P. 33(d), Plaintiffs will produce an up-to-date invoice from Dr.

Warshaw showing the total amount charged for his work.

**Interrogatory No. 4:** In relation to Kenneth Mayer, state or otherwise provide: the date upon which Mr. Mayer was retained; the first date upon which he performed work related to this case; whether other individuals worked at Mr. Mayer's direction and if so, their identity; the total amount charged by Mr. Mayer as of June 1, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Mr. Mayer (or his/her firm) to the extent related to this case; all time entries recorded by Mr. Mayer and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Objections**:  Plaintiffs object to Interrogatory No. 4 to the extent that it

seeks information that duplicates or exceeds the contents of Plaintiffs' expert

disclosures under Fed. R. Civ. P. 26(a)(2)(B).

Plaintiffs further object to the interrogatory to the extent that it invades the

work product privileges and protections explicitly accorded expert trial-preparation

materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C).

**Response**:  Without prejudice to, and fully preserving, the foregoing

objections, Plaintiffs respond as follows:

13

An engagement letter sent to Dr. Mayer on January 16, 2015 is attached hereto as **Attachment 10.** Dr. Mayer was contacted with regard to his work as an expert in this case and began his work at approximately the same date as the letter. Dr. Mayer did not have other individuals working at his direction. Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs will produce an up-to-date invoice from Dr. Mayer showing the total amount charged for his work.

**Interrogatory No. 5:** In relation to Jowei Chen, state or otherwise provide: the date upon which Mr. Chen was retained; the first date upon which he performed work related to this case; whether other individuals worked at Mr. Chen's direction and if so, their identity; the total amount charged by Mr. Chen as of June 1, 2018, including amounts charged for work by other individuals working at his direction, if applicable; any and all invoices submitted by Mr. Chen (or his/her firm) to the extent related to this case; all time entries recorded by Mr. Chen and, if applicable, the other individuals working at his direction, for work performed relating to this case.

**Objections**: Plaintiffs object to Interrogatory No. 5 to the extent that it seeks information that duplicates or exceeds the contents of Plaintiffs' expert disclosures under Fed. R. Civ. P. 26(a)(2)(B).

Plaintiffs further object to the interrogatory to the extent that it invades the work product privileges and protections explicitly accorded expert trial-preparation materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C).

**Response**: Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

14

An engagement letter sent to Dr. Chen on February 17, 2016 is attached hereto as **Attachment 11.**  Dr. Chen was contacted with regard to his work as an expert in this case and began his work at approximately the same date as the letter. Dr. Chen did not have other individuals working at his direction.  Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs will produce an up-to-date invoice from Dr. Chen showing the total amount charged for his work.

**Interrogatory No. 6:** As to each of your experts:

    a. Identify or produce any treatises, texts, resources, prior testimony, or other materials received, consulted, or used by them in relation to the expert's work in this litigation;

    b. Identify any person the expert supervised or managed in relation to the work performed by them in this litigation, and provide a detailed summary of the person's role in relation to the expert's work in this litigation;

    c. Identify any person with whom the expert consulted or who gave the expert information, including other experts, in relation to the expert's work in this litigation, and provide a detailed summary of the information provided by each person identified.

**Objections**:  Plaintiffs object to Interrogatory No. 6 to the extent that it seeks information that duplicates or exceeds the contents of Plaintiffs' expert disclosures under Fed. R. Civ. P. 26(a)(2)(B).

Plaintiffs further object to the interrogatory to the extent that it invades the privileges and protections explicitly accorded expert trial-preparation materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C). Absent extraordinary circumstances, Fed. R. Civ. P. 26(b)(4)(D) protects the work product

15

of experts "employed only for trial preparation" from discovery. The Secretary is not entitled to information pertaining to non-testifying experts and consultants that would invade this protection.

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

The Plaintiffs' experts have identified in their reports the specific academic and other materials they relied upon in connection with their work in this case.  No expert has supervised or managed other persons in connection with this litigation. Each expert considered and or relied on information provided by counsel as forth in his respective report.

**Document Request No. 1:** All documents discussed, relied upon, or identified connection with any of your responses to the above Interrogatories.

**Objections**:

**Premature Contention Discovery**.  Plaintiffs specifically object to this Request because it seeks information about Plaintiffs' contentions regarding matters at issue in this lawsuit.  Contention discovery is premature given the very early stage of discovery.

**Privilege and Work Product**.  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private

US.118796811.01

information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

Plaintiffs understand this Request regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action.  To the extent the Request is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

Plaintiffs object to Request No. 1 because it invades the privileges and protections explicitly accorded to materials prepared in anticipation of litigation or for trial by a party or its representative, including the mental impressions, conclusions, opinions, or legal theories of counsel, by Fed. R. Civ. P. 26(b)(3)(A) & (B), and the privileges and protections explicitly afforded to expert trial-preparation materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C).

17

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

Plaintiffs rely generally on their expert reports and documents identified and referred to in response to the foregoing interrogatories, and the documents attached to this response.

**Document Request No. 2:** All documents or information provided to your expert(s), broken down by expert.

**Objections**:

**Rule 26**.  Plaintiffs object to Request No. 2 because it invades the privileges and protections explicitly accorded expert trial-preparation materials and communications with counsel by Fed. R. Civ. P. 26(b)(4)(B) & (C). Plaintiffs will produce documents in response to this request only to the extent they are discoverable pursuant to the limited exception to expert trial-preparation protection provided by Fed. R. Civ. P. 26(b)(4)(C)(ii).

**Premature Contention Discovery**.  Plaintiffs specifically object to this Request because it seeks information about Plaintiffs' contentions regarding matters at issue in this lawsuit.  Contention discovery is premature given the very early stage of discovery.

**Privilege and Work Product**.  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal

18

or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

Plaintiffs understand this Request regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action. To the extent the Request is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Document Request No. 3:** All engagement letters for expert(s) retained by you in connection with this case, if applicable to this case.

**Response**: Plaintiffs have produced each testifying expert's engagement letter. *See* Attachments 9 through 11 hereto.

**Document Request No. 4**: Copies of any source code, software, or electronic programs/applications used by any of your experts in connection with this litigation. To the extent such items were not developed by your expert but are commercially available for purchase, please identify the code, software, programs, or applications.

19

**Objections**:

**Rule 26**.  Plaintiffs further object to the request in that its broad scope calls for the production of draft reports or disclosures and other expert-counsel communications that are explicitly protected from discovery by Fed. R. Civ. P. 26(b)(4)(B) & (C).  The request also exceeds the scope of disclosure required by Fed. R. Civ. P. 26(a)(2)(B).

**Privilege and Work Product**.  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

Plaintiffs understand this Request regarding attorney-client communication and attorney work product to be confined to the period preceding the

20

commencement of this action.  To the extent the Request is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

Plaintiffs have previously produced computer data and code responsive to this Request.

Plaintiffs' experts generally used Word and other standard Microsoft office applications.  Prof. Mayer used Strata SE 15.1 and Excel.  Prof. Warshaw used Strata 13, Excel, Apple Preview, TexShop, R, and the "dplyr," "dgo," and "ggplotz" packages containing R.  Prof. Chen used Java Version 8, Update 91, build 1.8.0_91-b15.

**Document Request No. 5**: The complete file of each of your experts related to work performed in this litigation, including all notes and work papers.

**Objections**:

**Rule 26**.  Plaintiffs object to Request No. 5 to the extent it calls for production of communications between Plaintiffs and any non-testifying experts. No exceptional circumstances justify discovery of facts known or opinions held by a consulting expert in this case, or the contents of any communications between Plaintiffs' counsel and such experts.

Plaintiffs further object to the request in that its overbroad scope calls for the production of draft reports or disclosures and other expert-counsel communications

that are explicitly protected from discovery by Fed. R. Civ. P. 26(b)(4)(B) & (C). The request also exceeds the scope of disclosure required by Fed. R. Civ. P. 26(a)(2)(B).

**Privilege and Work Product**.  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

Plaintiffs understand this Request regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action.  To the extent the Request is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Document Request No. 6:** To the extent not produced in the file, all data and facts received or considered, even if not ultimately used, by your expert(s), including

intermediate results and compilations of raw data generated by or for your expert(s), broken down by expert.

**Objections**:

**Rule 26**.  Plaintiffs object to Request No. 6 to the extent it calls for production of communications between Plaintiffs and any non-testifying experts. No exceptional circumstances justify discovery of facts known or opinions held by a consulting expert in this case, or the contents of any communications between Plaintiffs' counsel and such experts.

Plaintiffs further object to the request in that its broad scope calls for the production of draft reports or disclosures and expert-counsel communications that are explicitly protected from discovery by Fed. R. Civ. P. 26(b)(4)(B) & (C).  The request also exceeds the scope of disclosures required by Fed. R. Civ. P. 26(a)(2)(B).

**Response**:  Each expert has already produced an extensive report and large volumes of electronic data and code.

**Document Request No. 7:** All simulated plans developed or considered by Jowei Chen in connection with this litigation including those referenced in his report as the "1,000 Computer-Simulated Congressional Plans," "1,000 Computer-Simulated House Plans," and "1,000 Computer-Simulated Senate Plans."

**Objections**:

23

**Rule 26**.  Plaintiffs object to Request No. 7 to the extent it calls for the production of draft versions of Dr. Chen's expert report or draft versions of data that was incorporated into Dr. Chen's expert report.

Plaintiffs further object to the request in that its overbroad scope calls for the production of draft reports or disclosures and expert-counsel communications that are explicitly protected from discovery by Fed. R. Civ. P. 26(b)(4)(B) & (C).  The request also exceeds the scope of disclosures required by Fed. R. Civ. P. 26(a)(2)(B).

**Response**:  Shape files for the Chen simulations have already been produced.

**Document Request No. 8:** As concerns Michigan's 2011 redistricting process, all redistricting plans for any Michigan legislative or congressional map that were conceived, drafted, proposed, discussed, or debated, including map or shape files and any underlying data (including demographic and political data).  To the extent such Documents do not identify the source (i.e. person or group developing the plan) of the proposed plan(s), identify the source of such plans as well.

**Objection**:  Plaintiffs object to Request No. 8 as overbroad. The request for all redistricting plans that were "conceived, drafted, proposed, discussed, or debated," read literally, calls for production of documents that invade the attorney-client privilege and the work-product protection generally, and the specific protections for draft reports and expert trial-preparation materials provided by Fed. R. Civ. P. 26(b)(4).

24

**Document Request No. 9**: Documents of which you are aware that relate to, or on which you intend to rely at trial to demonstrate, the intent of legislators, legislative caucuses or committees, or the employees, consultants, or staff of same, with respect to the development or enactment of Michigan's Current Apportionment Plan.

**Objections**:

**Premature Contention Discovery**.  Plaintiffs specifically object to this Request because it seeks information about Plaintiffs' contentions regarding matters at issue in this lawsuit.  Contention discovery is premature given the very early stage of discovery.

**Privilege and Work Product**.  Plaintiffs object to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege, the attorney work product doctrine, the common interest privilege, or any other legal or contractual privilege from or prohibition against disclosure of private information in discovery, including, without limitation, the League of Women Voters of Michigan's ("League") communications with its attorneys, individual plaintiffs' communications with any of their attorneys, any information tending to reveal Plaintiffs' counsel's mental processes, impressions, legal conclusions and arguments, and/or any documents prepared in anticipation of litigation. Any information disclosed will be without waiving, but on the contrary reserving, each privilege, protection, or immunity. Any inadvertent disclosure of privileged information shall not be deemed a waiver of any privilege.

25

Plaintiffs understand this Request regarding attorney-client communication and attorney work product to be confined to the period preceding the commencement of this action.  To the extent the Request is not intended to be so confined, Plaintiffs object to it as vague, ambiguous and overbroad.

**Response**: *See* Response to Interrogatory No. 1, above.

**Document Request No. 10**: The "Alternative Maps" identified in the Complaint in this matter, including map or shape files, any underlying data relating to same (including demographic and political data), and any analysis prepared relating to same.

**Objection**:  Plaintiffs object to Request No. 10 as overbroad. The broad request for "any analysis prepared relating to [alternate maps]" calls for production of documents that invade the attorney-client privilege and the work-product protection generally, and the specific protections for expert trial-preparation materials provided by Fed. R. Civ. P. 26(b)(4).

**Response**:  Without prejudice to, and fully preserving, the foregoing objections, Plaintiffs respond as follows:

Plaintiffs have already produced shape files for the alternate maps, as part of the code and other electronic data produced for and by Dr. Chen and Dr. Mayer.

*See also* Mayer report regarding analysis of alternative plans.

**Document Request No. 11**: Any document showing your communications with all persons identified by you in the list of persons to be subpoenaed earlier provided by you in this matter (see ECF Doc#20-1, PgID 197-198.)

US.118796811.01

**Objection**:  Plaintiffs object to Request No. 11 as overbroad, in that it seeks "all" communications between Plaintiffs and a list of 76 individuals and entities, without tailoring the request to communications relevant to the subject matter of this lawsuit.  Plaintiffs further object that such communications are not relevant to the claims or defenses in this action, and invade the work product of Plaintiffs' counsel.

**Response**:  On July 9, 2018, Plaintiffs' counsel transmitted to Defendant's counsel documents received to date in response to the subpoenas received in this action.

\*     \*     \*     \*     \*     \*     \*

**As to Objections and Contention Interrogatories and Requests**:

I hereby verify that the information supplied above in response to the contentions that are the subject of Interrogatory number 1, and the responses to Interrogatories numbered 1 and 3-6, is true and accurate to the best of my information, knowledge and belief.  I also sign as regards all stated objections, and as to responses to requests for production.

Counsel for Plaintiffs

/s/ *Joseph H. Yeager, Jr.*
Joseph H. Yeager, Jr. (Ind. Bar No. 2083-49)

Date: July 10, 2018

27

**As to Factual Responses of League of Women Voters**:

  I hereby verify that the information supplied above in response to Interrogatory number 2 is true and accurate to the best of my information, knowledge and belief.

League of Women Voters

By:_____

  Judy Karandjeff
  President

US.118796811.01

## Certificate of Service

I hereby certify that on July 10, 2018, copies of the foregoing were served

on counsel named below via email and first-class U.S. mail:

Peter H. Ellsworth (P23657)
Ryan M. Shannon (P74535)
DICKINSON WRIGHT PLLC
215 S. Washington Sq., Suite 200
Lansing, MI 48933
(517) 371-1730

*Attorneys for Defendant*

/s/ *Joseph H. Yeager, Jr.*

US.118796811.01