## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS OF
MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR., JACK
E. ELLIS, DONNA E. FARRIS, WILLIAM
"BILL" J. GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK" G.
LASALLE, RICHARD "DICK" W. LONG,
LORENZO RIVERA and RASHIDA H.
TLAIB,

        Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Michigan Secretary of State,

        Defendant.

_____/

Case No. 17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

| | |
|---|---|
| Dickinson Wright PLLC | Jones Day |
| Peter H. Ellsworth (P23657) | Michael A. Carvin |
| Ryan M. Shannon (P74535) | *Special Assistant Attorney General* |
| *Special Assistant Attorneys General* | 51 Louisiana Ave., NW |
| 215 S. Washington Sq., Suite 200 | Washington D.C. 20001 |
| Lansing, MI 48933 | (202) 879-3939 |
| (517) 371-1700 | macarvin@jonesday.com |
| PEllsworth@dickinsonwright.com | *Attorney for Defendant, Ruth Johnson* |
| RShannon@dickinsonwright.com | |
| *Attorneys for Defendant, Ruth Johnson* | |

_____/

## DEFENDANT SECRETARY OF STATE RUTH JOHNSON'S RESPONSE TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON LACHES

Defendant, Michigan Secretary of State Ruth Johnson ("Defendant" or "Secretary") files her response in opposition to Plaintiffs' Motion for Partial Summary Judgment on Laches, and relies on the accompanying Brief in Support.

WHEREFORE, the Secretary respectfully requests that this Court deny Plaintiffs' motion and afford such further relief as it deems just and equitable.

Respectfully submitted,

DICKINSON WRIGHT PLLC          JONES DAY

/s/ Peter H. Ellsworth
Peter H. Ellsworth (P23657)          Michael Carvin
Ryan M. Shannon (P74535)          Attorneys for Defendant
Attorneys for Defendant


Dated: October 12, 2018

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS OF
MICHIGAN, ROGER J. BRDAK,                    Case No. 17-cv-14148
FREDERICK C. DURHAL, JR., JACK
E. ELLIS, DONNA E. FARRIS, WILLIAM           Hon. Eric L. Clay
"BILL" J. GRASHA, ROSA L. HOLLIDAY,          Hon. Denise Page Hood
DIANA L. KETOLA, JON "JACK" G.               Hon. Gordon J. Quist
LASALLE, RICHARD "DICK" W. LONG,
LORENZO RIVERA and RASHIDA H.
TLAIB,

          Plaintiffs,

v.

RUTH JOHNSON, in her official capacity as
Michigan Secretary of State,

          Defendant.

_____/

Dickinson Wright PLLC                    Jones Day
Peter H. Ellsworth (P23657)              Michael A. Carvin
Ryan M. Shannon (P74535)                 *Special Assistant Attorney General*
*Special Assistant Attorneys General*    51 Louisiana Ave., NW
215 S. Washington Sq., Suite 200         Washington D.C. 20001
Lansing, MI 48933                        (202) 879-3939
(517) 371-1700                           macarvin@jonesday.com
PEllsworth@dickinsonwright.com           *Attorney for Defendant, Ruth Johnson*
RShannon@dickinsonwright.com
*Attorneys for Defendant, Ruth Johnson*

_____/

## DEFENDANT SECRETARY OF STATE RUTH JOHNSON'S BRIEF IN
## SUPPORT OF HER RESPONSE TO PLAINTIFFS' MOTION FOR
## PARTIAL SUMMARY JUDGMENT ON LACHES

# TABLE OF CONTENTS

Concise Statement of Issue Presented ........................................................................v

Most Appropriate or Controlling Authority..............................................................vi

I.      INTRODUCTION ..........................................................................................1

II.     FACTS AND PROCEDURAL HISTORY ......................................................3

III.    ARGUMENT...................................................................................................6

      A.      Standard of review...............................................................................6

      B.      Striking the Secretary's laches defense is inappropriate because the standards applicable to Plaintiffs' claims are not yet apparent. ..........................................................................................................7

      C.      Plaintiffs overstate the import of their cited case law and ignore the unique nature of redistricting statutes. ..........................................10

            1.      Laches has been repeatedly recognized as an appropriate defense in redistricting and election cases...............................11

            2.      Plaintiffs' cited authorities are easily distinguished or inapposite. ...................................................................................16

IV.     CONCLUSION.............................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ancient Egyptian Arabic Order of Nobles of the Mystic Shrine v. Michaux*, 279 U.S. 737 (1929)..........................................................20

*Ariz. Minority Coal. v. Ariz. Redistricting Comm'n*, 366 F. Supp. 2d 887 (D. Ariz. 2005)................................................. 1, 13, 20

*Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227 (6th Cir. 2007) ......................7, 8

*Concerned Citizens of Southern Ohio, Inc. v. Pine Creek Conservancy District*, 429 U.S. 651 (1977) ...............................................18

*Danjaq, LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) .............................. 10, 19

*Fouts v. Harris*, 88 F. Supp. 2d 1351 (S.D. Fla. 1999) ............................. 14, 15, 16

*Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990) ...................... 17, 18

*Kay v. Austin,* 621 F.2d 809 (6th Cir. 1980)...........................................12

*Kuhnle Brothers, Inc. v. County of Geauga,* 103 F.3d 516 (6th Cir. 1997) .......................................................... 19, 20

*League of Women Voters of Mich. v. Johnson*, 902 F.3d 572 (6th Cir. 2018) ...............................................................13

*McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826 (N.D. Ohio 2009) ...............................................13

*Michigan v. United States*, Case No. 1:11-cv-01938, Order (D.D.C. filed Feb. 28, 2012).................................................3

*Miller v. Johnson*, 515 U.S. 900 (1995) ............................................. 7, 16

*NAACP v. Snyder*, 879 F.Supp.2d 662 (E.D. Mich. 2012)......................................3

*Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) ...............................................................19

*Ohio A. Phillip Randolph Institute v. Smith*, No. 1:18cv357, 2018 WL 3872330 (S.D. Ohio Aug. 15, 2018)........................................... 18, 19

*Orr v. Allen*, 248 U.S. 35 (1918)...............................................................................18

*Ott v. Midland-Ross Corp*, 600 F.2d 24 (6th Cir. 1979)............................................8

*Reynolds v. Sims*, 377 U.S. 533 (1964) .......................................................................3

*Sanders v. Dooly Cnty.*, 245 F.3d 1289 (11th Cir. 2001) ................................. 14, 16

*Shapiro v. Maryland*, 336 F. Supp. 1205 (D. Md. 1972)........................... 11, 12, 18

*Shaw v. Reno*, 509 U.S. 630 (1993) .........................................................................14

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008) .....................20

*White v. Daniel*, 909 F.2d 99 (4th Cir. 1990) ......................................... 2, 14, 15, 16

**Other Authorities**

(U.S. Census Bureau, *"QuickFacts" for Ottawa County, the City of Grand Rapids, and the City of Detroit*, https://www.census.gov/quickfacts/fact/table/ottawacountymichig an,grandrapidscitymichigan,detroitcitymichigan/PST045217 (last visited: Oct. 10, 2018)...........................................................................................4

**Rules**

Fed. R. Civ. P. 12(f)....................................................................................................7

Fed. R. Civ. P. 56(a) ...................................................................................................7

Fed. R. Civ. P. 56(c)(1)(A) .........................................................................................7

## CONCISE STATEMENT OF ISSUE PRESENTED

Should this Court deny Plaintiffs' motion for partial summary judgment with respect to Defendant, Michigan Secretary of State Ruth Johnson's affirmative defense of laches?

## MOST APPROPRIATE OR CONTROLLING AUTHORITY

*Ariz. Minority Coal. v. Ariz. Redistricting Comm'n*, 366 F. Supp. 2d 887 (D. Ariz. 2005)................................................................... 1, 13, 20

*Fouts v. Harris*, 88 F. Supp. 2d 1351 (S.D. Fla. 1999) ............................. 14, 15, 16

*Kay v. Austin,* 621 F.2d 809 (6th Cir. 1980)............................................................12

*Miller v. Johnson*, 515 U.S. 900 (1995)............................................................. 7, 16

*Sanders v. Dooly Cnty.*, 245 F.3d 1289 (11th Cir. 2001) ................................. 14, 16

*White v. Daniel*, 909 F.2d 99 (4th Cir. 1990) ........................................ 2, 14, 15, 16

# I.    INTRODUCTION

Public Acts 128 and 129 of 2011—establishing Michigan's State Senate, State House, and U.S. Congressional districts (the "Apportionment Plan" or the "Plan")— were signed into law on August 9, 2011 following the last decennial census. Plaintiffs filed their suit six years, four months, and thirteen days later, on December 22, 2017.  Defendant, Michigan Secretary of State Ruth Johnson (the "Secretary"), filed an Answer to the Complaint on May 30, 2018, preserving the affirmative defense of laches.  (Answer, ECF No. 59, PageID.1046.)

Plaintiffs have moved for partial summary judgment, effectively seeking to strike the affirmative defense of laches from the Answer.  Their motion is notably *not* based on the lack of factual support for the application of laches—Plaintiffs briefly describe evidentiary disputes in their Brief but then revert to their core argument: *i.e.*, that "[a]s a *pure matter of law,* laches is not available as a defense to the claims in Voters' Complaint."  (Pls.' Br., ECF No. 117, PageID.2337 n.2 (emphasis added).)

Plaintiffs, however, woefully misstate or outright omit discussion of relevant case law in which laches has *routinely* been applied to bar claims like those here. "The defense [of laches] applies to redistricting cases as it does to any other." *Ariz. Minority Coal. v. Ariz. Redistricting Comm'n*, 366 F. Supp. 2d 887, 908 (D. Ariz. 2005).  Even in the racial gerrymandering context—where gerrymandering harms

1

are constitutionally recognized and subject to a well-defined framework (unlike in the present case)—federal courts have, by applying laches, considered and denied prospective injunctive relief.  This is particularly true where a challenge is initiated after several election cycles have already occurred and a redistricting plan is reaching the end of its natural life (*i.e.*, before reapportionment and redistricting): "[A] challenge to a reapportionment plan close to the time of a new census, which may require reapportionment, is not favored."  *White v. Daniel*, 909 F.2d 99, 103-04 (4th Cir. 1990).

Crucially, as was detailed by the Secretary in her separate Motion for Summary Judgment, there is no established framework for the evaluation of partisan gerrymandering claims.  (Def.'s Br., ECF No. 119, PageID.2408-13.)  It would be inappropriate for this Court to dismiss the Secretary's laches defense as a matter of *law* before the framework is even known, including what factual and evidentiary burdens apply to Plaintiffs and Defendant.

Laches is an equitable doctrine—it is meant to be flexible, and to allow the Court to tailor its application to the facts and prejudices before it.  Because Plaintiffs have misstated the law and ignored the factual support for laches here, their Motion must be denied.

## II.   FACTS AND PROCEDURAL HISTORY

As noted above, the Apportionment Plan was signed into law over seven years ago.  The districts contained in the Plan were pre-cleared as being compliant with Section V of the Voting Rights Act in February of 2012,[1] and withstood an Equal Protection challenge initiated by the NAACP and individual voters several months after its enactment in late 2011.  *NAACP v. Snyder*, 879 F.Supp.2d 662, 665 (E.D. Mich. 2012).  In tandem with local officials, the Secretary implemented the Plans. Candidates subsequently ran campaigns, and voters cast votes in the implemented districts in 2012, 2014, and 2016.  By the time Plaintiffs' Motion for Partial Summary Judgment as to laches is heard in early November, the same will be true for 2018 as well.

Unlike most laws, statutes establishing legislative districts have a shelf life. Because census data becomes outdated as populations shift within the boundaries of a state, under the one-person, one-vote principle, states must redistrict following each decennial census. *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 583 (1964).  The next revision will occur in Michigan before the 2022 election.

As this case now exists before this Court, the only remaining elections under the Plan will occur in 2020 (and only for the Michigan State House and U.S.

---

[1] *See Michigan v. United States*, Case No. 1:11-cv-01938, Order, pp. 2-3 (D.D.C. filed Feb. 28, 2012).

Congressional delegations, as the Michigan Senate will not be elected under the Plan again after 2018).  Assuming, purely for the sake of argument, that there was a constitutionally cognizable harm to Plaintiffs due to partisan gerrymandering in the Plans (which the Secretary denies), the effect of that gerrymander will be at its most reduced potency in the 2020 election cycle.  Political scientists, including Plaintiffs' own proposed expert, recognize that gerrymanders fade in their effectiveness toward the end of a decennial census cycle.  (*See* Def.'s Br., ECF No. 119, PageID.2439 (citing deposition of Dr. Warshaw).)

Further, Michigan's population will look materially different in 2020 compared to 2011: The U.S. Census Bureau estimates, for example, that approximately 40,000 people moved out of the City of Detroit between April of 2011 and July of 2017; the City of Grand Rapids, on the west side of the State, conversely saw its population increase by approximately 5.7%, and Ottawa County by 8.6%, in the same period.[2]  To redraw and implement new districts now would require the Court and the Secretary to rely on stale, imperfect data.  Decennial redistricting occurs in the first place to avoid reliance on stale, imperfect data (and to reflect population shifts within a state)—using what has become via the passage of time

---

[2]   (See, Exhibit 1, U.S. Census Bureau, *"QuickFacts" for Ottawa County, the City of Grand Rapids, and the City of Detroit*, https://www.census.gov/quickfacts/fact/table/ottawacountymichigan,grandrapidscitymichigan,detroitcitymichigan/PST045217 (last visited: Oct. 10, 2018).)

highly imperfect data to redraw districts at the end of a cycle could *deepen* a population imbalance, offending the one-person, one-vote principle.

Plaintiffs, who allege that Public Acts 128 and 129 constitute "severe" and "extreme" partisan gerrymanders, (Compl., ECF No. 1, PageID.2-3, ¶¶ 1, 4), did not file suit to challenge the Plan in the years following enactment—when memories of key personnel and legislators would have been fresh and key documents might have been preserved concerning legislative intent.   As detailed more fully in the Congressional Intervenors' separate Motion for Summary Judgement:

> Intervenors have reviewed the various depositions taken in this case and have unsurprisingly found that, due to the length of time the Plaintiffs slept on their rights, it will be exceedingly difficult to mount a defense. Jeff Timmer, the principal drafter of the congressional map, has forgotten significant details of the meetings, discussions, and events related to the development and passage of the 2011 plan. *See generally* Dep. of Timmer (App. D). For example, Timmer was asked by Plaintiffs' counsel "Q: [a]s part of the redistricting process that you performed or were – observed, did you have any communications with elected Democrats? A: Possibly. I'm trying to recall who was – who would have been elected at that time. Term limits makes it a bit fuzzy. So possibly." Dep. of Timmer 110:2-7 (App. D). Remembering the extent to which Democrats may have been involved is important information that could go to several defenses and factual assertions. By counsel's count, there are over one-hundred and ninety (190) questions that Timmer could not recall the answer to. *See e.g.*, *id*. The passage of time has affected the memories of every deponent.

(Intervenors' Br., ECF No. 121, PageID.2786-87 (footnotes omitted).)

Key records have also been destroyed. Alternative maps considered by legislative map drawers,[3] for example, were destroyed following the above-mentioned 2012 conclusion of litigation challenging the Apportionment Plan. (See Exhibit 2, McMaster Dep. Tr. 131:15–133:21.)

(The Secretary otherwise generally incorporates here the factual support cited by the Congressional Intervenors in their separate Motion for Summary Judgment based on laches.)

In sum, there are both significant procedural prejudices as well as evidentiary prejudices that will befall the Secretary if Plaintiffs' claims are enforced despite Plaintiffs' lengthy delay in bringing suit. Plaintiffs' argument that this case should be dismissed on a "pure[ly] legal" basis is without merit.

## III.   ARGUMENT

### A.   Standard of review

In the redistricting context, "courts must . . . recognize . . . the intrusive potential of judicial intervention into the legislative realm, when assessing under the Federal Rules of Civil Procedure the adequacy of a plaintiff's showing at the various

---

[3] It is anticipated that Plaintiffs here will seek to present redistricting plans that were drawn in post-enactment years to show the Secretary's liability and perhaps redressability—*i.e.*, to present "better" plans drawn by computing software that was not available to legislative map-drawers in 2011. To the extent the availability of alternatives is a factor under a hypothetical framework for assessing legislative intent in partisan gerrymandering claims, such alternatives logically would be limited to those actually presented and known to the Legislature in 2011.

stages of litigation and determining whether to permit . . . trial to proceed." *Miller v. Johnson*, 515 U.S. 900, 916-17 (1995).

Plaintiffs posture their motion as being one brought under Rule 56.  (*See* Pls.' Br., ECF No. 117, PageID.2337.)  Pursuant to Rule 56, a party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), on the basis of "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

Plaintiffs' motion, however, is based "purely" on an argument that laches is unavailable, as a matter of law, in redistricting cases seeking prospective relief.  It is thus more appropriately a motion to strike under Fed. R. Civ. P. 12(f), as Plaintiffs do not ask this Court to address any factual matters, but to make a purely legal determination.

**B.**   **Striking the Secretary's laches defense is inappropriate because the standards applicable to Plaintiffs' claims are not yet apparent.**

In the Sixth Circuit, laches is understood to arise where there is a "negligent and unintentional failure to protect one's rights." *Chirco v. Crosswinds Cmtys., Inc.*, 474 F.3d 227, 231 (6th Cir. 2007) (quotations omitted).  A party asserting the defense must establish (1) a "lack of diligence by the party against whom the defense is

7

asserted, and (2) prejudice to the party asserting it." *Id.* (quotations omitted). Prejudice, however, may take a variety of forms. *See* 27A Am. Jur. 2d *Equity* §§ 143, 144 (2018). Laches results where "changed circumstances inequitably work to the disadvantage or prejudice of another if the claim is now to be enforced," including that "changed circumstances may make it more difficult to defend against the claim." *Chirco*, 474 F.3d at 231 (quotations omitted).

Laches is moreover intended to be a flexible doctrine: "Equity eschews mechanical rules; it depends on flexibility. Equity has acted on the principle that laches is . . . principally a question of the inequity of permitting the claim to be enforced. . . ." *Ott v. Midland-Ross Corp*, 600 F.2d 24, 33 (6th Cir. 1979) (quotations omitted). A "flat proscription" on its application, for example "in cases involving a federal statutory claim is both unnecessary and unwise." *Chirco*, 474 F.3d at 233-34. Instead, "[l]aches is an equitable doctrine, not fixed by any unyielding measure, but to be determined in each case under its factual situation." *Advanced Hydraulics, Inc. v. Otis Elevator Co.*, 525 F.2d 477, 479 (7th Cir. 1975) (quotations omitted).

Defendant has preserved laches as an affirmative defense. Plaintiffs now request that this defense be stricken as a matter of law with no consideration given

to the facts of their delay.  (*See* Pls.' Br., ECF No. 117, PageID.2337 n.2.)[4]  Given that laches is a flexible doctrine, determined on a case-by-case basis, and given further that there is no recognized and workable standard for assessing partisan gerrymandering claims, Plaintiffs' request is particularly unreasonable.

Assuming that a workable framework for partisan gerrymandering claims may ultimately be established, it is not apparent whether and to what extent certain factual issues may be required elements (or weighted prongs) of that framework.  Facts relating to the 2011 legislative proceedings in which the plans were developed, for example, may be key to applying a hypothetical jurisprudential standard—but those events occurred more than seven years ago.  The Michigan Legislature is a highly dynamic environment—legislators come and go as do staff; memories fade and

---

[4] Plaintiffs state:

> "Voters . . . *would show* the Court evidence of how Republicans worked … to draw maps that favor their party. . . . [I]t is too tough to swallow the Secretary's argument that the memories … have faded or that their communications were innocently discarded.  But this disagreement is of no matter for purposes of this motion.  As a *pure matter of law*, laches is not available as a defense to the claims in Voters' Complaint."

(*Id.* (emphasis added).)   The Secretary, of course, disputes that it is "tough to swallow" that memories have faded or documents have been lost or destroyed after six years' delay.

9

people move on.  This environment is one in which delay in initiating a suit is *particularly* probable to result in evidentiary prejudices.

Further, any hypothetical standard is likely to depend on some kind of showing of Legislative intent.  But as detailed above, memories have faded and records concerning such intent have been destroyed in the ordinary course.

These evidentiary prejudices only become more pronounced as time passes— *i.e.*, they exist regardless of whether Plaintiffs seek retrospective or prospective relief, and the notion that such prejudices can be ignored simply because Plaintiffs' assert the existence of "ongoing harm" is without merit.  *See Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 959-60 (9th Cir. 2001) (holding laches can apply in "ongoing harms" injunctive suits where evidentiary prejudice of this nature hampers "defendant . . . in its ability to defend future claim[s] . . . in just the same way that it was prejudiced with regard to prior alleged [claims].").

In short, Plaintiffs seek to strike the Secretary's laches defense "as a matter of law" without any settled framework of what that law may be.  Their motion must be denied.

### C. Plaintiffs overstate the import of their cited case law and ignore the unique nature of redistricting statutes.

Plaintiffs assert that laches is inapplicable as a matter of law because: (1) laches "is never appropriate in gerrymandering or other voter redistricting cases" (Pls.' Br., ECF No. 117, PageID.2335); (2) laches cannot apply because Plaintiffs'

10

are "reinjured" where the "violation recurs every election,"[5]  (*Id.* at PageID.2342), and (3) laches cannot apply where injunctive relief is sought in the public interest. (*Id.* at PageID.2335.)  But as is shown below, laches has repeatedly been applied by federal courts to deny injunctive relief in gerrymandering claims, even where plaintiffs make the same "ongoing harms" arguments Plaintiffs make here.  The types of prejudice that the Secretary will suffer—not only in terms of evidence but in terms of disruption to the existing election Plan—have, conversely, been repeatedly recognized as sufficient to foreclose injunctive relief when a challenge is initiated at the end of a decennial redistricting cycle.

### 1. Laches has been repeatedly recognized as an appropriate defense in redistricting and election cases.

Plaintiffs assert that "[i]t has long been recognized that the laches doctrine may not be raised as a defense against claims seeking relief with respect to elections that have not yet occurred."  (*Id.* at PageID.2339.)

This "long" recognition is embodied in a single case cite—a 46 year-old decision from the District of Maryland.  (*Id.* (citing *Shapiro v. Maryland*, 336 F. Supp. 1205, 1210 (D. Md. 1972).) Though the *Shapiro* Court rejected the defense of

---

[5] As this Court is aware—since the Secretary previously moved to dismiss Plaintiffs' claims concerning the Michigan Senate—the Michigan Senate will not be elected again in 2020.  Plaintiffs' "ongoing harm" argument thus fails *ab initio* as concerns the Senate.

laches, it did not hold that laches could *never* apply in redistricting cases.   The *Shapiro* plaintiffs further brought a *racial* gerrymandering claim and did so *less than five months after the relevant plans were signed* into law. *Shapiro*, 336 F. Supp. at 1210.   When the State of Maryland moved to dismiss on the basis of laches, the court was "not prepared to find, as a matter of law, that the four and one-half month delay [was] an absolute bar to the maintenance of [the] suit." *Id.*   The contrast with the instant case is obvious: the plaintiffs in *Shapiro* sought relief several months after the legislation was enacted—Plaintiffs here delayed from August 9, 2011 (when Governor Snyder signed Public Acts 128 and 129) until December 22, 2017, or *six years, four months, and thirteen days* following the date of enactment.

Further, and directly contrary to Plaintiffs' characterization of the law, the Sixth Circuit has specifically held that laches may be a successful bar against claims seeking relief with respect to elections that have not yet occurred.   In dismissing a candidate's suit for injunctive relief placing his name on the upcoming general election ballot, for example, the Sixth Circuit in *Kay v. Austin,* 621 F.2d 809 (6th Cir. 1980), held that laches applied to bar the claim:   "As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made, and the candidate's claim to be a serious candidate who has received a serious injury becomes less credible." *Id.* at 813.

Plaintiffs here waited until only two of the twelve elections to be held under the Plan remain to bring suit against what they assert to be one of the most "extreme" and "severe" gerrymanders in the Country.[6]  (Compl., ECF No. 1, PageID.2-3, ¶¶ 1, 4.)  In the meantime, the public has come to be familiar with those districts, and candidates have come to invest time and money in campaigning in those districts. As in *Kay,* Plaintiffs' delay makes their claims less than credible.  *See also McClafferty v. Portage Cnty. Bd. of Elections*, 661 F. Supp. 2d 826, 839-40 (N.D. Ohio 2009) (dismissing Equal Protection suit seeking injunction due to plaintiff's delay in bringing challenge until close in time to the election).

In the redistricting context in particular, laches is a well-recognized and appropriate defense. *See League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 578 (6th Cir. 2018) (noting that while the doctrine of laches "do[es] not arise in every case" it is "common in redistricting cases"); *Ariz. Minority Coal.*, 366 F. Supp. 2d at 908 ("The defense [of laches] applies to redistricting cases as it does to any other.").  Federal courts have *repeatedly* applied laches to bar the claims of *racial* gerrymandering plaintiffs seeking prospective injunctive relief.  *See Sanders*

---

[6] By the time this motion is heard, elections under the Plan will have occurred for the Michigan House in 2012, 2014, 2016, and 2018, the Michigan Congressional delegation in 2012, 2014, 2016 and 2018, and the Michigan Senate in 2014 and 2018. Only the Michigan House and Michigan Congressional delegation elections in 2020 will remain.

*v. Dooly Cnty.*, 245 F.3d 1289, 1290-91 (11th Cir. 2001); *White*, 909 F.2d at 104-05; *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353-55 (S.D. Fla. 1999).

In *Sanders*, the Eleventh Circuit affirmed the district court's holding that laches barred injunctive relief with respect to plaintiffs' claims that the county's supervisory districts were racially discriminatory. *Sanders*, 245 F.3d at 1290-91. Plaintiffs' delay was inexcusable because they waited over six years after the districting plan was first implemented and over five years after *Shaw v. Reno*, 509 U.S. 630 (1993), was issued (establishing the framework for such claims). *Sanders*, 245 F.3d at 1290-91. Further, defendants and citizens of the defendant county would be prejudiced because "(1) redistricting late in the decade would lead to back-to-back redistrictings . . . that would confuse voters and be unnecessarily costly to the County; and (2) the census data [then] available to redistrict" was "over ten years old and thus unreliable." *Id.*

Both of these prejudices exist with respect to Defendant here.  If this Court were to order new plans implemented in 2020, Michigan voters would vote under the current apportionment plan in 2018, a new court-ordered apportionment plan in 2020, and yet another apportionment plan in 2022 following the 2020 census. Officials who have developed constituencies, campaign strategies, and projects within their districts will have their expectations and investments displaced; and voters will undoubtedly be confused.  Further, the 2011 census information will be

nine years old by the time of the 2020 election.  As noted above, there have been significant shifts in Michigan's internal population since 2011.  The State should not be forced to use that stale and inaccurate data to draw new districts for a single, late-cycle election.

These same types of delay-induced prejudices were similarly cited to apply laches to racial gerrymandering claims in *White*, 909 F.2d at 104-05.  There, the Fourth Circuit reversed (on an abuse of discretion standard) a district court's order requiring reapportionment of a county board of supervisors.  *Id.*  The district court had held that laches did not apply to bar the claims of black voters who had challenged as discriminatory the county's plans.  *Id.* at 101.  In reversing, the Fourth Circuit first noted "that a challenge to a reapportionment plan close to the time of a new census, which may require reapportionment, is not favored."  *Id.* at 103. Further, plaintiffs' request would effectively require "two reapportionments within a short period of two years" thus "greatly prejudic[ing] the County and its citizens by creating instability and dislocation in the electoral system and by imposing great financial and logistical burdens."  *Id.* at 104.  It thus "ma[de] far more sense to await the 1990 census figures and the 1991 reapportionment . . . than for a court to intervene at such a late hour."  *Id.*

More recently, in *Fouts*, a three-judge panel held that laches barred racial gerrymandering challenges to two congressional district maps.  *Fouts*, 88 F. Supp.

15

2d at 1353-54.  Similar to Plaintiffs here, the *Fouts* plaintiffs sued after elections had already been held under the existing plans in 1992, 1994, 1996, and 1998.  *Id.* at 1354.  As is true here, there was only one remaining election to be held under the then-existing plans—in 2000—before the release of new census data would require reapportionment.  *Id.*  The panel rejected the plaintiffs' argument that laches could not apply because the 2000 election presented an "ongoing violation."  *Id.*  As in *Sanders* and *White*, the *Fouts* Court held that prejudice existed because of the burdens of frequent redistricting and because 1991 census data had become a stale and imperfect tool for redrawing maps. *Id.*

Plaintiffs omit discussion of *Fouts*, *White*, *Sanders*, and similar case law in their brief.  It is, however, apparent that there is nothing special about redistricting claims that would prevent the application of laches.  In fact, if anything, laches is *especially* applicable in redistricting cases given that redistricting statutes are subject to an automatic 10-year "reset" following each decennial census, and that Courts are to "exercise extraordinary caution" before disrupting state legislative redistricting prerogatives.  *Miller*, 515 U.S. at 915-16.

### 2.    Plaintiffs' cited authorities are easily distinguished or inapposite.

Not only do Plaintiffs omit discussion of relevant authorities actually addressed to redistricting—the few authorities they do cite are easily distinguished or inapposite.

Plaintiffs cite, for example, *Garza v. County of Los Angeles*, 918 F.2d 763 (9th Cir. 1990). (Pls.' Br., ECF No. 117, PageID.2342.)  In that case, Hispanic voters brought a racial gerrymandering challenge to county commissioner districts, alleging that the county intentionally cracked Hispanic populations to prevent them from holding a majority-minority district.  *Garza*, 918 F.2d at 765.  Non-census, post-census data showed that, though a Voting Rights Act Section 2-compliant, majority-minority district would have been impossible in prior elections, such a district would have been *newly* possible based on subsequent shifts in population.  *Id.* at 766.  The Court rejected the application of laches because the Plaintiffs in *Garza* brought a challenge in the *first year* their Voting Rights Act claim could theoretically be entertained and when data was fresh to support it.  *Id.* at 767-68, 772.  This is the opposite of the Plaintiffs here, who waited until the 2011 census data had become stale and until the time when the effects of a hypothetical 2011 gerrymander would be at their most attenuated.

17

Apart from *Shapiro* and *Garza*, Plaintiffs rely on only one[7] other redistricting case to support their arguments: the very recent decision of the three-judge panel in the Ohio partisan gerrymandering case of *Ohio A. Phillip Randolph Institute v. Smith*, No. 1:18cv357, 2018 WL 3872330 (S.D. Ohio Aug. 15, 2018).  (Pls.' Br., ECF No. 117, PageID.2340-41.)  In *Smith*, the panel denied the state defendant's motion to dismiss the plaintiffs' claims on the basis of laches.  *Smith*, 2018 WL 3872330, at *8.  In doing so, however, it relied primarily on intellectual property

---

[7] In further attempted support, Plaintiffs also include a parenthetical citation to *Concerned Citizens of Southern Ohio, Inc. v. Pine Creek Conservancy District*, 429 U.S. 651 (1977).  (Pls.' Br., ECF No. 117, PageID.2340.)  Plaintiffs characterize the decision in *Pine Creek* as "allowing a party to proceed with its constitutional challenges against a conservation district over a dissenting opinion in which Justice Rehnquist argued that the case should have been barred by laches. . . ."  (*Id.*)  The *Pine Creek* Plaintiffs challenged a statutory procedure for selecting and operating conservancy districts under the Due Process clause, the one-person one-vote principle, and an argument that the process disenfranchised certain freeholders.  *Pine Creek*, 429 U.S. at 652.  The three-judge panel of the district court dismissed, finding the same equal protection and due process claims to have been previously decided by *Orr v. Allen*, 248 U.S. 35 (1918); on appeal, the Supreme Court reversed, finding *Orr* to be distinguishable such that a merits review could proceed.  *Pine Creek*, 429 U.S. at 652-53.  The Supreme Court remanded for merits consideration—neither the district court nor the Supreme Court majority in *Pine Creek* expressly considered or rejected the defense of laches in the first instance.  *Id.*

cases, ignoring the bevy of existing federal authority applying laches in redistricting cases. *Id.*[8]

Like the panel in *Smith,* Plaintiffs otherwise rely on cases from completely distinguishable contexts. According to Plaintiffs, the Sixth Circuit "crystallized the justification" for the purported "rule" that it is "never appropriate to apply laches as a defense to gerrymandering claims" in *Kuhnle Brothers, Inc. v. County of Geauga,* 103 F.3d 516 (6th Cir. 1997). (Pls.' Br., ECF No. 117, PageID.2339-40.) The Sixth Circuit, however, did no such thing. The Sixth Circuit did not once mention laches, gerrymandering, or redistricting in *Kuhnle*—it instead considered the accrual date (for statute of limitations purposes) of a due process takings claim. *Kuhnle*, 103 F.3d at 520-22. In *Kuhnle,* a trucking company sought damages when a county resolution prohibited its trucks from traveling on certain roads. *Id.* at 518-19. The Sixth Circuit merely held that the *accrual date* for the damages claim was the date of enforcement of the ordinance—which was ongoing—and not the enactment date of the statute.

---

[8] Citing *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002) (holding that laches did not bar request for injunctive relief as to alleged *trademark infringement* but, instead, defendant must also show estoppel); *Danjaq, LLC v. Sony Corp.*, 263 F.3d 942, 959-60 (9th Cir. 2001) (while noting that laches for post-suit injunctive relief is usually improper because "almost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm[,]" the trial court did *not* err in dismissing copyright infringement claim for injunctive relief where "defendant will be substantially prejudiced in its ability to defend future claimed infringements in just the same way that it was prejudiced with regard to prior alleged infringements.").

19

*Id.* at 522-23.  To state that *Kuhnle* "crystallized" a laches bar in redistricting cases is to woefully overstate its holding.

In sum, Plaintiffs fail to support their request that this Court bar, as a matter of law, the Secretary from asserting laches as an affirmative defense.  The authorities on which Plaintiffs rely are easily distinguishable—and "the defense [of laches] applies to redistricting cases as it does to any other."  *Ariz. Minority Coal.*, 366 F. Supp. 2d at 908.

## IV.   CONCLUSION

The Supreme Court has long held that there is nothing special about claimants seeking prospective injunctive relief that would foreclose the application of laches to their claims.  *See Ancient Egyptian Arabic Order of Nobles of the Mystic Shrine v. Michaux*, 279 U.S. 737, 748-49 (1929).  As Congressional Intervenors state in their separate Motion for Summary Judgment, "'a constitutional claim can become time-barred just as any other claim can.'"  (Intervenors' Br., ECF No. 121, PageID.2789 (quoting *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) (emphasis omitted).)

For these reasons, and those stated above, this Court should deny Plaintiffs' Motion for Partial Summary Judgment, and award such other further relief as it deems just and equitable.

Respectfully submitted,

DICKINSON WRIGHT PLLC               JONES DAY

/s/ Peter H. Ellsworth
Peter H. Ellsworth (P23657)         Michael Carvin
Ryan M. Shannon (P74535)            Attorneys for Defendant
Attorneys for Defendant

Dated: October 12, 2018

21

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on October 12, 2018, I caused to have electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.


               /s/ Ryan M. Shannon


537708