UNITED DISTRICT COURT EASTERN
DISTRICT OF MICHIGAN SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., Plaintiffs, v. RUTH JOHNSON, in her official capacity as Michigan Secretary of State Defendant. | Civil Action No. 17-cv-14148 Hon. Eric L. Clay Hon. Denise Page Hood Hon. Gordon J. Quist |

**CONGRESSIONAL INTERVENORS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiffs (collectively "Democratic Voters") have introduced absolutely no evidence that they have suffered an injury-in-fact because they live in certain congressional districts. Similarly, they have introduced absolutely no evidence that would lead a fact finder to conclude Plaintiffs were diligent in protecting their legal rights. Of course, this is not for a lack of trying, as Plaintiffs proffered over 1600 pages of "evidence" they allege proves their harms. This Court should reject Plaintiffs' quantity-over-quality-approach to motions practice by finding in favor of Intervenors.

**I.   Plaintiffs Have Offered No Evidence They Have Suffered an Injury-in-fact Personal to Them**

To invoke the power of the courts, a plaintiff "must first demonstrate that he has standing to do so, including that he has a personal stake in the outcome." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018) (internal quotations omitted); *see also id.* at 1929. Injury in the gerrymandering context "is district specific." *Id.* at 1930. Proving an

1

"injury-in-fact . . . turns on effect, not intent, and requires a showing of a burden on the plaintiffs' votes that is actual or imminent, not conjectural or hypothetical." *Id.* at 1932 (internal quotations omitted). The essence of *Gill's* unanimous majority opinion is that federal courts are "not responsible for vindicating generalized partisan preferences" and instead must "vindicate individual rights." *Id.* at 1933. Plaintiffs have wholly failed to identify an injury specific to them as individuals, separate and apart from their membership in the Democratic party or as proponents of Democratic candidates.[1]

### a. Declaration of Mike Vatter

Mr. Vatter makes several assertions of which he has no personal knowledge. *See, e.g.,* Decl. of Vatter (Pls.' Ex. 55 at ¶ 21) (stating that Michigan's "1st, 4th, 7th, 8th, 10th, and 11th Congressional districts were intentionally drawn by Republicans to maintain or increase Republican voting share . . . ."). Personal knowledge is a requirement for declarations submitted in summary judgment proceedings. *See* Fed. R. Civ. P. 56(c)(4). Mr. Vatter was a Democratic staffer in the Michigan legislature who was never privy to the Republican Caucus' internal deliberations, a fact which he acknowledges—albeit in an accusatory manner. Decl. of Vatter (Pls.' Ex. 55 at ¶ 18) ("Before the plans were publicly revealed . . . Republican legislators secretly reviewed and approved the plans."). Yet, Mr. Vatter goes on to state that he has personal knowledge of the *intent* of the

---

[1] Plaintiffs have offered no evidence by Chen to show they have suffered an individualized injury that is redressable. *See, e.g.,* Cong. Int. Mot. Summ. J. at 10, 13-14. In so far as Plaintiffs believe Chen's evidence is sufficient, those contentions are rebutted in Intervenors' Motion. *See generally id.*

legislators in the deliberations he admits he was never actually privy to. *Compare id.* at ¶ 18, *with id.* at ¶ 21. In fact, throughout Mr. Vatter's declaration he asserts expert opinions that are postured as matters with which he has personal knowledge. *See, e.g., id.* at ¶¶ 21-31. Mr. Vatter is not an expert.

"Statements contain[ing] . . . nothing more than rumors, conclusory allegations and subjective beliefs . . . are wholly insufficient . . . .", *see Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584-85 (6th Cir. 1992), and should be stricken from the record. *See Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015). As such, the Vatter declaration, at least as it pertains to Michigan's congressional districts, is insufficient to preclude summary judgment.

### b. Plaintiffs' Declarations

"To prevail on a . . . motion for summary judgment—as opposed to a motion to dismiss— . . . , mere allegations of injury are insufficient. Rather, a plaintiff must establish that there exists no genuine issue of material fact as to . . . the merits." *Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 329 (1999). Plaintiffs submitted nine (9) declarations by individual Plaintiffs alleging that they were either "packed" or "cracked" into their specific district. *See* Pls.' Ex. 62-70. Simple assertions of a legal conclusion are not evidence of individualized harm. Plaintiffs' declarations are no "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," which is insufficient in the context of a motion to dismiss let alone as evidence in a motion for summary judgment. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, the

Plaintiffs' declarations are also insufficient to preclude summary judgment.

### c. The Warshaw Chart

The chart adapted by Warshaw[2] is insufficient under *Gill* to provide a basis for Plaintiffs' standing under Article III. *See* Decl. of Warshaw (Pls.' Ex. 57); Warshaw Chart (Pls.' Ex. 37). The first and most obvious flaw is that, even if the data proves what Plaintiffs claim it does, and even if the data Plaintiffs used is valid for standing purposes, they have only provided evidence that many, if not most, of the individual Plaintiffs have suffered no harm at all. *See, e.g.,* Warshaw Chart (Pls.' Ex. 37). In fact, all CD 1, CD 4, CD 7, and CD 11 Plaintiffs currently live in a district that is less "packed" or "cracked" than many, and in some cases all, of Chen's simulated plans. *See* Warshaw Chart (Pls.' Ex. 37 at Page ID# 3881). These Plaintiffs, even taking their evidence at face value, suffer from the same standing problem that Mr. Whitford suffered from in *Gill*. *See Gill*, 138 S. Ct. at 1924-25, 1933.

The second primary flaw is that Plaintiffs living in CD 5, CD 9, and CD 12 cannot show harm since, as long time Democratic voters, they have been able to consistently elect Democrats to represent their interests in Congress. The only possible harm they point to is that their votes are "wasted" and would presumably be more effective in electing more Democrats elsewhere. *See e.g.,* Decl. of Grasha (Pls.' Ex. 62 at

---

[2] Nothing in this chart addresses the issues highlighted in Intervenors' Motion. Specifically, the same failures identified in Intervenors' Motion similarly infect this reuse of that same data and analysis. *See* Cong. Int. Mot. Summ. J. at 5-16.

2). This necessarily directs the Court to look to harms *outside* of the individual Plaintiffs' district and to instead consider the statewide performance of Democrats as a whole. The federal courts are "not responsible for vindicating generalized partisan preferences." *See Gill*, 138 S. Ct. at 1933. Therefore, Plaintiffs have not shown and cannot show individual harm through evidence of statewide harms.

## II. Plaintiffs' Claims Are Barred by Laches [3]

Plaintiffs continue to proceed from an improper understanding of laches. First, laches is a defense available in gerrymandering cases, which are, by their very nature, for prospective relief. Second, Plaintiffs again adduce no facts or evidence that they did not impermissibly delay bringing suit. As such, Intervenors' Motion for Summary Judgment on laches must be granted.

### a. Plaintiffs Produce No Facts to Excuse Their Delay

Plaintiffs rely primarily on averments that they "needed time to gather evidence necessary to draft proper claims." Pls.' Resp. at 69. This assertion is unpersuasive on multiple fronts. First, the Democratic Voters were well aware of their alleged harms *as* the 2011 plans were being adopted. *See, e.g.,* Decl. of Smith (Pls.' Ex. 54 at 2-6) (detailing that she was witness to a number of LWVMI's alleged harms as they happened in 2011);

---

[3] Intervenors incorporate by reference all of the arguments and evidence found in their Response to Plaintiffs' Motion for Partial Summary Judgment. *See* Cong. Int. Resp. Pls.' Mot. Partial Summ. J. (ECF No. 128). The arguments and evidence presented in that document are applicable to a motion *for* summary judgment as they are as a response *against* that same motion.

5

*see also* Cong. Int. Resp. Pls.' Mot. Partial Summ. J. at Ex. A-F (ECF No. 128). In fact, in his declaration, Mr. Vatter details alleged harms stemming from the redistricting process in *2001*, over 17 years ago. *See* Decl. of Vatter (Pls.' Ex. 55 at ¶¶ 10-14).

Plaintiffs' reliance on *Jeffers v. Clinton*, 730 F. Supp. 196, 202-203 (E.D. Ark. 1989) is easily distinguishable. The Court in *Jeffers* reasoned that the "clock" did not really start on plaintiffs' claims until the Supreme Court decided *Thornburg v. Gingles*. *Id.* at 201. The *Jeffers* court also goes on to note that applying laches is a "question . . . of judgment and degree." *Id.* at 203. Here, the Democratic Voters assert no facts or intervening law that could excuse their delay. In so far as Democratic Voters fail to identify any contradictory facts, this Court must accept Intervenors' proffered facts. Fed. R. Civ. P. 56(e). As such, this Court should find for Intervenors on the defense of laches.

### b. Laches Applies to Gerrymandering Claims as a Matter of Law

"A constitutional claim can become time-barred just as any other claim can. Nothing in the Constitution requires otherwise." *Block v. North Dakota*, 461 U.S. 273, 292 (1983) (citation omitted); *Id.* (finding continuing constitutional harm was no bar to a statute of limitations defense). Plaintiffs take issue with cases like *Block* and *U.S. v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) because they assert that they are cases concerning statutes of limitation rather than laches. This, however, ignores the fact that laches is merely the equitable counterpart to statutes of limitations. *See Patton v. Bearden*, 8 F.3d 343, 347-48 (6th Cir. 1993); *id.* at 348 ("[L]aches is a defense peculiar to courts of equity, and the doctrine usually applied where no statute of limitations governs.").

6

The clearest example of the applicability of laches to claims for injunctive relief in the gerrymandering context is *Benisek v. Lamone*.[4] The Court in *Benisek* relied on laches principles in affirming a denial of a preliminary injunction. *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018); (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)[5]). There can be no doubt that the Supreme Court believes that "reasonable diligence" is a requirement for injunctive relief, which "is as true in election law cases as elsewhere." *Benisek*, 138 S. Ct. at 1944.

## CONCLUSION

For the aforementioned reasons, Congressional Intervenors' respectfully request this Court grant their Motion for Summary Judgment.

Dated: October 26, 2018.

| | |
|---|---|
| **Holtzman Vogel Josefiak Torchinsky PLLC** | **Clark Hill PLC** |
| */s/ Jason B. Torchinsky* | */s/ Charles R. Spies* |
| Jason Torchinsky | Charles R. Spies |
| Shawn Sheehy | Brian D. Shekell (P75327) |
| Phillip M. Gordon | 212 E Cesar Chavez Ave. |
| 45 North Hill Drive, S 100 | Lansing, Michigan 48906 |
| Warrenton, Virginia 20106 | P: (517) 3183100 |
| P: (540) 341-8800 | E: cspies@clarkhill.com |
| E: JTorchinsky@hvjt.law | bshekell@clarkhill.com |
| SSheehy@hvjt.law | |
| PGordon@hvjt.law | |

---

[4] There are, however, a number of other prominent examples in the gerrymandering context. *See, e.g., White v. Daniel*, 909 F.2d 99, 102-04 (4th Cir. 1999) (laches barred constitutional and Voting Rights Act claims); *Ariz. Minority Coal. For Fair Redistricting v. Ariz. Indep. Redistricting Comm'n*, 366 F. Supp. 887, 908 (D. Ariz. 2005) ('The [laches] defense applies to redistricting cases as it does to any other.").

[5] *Holmberg* is itself a case applying laches to a congressionally created federal right.

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2018, the forgoing has been electronically filed with the Clerk of the Court using the CM/ECF system. This system as sent a notice of electronic fling to all counsel of record.

*/s/ Jason Torchinsky*
Jason Torchinsky