# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | ) ) ) Case No. 2:17-cv-14148 |
| Plaintiffs, | ) ) Hon. Eric L. Clay ) Hon. Denise Page Hood ) Hon. Gordon J. Quist |
| v. | ) ) **VOTERS' REPLY BRIEF IN** ) **SUPPORT OF THEIR MOTION** |
| RUTH JOHNSON, in her official Capacity as Michigan Secretary of State, et al., | ) **FOR PARTIAL SUMMARY** ) **JUDGMENT ON LACHES** ) ) |
| Defendants. | ) |

Joseph H. Yeager, Jr. (IN 2083-49)
Kevin M. Toner (IN 11343-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
MBrewer@goodmanacker.com

*Counsel for Voters*

## ARGUMENT

**I.     The Affirmative Defense of Laches Fails as a Matter of Law**

The Secretary and Congressional Intervenors make several arguments in their briefs opposing Voters' motion for partial summary judgment on laches (collectively, the "Opposition Briefs"), but the Court should reject them all, because they rely on cases that (1) do not address laches; (2) do not address cases in the same procedural posture; and/or (3) do not address the *reasons* why laches should not apply to constitutional claims or claims of recurring, ongoing harms, instead relying far too often on statute-of-limitations decisions with different underlying rationales.

**A.     Laches Does Not Apply To Claims Seeking Injunctions To Bar Ongoing and Future Violations Of Constitutional Rights.**

Perhaps most notable is the Opposition Briefs' failure to meaningfully address the principal reason why laches never bars claims like Voters': where the violation is ongoing, and where the plaintiffs seek an injunction only to prevent that ongoing, future injury, the principles underlying the equitable defense of laches do not apply. (*See* Voters' Motion for Partial Summary Judgment, ECF No. 117, Page ID #2339-44.)

In response, the Opposition Briefs cite a handful of cases, all of which are distinguishable. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959-60 (9th Cir. 2001) (cited in the Secretary's Brief at page 10) agrees with the "generally sound" principle that

1

laches "does not bar a prospective injunction against future" harm. It then describes itself as a "special case" that is an exception to the that rule, because there were "evidentiary defects" that barred older claims and that likewise barred more recent, ongoing claims. Here, by contrast, there are no such "evidentiary defects" to Voters' claim—certainly, none of this type have been raised to date—so the "special exception" rule in *Danjaq* would not apply even were this case in the Ninth Circuit.

Both Opposition Briefs cite *Fouts v. Harris*, 88 F. Supp. 2d 1351, 1353-55 (S.D. Fla. 1999), but *Fouts* was hardly presented with the ongoing-harms argument; the plaintiffs in *Fouts* opposed dismissal merely by citing a "single district court case." *Id.* at 1354. The Voters, by contrast, have presented numerous authorities—from decades ago through recent weeks—showing that laches should not apply to their claims.

*Fouts* relied on the Fourth Circuit's decision in *White v. Daniel*, 909 F.2d 99 (4th Cir. 1990), and both Opposition Briefs do as well. But the plaintiffs in *White never made the argument that laches cannot apply to ongoing harms*. Neither the phrase "ongoing harm," nor the concept, is found even once in *White*. Nor did *White* need to grapple with that principle, because the plaintiffs in *White* sought "completely gratuitous" relief, challenging board-of-supervisors districts with "no elections scheduled" before those districts would be changed. *Id.* at 103-04 & n.4. Because the *White* court did not need to consider, and was not presented with, the same ongoing-harms argument or authorities presented here, it has no persuasive value as to Voters' motion.

2

Congressional Intervenors cite *Michigan Chamber of Commerce v. Land*, 725 F. Supp. 2d 665 (W.D. Mich. 2010) (their Opposition Brief at page 11), which again is distinguishable because the plaintiffs in that case never made an ongoing-harms argument. On top of that defect, *Land specifically rejected* the laches defense. *See id.* at 680-82.

Nor does *Block v. North Dakota*, 461 U.S. 273 (1983) (cited in Congressional Intervenors' Brief at 10), support application of laches to claims of ongoing, future violations. The Court in *Block* was *never even presented with* the laches issue, because the state of North Dakota (the party asserting it in the district court) lost on the issue, and "did not pursue [it] further." *Id.* at 279 n.7. *Block* separately commented that constitutional claims can become time-barred, but the bar in *Block* was a statute of limitations, not laches. *Id.* at 292.

There are important reasons why statutes of limitations may in some circumstances bar federal statutory claims whereas laches will not. Statutes of limitation are Congress's expression of the exact period during which a plaintiff must bring its claims. Laches, on the other hand, is a principle derived solely from courts' equitable authority to do justice in a particular case, and there is no exact rule specifying when a claim will be barred by laches. Deference to Congress would require application of a statute of limitations to plaintiffs' statutory redistricting claims, but no such statute applies here, and no such deference is warranted in deciding whether to apply the judge-created doctrine of laches.

3

Finally, Congressional Intervenors cite what they claim is a "long line" of cases in which laches has served to bar claims with ongoing and/or future violations. (*See* Constitutional Intervenors' Brief at 13-14.) But those courts were either not presented with the ongoing-harms argument, they were presented in different postures, or both. *See MacGovern v. Connolly*, 637 F. Supp. 111 (Dist. Mass. 1986) (not presented with the argument); *Maxwell v. Foster*, 1999 WL 33507675, at *2-4 (W.D La. Nov. 24, 1999) (same); *Varner v. Smitherman*, 1993 WL 663327, at *2-3 (S.D. Ala. Dec. 8, 1993) (same); *Knox v. Milwaukee Cty. Bd. of Elections Comm'rs*, 581 F. Supp. 399, 407 (E.D. Wis. 1984) (not presented with the argument, and laches was used only to reject preliminary-injunction motion filed shortly before the election, not a voting or redistricting claim on the merits); *Ariz. Minority Coal. for Fair Redistricting v. Arizona Independent Redistricting Commission*, 366 F. Supp. 2d 887, 908-09 (D. Ariz. 2005) (same); *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) (same); *McNeil v. Springfield Park Dist.*, 656 F. Supp. 2d 1200 (C.D. Ill. 1987) (same).

If the Voters had waited to seek a *preliminary* injunction until weeks before an election, laches might bar such a motion under these cases. But Voters seek at trial a declaration as to the constitutionality of certain districts and a permanent injunction requiring the Secretary to redraw districts in a constitutional manner. That remedy is necessary and narrowly tailored to protect against ongoing and future harms at and after the 2020 election. Laches does not and should not apply in such circumstances, as even a case the Secretary cites explains. *See Sanders v. Dooly County*, 245 F.3d 1289

4

(11th Cir. 2001) (cited in the Secretary's Brief at 14) (reversing the application of laches to the plaintiffs' claim for declaratory relief).[1]

### B. The Sixth Circuit's Rule Preventing Application Of Laches To Requests For Injunctions Applies Beyond Intellectual Property Cases.

Both Opposition Briefs acknowledge that the Sixth Circuit has an established principle that laches does not apply to claims requesting to enjoin ongoing violations, at least in the "intellectual property" context. (*See* Secretary's Brief at 18-19 & n.8; Congressional Intervenors' Brief at 18-19 & n.11; *id.* at 14 n.6, 16-17.) But both briefs attempt to limit laches to that context when there is no reason to do so.

Voters previously explained that the Sixth Circuit's decision in *France Mfg. Co. v. Jefferson Elec. Co.*, 106 F.2d 605 (6th Cir. 1939), stands for the proposition that laches "is no defense to a suit for an injunction." *Id.* at 609; *see* ECF No. 117, at Page ID #2343. The Secretary ignores *France Manufacturing*. Congressional Intervenors attempt to distinguish it (*see* Congressional Intervenors' Brief at 16-17) then cite a *different* passage of the opinion that pertains to "the recovery of profits and damages," not to an injunction. *Id.* at 609. *France Manufacturing* continues to stand for the proposition that laches cannot bar the Voters' request for injunctive relief; for that reason, courts

---

[1] Congressional Intervenors also rely on several cases that did not discuss laches at all, including *Benisek v. Lamone*, 138 S. Ct. 1942 (2018). Voters previously distinguished *Benisek* in their opposition to the Congressional Intervenors' motion for summary judgment (*see* ECF No. 129, at Page ID# 3400-01), and they incorporate that discussion by reference here. In short, *Benisek* did not address laches.

5

within this circuit have continued to reject laches as a defense to such claims. *See Smith*, 2018 WL 3872330, at *8; *Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 412 (6th Cir. 2002).

There are good reasons why the Sixth Circuit's reasoning in these cases should apply even more strongly in gerrymandering cases. Requests to enjoin violations of intellectual property laws seek to prevent ongoing harm. Each time a manufacturer sells an infringing product, the patent holder is injured anew. So too in redistricting cases: each time that an unconstitutionally partisan redistricting plan is used to elect voters' representatives, it imposes harm on a state's voters. But whereas trademark and copyright disputes concern commercial interests such as goodwill and brand recognition, gerrymandering must be enjoined to protect and preserve our citizens' fundamental rights under the First and Fourteen Amendments.

Neither the Secretary nor Congressional Intervenors credibly or persuasively refute the Voters' authority. Their laches defense should be rejected.

## II. The Other Arguments Presented In The Opposition Briefs Should Be Rejected.

The Opposition Briefs present a handful of other arguments or claims, each of which should be rejected.

The Secretary claims that laches should not be dismissed as a defense "before the framework [governing a partisan gerrymandering claim] is even known." (Secretary's Brief at 2; *see id.* at 9.) But there are already workable and manageable

6

standards for the Voters' claims. (*See* ECF No. 129, at Page ID #3384-92.) Indeed, the Secretary admits that any standard is "likely to depend on some kind of showing of Legislative Intent." (Secretary's Brief at 10.) Regardless, even if there were some question about the standard, no such question is germane to either the delay or prejudice prongs of a laches analysis: the Secretary has not identified any evidence that would have been preserved had the standard been articulated with more specifics.

Both the Secretary and Congressional Intervenors complain that if Voters prevail, maps will be redrawn near the end of the 10-year election cycle. The Secretary suggests that if this happens, the Court will end up relying on "stale, imperfect data" (Secretary's Brief at 4), but that has nothing to do with any element in a laches analysis. Any argument about "stale" or "imperfect data" is an improper argument on the remedy that the Court may *defer* until remedial maps are drawn. And of course the argument proves too much. Nearly every late cycle (*e.g.* 2020) legislative election in the United States is conducted under a map based on ten-year-old census data.

Both the Secretary and Congressional Intervenors argue prejudice by claiming that "memories of key personnel and legislators" have faded and that "key documents" might have been destroyed. (Secretary's Brief at 5-6; Congressional Intervenors' Brief at 7-9.) These arguments on prejudice are irrelevant, because laches should never be a defense to the type of claims Voters bring here.

But even if the Court were to consider the prejudice and delay elements of a laches analysis, Defendants' arguments on prejudice would still be incorrect.

7

Defendants' argument that because *some* memories have faded *they* must be prejudiced ignores that all parties claiming that the maps were constitutional *had every incentive* to preserve evidence from day one, because the evidence shows they expected litigation even before the plans were enacted. If anything, faded memories and lost documents hurt *Voters'* claims—as the Speaker of the Michigan House of Representatives has counseled. (*See* ECF No. 129, at Page ID 3405; ECF No. 129-37, at Page ID #3876) (urging House Republican members to be "careful in commenting" on redistricting because "everything we say and do can end up in court on this issue"). This means that even if the Court considers prejudice, neither Congressional Intervenors nor the Secretary has pointed to specific evidence that was destroyed or memories that have faded *that would have helped defend the constitutionality of the plans.*[2] Pointing in the abstract to faded memories or lost documents is not enough under these circumstances.

Relatedly, the Secretary points to other types of claimed prejudice, such as "disruption to the existing election Plan" and confusion regarding "constituencies, campaign strategies, and projects within [candidates'] districts." (Secretary's Brief at 11, 14.) This type of "disruption" prejudice can be rejected out of hand, however,

---

[2] The Secretary mentions in passing alternative maps that were destroyed following 2012 litigation challenging the plans. (Secretary's Brief at 6.) But if those alternative maps were preserved for the 2012 litigation, they should still be present in the files of the lawyers who represented those litigants. And in any event, various alternative maps from 2011 have already been produced in this litigation, and some others have been (in the Voters' view improperly) shielded from production by assertion of various privileges. As far as the Voters are aware, all maps from 2011 still exist.

8

because it is neither material nor related to the timing of this action. Moreover, the Secretary never identified disruption or altered campaign strategies as prejudice in discovery, even when Voters specifically asked for the "legal and factual bases" for her affirmative defenses. (*See* Ex. 1 to Voters Mot. S.J., pp. 17-18) (the Secretary listing only faded memories and lost documents, not any "disruption" to the Plan, as the factual basis for the laches defense). *See Peake v. Nat'l City Bank of Mich.*, No. 05-72520, 2007 WL 951420, at *4 (E.D. Mich. Mar. 27, 2007) (Hood, C.J.) (granting motion to exclude evidence not produced in discovery).

Both the Secretary and Congressional Intervenors also make procedural arguments that are incorrect. The Secretary is incorrect that the Voters' motion is to be analyzed as a "motion to strike under Rule 12(f)." (Secretary's Brief at 7.) Plaintiffs may appropriately move for summary judgment on its adversary's affirmative defense when they are entitled to judgment as a matter of law, as the Voters are here. (*See* ECF No. 117, at Page ID #2338, and case cited.) The Congressional Intervenors are incorrect that this Court "must accept Congressional Intervenors' proffered facts as admitted." (Congressional Intervenors' Brief at 2.) Voters are entitled to judgment as a matter of law, *see supra* at 1-6 , so the Court need not consider any factual disputes.

Finally, Congressional Intervenors try to introduce issues irrelevant to a laches analysis, including the views of the League of Women Voters of Michigan on apportionment. (Congressional Intervenors' Brief at 3-6.) Because they are not germane to this Court's determination of laches, Voters do not address them further.

9

## CONCLUSION

The Voters respectfully request that the Court grant their motion for partial summary judgment on laches.

Respectfully submitted,

Date: October 26, 2018

/s/ *Joseph H. Yeager, Jr.*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Kevin M. Toner (IN Bar No. 11343-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Jeffrey P. Justman (MN Bar No. 390413)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com

*Counsel for Voters*

## Certificate of Service

I hereby certify that on October 26, 2018, I caused to have electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted,

/s/ Joseph H. Yeager, Jr.