IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, et al.,

    Plaintiffs,

v.

RUTH JOHNSON, in her official
capacity as Michigan Secretary of State

    Defendant.
_____/

Civil Action No. 17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

## INTERVENORS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY AND DEFER CONSIDERATION OF SETTLEMENT AGREEMENT

Congressional and Legislative Defendants-Intervenors ("Intervenors"), by their attorneys, seek leave of Court to conduct limited discovery related to Defendant Secretary of State Jocelyn Benson's ("Secretary Benson") continued standing as a defendant in this matter and the clandestine settlement agreement she has negotiated and potentially entered into with Plaintiffs without any involvement from the Intervenors.

Secretary Benson has only been a defendant in this matter since January 15, 2019. (ECF No. 194). Despite this fact and repeated representations from her attorneys that they lack sufficient information regarding the specifics of the lawsuit

220947060.1

such that they cannot advise how they intend to proceed with even the most basic of procedural issues at trial, Secretary Benson has now apparently entered into a potential settlement agreement with Plaintiffs under terms that Intervenors are not aware of. The fact that Secretary Benson has potentially reached a settlement with Plaintiffs only days after being recognized as a Defendant by the Court and without any involvement or input from Intervenors creates serious doubt regarding her continued standing as a defendant in this case. This is especially true considering Secretary Benson's public positions regarding so-called gerrymandering, all of which suggest she is aligned with Plaintiffs and the relief they are seeking in this lawsuit.

Aside from the obvious concerns that are created by this new alignment, Intervenors are troubled by the fact that Secretary Benson appears to have negotiated a settlement with Plaintiffs, which Intervenors suspect will undermine the current law and place impermissible burdens on Intervenors' rights. These concerns are based, in part, on the fact that neither Intervenors nor their attorneys had been invited to participate in settlement negotiations as of the time Secretary Benson and Plaintiffs informed the Court of the potential settlement. Indeed, Intervenors were not even aware that Plaintiffs and Secretary Benson were engaging in settlement discussions (much less may have reached a potential agreement) until they both filed complementary responses with this Court on

January 17, 2019 concurring in Intervenors' request for a stay.

Based on the foregoing, Intervenors request that this Court (i) provide them with leave to conduct limited discovery regarding Secretary Benson's views regarding this lawsuit and the specific factual and legal allegations raised by Plaintiffs, her communications with Plaintiffs and her settlement negotiations with Plaintiffs, all of which speak to her continued standing as a defendant in this matter; and (ii) defer any consideration of a settlement agreement until discovery of these issues has been completed.

## BACKGROUND

1. Secretary Benson assumed office on January 1, 2019. This Court first recognized her status as a Defendant on January 15, 2019. (ECF No. 194). Two days later, on January 17, 2019, Secretary Benson requested that this Court adjourn the February 5, 2019 trial date because it "will permit <u>the Secretary of State and Plaintiffs</u> the opportunity to focus their efforts on negotiating a mutually agreeable and complete resolution of their disputes...." (ECF No. 199 at pg. 2) (emphasis added). Likewise, Plaintiffs have told this Court that an adjournment of the trial date is necessary "because of the <u>high likelihood that the Secretary of State and Plaintiffs</u> will soon reach a settlement of the issues in this case." (ECF No. 200 at pg. 1, emphasis added).

2. These unambiguous statements and Secretary Benson's conduct since

she assumed office and began participating in this lawsuit call into serious question her standing to continue to act as a Defendant in this case and enter into a settlement agreement with Plaintiffs. *See, e.g., Dev. Fin. Corp. v. Alpha Hous. & Health Care*, 54 F.3d 156, 159 (3d Cir. 1995) ("In determining the alignment of the parties for jurisdictional purposes, the courts have a duty to look beyond the pleadings and arrange the parties according to their sides in the dispute. . . . Opposing parties must have a collision of interests over the principal purpose of the suit."). Stated differently, Secretary Benson's desire and ability to reach a potential settlement with Plaintiffs just two days after she became a Defendant in this matter strongly suggest that her interests are aligned with Plaintiffs' interests. See Bridge Magazine, "Will Jocelyn Benson defend Michigan gerrymandering tactics she once fought?" (J. Kurth, January 11, 2019). To the extent Secretary Benson is aligned with Plaintiffs, she cannot continue to function as a defendant in this case.

3. Concerns regarding Secretary Benson's potential alignment with Plaintiffs could be further bolstered by her actions prior to assuming office on January 1, 2019. This includes Secretary Benson's prior dealings with the League of Women Voters, other named Plaintiffs and their counsel (and former Michigan Democratic Party Chairman and Benson campaign donor) Mark Brewer, her positions with respect to legislative and Congressional map drawing, and whether

she received any campaign contributions from Plaintiffs. Intervenors should be permitted to conduct discovery regarding these issues as they directly relate to Secretary Benson's potential bias in favor of Plaintiffs and, in turn, her standing as a defendant in this matter.

4. The manner in which Secretary Benson has engaged in settlement negotiations with Plaintiffs further adds to Intervenors' concerns regarding her standing in this matter. As stated above, Intervenors have been effectively shut out of any settlement discussions involving Secretary Benson. In fact, Intervenors did not become aware that Secretary Benson was engaged in settlement discussions with Plaintiffs until they filed their Response on January 17, 2019 concurring in Intervenors' request for a stay. This begs the question, if Secretary Benson is not aligned with Plaintiffs, why is she engaging in clandestine settlement discussions with Plaintiffs and why have she and her attorneys kept Intervenors in the dark regarding a potential resolution?

5. To this end, Plaintiffs have misled this Court when they represented that Intervenors have "not chosen" to participate in settlement discussions.[1]

---

[1] Indeed, in the Declaration of Joseph H. Yeager, Jr. that was attached as Exhibit 1 to Plaintiffs' surreply to the motion to stay, Mr. Yeager states that "No Intervenor counsel asked to participate in settlement discussions or made any settlement proposal prior to filing their Reply." (Yeager Dec. at ¶ 7). Not making an affirmative request to participate in apparent (but unconfirmed in any details) secretive settlement discussions is not "not choosing" to participate in them.

Intervenors cannot be in a position to "not choose" to participate in settlement negotiations when there has never been an option to do so. Despite Plaintiffs' gamesmanship in a recent court filing about what it means to "not choose" to participate in settlement negotiations, one thing is clear from the emails cited by Plaintiffs' Counsel – there is not a single reference to having a telephone call or in-person meeting to discuss settlement, a draft settlement agreement for Intervenors to review or any other meaningful effort to make Intervenors aware of the status of settlement discussions. Indeed, no such opportunity was made available to Intervenors. Given Plaintiffs' apparent confusion as to Intervenors' desire or "choice" to engage in settlement discussions, as of this filing, Intervenors have made an affirmative request to participate in any and all settlement discussions.

6. In addition to misleading this Court, Plaintiffs appear to condition Intervenors' participation in any settlement discussions on their agreement to terms that have been "proposed" by Plaintiffs and potentially agreed to by Secretary Benson. (Ex. 1, 1/21/2019 email from J. Yeager to C. Spies). Placing conditions on Intervenors' ability to participate in and discuss a potential resolution of this case should be deeply troubling to the Court and the people of the State of Michigan, as it casts serious doubt on Secretary Benson's continued standing. Plaintiffs' unwillingness to provide Intervenors with the specific terms of the potential settlement also has the practical effect of keeping the people of the State

of Michigan in the dark about the potential resolution of this case, when these citizens have the right to know the bases for their elected officials' decisions.

7. Secretary Benson's new legal team has also been coy regarding simple procedural issues relating to the trial; presumably for the purpose of prejudicing Intervenors in their trial preparations. For example, on January 11, 2019, Secretary Benson's Counsel advised Counsel for Intervenors that Secretary Benson is still getting caught up to speed on the lawsuit.[2] As such, they could not provide a position with respect to a simple and straightforward pretrial issue of whether Secretary Benson intends to continue to use defense expert Yan Liu at trial. On January 14, 2019, Intervenors' Counsel, Peter Kupelian, again asked Secretary Benson's Counsel, Scott Eldridge, whether they intended to use Dr. Liu at trial. Again, no answer could be given by Secretary Benson's team that day because they were still assessing the case. Still no answer to this reasonable request has been given to Intervenors' Counsel to date.

8. While Secretary Benson's legal team claims to be too new to the case to meaningfully participate in important pretrial matters, we now know that Secretary Benson and Plaintiffs have engaged in settlement discussions to such a

---

[2] Secretary Benson replaced the Dickinson Wright and Jones Day law firms with Miller Canfield on or about January 9, 2019, even though Dickinson Wright and Jones Day had extensive subject matter expertise and were providing diligent and competent representation to the Secretary of State for nearly a year.

degree that the terms of an intricate and complicated settlement agreement may be ready for this Court to consider as early as February 5, 2019. It strains reason to suggest that Secretary Benson lacks sufficient information regarding the substantive issues in this case, but is able to craft a potential settlement that would resolve these very same issues.

9. It also appears that Secretary Benson does not have a sufficient understanding of this case, yet she is willing to enter into a settlement agreement that may not be in the best interests of the people of the State of Michigan. On January 17, 2019, Secretary Benson issued a press release stating, "It is clear the court has found significant evidence of partisan gerrymandering, and the likely outcome would not be favorable to the state." https://www.michigan.gov/sos/0,4670,7-127--487745--,00.html. This Court has made no such final determination. That is the entire purpose of the February 5, 2019 trial. Secretary Benson's position also fails to recognize the likelihood that the Supreme Court may issue rulings in *Common Cause v. Rucho* (Sup. Ct. #18-422) and *Benisek v. Lamone* (Sup. Ct. #18-726), that are contrary to both her and Plaintiffs' view of the U.S. Constitution's application. Secretary Benson's rush to judgment only further evidences that her interests are aligned with Plaintiffs.

10. As Secretary Benson has informed this Court, any consent decree subject to Court approval must be "fair, adequate, and reasonable, as well as

8

consistent with the public interest." (ECF No. 199 at pg. 3, quoting *United States v. Cty. of Muskegon*, 298 F.3d 569, 581 (6th Cir. 2002). Limited and swift discovery is now needed that so that this Court can consider whether Secretary Benson has continued standing as a defendant in this matter and whether she has the ability to enter into a settlement agreement resolving the issues addressed in this lawsuit.

11. Limited discovery is also required so that this Court can engage in a meaningful analysis of the potential settlement between Secretary Benson and Plaintiffs. For example, in addition to the aforementioned issues relating to Secretary Benson's prior dealings with Plaintiffs, this Court should be fully informed as to when settlement discussions were initiated and by whom, who participated in the settlement negotiations, the dates and details regarding settlement meetings, the details of any draft settlement proposals, the positions of all parties with respect to settlement, and the potential impact settlement terms could have on Legislative Intervenors' Constitutional rights (pursuant to Article I, Section 4 of the U.S. Constitution) and state constitutional obligations to work to adopt replacement maps as leaders of the legislative branch, should any current maps by struck down by this Court. A similar impact would be felt with respect to the Congressional Intervenors as elected officials whose districts would be meaningfully impacted by the redrawing of Congressional district lines.

12. As Secretary Benson stated in her January 17, 2019 press statement, it

is her "responsibility to ensure a fair and equitable resolution for the citizens of Michigan that would save taxpayers money and ensure fair representation." https://www.michigan.gov/sos/0,4670,7-127--487745--,00.html.[3] Intervenors agree with this statement. However, a "fair and equitable resolution" for the citizens of this State necessarily must involve transparency in the process that went into settlement of a lawsuit that could directly impact their right to elect representatives of their choice, and whether information exists that bear on the possible requirement that Secretary Benson recuse herself from personal involvement in this matter. Intervenors' respectfully request that this Motion be granted.

## ARGUMENT

### A. LEGAL STANDARD

13. Federal Rule of Civil Procedure 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent."[4] Courts have broad discretion in managing discovery, and a decision on a request for an extension of discovery is reviewed only for abuse of discretion. *Bentkowski v.*

---

[3] The headline of Secretary Benson's January 17, 2019 press statement further evidences her intent to act in concert with the Plaintiffs and not as an actual Defendant. The headline from her press statement states: "Secretary of State Jocelyn Benson files brief in League of Women Voters <u>vs. State of Michigan</u>." (Emphasis added). Secretary Benson, not the "State of Michigan," is the Defendant in this action. Her refusal to identify herself as the Defendant further justifies the need to seek discovery about her true motives in this action.

[4] Discovery closed on August 24, 2018. (ECF No. 53)

*Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011). In determining whether good cause has been established, "[t]he overarching inquiry ... is whether the moving party was diligent in pursuing discovery." *Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472, 478 (6th Cir. 2010).

14. The Sixth Circuit has instructed district courts to consider the following factors: "(1) when the moving party learned of the issue that is the subject of discovery; (2) how the discovery would affect the ruling below; (3) the length of the discovery period; (4) whether the moving party was dilatory; and (5) whether the adverse party was responsive to prior discovery requests." *Id.* "[W]hether the opposing party will suffer prejudice by virtue of" amending the trial schedule is also a "relevant consideration" in ruling on a Rule 16(b)(4) good cause exception. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003).

**B. ANALYSIS**

15. <u>When the party learned of the issue</u>: On January 11, 2019, Defendant Intervenors were informed by the Secretary's Counsel that they were so new to the case that they were unable to take a position on the to be filed Motion for Stay. On January 17, 2019, Secretary Benson and Plaintiffs advised the Court that an adjournment of the February 5, 2019 is necessary because they anticipated presenting a settlement agreement for the Court's consideration. This was the first time that Intervenors learned that actual settlement discussions were ongoing,

11

much less that a deal has apparently been reached or was close to being reached. Intervenors filed this Motion five days after learning of this significant and potentially dispositive development. Their diligent and expeditious request for the relief sought in this Motion satisfies this prong of the analysis.

16. <u>How discovery would affect ruling</u>: As set forth in detail above, the discovery sought by Intervenors in this case is critical to allow the Court to assess whether the settlement agreement contains terms that are "fair, adequate, and reasonable, as well as consistent with the public interest." *United States v. Cty. of Muskegon*, 298 F.3d 569, 581 (6th Cir. 2002). Indeed, if, as Intervenors anticipate, discovery shows that Secretary Benson's interests are sufficiently aligned, if not identical to the Plaintiffs' interests in this case, she may not have standing to remain a defendant in this action. *See Alpha Hous. & Health Care, supra*; *see also Baker v. Carr*, 369 U.S. 186, 204 (1962) (The federal court's depend upon "concrete adverseness which sharpens the presentation of issues . . . ."). In addition, information may be developed that indicates that Secretary Benson may be required to recuse herself from this matter.

17. It is also necessary to develop a full and accurate picture for the Court about the circumstances, motives and actors that have gone into crafting a settlement behind closed doors and without the participation of Intervenors.

18. <u>Length of discovery period</u>: Intervenors will work on an expedited

basis to conduct this limited discovery. Attached at Exhibits 2 and 3 are draft discovery requests to Secretary Benson and Plaintiffs that Intervenors will promptly serve if this Court grants leave to do so. Depending on the outcome of what documents and information are produced, Intervenors may also need to depose Secretary Benson and other individuals who possess relevant information. If it is necessary to conduct depositions, Intervenors will work on an expedited basis to schedule and conduct the depositions. If Secretary Benson and Plaintiffs are cooperative in this process, Intervenors believe that this limited discovery could be conducted in as little as 60 days.

19. <u>Whether the moving party was dilatory</u>: As stated above, Intervenors filed this Motion less than one week after learning that Secretary Benson and Plaintiffs are prepared to submit a settlement agreement to the Court. Intervenors' prompt action in seeking this relief weighs in favor of Intervenors.

20. <u>Whether adverse party was responsive to prior discovery requests:</u> In light of Secretary Benson assuming office on January 1, 2019, this issue has not presented itself until now. In fact, the Court has previously stated that any beliefs regarding Secretary Benson's participation in this case were "merely 'speculat[ive]." (ECF No. 144 at pg. 2). On January 17, 2019, Secretary Benson ended any such speculation by announcing her desire to reach a settlement with Plaintiffs. As such, this prong also weighs in favor of Intervenors.

21. <u>Prejudice to opposing party:</u> Given that Secretary Benson and Plaintiffs have agreed to a stay of the trial date in this matter, there is no prejudice to engaging in additional limited discovery before the Court considers whether to approve a settlement agreement or consent decree. As previously stated, Intervenors are willing to work expeditiously to engage in limited discovery and bring a resolution to this critical issue.

22. In accordance with Local Rule 7.1, Intervenors sought the concurrence of Plaintiffs and Secretary Benson in the relief requested herein. Concurrence was not obtained.

WHEREFORE, the Congressional Defendants-Intervenors respectfully request the Court grant their motion and permit Intervenors to conduct discovery with respect to Secretary Benson's standing to continue as a Defendant in this matter, the background and circumstances related to the settlement agreement, and defer ruling on whether to approve the settlement agreement until discovery has concluded.

Respectfully submitted,

**Holtzman Vogel Josefiak Torchinsky PLLC**

<u>/s/ Jason Torchinsky</u>
Jason Torchinsky
Shawn Sheehy
Phillip Gordon

**Clark Hill PLC**

<u>/s/ Charles R. Spies</u>
Charles R. Spies
Brian D. Shekell (P75327)
David M. Cessante (P58796)

<table>
<tr><td>

45 North Hill Drive, S 100  
Warrenton, Virginia 20106  
(540) 341-8800  
JTorchinsky@hvjt.law  
ssheehy@hvjt.law  
pgordon@hvjt.law  
Attorneys for Intervenors

</td><td>

212 E. Cesar Chavez Ave.  
Lansing, MI 48906  
(517) 318-3100  
cspies@clarkhill.com  
bshekell@clarkhill.com  
dcessante@clarkhill.com  
Attorneys for Intervenors

*/s/ Peter B. Kupelian*  
Peter B. Kupelian (P31812)  
Kevin A. Fanning (P57125)  
151 S. Old Woodward  
Suite 200  
Birmingham, MI 48009  
(248) 642-9692  
pkupelian@clarkhill.com  
kfanning@clarkhill.com  
Attorneys for Intervenors

</td></tr>
</table>

Date:  January 22, 2019

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, et al.,

        Plaintiffs,

v.

RUTH JOHNSON, in her official
capacity as Michigan Secretary of State

        Defendant.

Civil Action No. 17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

---

**BRIEF IN SUPPORT OF INTERVENORS' MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY AND DEFER CONSIDERATION OF SETTLEMENT AGREEMENT**

## CONCISE STATEMENT OF THE ISSUE PRESENTED

WHETHER THE COURT SHOULD PERMIT INTERVENORS TO CONDUCT LIMITED DISCOVERY RELATED TO SECRETARY BENSON'S STANDING AND THE SETTLEMENT AGREEMENT THAT HAS BEEN POTENTIALLY NEGOTIATED AND AGREED TO BY SECRETARY BENSON AND PLAINTIFFS WITHOUT INTERVENORS' ABILITY TO PARTICIPATE, AS WELL AS SECRETARY BENSON'S RELATIONSHIP WITH PLAINTIFFS AND SUPPORT FOR THIS LAWSUIT.

Movant's answer: Yes

Plaintiffs' answer: Unknown

Defendant Secretary of State's Answer: Unknown

This Court should answer: Yes

WHETHER THE COURT SHOULD DEFER RULING ON WHETHER TO APPROVE THE SETTLEMENT AGREEMENT UNTIL DISCOVERY HAS CONCLUDED.

Movant's answer: Yes

Plaintiffs' answer: Unknown

Defendant Secretary of State's Answer: Unknown

This Court should answer: Yes

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Cases**

*Bentkowski v. Scene Magazine*, 637 F.3d 689, 696 (6th Cir. 2011)

*Dowling v. Cleveland Clinic Foundation*, 593 F.3d 472 (6th Cir. 2010)

*Leary v. Daeschner*, 349 F.3d 888 (6th Cir. 2003)

## BRIEF IN SUPPORT

Intervenors rely on the facts and legal authority set forth in the above Motion for Leave to Conduct Limited Discovery and Defer Consideration of Settlement Agreement.

Accordingly, the Congressional Defendants-Intervenors respectfully request the Court grant their motion and permit Intervenors to conduct discovery with respect to the background and circumstances related to Secretary Benson's standing to continue as a Defendant in this matter, the alleged settlement agreement, and defer ruling on whether to approve the settlement agreement until discovery has concluded.

**Holtzman Vogel Josefiak Torchinsky PLLC**

/s/ *Jason Torchinsky*
Jason Torchinsky
Shawn Sheehy
Phillip Gordon
45 North Hill Drive, S 100
Warrenton, Virginia 20106
(540) 341-8800
JTorchinsky@hvjt.law
ssheehy@hvjt.law
pgordon@hvjt.law
Attorneys for Intervenors

**Clark Hill PLC**

/s/ *Charles R. Spies*
Charles R. Spies
Brian D. Shekell (P75327)
David M. Cessante (P58796)
212 E. Cesar Chavez Ave.
Lansing, MI 48906
(517) 318-3100
cspies@clarkhill.com
bshekell@clarkhill.com
dcessante@clarkhill.com
Attorneys for Intervenors

/s/ *Peter B. Kupelian*
Peter B. Kupelian (P31812)
Kevin A. Fanning (P57125)
151 S. Old Woodward

1

Suite 200
Birmingham, MI 48009
(248) 642-9692
pkupelian@clarkhill.com
kfanning@clarkhill.com
Attorneys for Intervenors

Date: January 22, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to all of the parties of record.

**CLARK HILL PLC**

*/s/ Peter B. Kupelian*