# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK"
G. LASALLE, RICHARD "DICK"
W. LONG, LORENZO RIVERA
and RASHIDA H. TLAIB,

       Plaintiffs,

v.

JOCELYN BENSON, in her official
Capacity as Michigan
Secretary of State,

       Defendant.

Case No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

## MICHIGAN SENATORS' MOTION TO INTERVENE

*DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933*

1

## MICHIGAN SENATORS' MOTION TO INTERVENE

Proposed Intervenors Michigan State Senators Jim Stamas, Ken Horn, and Lana Theis (the "Michigan Senators"), by their undersigned counsel, respectfully request that they be permitted to intervene as Defendants in this matter pursuant to Federal Rule of Civil Procedure 24.

In support of this Motion, the Michigan Senators submit the accompanying Brief in Support.  The Michigan Senators also submit a proposed Answer to Plaintiffs' Complaint for Declaratory and Injunctive Relief pursuant to Fed. R. Civ. P. 24(c), a copy of which is attached as Exhibit 1.

In accordance with LR 7.1(a), the Michigan Senators sought and obtained Intervening Defendants' concurrence but did not obtain Defendants' concurrence by the time this Motion was filed. Prior to filing this Motion, the Michigan Senators explained the nature of this Motion to Plaintiffs and requested, but were denied, their concurrence in the relief sought.

WHEREFORE, the Michigan Senators respectfully request that the Court grant their Motion and allow them to intervene as Defendants in this matter.

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date:  January 22, 2019

By: */s/ Jason T. Hanselman*
    Jason T. Hanselman (P61813)
    Gary P. Gordon (P26290)
    Counsel for Nonparties
    201 Townsend Street, Suite 900
    Lansing, MI  48933
    Telephone:  (517) 374-9100
    jhanselman@dykema.com

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK"
G. LASALLE, RICHARD "DICK"
W. LONG, LORENZO RIVERA
and RASHIDA H. TLAIB,

       Plaintiffs,

v.

JOCELYN BENSON, in her official
Capacity as Michigan
Secretary of State,

       Defendant.

Case No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

**MICHIGAN SENATORS' BRIEF
IN SUPPORT OF MOTION TO
INTERVENE**

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

i

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

CONCISE STATEMENT OF THE ISSUE PRESENTED .................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................ vii

I.    INTRODUCTION .......................................................................... 1

II.   BACKGROUND ............................................................................ 4

III.  ARGUMENT ................................................................................. 5

  A.   The Michigan Senators Are Entitled To Intervene As A Matter Of Right. .... 6

    1.   The Michigan Senators' Motion to Intervene Is Timely. ....................... 8

    2.   The Michigan Senators Have A Sufficient Interest Which May Be Impaired by the Disposition of this Case. ................................................. 10

    3.   No Current Party Adequately Represents the Michigan Senators' Interests. ...................................................................................... 16

  B.   If The Michigan Senators Are Not Granted Intervention As A Matter Of Right, They Are Entitled To Permissive Intervention. .............................. 20

IV.  CONCLUSION ............................................................................... 21

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abbott v. Perez*,
    138 S. Ct. 2305 (2018) ..................................................................................18

*Appleton v. FDA*,
    310 F. Supp. 2d 194 (D.D.C. 2004) ................................................................7

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ........................................................................5

*Bay Cty. Democratic Party v. Land*,
    347 F. Supp. 2d 404 (E.D. Mich. 2004) ........................................................15

*Benisek v. Lamone*
    (Sup. Ct. #18-726) ......................................................................................3, 19

*Bradley v. Milliken*,
    828 F.2d 1186 (6th Cir. 1987) ......................................................................21

*Brat v. Personhuballah*,
    883 F.3d 475 (4th Cir. 2018) ........................................................................19

*Common Cause v. Rucho*
    (Sup. Ct. #18-422) ......................................................................................3, 19

*Democratic Party of the U.S. v. Nat'l Conservative Political Action Comm.*,
    578 F. Supp. 797 (E.D. Pa. 1983) .................................................................15

*Grubbs v. Norris*,
    870 F.2d 343 (6th Cir. 1989) ..................................................................7, 8, 16

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ........................................................................11

*Harris v. Arizona. Indep. Redistricting Comm'n*,
    136 S. Ct. 1301 (Oral Arg. Tr. 26:16-27:13) (Dec. 8, 2015) ........................19

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

*Jansen v. Cincinnati*,
   904 F.2d 336 (6th Cir. 1990) ........................................................... vii, 7, 8

*McCormick v. United States*,
   500 U.S. 257 (1991).......................................................................14

*Meese v. Keene*,
   481 U.S. 465 (1987).......................................................................14

*Michigan State AFL-CIO v. Miller*,
   103 F.3d 1240 (6th Cir. 1997) ...................................... vii, 7, 11, 16

*North Carolina v. N.C. Conf. of the NAACP*,
   137 S. Ct. 1399 (2017).....................................................................19

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967).....................................................5, 6, 16

*Owen v. Mulligan*,
   640 F.2d 1130 (9th Cir. 1981) .......................................................15

*Purnell v. Akron*,
   925 F.2d 941 (6th Cir. 1991) .........................................................11

*Reynolds v. Sims*,
   377 U.S. 533 (1964)........................................................................13

*Schulz v. Williams*,
   44 F.3d 48 (2d Cir. 1994) ...............................................................15

*Sixty-Seventh Minn. State Senate v. Beens*,
   406 U.S. 187 (1972)........................................................................13

*Smith v. Boyle*,
   144 F.3d 1060 (7th Cir. 1998) .......................................................15

*Trbovich v. UMW*,
   404 U.S. 528 (1972)........................................................................16

*Triax Co. v. TRW, Inc.*,
   724 F.2d 1224 (6th Cir. 1984) ................................................... vii, 7

*United States v. Detroit,*
  712 F.3d 925 (6th Cir. 2013) ..........................................................................8, 10

*United States v. Michigan,*
  424 F.3d 438 (6th Cir. 2005) ...............................................................................14

*United States v. Oregon,*
  913 F.2d 576 (9th Cir. 1990), cert. denied, *Makah Indian Tribe v.*
  *United States,* 501 U.S. 1250 (1991) .....................................................................7

*Wittman v. Personhuballah,*
  136 S. Ct. 1732 (2016).........................................................................................14

**TREATISES**

6 MOORE'S FEDERAL PRACTICE § 24.03[4][a] (3d ed.)............................................17

**RULES**

Fed. R. Civ. P. 24(a)....................................................................... vii, 5, 6, 10, 11, 20

Fed R. Civ. P. 24(b) ..................................................................................vii, 5, 6, 20, 21

**CONSTITUTIONAL PROVISIONS**

Mich. Const. art. II, § 4 .........................................................................................12

Mich. Const. art. IV, § 1 ...................................................................................12, 18

Mich. Const. art. IV, § 2 .......................................................................................2, 11

U.S. Const. amend. I ............................................................................................4, 12

U.S. Const. amend. XIV .......................................................................................4, 12

**STATUTES**

42 U.S.C. § 1983...................................................................................................4

42 U.S.C. § 1988...................................................................................................4

Mich. Comp. Laws § 168.21.................................................................................18

Mich. Comp. Laws § 4.261...................................................................................12

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933

## <u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>

WHETHER THIS COURT SHOULD GRANT THE MICHIGAN SENATORS' MOTION TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO RULE 24(a)(2), OR IN THE ALTERNATIVE, BY PERMISSIVE INTERVENTION UNDER RULE 24(b).

Michigan Senators answer: Yes

Plaintiffs answer: No

This Court should answer: Yes

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN 48933

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Rules

Fed. R. Civ. P. 24(a)(2)

Fed R. Civ. P. 24(b)

### Cases

*Jansen v. Cincinnati,* 904 F.2d 336 (6th Cir. 1990)

*Michigan State AFL-CIO v. Miller,* 103 F.3d 1240 (6th Cir. 1997)

*Triax Co. v. TRW, Inc.,* 724 F.2d 1224 (6th Cir. 1984)

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

## I.  __INTRODUCTION__

Although Michigan Senators Stamas and Horn[1] contemplated intervening in this lawsuit last year, this Court's August 14, 2018 Order denying intervention by members of the Michigan House of Representatives (the "House Intervenors") dissuaded the Michigan Senators from doing so at that time.  Now though, it has become clear that the House Intervenors correctly speculated that the newly elected officials in Michigan's executive branch would stop defending Michigan's redistricting plans following the January 2019 change in State administration, leaving an adversarial void in this case.  Newly inaugurated Secretary of State Jocelyn Benson announced on January 17 that she will submit to a Consent Order, apparently agreeing that certain congressional and state legislative districts are unconstitutional, rather than defending Michigan law that has not been subject to any adverse judicial ruling.  Specifically, although no trial has occurred and no court has deemed Michigan's redistricting law unconstitutional, Secretary Benson has apparently decided to take on the role of the judiciary and unilaterally declare validly enacted laws unconstitutional.

As the proposed House Intervenors predicted in their Motion to Intervene in the summer of 2018, Secretary Benson's election means Democrats now occupy both sides of the case, as Plaintiffs and Defendant.  The Sixth Circuit explained in

---

[1] Hon. Lana Theis became a senator on January 1, 2019.

1

its August 30, 2018 Order, "If the new Secretary takes office in January 2019 and decides not to further pursue the state's defense of its apportionment schemes, the district court will have to appoint someone to take the Secretary's place." That is precisely what has occurred with Secretary Benson laying down her sword rather than defending duly enacted Michigan law.

According to published media reports, the framework for the forthcoming settlement will involve the Michigan Legislature redrawing legislative districts and would, contrary to Article IV, Section 2, of the Michigan Constitution,[2] require the Michigan Senators to seek re-election in 2020, rather than 2022.[3] It is disconcerting in the litigation context that Secretary Benson now apparently plans to—before a trial or court order—unilaterally declare laws unconstitutional. Although the Michigan Senators understand why this Court determined in August 2018 that a motion to intervene was premature, Secretary Benson's Response to Motion for Stay regarding settlement ripens the issue and necessitates the

---

[2] Article IV, Section 2, states, "The senate shall consist of 38 members to be elected from single member districts at the same election as the governor for four-year terms concurrent with the term of office of the governor."

[3] Jonathan Oosting, *Michigan Gerrymandering Settlement Focused on Redrawing Specific Political Districts*, DET. NEWS (Jan. 20, 2019, 12:54 PM), https://www.detroitnews.com/story/news/local/michigan/2019/01/20/michigan-gerrymandering-deal-focused-redrawing-specific-districts/2631237002/.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

Michigan Senators' involvement to ensure their interests, and those of the State, are appropriately protected.

The apparent rush to a Consent Order by Plaintiffs and Secretary Benson may be prompted by the United States Supreme Court's January 4, 2018 announcement that, in March 2019, it will consider dispositive issues associated with gerrymandering claims in *Common Cause v. Rucho* (Sup. Ct. #18-422) and *Benisek v. Lamone* (Sup. Ct. #18-726). The specific dispositive gerrymandering issues common to both *Rucho* and *Benisek* are the same dispositive issues currently before the Court in the instant case; namely, whether redistricting disputes are justiciable and, if so, what standards must be applied to resolve such disputes. So, it is conceivable that any agreements between Plaintiffs and the Secretary will be rendered moot in a few months.

This Court should grant the Michigan Senators' Motion to Intervene because: (1) although the Michigan Senators heeded this Court's direction that intervention was premature and trial is now approaching, the Michigan Senators' intervention is timely because circumstances have changed in light of Secretary of State Jocelyn Benson indicating in her recent Response to the Motion for Stay that she would cease defending duly enacted Michigan law; (2) as the Sixth Circuit has explained in this case, the Michigan Senators have a distinct interest in protecting "the relationship between constituent and representative"; (3) absent intervention,

the Michigan Senators' ability to protect their unique interests and those of the State will be impaired, particularly in light of the announced impending settlement; and (4) the present parties do not adequately represent the proposed intervenors' interests, with the new Secretary of State choosing partisanship over state law.

## II.  __BACKGROUND__

On December 22, 2017, the League of Women Voters of Michigan and other named individuals (collectively, "Plaintiffs") filed a two-count Complaint for Declaratory and Injunctive Relief. (ECF No. 1). Plaintiffs' Complaint asserts that the current congressional and state legislative apportionment plans ("Current Apportionment Plans") are unconstitutional pursuant to 42 U.S.C. § 1983, § 1988, and the First and Fourteenth Amendments to the United States Constitution.

Plaintiffs contend that, by continuing to implement the Current Apportionment Plans, Secretary Benson has impermissibly discriminated against Plaintiffs as an identifiable political group (likely Democratic voters).  Plaintiffs assert that Defendant's actions violate the Fourteenth Amendment's Equal Protection Clause, and unreasonably burdened Plaintiffs' right to express their political views and associate with the political party of their choice in contravention of the First Amendment.  Plaintiffs seek to enjoin further implementation of the Current Apportionment Plans in the 2020 congressional and state legislative elections. *See* Pls' Resp. to Motion for Stay, at 2 (ECF No. 15).

4

## III.   <u>ARGUMENT</u>

The Michigan Senators seek intervention in this action under the Federal Rules of Civil Procedure, Rule 24(a)(2), or, alternatively, Rule 24(b)(1).  Rule 24(a)(2) and (b)(1) state in relevant part:

> (a) **Intervention of Right**.  On timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represented that interest.

> (b) **Permissive Intervention**. (1) On timely motion, the court may permit anyone to intervene who: . . . (B) has a claim or defense that shares with the main action a common question of law or fact.

"Rule 24 traditionally receives liberal construction in favor of applicants for intervention." *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).  Further, in a unique case like this in which Plaintiffs seek extraordinary relief and the Defendant has changed as a result of the 2018 election, Rule 24 need not be literally applied.  *See Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (stating that the Rule is "obviously tailored to fit ordinary civil litigation, these provisions [of Rule 24] require other than literal application in atypical cases.").  In *Nuesse*, the Court stated:

> We know from the recent amendments to the civil rules that in the intervention area, the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned

persons as is compatible with efficiency and due process.  385 F2d at 700.

The Michigan Senators' intervention will promote and ensure the presentation of complete and proper evidence and legal arguments in this matter. Their participation will assist this Court in lending finality to the adjudication of the merits of this lawsuit in a manner that ensures due process related to the reapportionment plans that the Michigan Legislature adopted in 2011. Accordingly, the Michigan Senators should be permitted to intervene as Defendants.

## A.   THE MICHIGAN SENATORS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Pursuant to Federal Rules of Civil Procedure, Rule 24(a)(2), intervention as a matter of right is appropriate when, upon timely motion, a party "[c]laims an interest relating to the property or transaction that is the subject of the actions, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Commenting on this requirement of Rule 24, the court in *Nuesse* stated:

> The changes wrought in Rule 24(a) have repudiated that narrow approach in general . . . . This alternative is obviously designed to liberalize the right to intervene in Federal actions.  Interestingly, an earlier draft would have required that judgment 'substantially' impair or impede the interest, but that higher barrier was deleted in the course of approving the amendment. 385 F.2d at 701.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

The United States Court of Appeals for the Sixth Circuit has recognized a "rather expansive notion of the interest sufficient to invoke intervention of right." *Michigan State AFL-CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir. 1997). "As a general rule, a person cannot be deprived of his or her legal rights in a proceeding to which such a person is neither a party nor summoned to appear in the legal proceeding." *Jansen v. Cincinnati,* 904 F.2d 336, 340 (6th Cir. 1990). Therefore, "the need to settle claims among a disparate group of affected persons militates in favor of intervention." *Id.*

The Court of Appeals for the Sixth Circuit has developed a four-factor test to determine whether a party should be granted intervention as of right. *See Triax Co. v. TRW, Inc.*, 724 F.2d 1224, 1227 (6th Cir. 1984); *see also Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989); *Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004). These rules are to be "construed broadly in favor of potential intervenors." *Michigan State AFL-CIO*, 103 F.3d at 1246; *see also United States v. Oregon*, 913 F.2d 576, 587 (9th Cir. 1990), cert. denied, *Makah Indian Tribe v. United States,* 501 U.S. 1250 (1991)).

Granting a motion for intervention of right is appropriate upon a showing that: (1) the application for intervention is timely; (2) the applicant has a substantial, legal interest in the subject matter of the pending litigation; (3) the

applicant's ability to protect that interest is impaired; and (4) the present parties do not adequately represent the applicant's interest. *Grubbs*, 870 F.2d at 345.

Michigan Senators readily meet each of the four criteria.  They should be permitted to intervene in this matter.

> 1.   The Michigan Senators' Motion to Intervene Is Timely.

The timeliness of a motion to intervene "should be evaluated in the context of all relevant circumstances." *Jansen*, 904 F.2d at 340 (citing *Bradley v. Milliken*, 828 F.2d 1186, 1191 (6th Cir. 1987)).  The Sixth Circuit has outlined five factors to be considered when assessing the timeliness of a motion to intervene: (1) the stage of the proceeding; (2) the purpose of intervention; (3) the length of time between when the proposed intervenor knew or should have known of his interest and moved to intervene; (4) the prejudice to the original parties caused by the proposed intervenor's failure to promptly intervene after he knew or reasonably should have known of his interest; and (5) the existence of unusual circumstances militating in favor or against intervention. *Jansen*, 904 F.2d at 340 (citing *Grubbs*, 870 F.2d at 345).  In this instance, the Michigan Senators satisfy all five factors.

"The mere passage of time—even 30 years—is not particularly important" when considering timeliness; instead, the "proper focus is on the stage of the proceedings and the nature of the case." *United States v. Detroit*, 712 F.3d 925, 931 (6th Cir. 2013).  At this stage in the proceeding, trial has not yet occurred and

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

the Michigan Senators are prepared to fully participate both in trial and settlement discussions without the need to adjust the schedule or otherwise delay proceedings.[4]

The Michigan Senators' need to intervene in this case arose just several days ago when they learned that Secretary Benson apparently decided to stop defending duly enacted State laws.  The Michigan Senators learned of Secretary Benson's secret settlement negotiations when they were reported in the Gongwer News Service at 5:50 p.m. on January 17, 2019, and in other media outlets.  See "Benson Files Brief Saying She Is Seeking Settlement In Redistricting Case" attached as Exhibit 2.  Until that point, the Michigan Senators expected that Secretary Benson, like her predecessor, would uphold and defend duly enacted Michigan law, including the redistricting plan that the United States District Court in Washington, D.C. approved with Attorney General Eric Holder's consent.

The Michigan Senators had been respecting the letter of this Court's August 14, 2018 Order regarding the House Intervenor's initial motion to intervene; however, upon learning of Secretary Benson's positional change, the Michigan Senators realized that their interests and those of the State in the case would be adversely impacted without their participation, and immediately prepared and filed

---

[4] However, the Senators agree with the Intervening Parties that an Order Staying this matter until the United States Supreme Court has an opportunity to rule on the dispositive issues (quite possibility by June of this year) will not cause harm to any party and will, in fact, most likely result in savings of time, money and judicial resources.

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

the instant motion.  While the Michigan Senators knew of their interests and those of the State in the case last year, those interests were being properly defended by Secretary Benson's predecessor.  Last week that changed, and now the Michigan Senators are filing this timely motion to intervene to defend duly enacted State laws, to protect their constitutionally established four-year terms of office, and to prevent a special election for the Senate in 2020.

The prejudice inquiry is related to timeliness, as the "analysis must be limited to the prejudice caused by the untimeliness, not the intervention itself." *See Detroit*, 712 F.3d at 933.  Plaintiffs seek to overturn a validly enacted law and enjoin both congressional and state legislative members from seeking reelection in the districts they currently represent.  These apportionment plans have been in effect since 2011 and relied upon for multiple election cycles.  Allowing the Michigan Senators to intervene as Defendants will not prejudice any other parties and will not result in undue delay to any of the currently named parties.  In fact, the Michigan Senators' intervention will allow them to assert their defenses without any delay or disruption to the litigation.  For all these reasons, Michigan Senators' Motion is timely.

2.  <u>The Michigan Senators Have A Sufficient Interest Which May Be Impaired by the Disposition of this Case.</u>

The second and third requirements under Rule 24(a) are that the Michigan Senators must have an interest in the litigation and that the disposition of this suit

will impair those interests. "To satisfy [the impairment] element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied. This burden is minimal." *Michigan State AFL-CIO*, 103 F.3d at 1247. The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Id.* at 1245. The Michigan Senators are not required to show "that impairment will inevitably ensue from an unfavorable disposition; the would-be intervenors need only show that the disposition may impair or impede their ability to protect their interest." *Purnell v. Akron*, 925 F.2d 941, 948 (6th Cir. 1991) (emphasis in original) (internal quotations and modifications omitted). Even so-called "close cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir., 1999) (citing *Michigan State AFL-CIO*, 103 F.3d at 1245).

The Michigan Senators stand to be irrevocably harmed by the invalidation of the duly enacted congressional and state legislative apportionment plans. Established Supreme Court precedent makes clear that the Michigan Senators have significant, particularized interests in this litigation because: (1) Plaintiffs seek a court order regulating the Michigan Senators' official conduct; (2) a settlement that requires an election and terms of office contrary to Article IV, Section 2, of the Michigan Constitution causes an undue burden on the Michigan Senators and their

constituents;[5] (3) the Michigan Senators have an interest in protecting the relationship between constituent and representative; and (4) the Michigan Senators will be forced to expend significant public funds and resources to have the Legislature engage the necessary processes to comply with any remedial order. None of these interests may be deemed a property interest and the Michigan Senators explicitly state that they are not claiming a property interest in their elected positions.

This matter concerns the congressional and state legislative districting plans enacted and implemented by the Michigan Legislature, which allegedly violate the First and Fourteenth Amendments of the United States Constitution.  (See Compl. at ¶1).  The Michigan Senate is one of two legislative bodies bestowed with the constitutional obligation to prepare and enact legislation "to regulate the time, place and manner" of elections.  Mich. Const. art. II, § 4; *see also* Mich. Const. art. IV, § 1 (vesting the general legislative power with the Legislature); Mich. Comp. Laws § 4.261 (setting out the authority and procedure for conducting reapportionment).

---

[5] *See, e.g.*, Declaration of Senator Ken Horn in Support of Motion to Intervene, attached as Exhibit 5 ("The media accounts assert that there may be a special election for the State Senate in 2020 even though, pursuant to Michigan's Constitution, Senators are elected for four-year terms concurrent with the term of office of the Governor.  The current Senate terms do not expire until the end of 2022.").

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN  48933

The Michigan Senators would be required to play an integral part in drawing and enacting the remedial plans required to comply with any order of this Court or settlement agreement.  (*See id.* at ¶18).  Indeed, Plaintiffs request, inter alia, that the Court "declare Michigan's Current Apportionment Plan unconstitutional and invalid" and "in the absence of a state law establishing a constitutional apportionment plan adopted by the Legislature," the Court should do so.  (*Id.* at 33 ¶¶ (b), (d)).

Apportionment "is primarily a matter for legislative consideration and determination and . . . judicial relief becomes appropriate only when a legislature fails to reapportion . . . ."  *Reynolds v. Sims*, 377 U.S. 533, 586 (1964).  Therefore, the Michigan Legislature would be directly impacted by any order or settlement agreement requiring a modification or redrawing of the Current Apportionment Plan.  The Michigan Senators thus have a sufficient interest in the subject matter of this litigation that is materially distinguishable from the generalized interest shared by all citizens.  *See Sixty-Seventh Minn. State Senate v. Beens*, 406 U.S. 187, 194 (1972) (recognizing that state legislators have the right to intervene because the State Legislature would be directly affected by a district court's orders.).

As the Sixth Circuit recognized in its August 30, 2018 Order in this case, the Court need not decide whether these interests amount to "substantial legal interest[s]" to entitle them to intervention of right, *United States v. Michigan*, 424

F.3d 438, 443 (6th Cir. 2005); it is enough to say that the Michigan Senators' interests differ from those of the Secretary and the citizens of Michigan.

The Secretary seeks to "provid[e] fair and smooth administration of elections" and "protect[] the current apportionment plan and other governmental actions from charges of unconstitutionality." As the Sixth Circuit explained, "[t]he contours of Michigan's district maps do not affect [the Secretary] directly—she just ensures the maps are administered fairly and accurately." In contrast, the contours of the maps affect the Michigan Senators directly and substantially by determining which constituents the Michigan Senators represent in the legislature.

The Michigan Senators' interests are unique because, as elected representatives, the Michigan Senators "[s]erv[e] constituents and support[] legislation that will benefit the district and individuals and groups therein." *McCormick v. United States*, 500 U.S. 257, 272 (1991). The citizens of Michigan do not share that representative interest.

The Michigan Senators' or their successors' interest in their reelection chances further highlights the need for intervention. This type of interest has been long noted in the context of Article III standing. *See Wittman v. Personhuballah*, 136 S. Ct. 1732 (2016) (evidence of impairment of reelection prospects can constitute an Article III injury for standing purposes); *Meese v. Keene*, 481 U.S. 465, 475 (1987); *Bay Cty. Democratic Party v. Land*, 347 F. Supp. 2d 404, 423

14

(E.D. Mich. 2004) (diminishment of political power is sufficient for the purposes of standing); *see also Smith v. Boyle*, 144 F.3d 1060, 1061-63 (7th Cir. 1998); *Schulz v. Williams*, 44 F.3d 48, 53 (2d Cir. 1994) (Conservative Party official had standing to challenge the ballot position of an opponent); *Owen v. Mulligan*, 640 F.2d 1130, 1132-33 (9th Cir. 1981) (holding that the "potential loss of an election" is an injury in fact); *Democratic Party of the U.S. v. National Conservative Political Action Comm.*, 578 F. Supp. 797, 810 (E.D. Pa. 1983) (three-judge panel), *aff'd in part and rev'd in part on other grounds sub nom. Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 489-90 (1985).

As stated by Senator Theis in her Declaration (Exhibit 3), "I have been advised that this Court denied a Motion to Dismiss the Senate from this case even though Senate elections will not occur until after the next redistricting plan is adopted, in part, because the possibility of a special election in 2020 for at least some State Senators has not been ruled out as potential relief." If a special election is called for the Michigan Senate in 2020, two years before the newly elected Senators' terms are up, Senators will have to spend additional campaign funds to run for a position for which they have been duly elected and in which they are serving.

Additionally, if a Court order or settlement agreement provides for redrawing legislative districts, the Michigan Senators would be required to expend

significant legislative funds and resources toward the extraordinary costs of developing apportionment plans, potentially requiring additional unscheduled session days on the legislative calendar. Expenses involved with redistricting include, but are not limited to, acquiring the software and databases necessary to process and map statewide data, engaging numerous skilled personnel and consultants, holding several fully-staffed public hearings, and opportunity costs.

3.  No Current Party Adequately Represents the Michigan Senators' Interests.

The fourth factor in the intervention analysis is whether the "present parties . . . adequately represent the applicant's interest." *Grubbs,* 870 F.2d at 345. Michigan Senators need only prove that the "representation of [their] interest *may be* inadequate." *Trbovich v. UMW*, 404 U.S. 528, 538, n.10 (1972) (emphasis added); *Michigan State AFL-CIO*, 103 F.3d at 1247 (quoting and citing *Linton v. Comm'r of Health & Env't*, 973 F.2d 1311 (6th Cir. 1992)). In *Nuesse,* supra, the court set forth the controlling rules concerning the question of adequacy of representation by existing parties, stating, "[I]t underscores both the burden on those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." 385 F.2d at 702.

In his Declaration (Exhibit 4), Senator Jim Stamas emphasized the difference between the legal defense provided by Secretary Johnson and Secretary

16

Benson: "Secretary of State Ruth Johnson, through Special Assistants Attorney General, vigorously defended the redistricting plans while she held that office. However, newly elected Secretary of State Jocelyn Benson recently obtained other counsel who have filed a pleading indicating that negotiations have commenced on a proposed Consent Decree, thereby indicating that, unlike her predecessor, she will not adequately defend these duly enacted state laws."

Unlike when former Secretary of State Ruth Johnson vigorously defended the reapportionment plans, the Michigan Senators' interests are not adequately and fairly represented by any existing party to this action.  "It has been said that, given this standard, the applicant should be treated as the best judge of whether the existing parties adequately represent his or her interests, and that any doubt regarding adequacy of representation should be resolved in favor of the proposed intervenors."  6 MOORE'S FEDERAL PRACTICE § 24.03[4][a], at 24-42 (3d ed.) (footnote omitted).  Here, the Michigan Senators' unique interest in defending a validly enacted law and the legislative process is directly adverse to Plaintiffs' interests and different from that of Secretary Benson, whose office lacks the ability to enact new legislation.

The interest of the Michigan Senators is to defend a validly enacted law of the Michigan Legislature while ensuring that the Court affords due deference— including a presumption of good faith afforded to all legislative enactments—to the

Legislature.  *See Abbott v. Perez*, 138 S. Ct. 2305, 2324 (2018).  If this Court were to order any remedy or if the current parties settle the lawsuit, the laws at issue cannot simply be abandoned.  Federal law would require the Legislature to act and attempt to devise a remedy in accordance with any settlement or order.  This would require the significant expenditure of public funds and resources.

The Michigan Senators also have an interest—and are required to play an integral role—in the redrawing the congressional and state legislative districts, if required by settlement or order.  Indeed, Plaintiffs request that the Court, *inter alia*, "[i]n the absence of a state law establishing a constitutional apportionment plan adopted by the Legislature . . . in a timely fashion, establish legislative and congressional apportionment plans that meet the requirements of the U.S. Constitution and other applicable law." (Compl. at 33 ¶d).

Secretary Benson cannot represent the interest of Michigan Senators in establishing a new court-ordered plan as a matter of law, as the power to enact laws and exercise legislative authority is outside the Secretary's constitutional duties.  *See* Mich. Const. art. 4, § 1.  The interest of the Secretary of State is merely that of the chief elections officer of the state.  *See* MCL §§ 168.21.

Additionally, as the proposed House Intervenors predicted, Secretary Benson's interests may lie elsewhere, rather than in defending the 2011

DYKEMA GOSSETT·A PROFESSIONAL LIMITED LIABILITY COMPANY·CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900·LANSING, MICHIGAN  48933

apportionment plans.[6] The Michigan Senators possess significantly different authority and strategic interests than those of the Secretary of State. *Compare, e.g.*, Def.'s Answer ¶¶ 17, 42, 47, 49, with the Michigan Senators' Answer ¶¶ 17, 42, 47, 48, 49, 50 (denying that there is ever such a thing as a "wasted" vote and that the so-called efficiency gap supports an inference of partisan gerrymandering). Additionally, the Michigan Senators differ from Secretary Benson in pleading affirmative defenses. The Michigan Senators contend that there are no judicially manageable standards to evaluate Plaintiffs' claims and, therefore, this Court should dismiss Plaintiffs' claims as non-justiciable. Proposed Answer Aff. Def. ¶ 7. This argument is particularly relevant now that the United States Supreme Court will consider this exact issue in *Common Cause v. Rucho* (Sup. Ct. #18-422) and *Benisek v. Lamone* (Sup. Ct. #18-726).

The Michigan Senators have a substantial interest in defending the Current Apportionment Plan that is not possessed by any currently named party.

---

[6] The proposed House Intervenors cited *Harris v. Arizona. Indep. Redistricting Comm'n*, 136 S. Ct. 1301 (Oral Arg. Tr. 26:16-27:13) (Dec. 8, 2015) (a newly elected Attorney General of Arizona declined to defend a map which his predecessor had defended); *Brat v. Personhuballah*, 883 F.3d 475, 478 (4th Cir. 2018) (Commonwealth of Virginia refused to defend the lawsuit on appeal after a change in partisan control of the Attorney General's Office so that the responsibility was left to legislative intervenors); *North Carolina v. N.C. Conf. of the NAACP*, 137 S. Ct. 1399 (2017) (statement of Chief Justice Roberts respecting denial of certiorari disclaiming any opinion on the merits) (noting the actions of the newly elected Governor and Attorney General moving to dismiss a case that was already before the Supreme Court on a petition for writ of certiorari).

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN 48933

Furthermore, the Michigan Senators' interests in intervention are materially distinguishable from the generalized interests in this litigation shared by all citizens of Michigan. While all citizens may have an interest in participating in the 2020 election, the Michigan Senators uniquely stand to have their official conduct regulated, their or their successors' re-election efforts hindered and made costlier, and their administration of legislative funds and resources superintended. In sum, the interests of the Michigan Senators in the adjudication and disposition of this matter are both sufficient and exclusive. The Michigan Senators should be permitted to intervene accordingly pursuant to Federal Rule of Civil Procedure 24(a)(2).

### B. **IF THE MICHIGAN SENATORS ARE NOT GRANTED INTERVENTION AS A MATTER OF RIGHT, THEY ARE ENTITLED TO PERMISSIVE INTERVENTION.**

Even if this Court determines that the Michigan Senators are not permitted to intervene in this lawsuit as a matter of right, they should be granted permissive intervention pursuant to Federal Rule of Civil Procedure 24(b). This Rule provides for permissive intervention where a party timely files a motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).

Intervention under Rule 24(b) is a "discretionary power" left to the judgment of the district court. *Bradley v. Milliken*, 828 F.2d 1186, 1193 (6th Cir. 1987). In exercising its broad discretion under this Rule, the Court must consider whether

intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3).

For the reasons outlined above, the Michigan Senators have established their right to permissively intervene in this matter. The Michigan Senators have filed their Motion before trial and have already been subject to third-party discovery. Including the Senators as intervenors will not cause any delay or prejudice on the current parties. Furthermore, the Michigan Senators possess claims and defenses related to the Current Apportionment Plan and will be directly and irrevocably impacted by any change to the system prior to the normal redistricting that occurs after each decennial census.

Not allowing the Michigan Senators to intervene would also prejudice their interests and rights. This matter requires the Court to rule on the validity of the Current Apportionment Plan, and possibly order that it be redrawn—without the participation of the parties responsible for creation of the plan. The only way to protect the fairness of the litigation and lend credibility and finality to the Court's decision on the merits is to permit the Michigan Senators to intervene.

## IV.   **CONCLUSION**

For the foregoing reasons, the Michigan Senators' Motion to Intervene should be granted, allowing the Michigan Senators to intervene as Defendants in

order to protect their exclusive interests in the subject matter and outcome of this litigation concerning the constitutionality of the Current Apportionment Plan.

Respectfully submitted,

DYKEMA GOSSETT PLLC

Date:  January 22, 2019

By: */s/ Jason T. Hanselman*
Jason T. Hanselman (P61813)
Gary P. Gordon (P26290)
Counsel for Nonparties
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
jhanselman@dykema.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record. I hereby certify that I have mailed by United States Postal Service the same to any non-ECF participants.

By: */s/ Jason T. Hanselman*
Jason T. Hanselman (P61813)
Gary P. Gordon (P26290)
Counsel for Nonparties
201 Townsend Street, Suite 900
Lansing, MI  48933
Telephone:  (517) 374-9100
jhanselman@dykema.com

4838-6403-1110.7
116331\000001

DYKEMA GOSSETT•A PROFESSIONAL LIMITED LIABILITY COMPANY•CAPITOL VIEW, 201 TOWNSEND STREET, SUITE 900•LANSING, MICHIGAN  48933