UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | ) ) ) | Case No. 2:17-cv-14148 |
| Plaintiffs, | ) ) | Hon. Eric L. Clay |
| | ) | Hon. Denise Page Hood |
| v. | ) | Hon. Gordon J. Quist |
| | ) | |
| JOCELYN BENSON, in her official Capacity as Michigan Secretary of State, et al., | ) ) ) ) | **JOINT MOTION TO APPROVE CONSENT DECREE AND BRIEF IN SUPPORT** |
| | ) | |
| Defendants. | ) | |

Joseph H. Yeager, Jr. (IN 2083-49)
Kevin M. Toner (IN 11343-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina Vaynerman (MN 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
MBrewer@goodmanacker.com

*Counsel for Plaintiffs*

Michael J. Hodge (P25146)
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
    & STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General
And Counsel for Defendant
Jocelyn Benson, Michigan Secretary of State*

## JOINT MOTION TO APPROVE CONSENT DECREE

Plaintiffs and Defendant Secretary of State ("Parties") respectfully move the Court to approve their proposed consent decree and state the following in support:

1.     The Parties have agreed to a compromise of all claims in this case.

2.     Congressional Intervenors and Legislative Intervenors do not concur in the relief sought herein. The Court may, however, approve the Parties' compromise even without the Congressional Intervenors' and Legislative Intervenors' concurrence.

3.     The  Parties' agreement ("Compromise") is set forth in the proposed Consent Decree, attached as Exhibit 1. The core terms are as follows:

    a.     of the State House districts at issue in this case will be declared unconstitutional (the "Enjoined Districts") and their use in any future elections will be permanently enjoined;

    b.     The claims regarding the remaining Challenged Districts will be dismissed; and

    c.     The Legislature will be encouraged to propose legal, partisan-neutral remedial boundaries for the Enjoined Districts. In the event it does not propose such boundaries by the Court's deadline, the Court will draw remedial districts with the Parties' input and by input from others who submit briefs and proposed maps.

4.     The Compromise is a fair, reasonable, and adequate resolution of this dispute and is squarely in the public interest.

5.     As detailed in the accompanying Brief in Support, Michigan law designates and fully authorizes the Secretary, as represented herein by the Michigan Attorney General, to enter into this Compromise on behalf of the State of Michigan.

6.     Under all present circumstances and in view of the substantial and uncontested email and deposition evidence showing the extent of an unconstitutional partisan gerrymander concerning the districts challenged by plaintiffs, the Consent Decree is a fair and reasonable compromise to remedy the ongoing violations of the rights of plaintiffs and Michigan's voters and avoid continued litigation and trial.

7.     The bases for this motion are set forth more particularly in the accompanying brief in support, which the Parties respectfully incorporate herein by reference.

8.     This motion is supported by the evidentiary record already before the Court, including particularly the evidence submitted on summary judgment. The Parties also anticipate an approximately one-day hearing, at which they intend to present further evidence in support of this motion and the proposed settlement, and at which any interested party objecting to the Consent Decree will have an opportunity to be heard, at the Court's discretion.

WHEREFORE, the Parties request that the Court:

(1)     Enter an order setting this motion for hearing on or after February 5, 2019;

(2)    After hearing, enter an order approving the attached proposed Consent Decree; and

(3)    Grant all other appropriate relief.

Respectfully submitted,

Date:  January 25, 2019          */s/ Joseph H. Yeager, Jr.*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Kevin M. Toner (IN Bar No. 11343-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Jeffrey P. Justman (MN Bar No. 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina L. Vaynerman (MN Bar No. 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Fax: 317-237-1000
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

*Counsel for Plaintiffs*

/s/ *Scott R. Eldridge*

Michael J. Hodge
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
  &amp; STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General*
*And Counsel for Defendant*
*Jocelyn Benson, Michigan Secretary of State*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | ) ) ) | Case No. 2:17-cv-14148 |
| Plaintiffs, | ) ) | Hon. Eric L. Clay Hon. Denise Page Hood |
| v. | ) ) | Hon. Gordon J. Quist |
| JOCELYN BENSON, in her official Capacity as Michigan Secretary of State, et al., | ) ) ) ) | **BRIEF IN SUPPORT OF JOINT MOTION TO APPROVE CONSENT DECREE** |
| Defendants. | ) | |

Joseph H. Yeager, Jr. (IN 2083-49)
Kevin M. Toner (IN 11343-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina Vaynerman (MN 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
MBrewer@goodmanacker.com

*Counsel for Plaintiffs*

Michael J. Hodge (P25146)
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
    & STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General
And Counsel for Defendant
Jocelyn Benson, Michigan Secretary of State*

**<u>CONCISE STATEMENT OF THE ISSUE PRESENTED</u>**

Does the Compromise reflected in the Parties' proposed Consent Decree

reflect a fair, reasonable and adequate resolution of this action, in the public interest,

approved by plaintiffs and by constitutional officers of the State of Michigan enforced

by Michigan law to enter into such a settlement?

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

**Cases**

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford
   Motor Co.*,
   No. 07-CV-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ....................*passim*

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.
   Corp.*,
   497 F.3d 615 (6th Cir. 2007) ....................................................................................*passim*

*Lawyer v. Department of Justice*,
   521 U.S. 567 (1997) ....................................................................................................*passim*

# **TABLE OF CONTENTS**

CONCISE STATEMENT OF THE ISSUE PRESENTED .............................................i

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ..............................iii

I.   Background of Settlement.............................................................................1

II.  Courts Approve and Enter Consent Decrees that are Fair, Adequate, and
     Reasonable Resolutions of Constitutional Claims.......................................3

III. The Compromise Should be Approved Because it is Fair, Adequate,
     Reasonable, and in the Public Interest. .......................................................4

     A.   The Compromise is Fair. .....................................................................4

          1.   Plaintiffs' case is strong. ............................................................5

          2.   Both Parties support the Compromise.......................................6

               a.   Michigan law is clear: the Secretary and Attorney General
                    speak for the State. ............................................................6

               b.   Federal courts have repeatedly approved consent decrees
                    with the Michigan Secretary of State, enjoining compliance
                    with unconstitutional Michigan statutes. ...............................9

          3.   The Compromise eliminates risks for both sides..........................11

          4.   The Parties negotiated in good faith. ................................................12

     B.   The Compromise is Adequate. ...................................................................14

     C.   The Compromise is Reasonable. ................................................................16

     D.   The Compromise is in the Public Interest......................................................16

IV.  The Court May Approve the Compromise over Intervenors' Objection. .........20

V.   The Court Should Hold a Hearing and Approve the Compromise. ..................23

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*ABCDE Operating LLC v. Snyder,*
(E.D. Mich.) 5:11-cv-11426-JCO-RSW ........................................................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany,*
(N.D.N.Y.) Case No. 1:03-cv-502-NAM-DRH ...........................................19

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n,*
135 S.Ct. 2652 (2015) ..................................................................................17

*Bronson v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati,*
No. C-1-74-205, 1991 WL 1101072 (S.D. Ohio June 26, 1991) ..................3

*Carson v. Am. Brands,*
450 U.S. 79 (1981) .........................................................................................15

*Georgia State Conf. of NAACP v. Fayette Cty. Bd. Of Comm'rs,*
(N.D. Ga.) Case No. 3:11-cv-00123-TCB ......................................................19

*Grove v. Emison,*
507 U.S. 25 (1993) .........................................................................................23

*Guillory v. Avoyelles Parish Cty Sch. Bd.*
(W.D. La.) Case No. 1:03-cv-00285-DDD-JDK...............................................19

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford
Motor Co.,*
No. 07-CV-14845, 2008 WL 4104329, (E.D. Mich. Aug. 29, 2008) ..................*passim*

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v.
General Motors Corp.,*
497 F.3d 615 (6th Cir. 2007) ........................................................................*passim*

*Kimble v. Cty. of Niagara,*
826 F. Supp. 664 (W.D.N.Y. 1993) ...............................................................19

*Kirkland v. New York State Dep't of Corr. Servs.,*
711 F.2d 1117 (2d Cir. 1983) .......................................................................21

*Lawyer v. Department of Justice,*
    521 U.S. 567 (1997) ..........................................................................................*passim*

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,*
    999 F.2d 831 (5th Cir. 1993), *cert. denied* 510 U.S. 1071 (1994) ...................................23

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland,*
    478 U.S. 501 (1986) ........................................................................................ 3, 4, 21

*Lopez v. City of Santa Fe,*
    206 F.R.D. 285 (D. N.M. 2002) ..........................................................................22

*McCoy v. Chi. Heights Election Comm'n,*
    (N.D. Ill.) Case No. 1:87-cv-05112......................................................... 19, 20

*Metro. Pittsburgh Crusade for Voters v. City of Pittsburgh, Pa.,*
    727 F. Supp. 969 (W.D. Pa. 1989), *affirmed in part and reversed in part,*
    964 F.2d 244 (3rd Cir. 1992)..........................................................................20

*Michigan Chamber of Commerce v. Land,*
    (W.D. Mich.) 1:10-cv-664-PLM ..........................................................................9

*Michigan State AFL-CIO v. Johnson,*
    (E.D. Mich.) 4:16-cv-11454-LVP-SDD ........................................................10

*Missouri v. Westinghouse Elec., LLC,*
    487 F. Supp. 2d 1076 (E.D. Mo. 2007) ........................................................12

*Moch v. East Baton Rouge Parish Sch. Bd.,*
    533 F. Supp. 556 (M.D. La. 1980).................................................................19

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
    688 F.2d 615 (9th Cir. 1982) ..........................................................................14

*Overton v. City of Austin,*
    748 F.2d 941 (5th Cir. 1984)..........................................................................23

*R.C. by Ala. Disabilities Advocacy Program v. Nachman,*
    969 F. Supp. 682 (M.D. Ala. 1997), *aff'd sub nom. R.C. v. Nachman,* 145
    F.3d 363 (11th Cir. 1998) ..........................................................................13

*Reynolds v. Sims,*
    377 U.S. 533 (1964) ..........................................................................................17

*Sims v. Pfizer, Inc.*,
    No. 1:10-cv-10743, 2016 WL 772545 (E.D. Mich. Feb. 24, 2016)............................12

*Stovall v. City of Cocoa, Fla.*,
    117 F.3d 1238 (11th Cir. 1997)......................................................................................23

*Taylor v. Johnson*,
    (E.D. Mich.) 5:16-10256 ......................................................................................... 9, 10

*Tenn. Ass'n of Health Maint. Organizations, Inc. v. Grier*,
    262 F.3d 559 (6th Cir. 2001) ...........................................................................4, 21, 24

*UAW v. General Motors Corp.*,
    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)........14, 15, 16

*United States v. City of Miami, Fla.*,
    614 F.2d 1322 (5th Cir. 1980), *on reh'g*, 664 F.2d 435 (5th Cir. 1981) ........................12

*United States v. Cty. of Muskegon*,
    298 F.3d 569 (6th Cir. 2002) ..........................................................................................3

*United States v. Jones & Laughlin Steel Corp.*,
    804 F.2d 348 (6th Cir.1986) ...........................................................................................3

*United States v. Lexington-Fayette Urban Cty. Gov't*,
    591 F.3d 484 (6th Cir. 2010) ...............................................................................4, 12, 16

*United States v. Oregon*,
    913 F.2d 576 (9th Cir.1990) ...........................................................................................4

*Vanguards of Cleveland v. City of Cleveland*,
    753 F.2d 479 (6th Cir. 1985), *aff'd sub nom. Local No. 93, Int'l Ass'n of
    Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501 (1986) .........................3

*Warren v. City of Tampa*,
    693 F. Supp. 1051 (M.D. Fla. 1988) ....................................................................... 20, 22

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) ........................................................................3, 12, 13, 15

*Wittman v. Personhuballah*,
    136 S.Ct. 1732 (2016) ........................................................................................... 20, 21

**STATE CASES**

*Attorney General v. Liquor Control Comm'n*,
　237 N.W.2d 196 (Mich. Ct. App. 1975) ............................................................6

*Gremore v. People's Cmty. Hosp. Auth.*,
　153 N.W.2d 377 (Mich. Ct. App. 1967) .........................................................7

*In re Certified Question from U.S. District Court for Eastern District of Michigan*,
　638 N.W.2d 409 (Mich. 2002) ....................................................................7, 9

*Mich. State Chiropractic Ass'n v. Kelley*,
　262 N.W.2d 676 (Mich. Ct. App. 1977) ....................................................6, 7

*Miller v. Chapman Contracting*,
　730 N.W.2d 462(Mich. 2007) ....................................................................9

*Oklahoma ex rel. Derryberry v. Kerr-McGee Corp.*,
　516 P.2d 813 (Okla. 1973) ........................................................................9

*People v. O'Hara*,
　270 N.W. 298 (Mich. 1936) ......................................................................6

**STATE STATUTES**

MCFA ........................................................................................................10

MCL § 14.28 ..........................................................................................6, 7

MCL § 14.29 ..............................................................................................6

MCL § 14.30 ..............................................................................................8

**RULES**

Fed. R. Civ. P. 43(c) ................................................................................24

## BRIEF IN SUPPORT OF JOINT
## MOTION TO APPROVE CONSENT DECREE

### I.     Background of Settlement

As the Court is acutely aware, over the past year the plaintiffs and the

Defendant Secretary (the "Parties") have vigorously litigated the factual and legal

issues in this case. They have engaged in months of intensive discovery, expert

analysis, and motion practice. The fruits of that work have been placed before the

Court on multiple motions to dismiss, on summary judgment, in various discovery

motions, and in the Parties' detailed proposed pretrial order and associated

submissions.

On December 3, 2018, plaintiffs' counsel met with counsel for former

Secretary of State, Ruth Johnson. Plaintiffs' counsel proposed a settlement under

which a negotiated subset of the 34 Contested Districts[1] would be redrawn in

exchange for dismissal of claims as to all other districts. No negotiations ensued at

that point. After inauguration of a new Secretary of State and a new Attorney General

on January 2, 2019, representatives of both offices indicated to plaintiffs' counsel an

interest in a settlement discussion.[2] On January 7, 2019, plaintiffs' counsel, counsel for

the Secretary designated by the Attorney General as Special Assistant Attorneys

---

[1] As defined in the Court's Order Denying Summary Judgment Motions (Dkt.
No. 143 at 7).
[2] Michigan law assigns the Attorney General full authority as counsel to represent the
Secretary in official capacity cases such as this. *See* § III(A)(2) below.

1

General, and the Secretary herself, met to discuss possible settlement. Counsel for the Parties met again in person on January 9, 2018.

On January 10, 2019, plaintiffs' counsel advised counsel for Congressional and Legislative Intervenors (collectively, the "Intervenors") that counsel for the Parties had begun preliminary discussions as to possible settlement of the case and proposed essentially the same settlement structure described above. Intervenors' counsel stated he would have to consult with his clients. Plaintiffs' counsel mentioned the settlement discussions again to Intervenors' counsel in a call on January 11, 2019, and the Secretary's counsel stated the Secretary was evaluating the case and considering settlement. Intervenors' counsel did not respond at that time to the invitation to participate in settlement discussions. Since then, Intervenors' counsel has asked to participate in settlement discussions, and has been provided a draft consent decree and the Parties' respective positions regarding possible districts to be remediated in a compromise. Despite their counsel's request, at no time did the Intervenors propose any alternative settlement terms or engage substantively in the negotiations.

On January 25, 2019, the Parties reached agreement on the Consent Decree terms ("Compromise"). They now submit the Compromise to the Court for approval as a fair and reasonable resolution of this case. Counsel for Intervenors have received the Consent Decree and have reported that Intervenors do not consent to its terms.

## II.    Courts Approve and Enter Consent Decrees that are Fair, Adequate, and Reasonable Resolutions of Constitutional Claims.

A consent decree represents the parties' agreement to compromise a concrete

legal dispute on the merits and waive any right to further litigate the issues in the case.

*See, e.g.*, *Vanguards of Cleveland v. City of Cleveland*, 753 F.2d 479, 484 (6th Cir. 1985), *aff'd*

*sub nom. Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478

U.S. 501 (1986). It "has attributes of both a contract and a judicial decree" and "is

essentially a settlement agreement subject to continued judicial policing." *Bronson v. Bd.*

*of Educ. of City Sch. Dist. of City of Cincinnati*, No. C-1-74-205, 1991 WL 1101072, at *5

(S.D. Ohio June 26, 1991). "Because a consent decree is a final judicial order, the

provisions of an approved Consent Decree act as an injunction." *Id.* Consequently,

district courts may not approve consent decrees that impose obligations on a non-

consenting party, but neither may "an intervenor . . . preclude other parties from

settling their own disputes and thereby withdrawing from litigation." *Local No. 93, Int'l*

*Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986).

In reviewing a proposed consent decree, a district court does not decide the

merits of the parties' dispute. *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983).

Instead, it approves a proposed consent decree if it finds that the proposal is "fair,

adequate, reasonable, as well as consistent with the public interest." *United States v. Cty.*

*of Muskegon*, 298 F.3d 569, 581 (6th Cir. 2002) (quoting *United States v. Jones & Laughlin*

*Steel Corp.*, 804 F.2d 348, 351 (6th Cir.1986)). To evaluate the propriety of a proposed

decree, the Court conducts a fairness hearing limited to "whatever is necessary to aid it in reaching an informed, just and reasoned decision." *Tenn. Ass'n of Health Maint. Organizations, Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001) (quoting *United States v. Oregon*, 913 F.2d 576, 582 (9th Cir.1990)). Once the Court has concluded the proposed decree is fair, adequate, and reasonable, it may approve a consent decree even if it "provides broader relief than the court could have awarded after a trial." *City of Cleveland*, 478 U.S. 501, 525 (1986).

## III.   The Compromise Should be Approved Because it is Fair, Adequate, Reasonable, and in the Public Interest.

The Compromise entered between the Secretary and the plaintiffs is a fair, adequate, and reasonable settlement of a genuine dispute that serves the public interest. The Court should approve it.

### A.   The Compromise is Fair.

The fairness of the Compromise "turns in large part on the bona fides of the parties' legal dispute." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Among other things, courts consider "the strength of plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in the litigation if the settlement is not approved, to be relevant." *United States v. Lexington-Fayette Urban Cty. Gov't*, 591 F.3d 484, 489 (6th Cir. 2010) (internal quotations and brackets omitted). In evaluating the Compromise, the Court "is not to decide whether one side

is right or even whether one side has the better of these arguments." *General Motors Corp.*, 497 F.3d at 631. Otherwise, the court would "be compelled to defeat the purpose of a settlement in order to approve a settlement." *Id.* at 632. Rather, the question is "whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *Id.*; *accord, e.g.*, *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *24. (E.D. Mich. Aug. 29, 2008).

Here, the dispute is genuine, plaintiffs' claims are strong, legitimate defenses have been raised, and the risks associated with continued litigation are real. The Parties, with proper authority, negotiated the Compromise in good faith and agree it is fair.

### 1.    Plaintiffs' case is strong.

Plaintiffs' case has survived more than a year of contentious discovery and motion practice and is set for trial. The Court has found evidence to support justiciability and standing—the primary contested issues in partisan gerrymandering cases—including documentary evidence and admissions of relevant witnesses that could not be seriously contested at trial. *See* Dkt. No. 143. And, the Court has detailed the manageable legal standards for evaluating both the Equal Protection and the First Amendment claims in the case. *Id.* at 33-38. The record in this case demonstrates that there is a more than a modest likelihood plaintiffs will obtain meaningful relief at trial.

### 2.     Both Parties support the Compromise.

Plaintiffs and the Secretary of State, as well as their respective counsel, support

the Compromise. Because the Secretary of State and her counsel, designated as

Special Assistant Attorneys General, speak for the State of Michigan, thus, the State

supports the Compromise as well.

### a.     Michigan law is clear: the Secretary and Attorney General speak for the State.

The Michigan legislature has granted the Attorney General broad

authority to represent the State's interest in lawsuits as counsel to the Secretary

of State:

> The attorney general may, when in h[er] own judgment the interests of
> the state require it, intervene in and appear for the people of this state in
> any other court or tribunal, in any cause or matter, civil or criminal, in
> which the people of this state may be a party or interested.

MCL § 14.28. In cases where the Secretary of State is sued, "it shall be the duty of the

attorney general, at the request of . . . the secretary of state," to "defend all suits

relating to matters connected with their departments." MCL § 14.29.

The Attorney General has "statutory and common law authority to act on

behalf of the people of the State of Michigan in any cause or matter, such authority

being **liberally construed**." *Mich. State Chiropractic Ass'n v. Kelley*, 262 N.W.2d 676, 677

(Mich. Ct. App. 1977) (emphasis added) (citing MCL § 14.28; *People v. O'Hara*, 270

N.W. 298 (Mich. 1936); *Attorney General v. Liquor Control Comm'n*, 237 N.W.2d 196

(Mich. Ct. App. 1975)). The Michigan Court of Appeals has explained that "[s]uch

liberally construed authority and discretion should only be interfered with where [her] actions are clearly inimical to the people's interest." *Mich. State Chiropractic Ass'n*, 262 N.W.2d at 677 (citing *Gremore v. People's Cmty. Hosp. Auth.*, 153 N.W.2d 377, 378 (Mich. Ct. App. 1967) (reading the "broad discretion granted the attorney general" by MCL § 14.28 as limited only when it is "inimical to the public interest")).

In particular, the Michigan Supreme Court has confirmed that this authority does extend to settlement of lawsuits. In *In re Certified Question from U.S. District Court for Eastern District of Michigan*, 638 N.W.2d 409, 412 (Mich. 2002), this Court certified the following question to the Michigan Supreme Court: "Does the Michigan Attorney General have the authority to bind/release claims of a Michigan county as a part of a settlement agreement in an action that the Attorney General brought on behalf of the State of Michigan." *Id.* The Michigan Supreme Court answered the question in the affirmative and explained that "inherent in the Attorney General's authority to sue on behalf of a county in matters of state interest, is the Attorney General's authority to settle such a suit." *Id.* at 414. The Court explained that the Attorney General "may control and manage all litigation in behalf of the state and is empowered to make any disposition of the state's litigation which [the Attorney General] deems for its best interests." *Id.* (citing 7 Am. Jur. 2d, Attorney General § 27 at 26). Thus, Michigan law does not authorize Intervenors to control the State's defense of this action or veto any settlement.

The Secretary's authority is further underscored by recent unsuccessful legislation. At the very end of the 2017-2018 Legislative Session, a bill was passed that purported to authorize the Legislature, and either house thereof, to intervene "in any action commenced in any court of this state whenever the legislature or a house of the legislature deems such intervention necessary in order to protect any right or interest of that body because a party to that action challenges the constitutionality of a state statute[.]" Enrolled H.B. 6553, 99th Leg., Reg. Sess. 2018 (Mich. 2018), *available at* https://www.legislature.mi.gov/documents/2017-2018/billenrolled/House/pdf/2018-HNB-6553.pdf. The bill was presented to Governor Snyder, who vetoed it on December 28. A non-partisan news source reported that, because of Governor Snyder's veto, "[t]he Michigan Legislature won't get new authority to intervene in state lawsuits[.]" Jim Malewitz, *Gov. Snyder vetoes Michigan bills criticized as Republican 'power grabs,'* BRIDGE, Dec. 28, 2018, https://www.bridgemi.com/public-sector/gov-snyder-vetoes-michigan-bills-criticized-republican-power-grabs. The vetoed bill "would have limited the powers of Democrats set to take statewide office in the new year." *Id.*[3]

The Attorney General is presumed to act in the best interests of the state when settling a lawsuit. "As an incident to the domination the Attorney General possesses

---

[3] Other Michigan statutes further demonstrate that the legislature knew well how to limit and impose obligations with respect to the Attorney General. *See, e.g.*, MCL § 14.30 (requiring submission of a report of all official business and litigation done by the Attorney General.

over every suit . . . [s]he has the power to dismiss, abandon, discontinue, or compromise suits . . .as [s]he deems best for the interest of the state." *In re Certified Question from U.S. Dist. Court for E. Dist. of Mich.*, 638 N.W.2d at 414 (quoting with approval *Oklahoma ex rel. Derryberry v. Kerr-McGee Corp.*, 516 P.2d 813, 818 (Okla. 1973)). Accordingly, the Attorney General has authority to settle lawsuits on behalf of the State, and as counsel to the Secretary of State.

### b. Federal courts have repeatedly approved consent decrees with the Michigan Secretary of State, enjoining compliance with unconstitutional Michigan statutes.

Both this Court and the United States District Court for the Western District of Michigan have recognized the Secretary of State's authority to settle disputes on behalf of the State of Michigan—approving at least four consent decrees with the Michigan Secretary of State enjoining enforcement of unconstitutional statutes. In *Michigan Chamber of Commerce v. Land*, (W.D. Mich.) 1:10-cv-664-PLM (attached hereto at Exhibit 2), the Western District approved a "stipulated judgment and order for a permanent injunction" agreeing and finding that a portion of the Michigan Campaign Finance Act ("MCFA") violated the First and Fourteenth Amendments, and enjoining certain enforcement measures.[4] In *Taylor v. Johnson*, (E.D. Mich.) 5:16-10256-JCO-RSW (attached hereto at Exhibit 3), local office holders challenged the

---

[4] Gary Gordon and Dykema Gossett—counsel for the Republican caucuses and proposed Senate intervenors in this case—represented the Secretary of State in *Land*, and approved the consent decree.

constitutionality of a separate section of the MCFA. Following extensive briefing by the parties and *amici*, the court granted the plaintiffs' request for a preliminary injunction, and soon thereafter entered a "consent judgment" that permanently enjoined the Secretary from enforcing the section at issue.[5] *Id.* And, in *Michigan State AFL-CIO v. Johnson*, (E.D. Mich.) 4:16-cv-11454-LVP-SDD (attached hereto at Exhibit 4), the plaintiffs challenged yet another provision of the MCFA, arguing that it violated the Contracts Clause of the U.S. Constitution with respect to certain agreements between unions and employers. Following a preliminary injunction, the Secretary and the plaintiffs entered into a consent judgment finding that the MCFA violated the Contracts Clause and barring the Secretary of State from enforcing the same. *See also, e.g.*, *ABCDE Operating LLC v. Snyder*, (E.D. Mich.) 5:11-cv-11426-JCO-RSW (attached hereto at Exhibit 5) (entering a stipulated judgment declaring that a Michigan statute regulating commercial advertisements violated the First and Fourteenth Amendments of the U.S. Constitutions and ordering the Governor of Michigan, in his official capacity, to pay $22,699.62 to plaintiff for its attorney's fees and costs).

In line with Michigan law and the Michigan district courts' prior decisions, the Secretary of State, guided by the Attorney General, has the power to agree to the

---

[5] Gary Gordon also served as counsel of record in *Taylor*, filing an amicus brief on behalf of Amici the Michigan Municipal League, Michigan Association of Counties, the Michigan Townships Association, and the Conference of Western Wayne—all of whom supported the plaintiffs' constitutional challenge to the MCFA.

Compromise on behalf of the State of Michigan. Because she has done so, the Parties support the Compromise.

### 3.    The Compromise eliminates risks for both sides.

Absent a compromise, plaintiffs face risks at trial, as in any trial, and on appeal. Likewise, the Secretary faces risks of loss at trial and on appeal, including the risk of the relief requested by plaintiffs.

The pending appeals challenging gerrymandering in North Carolina, in *Common Cause v. Rucho* (Sup. Ct. No. 18-422), and in Maryland, in *Benisek v. Lamone* (Sup. Ct. No. 18-726), also present real and significant risk for the Parties. The Supreme Court will likely rule in those cases during this term, and the rulings may very well significantly bolster or damage, or even eliminate, at least one of the party's arguments here. As set forth in the proposed Consent Decree, the Parties intend and commit that this settlement be final, and enforceable, regardless of how the Supreme Court decides *Rucho* and *Benisek* and any other partisan gerrymandering case.

In addition, the costs, expenses, and uncertainty  associated with a lengthy trial are real for the Parties. And finally, the Secretary and the plaintiffs have recognized the burdens that would be imposed on incumbents, the State of Michigan, and the risks of voter confusion if special elections were ordered as to districts in the Michigan Senate.

"In short, success at litigation (for either side) may prove illusory, a prospect that makes settlement a reasonable course." *Ford Motor Co.*, 2008 WL 4104329 at *26.

11

Each party recognizes its risk of loss, and seeks to eliminate it through compromise. *See also, e.g.*, *Lexington-Fayette*, 591 F.3d at 489 (observing that trial presents "real risk" for all parties). A compromise that splits the districts to be remedied is fair in light of the risks to both sides.

### 4.   The Parties negotiated in good faith.

The Parties have negotiated a good-faith resolution of this dispute. Intervenors' counsel have been included on emails negotiating the proposed consent decree. Instead of submitting their own proposals, Intervenors eventually objected to the entire consent decree. Contrary to Intervenors' contentions, the Compromise is not the result of any collusion. Instead, it is "the product of arms-length negotiations," compromise, and cooperation. *Vukovich*, 720 F.2d at 921; *see also, e.g.*, *Missouri v. Westinghouse Elec., LLC*, 487 F. Supp. 2d 1076, 1079 (E.D. Mo. 2007) (observing that, in practice, consent decrees require "a certain amount of compromise and cooperation" or they could "never be formed").

In evaluating the propriety of a proposed consent decree, "[c]ourts presume the absence of fraud or collusion . . . unless there is evidence to the contrary" and "should be hesitant to substitute their judgment for that of experienced counsel." *Sims v. Pfizer, Inc.*, No. 1:10-cv-10743, 2016 WL 772545, at *9-10 (E.D. Mich. Feb. 24, 2016); *United States v. City of Miami, Fla.,* 614 F.2d 1322, 1331 (5th Cir. 1980), *on reh'g*, 664 F.2d 435 (5th Cir. 1981); *see also Ford Motor Co.*, 2008 WL 4104329 at *28 (instructing that "if the settlement agreement itself is fair, reasonable and adequate, then the court may

assume that the negotiations were proper and free of collusion"); *Vukovich*, 720 F.2d at 922-23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."). "Collusion" is a high bar that must rise to the level of being a "fraud upon the court" to entitle a party to invalidate or prevent a consent decree from coming into effect or force a modification. *R.C. by Ala. Disabilities Advocacy Program v. Nachman*, 969 F. Supp. 682, 690-91 (M.D. Ala. 1997), *aff'd sub nom. R.C. v. Nachman*, 145 F.3d 363 (11th Cir. 1998). "The court's determination should be based on its familiarity with the issues, the results of discovery, and the character of the negotiations prior to the entry of the decree." *Vukovich*, 720 F.2d at 921. Agreements that are the outcome of negotiations and bargaining by both sides—that is, the compromise typical in "ordinary … settlement negotiations" where both sides surrender on points heavily litigated — are not collusive. *Nachman*, 969 F. Supp. at 691.

The Compromise is not the product of collusion. There is "an ongoing adversarial relationship" between the parties, and plaintiffs participated in tough negotiations to reach a compromise agreeable to the Secretary and her experienced counsel. *UAW v. General Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151 at *21 (E.D. Mich. Mar. 31, 2006). Both sides have detailed factual and legal bases upon which to agree to a compromise resolution based on the extensive discovery and record in the case. It is reasonable and appropriate that the parties have determined under the present circumstances to settle their dispute by compromise, to avoid the

risks inherent to the upcoming trial and in the likely appeal. *See, e.g., General Motors Corp.*, 497 F.3d 633 (observing that the parties had reason for settling at the point in litigation that they did and that "[t]he timing of a settlement by itself does not establish collusion"). The Parties' have not "hastily arrived at" the Compromise, and "there is not a shred of evidence in the record suggesting the existence of collusion between the negotiators." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 627 (9th Cir. 1982). The Secretary herself is an accomplished lawyer with election law experience, and her office has consulted with, among others, her attorneys at the Dickinson Wright law firm, which has served as counsel to the Secretary of State in this case since inception. All counsel are fully representing their clients, and there is no legitimate basis to conclude counsel have "colluded" in the sense that term sometimes arises in the class action context, to put their own interests ahead of their clients'. Instead, all of the evidence supports that the Parties' have negotiated the Compromise in good-faith.

## B.    The Compromise is Adequate.

To evaluate the Compromise's adequacy, the Court considers plaintiffs' "likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Vukovich*, 720 F.2d at 921 (quoting *Carson v. Am. Brands*, 450 U.S. 79, 88 n.14 (1981)). "The [C]ourt need not possess sufficient 'evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *Ford Motor Co.*, 2008 WL 4104329 at *27 (quoting *General Motors Corp.*,

2006 WL 891151 at *19). Instead, the Court must have only "sufficient facts before him to intelligently approve or disapprove the settlement." *Id.* (quoting *General Motors Corp.*, 2006 WL 891151 at *19). Moreover, the Court "may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case." *Vukovich*, 720 F.2d at 922.

Measured against these standards, the settlement is wholly adequate. Plaintiffs have supplied extensive expert and documentary evidence, and the Court has made legal judgments that make it likely—**not certain**—**that plaintiffs** will receive meaningful and material relief from the Republican gerrymander of 2011. Under the Compromise eleven districts will be redrawn to mitigate or eliminate the packing and cracking that diluted plaintiffs' votes. Though not every plaintiff's (or League voter's) district will be redrawn, the League and every plaintiff support the Compromise, because they believe it is adequate, under all the circumstances here, to address the gerrymander's impacts that they believe reflect their most direct injury from the Legislature's misconduct.

Plaintiffs further believe that the avoidance of significant risk of adverse Supreme Court rulings in *Rucho* and *Benisek* or in this case bears directly on the adequacy analysis. Though they forego here substantial parts of the remedy they seek, they recognize that absent settlement, they may achieve no remedy. By comparison, the Compromise is a fair and adequate outcome.

Short of a lengthy trial with the Court fully and finally adjudicating the merits of the case, with all its attendant risks and costs, this is a more than adequate remedy for Michigan's voters.

### C.    The Compromise is Reasonable.

A consent decree is reasonable if it is likely to be effective at remedying at least some of the legal violations challenged in the underlying dispute. *See, e.g.*, *Lexington-Fayette*, 591 F.3d at 489. The proposed settlement need not be "the most favorable possible result in the litigation," it simply must fall within "a range of reasonableness." *Ford Motor Co.*, 2008 WL 4104329 at *25 (quoting *General Motors Corp.*, 2006 WL 891151 at *17).

The Compromise will remedy at least some of the unconstitutional gerrymandering that plaintiffs have challenged. It recognizes how the 2018 election results produced Michigan congressional caucuses that more closely matched votes and seats. It recognizes the unique burdens and uncertainties of special elections in the Senate. And it directly addresses the enduring gerrymander in the House. It is hard to argue that it is not within the range of reasonableness given all the uncertainties in this action. As set forth above, the Compromise undoubtedly "falls within the "range of reasonableness" reflecting a just result. *Id.* at *25.

### D.    The Compromise is in the Public Interest.

The Supreme Court, and this Court, have repeatedly recognized the fundamental public interest in fair elections, and in particular in electoral maps free

from the type of partisan tinkering that places a heavy governmental thumb on the

scales against one party, to maintain the incumbent party in power.

> The right to vote freely for the candidate of one's choice is of the
> essence of a democratic society, and any restrictions on that right strike
> at the heart of representative government. And the right of suffrage can
> be denied by a debasement or dilution of the weight of a citizen's vote
> just as effectively as by wholly prohibiting the free exercise of the
> franchise.

*Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (quoted in the Court's Opinion and Order of

May 16, 2018 (Dkt. No. 54 at 10)).

Partisan gerrymandering offends "the core principle of Republican government

. . . that the voters should choose their representatives, not the other way around.'"

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 135 S.Ct. 2652, 2677 (2015) (as cited

in this Court's Opinion and Order of Nov. 30, 2018, Dkt. No. 143 at 31) (internal

quotes omitted).

Here, where the quantitative evidence demonstrates how heavily the Michigan

maps were tilted, it is almost the definition of public interest to agree to a settlement

that takes large steps toward rebalancing the maps, as a predicate to the 2021

redistricting under the new commission process selected overwhelmingly by Michigan

voters.

Under similar circumstances, the Supreme Court upheld a district court's entry

of a consent decree resolving a redistricting dispute under which the state government

agreed to redraw district lines to comply with constitutional and statutory

requirements. In *Lawyer v. Department of Justice*, 521 U.S. 567, 573-74 (1997), the

Supreme Court affirmed a district court's approval of a consent decree settling a

challenge to a Florida legislative district. All parties, except a plaintiff and a former

state Senator, had agreed to the redrawn district, and the plaintiff appealed. *Lawyer*,

521 U.S. at 574-75. The Supreme Court upheld the district court's entry of the

consent decree because the State's interest in the redrawn district was protected by the

Florida Attorney General's agreement to the decree, and because even absent an

adjudication, evidence in the case supported the underlying agreement that the

remedial plan at issue was not racially motivated. *Id.* at 582.

    *Lawyer* directly supports approving the Parties' consent decree here, where the

Parties are in agreement, the Attorney General and Secretary of State have the full

authority to enter the settlement on behalf of the State, the legislature will have

priority on drawing remedial districts, and the Court has reviewed extensive evidence

generated through robust discovery, including multiple expert reports, demonstrating

the existence of a real dispute regarding the constitutionality of districts.[6] Entering the

consent decree and permitting the Michigan legislature to redraw constitutionally

compliant districts certainly serves the public interest.

---

[6] Justice Scalia, in dissent, criticized the judgment below because, among other things, the district court never gave the Florida legislature the opportunity to do its own redrawing of the districts. 521 U.S. at 583. No such concern exists here as the proposed decree expressly invites the Michigan legislature to propose alternative House districts.

District courts across the country have also approved redistricting settlements. *See, e.g., Kimble v. Cty. of Niagara*, 826 F. Supp. 664, 672-73 (W.D.N.Y. 1993) (approving redistricting consent decree settling claims under the U.S. Constitution and Voting Rights Act); *Moch v. East Baton Rouge Parish Sch. Bd.*, 533 F. Supp. 556, 561 (M.D. La. 1980) (approving consent decree on school board districts after finding it was fair, reasonable, and furthered public policy); *Georgia State Conf. of NAACP v. Fayette Cty. Bd. Of Comm'rs*, (N.D. Ga.) Case No. 3:11-cv-00123-TCB, Dkt. Nos. 288, 288-1, 289 (attached hereto at Exhibit 6) (approving consent decree on school board districts shortly before trial); *Guillory v. Avoyelles Parish Cty Sch. Bd.*, (W.D. La.) Case No. 1:03-cv-00285-DDD-JDK, Dkt. Nos. 40-42 (attached hereto at Exhibit 7) (directing parties to prepare consent judgment upon notification of settlement just before trial and approving consent judgment on redistricting school board districts); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, (N.D.N.Y.) Case No. 1:03-cv-502 (NAM), Dkt. Nos. 117-18 (attached hereto at Exhibit 8 ) (entering consent decree in Voting Rights Act case without a hearing); *McCoy v. Chi. Heights Election Comm'n*, (N.D. Ill.) Case No. 1:87-cv-05112, Dkt. Nos. 793 and 797 (fairness hearing transcript and consent decree attached as Exhibit 9) (approving consent decree on Voting Rights Act claims regarding city council map); *Warren v. City of Tampa*, 693 F. Supp. 1051 (M.D. Fla. 1988) (certifying class action and approving proposed settlement of certain claims under U.S. Constitution and Voting Rights Act after conducting fairness hearing and receiving evidence); *Metro. Pittsburgh Crusade for Voters v. City of*

*Pittsburgh, Pa.*, 727 F. Supp. 969, 971 (W.D. Pa. 1989), *affirmed in part and reversed in part*, 964 F.2d 244 (3rd Cir. 1992) (explaining that district court entered consent decree on constitutional and Voting Rights Act redistricting claims over objections after conducting fairness hearing).

As in these cases, the Compromise is consistent with constitutional mandates and precedent, and it furthers the public's interest in free and fair elections.

## IV.    The Court May Approve the Compromise over Intervenors' Objection.

Intervenors have no authority to block the consent decree. Instead, the Court may approve the Compromise even if the Intervenors object.

First, none of the Intervenors has a present legal interest in the Compromise. Congressional Intervenors have no remaining legal interest in this matter, as the Compromise leaves all congressional districts untouched. Likewise, the districts of Legislative Intervenors are not affected by the Compromise. The putative Senate intervenors who recently moved the Court would be unaffected because each is a Senator and no Senate districts will be affected by the consent decree. *See, e.g.*, *Wittman v. Personhuballah*, 136 S.Ct. 1732, 1736-37 (2016) (finding that members of Congress whose districts not affected by redistricting remedial plan lack standing to appeal entry of plan).

Second, the Supreme Court has held that even the objection of a plaintiff voter would not preclude entry of a consent decree in a redistricting dispute. *Lawyer*, 521 U.S. at 573-74 (1997). *A fortiori* here, where the objection comes from intervenors,

20

with no direct legal right at stake, the objection and argument may be considered in

reviewing the elements for approval, but the fact of the objection cannot preclude the

approval.

> A consent decree is primarily a means by which parties settle their
> disputes without having to bear the financial and other costs of litigating.
> It has never been supposed that one party—whether an original party, a
> party that was joined later, or an intervenor—could preclude other
> parties from settling their own disputes and thereby withdrawing from
> litigation. **Thus, while an intervenor is entitled to present evidence
> and have its objections heard at the hearings on whether to
> approve a consent decree, it does not have power to block the
> decree merely by withholding its consent**.

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C.*, 478 U.S. at 528-29 (emphasis

added); *see also Grier*, 262 F.3d at 566-67 (citing *Local No. 93*) (finding that intervenor

health providers affected by settlement of class action do not have power to block the

decree but only the right to be heard in a fairness hearing setting); *Kirkland v. New

York State Dep't of Corr. Servs.*, 711 F.2d 1117, 1126 (2d Cir. 1983) (finding that

although intervenor potential employees "do have a sufficient interest to argue that

the decree or agreement is unreasonable or unlawful, their interest in the expectation

of appointment does not require their consent as a condition to any voluntary

compromise of the litigation" in Title VII class action).[7]

---

[7] *See also, Lopez v. City of Santa Fe*, 206 F.R.D. 285 (D. N.M. 2002) (approving consent
decree to which City of Santa Fe, through Mayor, was a party but city-county council,
whose districts would be redrawn under settlement, was not); *Warren v. City of Tampa*,
693 F. Supp. 1051 (M.D. Fla. 1988) (approving consent decree in action challenging
city council election systems to which City of Tampa, through Mayor, was party but
city council was not).

Consistent with *Lawyer*, the Court may approve the Compromise whether Intervenors object or decline to participate. It is *the State* that must be a party to the settlement and which "should be given the opportunity to make its own redistricting decisions so long as that is practically possible and the State chooses to take [it]." *Lawyer*, 521 U.S. at 576-77. As discussed, Intervenors do not represent the State of Michigan. Instead, Michigan's legislature has directed, and its Supreme Court has affirmed, that *the Secretary* and *the Attorney General* represent the State's interests. *See also id.* at 577 (observing that the state's attorney general had the authority "to propose the settlement plan on the state's behalf"). Thus, as in *Lawyer*, "[t]here can be no question on the present record that proponents of the plan included counsel authorized to represent the State itself, and there is no reason to suppose that the State's attorney general lacked authority to propose a plan as an incident of his authority to represent the State in this litigation." *Id.* at 577. Moreover, because the Compromise provides the Michigan legislature the first opportunity to redraw the unconstitutional districts, the Compromise respects "the State's interest in exercising 'primary responsibility for apportionment of [its] federal congressional and state legislative districts'" in this respect too. *Id.* at 576 (quoting *Growe v. Emison*, 507 U.S. 25, 34 (1993)).

Indeed, as in *Lawyer*, "the State has selected its opportunity by entering into the settlement agreement, which . . . it ha[s] every right to do." *Id.* at 577. Consequently, Intervenors may not block the Compromise and the Court may approve it over Intervenors' objection.

**V.     The Court Should Hold a Hearing and Approve the Compromise.**

The Parties have negotiated a fair compromise settlement of a dispute in which there is great public interest. The Court's responsibility is met by its year of almost constant exposure to this case, and in particular its command of the facts and the law supporting the conclusion that this is a "real claim."

To facilitate the Court's approval of the Compromise, and consistent with precedent, plaintiffs and the Secretary ask that the Court set a hearing on their motion or after February 5, 2019. *See, e.g.*, *Stovall v. City of Cocoa, Fla.*, 117 F.3d 1238, 1239-40, 1243-44 (11th Cir. 1997) (directing district court to hold fairness hearing and receive evidence on proposed consent decree in redistricting case to evaluate whether proposed decree is "fair, reasonable, and lawful" where parties had conducted no discovery); *Overton v. City of Austin*, 748 F.2d 941, 957-58 (5th Cir. 1984) (denying mandamus where district court had not yet held hearing on reasonableness of proposed consent decree); *compare League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 847 (5th Cir. 1993), *cert. denied* 510 U.S. 1071 (1994) (denying request for remand to enter a proposed consent decree where court has already actually adjudicated merits of claim).

That hearing should not be a trial on the merits and should be limited to considering objections and taking only the evidence the Court requires to determine the fairness, adequacy, and reasonableness of the proposed Compromise. *See, e.g.*, *Grier*, 262 F.3d at 567 (reiterating that a fairness hearing should not be "a full-blown

trial on the merits" and that the "court has discretion to limit the fairness hearing, and the consideration of . . . objections, so long as such limitations are consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable"); *accord General Motors Corp.*, 497 F.3d at 635. Consistent with the rule for all hearings that the record can be made by oral testimony or by affidavit and other evidence, the Parties anticipate relying almost largely on evidence and legal argument already before the Court to allow the Court to make the necessary finding that the Consent Decree is a reasonable and fair compromise. *See* Fed. R. Civ. P. 43(c); section IV(C) above.

It is important that the hearing take place relatively soon so that the redistricting work can commence and conclude in time for the 2020 election in the House. The Parties believe that there remains ample time to complete this work and to complete any necessary review of the decree by a higher court.

Plaintiffs, the Secretary and her counsel (serving as Special Assistant Attorneys General), on behalf of the State of Michigan, then ask that the Court find that the Compromise is fair, reasonable, adequate, and in the public interest and approve it.

Date:  January 25, 2019

*/s/ Joseph H. Yeager, Jr.*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Kevin M. Toner (IN Bar No. 11343-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Jeffrey P. Justman (MN Bar No. 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina L. Vaynerman (MN Bar No. 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Fax: 317-237-1000
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

*Counsel for Plaintiffs*

/s/ *Scott R. Eldridge*

Michael J. Hodge
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
& STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General*
*And Counsel for Defendant*
*Jocelyn Benson, Michigan Secretary of State*

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2019, I caused to have electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted,


/s/ Joseph H. Yeager, Jr.