# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MICHIGAN, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| JOCELYN BENSON, in her official Capacity as Michigan Secretary of State, et al., | ) ) ) ) ) |
| Defendants. | ) |

Case No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

**CONSENT DECREE**

Joseph H. Yeager, Jr. (IN 2083-49)
Kevin M. Toner (IN 11343-49)
Harmony A. Mappes (IN 27237-49)
Jeffrey P. Justman (MN 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina Vaynerman (MN 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
MBrewer@goodmanacker.com

*Counsel for Plaintiffs*

Michael J. Hodge (P25146)
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
  & STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General*
*And Counsel for Defendant*
*Jocelyn Benson, Michigan Secretary of State*

## BACKGROUND

1. On December 22, 2017, plaintiffs, The League of Women Voters of Michigan ("League") and eleven individual voters, brought this action under U.S.C. §§ 1983 and 1988, alleging that Michigan's current apportionment plans for the State Legislature and Congress (the "Apportionment Plan"), enacted by the Michigan Legislature as Michigan Public Acts 128 and 129 of 2011, violate plaintiffs' Fourteenth Amendment Equal Protection Rights and plaintiffs' First Amendment free speech and association Rights. ECF No. 1.

2. On May 16, 2018, the Court dismissed plaintiffs' statewide claims for lack of standing but denied the Secretary's motion to dismiss with regard to district by district claims. ECF No. 54.

3. Discovery ensued on an accelerated schedule, with the Court being presented with and ruling upon a variety of discovery disputes along the way. *See, e.g.,* ECF Nos. 58, 86, 92, 94, 95.

4. The Congressional Intervenors joined the case as permissive intervenors on August 30, 2018. (ECF No. 103). On December 20, 2018, the Sixth Circuit Court of Appeals ordered that the Legislative Intervenors were also permitted to join the case.

5. Based on the Court's holding on the motion to dismiss (ECF No. 54) and the decision of the Supreme Court in *Gill v. Whitford*, 138 S.Ct. 1916 (2018), the plaintiffs narrowed their list of challenged districts by the time of summary judgment

3

briefing and argument. At that time and now, the plaintiffs challenge the following districts: Congressional Districts 1, 4, 5 and 7-12; Senate Districts 8, 10-12, 14, 18, 22, 27, 32, and 36; and House Districts 24, 32, 51, 52, 55, 60, 62, 63, 75, 76, 83, 91, 92, 94, and 95 (the "Challenged Districts").

6.   Beginning on September 21, 2018, the Parties briefed cross-motions for summary judgment. ECF Nos. 117, 119, 121, 126-29, 135. On November 30, 2018, the Court entered its opinion and order on the summary judgment motions. ECF No. 143. The Court ruled that the plaintiffs had presented evidence of the following, sufficient to create triable issues of fact as related to the Challenged Districts:

- The map drawing process was confidential. ECF No. 143, p. 3.

- No Democratic representative or interest group ever attended the map drawing meetings. *Id.*

- The maps were "highly secretive." *Id.*

- The map makers "relied on political data" in drawing the maps, namely, population and election data, including election results through the years. *Id.* at 4.

- Email evidence illustrated that the "profound extent to which partisan political considerations" affected the redistricting process. *Id.* at 5.

- The "mapmakers efforts proved extremely successful." *Id.* at 5. The history of Michigan elections from 2012 on reflects that the Apportionment Plan

4

provided Republicans with a durable and material advantage in converting votes to seats. *Id.*

- Individual plaintiffs or Democratic League members lived and voted in each of the Challenged Districts. *Id.* at 18, 22-23.

- Demonstration maps for each of the Challenged Districts show that the mapmakers could have drawn maps that complied with state law as well or better than the enacted maps but would be less cracked or packed than in enacted map districts. *Id.* at 15-19.

- Each League member voter lives in a district that is considerably more partisan than many or all of the one thousand simulated districts submitted for the same map. *Id.* at 23.

- The interests that are at issue in this case are germane to the League's purpose of promoting civic engagement, increasing voter participation and defending democracy. *Id.*

- The League's claims do not require the participation of any individual League member. *Id.* at 24.

The Court held that:

- The League and the individual plaintiffs have standing on a district-by-district basis under *Gill v. Whitford*. *Id.* at 17-19.

5

- The League has derivative standing for its Fourteenth Amendment claims based on the rights of its members, as well as associational standing for its First Amendment claims based on its non-dilutionary injuries to its own First Amendment Rights. *Id.* at 29.

- Plaintiffs' claims under both the First and Fourteenth Amendments are justiciable because judicially manageable standards exist to adjudicate the claims. *Id.* at 30 *et seq.*

7. The Court adopted a three-part discriminatory intent, discriminatory effect, and lack of justification test for the Fourteenth Amendment claims. *Id.* at 34. The Court ruled that the plaintiffs had provided sufficient evidence to support their claim under that standard for trial purposes. *Id.* at 35. In particular, the Court held that the standards are judicially manageable. *Id.* at 36.

8. Finally, the Court held that plaintiffs had also established the justiciability of their First Amendment claims, adopting the following three-prong standard: (1) specific intent to "burden individuals or entities that support a disfavored candidate or political party;" (2) injury (that the districting plan in fact burdened the First Amendment rights of such persons), and (3) causation (that absent the Legislature's intent, the "concrete adverse impact would not have occurred"). *Id.* at 38.

6

9. This matter is set for trial beginning February 5, 2019 for seventeen (17) trial days. The cost of such trial will be substantial for all Parties and will require substantial judicial resources.

## A CONSENT DECREE SERVES THE BEST INTERESTS OF THE PARTIES AND THE STATE OF MICHIGAN

10. On January 4 and 8, 2019, the United States Supreme Court set oral argument for March 2018 and ordered expedited briefing on the merits in two partisan gerrymandering cases featuring district-by-district claims, *Common Cause v. Rucho* (Sup. Ct. No. 18-422) from North Carolina and *Benisek v. Lamone* (Sup. Ct. No. 18-726) from Maryland. The Supreme Court has never ruled on the justiciability of district-by-district partisan gerrymandering claims such as those presented in *Benisek*, in *Rucho* and in this case. The decisions in those cases may strengthen one of the parties' positions herein, or may leave the issue undecided.

11. The Secretary and the plaintiffs have agreed that the entry of this Consent Decree is an appropriate and fair resolution in light of the Court's summary judgment decision that the plaintiffs have standing, that their claims are justiciable under *Davis v. Bandemer*, 478 U.S. 109 (1986), and that they have presented evidence sufficient to support those claims. The Parties recognize the risk of loss at trial and/or on appeal and wish to manage said risk and cost by the entry of this Consent Decree.

7

12. The Secretary and her legal counsel, the Attorney General, have the authority to enter into this Consent Decree under MCL 14.28 and 14.29.

13. The Secretary has reviewed fully all of the briefings and proceedings in this litigation; her staff and current counsel met with previous counsel from Dickinson Wright; and the Secretary has reviewed the merits of this litigation with her current counsel from Miller Canfield, which has been appointed as Special Assistant Attorneys General.

14. After due deliberation and consideration of the merits, costs, and risks in this action, the Secretary has concluded that there is a significant risk of loss should the case continue to trial on the merits, and it is in the best interest of the State of Michigan to enter into this decree subject to the final approval of the Court, which will limit the negative impact of past partisan gerrymandering.

15. The plaintiffs have likewise been fully advised by their counsel regarding the merits, costs, and risks in this action. The plaintiffs have concluded that there is a significant risk of loss should the case continue to trial on the merits and through an appeal to the Supreme Court, and that it is in their best interests and in the interests of voters in the State of Michigan to enter into this decree subject to the final approval of the Court.

16. The terms of this decree represent a compromise under which the plaintiffs agree to dismiss with prejudice their challenges to approximately half of the Challenged Districts, and the Secretary agrees to withdraw her opposition to the

redistricting of the remaining districts ("Enjoined Districts"), as defined further below. The Parties understand and stipulate that this Consent Decree is a compromise to avoid risk and expense, and that if approved by the Court the Parties will be bound by this Consent Decree regardless of future developments including, without limiting the generality of the foregoing, any decisions in *Rucho* or *Benisek*.

## REMEDIAL PROVISIONS

17. As to the Enjoined Districts, the Parties agree that the facts set forth above and in support of Plaintiffs' response to the Secretary's motion for summary judgment are true, and that the facts support the conclusion that the Enjoined Districts are unconstitutional under the tests stated by this Court and summarized above.

18. The Parties further agree that no delay in the commencement of this action prejudiced the ability of the Secretary to defend this action.

19. The Parties seek to resolve fully the controversy between them through the entry of this Consent Decree and submission to the Court's continuing jurisdiction as necessary to enforce its provisions through the elections of 2020, after which, all Congressional and Legislative districts in Michigan will be drawn by a non-partisan Independent Citizens Redistricting Commission.

20. A narrowly tailored consent decree is necessary to implement the Parties' resolution.

21. Therefore, the Parties agree that the list of Enjoined Districts attached hereto and made a part hereof should be declared unconstitutional under the First and Fourteenth Amendment.

22. The use of the Enjoined Districts for any elections after the effective date of this Consent Decree shall be permanently enjoined. All other claims of plaintiffs related to the remaining Challenged Districts will be deemed dismissed with prejudice after entry of this Consent Decree by the Court and exhaustion of any related appeals.

23. The Enjoined Districts identified in the attachment hereto shall be redrawn as set forth in the attachment hereto in a non-partisan manner that is consistent with the First and Fourteenth Amendment rights of voters in those districts.

24. The Parties recognize, and hereby request, that the Michigan Legislature should have an opportunity to submit redrawn maps for the Enjoined Districts, which is consistent with established law. *Wise v. Lipscomb*, 437 U.S. 535, 539-40 (1978) (citing *Connor v. Finch*, 431 U.S. 407, 415 (1977)).

25. The Legislature is encouraged, to the extent possible, to conduct transparent proceedings open to the public when redrawing the Enjoined Districts, including inviting public comment.

26. The Legislature may file or submit such districts with the Court on or before a date to be determined by the Court ("Remedial District Date"), with

argument and supporting data sufficient for the Court and the Parties to evaluate the proposed remedial districts for compliance with the terms of this Consent Decree.

27. Two weeks after the Remedial District Date, the Parties, and any other interested persons, may submit briefs advising the Court whether (a) they view the Legislature's proposed remedial districts to be consistent with the First and Fourteenth Amendments to the Constitution and/or in compliance with this decree; and/or (b) whether there exist alternative district(s) the Court should adopt if the Legislature's proposed remedial districts were determined by the Court to be unconstitutional or if the Legislature were to fail to submit redrawn districts on or before the Remedial District Date.

28. The Parties agree that the Court may, after receiving recommendations from the Parties, appoint a Special Master to advise it in evaluating the proposed remedial districts.

29. This Consent Decree shall be effective immediately upon entry by the Court.

30. The remedial districts, once approved by the Court and after exhaustion of all related appeals thereafter, shall be used for all State House primary and general elections until redistricting is completed pursuant to the 2020 census.

31. The Court retains jurisdiction under this Consent Decree until further order of the Court. Any party may apply at any time for orders necessary or appropriate for the interpretation, implementation, enforcement, or modification of

11

the terms of this Consent Decree, and for supervision and approval of remaining issues. The parties have not agreed regarding the award of fees and costs, and this decree does not prohibit future applications to the Court for fees and costs at the appropriate time.

Respectfully submitted,

Dated: January 25, 2019 /s/*Joseph H. Yeager, Jr.*

Mark Brewer (P35661)
GOODMAN ACKER P.C.
17000 West Ten Mile, Second Floor
Southfield, MI 48075
Telephone: 248-483-5000
Fax: 248-483-3131
MBrewer@goodmanacker.com

Joseph H. Yeager, Jr. (IN Bar No. 2083-49)
Kevin M. Toner (IN Bar No. 11343-49)
Harmony A. Mappes (IN Bar No. 27237-49)
Jeffrey P. Justman (MN Bar No. 390413)
Daniel R. Kelley (IN 30706-49)
Matthew K. Giffin (IN 31603-49)
Irina Vaynerman (MN 0396759)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN 46204
Telephone: 317-237-0300
Jay.Yeager@FaegreBD.com
Kevin.Toner@FaegreBD.com
Harmony.Mappes@FaegreBD.com
Jeff.Justman@FaegreBD.com
Daniel.Kelley@FaegreBD.com
Matt.Giffin@FaegreBD.com
Irina.Vaynerman@FaegreBD.com

*Counsel for Plaintiffs*

/s/ Scott R. Eldridge
Michael J. Hodge
Scott R. Eldridge (P66452)
MILLER, CANFIELD, PADDOCK
  & STONE, P.L.C.
One Michigan Avenue, Suite 990
Lansing, MI 48933
Telephone: 517-487-2070
hodge@millercanfield.com
eldridge@millercanfield.com

*Special Assistant Attorneys General*
*And Counsel for Defendant*
*Jocelyn Benson, Michigan Secretary of State*

So Ordered this _____ day of _____, 2019.

_____
Signed for and on behalf of the panel:

HONORABLE ERIC L. CLAY
United States Circuit Judge

HONORABLE DENISE PAGE HOOD
United States District Judge

HONORABLE GORDON J. QUIST
United States District Judge

ENJOINED DISTRICTS – MICHIGAN HOUSE OF REPRESENTATIVES

24

32

51

55

60

63

76

91

92

94

95