# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS )
OF MICHIGAN, et al., )
                                                    )
    Plaintiffs, )
                                                    )
v. ) No. 2:17-cv-14148
                                                    )
JOCELYN BENSON, in her official )
capacity as Michigan Secretary of )
State, et al., )
                                                    )
    Defendants. )
_____)

## ORDER DENYING JOINT MOTION TO APPROVE CONSENT DECREE
## (ECF No. 211)

Before the Court is the Joint Motion to Approve Consent Decree ("Motion") filed by Plaintiffs and Defendant Secretary of State Jocelyn Benson (ECF No. 211). For the reasons stated below, the Court **DENIES** the Motion.

The terms of the Proposed Consent Decree are as follows. (*See* Proposed Consent Decree, ECF No. 211-1). Eleven Michigan House Districts (the "Enjoined Districts") would be declared unconstitutional for violating the First and Fourteenth Amendments. Plaintiffs would dismiss their challenges to the Michigan Senate Districts, the U.S. Congressional Districts, and the other Michigan House Districts at issue in this litigation. The Enjoined Districts would not be used in

future elections. The Michigan Legislature would be given the opportunity to submit remedial maps for the Enjoined Districts, subject to approval of this Court. The parties, and any interested persons, would be permitted to submit briefs advising the Court (1) whether the proposed remedial districts comply with the First and Fourteenth Amendments and/or (2) "whether there exist remedial alternative district(s) the Court should adopt if the Legislature's proposed remedial districts were determined by the Court to be unconstitutional or if the Legislature were to fail to submit redrawn districts" by the deadline to do so. (*Id.* at PageID #7895.) Plaintiffs and Benson ask this Court to stay trial and hold a Fairness Hearing regarding the Proposed Consent Decree.

The Michigan Republican Congressional Delegation ("Congressional Intervenors") and two individual Republican State Representatives, Lee Chatfield and Adam Miller ("Michigan House Intervenors"), oppose the Motion. (*See* ECF No. 231.) They assert, among other arguments, that Benson lacks the authority to enter into the Proposed Consent Decree absent the Michigan Legislature's approval.

Plaintiffs and Benson rely on the Supreme Court's decision in *Lawyer v. Dep't of Justice*, 521 U.S. 567 (1997) to support their argument that Benson has the authority to enter into the Proposed Consent Decree. In *Lawyer*, six residents challenged their legislative district under the Equal Protection Clause, naming the

2

State of Florida, the Florida Attorney General, and the United States Department of Justice as defendants. *Id.* at 569–71. After a settlement conference, the parties proposed a consent decree. The consent decree did not admit that the challenged district was unconstitutional; rather, it acknowledged that the plaintiffs' claim was supported by reasonable factual and legal bases. *Id.* at 572. The proposed consent decree replaced the contested district with a remedial district that complied with constitutional requirements. *Id.* Prior to entering the proposed consent decree, the district court "sought and received specific assurances from lawyers for the President of the [Florida] Senate and the Speaker of the [Florida] House that they were authorized to represent their respective government bodies in the litigation and enter into the settlement proposed." *Id.* at 573. The district court approved the consent decree over the objection of an individual plaintiff who argued that the district court could not enact a remedial district plan without first explicitly finding that the current district was unconstitutional. *Id.* at 579.

The Supreme Court affirmed the district court's decision to enter the consent decree. The Supreme Court emphasized the importance of the fact that the Florida Senate and Florida House agreed to the terms of the consent decree, explaining that while "[a] State should be given the opportunity to make its own redistricting decisions so long as that is practically possible and the State chooses to take the opportunity[,]" the fact that counsel for "each legislative chamber" agreed to the

3

settlement "confirmed both the continuing refusal of the legislature to address the issue in formal session and the authority of the attorney general to propose the settlement plan on the State's behalf." *Id.* at 576–78. The Supreme Court held that the district court properly entered the consent decree over the objections of the plaintiff because the settlement gave the objecting plaintiff the very relief he had originally requested—it invalidated the challenged district and replaced it with a map that complied with the Constitution. *Id.* at 579. The Supreme Court explained that "[t]o afford [the objecting plaintiff] a right to the formality of a decree in addition to the substance of the relief sought would be to allow a sore winner to obscure the point of the suit." *Id.*

Plaintiffs and Benson argue that *Lawyer* empowers the Court to enter the Proposed Consent Decree that invalidates the Enjoined Districts over the Intervenors' objections. But *Lawyer* does not stand for such a broad proposition. In fact, *Lawyer*'s holding is much narrower than Plaintiffs and Benson contend. In *Lawyer*, the Florida Senate and the Florida House *explicitly consented* to the relief contained in the consent decree. The Supreme Court emphasized the vital importance of the Florida legislature's support of the consent decree in its decision; it considered the legislature's approval of the consent decree as an acknowledgement by the legislature that it wanted the federal court, not the legislature, to remedy the challenged district. *Id.* at 577–78. But in the instant case,

the Intervenors oppose the Proposed Consent Decree, as does the Michigan Senate, which filed a motion to intervene in this case.[1] Accordingly, *Lawyer* is inapposite.

*Lawyer* does not apply to the instant case for another reason. The objecting party in *Lawyer* was a "sore winner," a plaintiff who, unsatisfied with the court's simply invalidating the challenged district and replacing it with a remedial one, also sought an explicit judicial finding that the original district violated the Constitution. *Id.* But the Intervenors in the instant case are not "sore winners"—they oppose the Proposed Consent Decree because they believe it undermines their interests in maintaining the current maps and their legal theory that the existing maps satisfy all constitutional requirements. Because the Intervenors would not receive "the substance of the relief sought" if the Court were to enter the Proposed Consent Decree, *Lawyer* does not apply.

Plaintiffs' and Benson's argument is further undermined by *Fouts v. Harris*, 88 F. Supp. 2d 1354 (S.D. Fla. 1999), *aff'd sub nom. Chandler v. Harris*, 529 U.S. 1084 (2000). In *Harris*, a three-judge panel denied plaintiffs' motion to enter a consent decree that would have invalidated a United States Congressional district because "numerous dissenting parties[,]" including the governor, the speaker of the house, and the secretary of state objected to the proposed agreement. *Id.* at 1353. The *Harris* court rejected the plaintiffs' argument that *Lawyer* allowed the court to

---

[1] The Court addresses the Michigan Senate's motion to intervene in a separate order.

enter the proposed settlement agreement over the defendants' objections, and interpreted *Lawyer* as standing for the narrow proposition that "parties can agree to settle and dispose of a dissenting party's claim when, through the settlement, the dissenting party achieves the essential goals of his suit." *Id.* (citing *Lawyer*, 521 U.S. at 579–80). The court explained that *Lawyer* holds that "a 'sore winner' looking only for the additional satisfaction of a judgment will not be permitted to block a settlement." *Id.* (quoting *Lawyer*, 521 U.S. at 579–80). The *Harris* court further stated that, "[i]mportantly, in describing the propriety of overriding the dissenting party's desire not to settle, the Court was careful to confirm that it would be 'forbidden' to settle a redistricting claim over the objections of a party who was not obtaining his requested relief." *Id.* (quoting *Lawyer*, 521 U.S. at 579). Accordingly, *Harris* supports the Intervenors' argument that the Court cannot enter the Proposed Consent Decree. Like the dissenting parties in *Harris*, whose objections precluded the court from entering the consent decree proposed in that case, the Intervenors would not obtain their requested relief if the Court entered the Proposed Consent Decree offered by Plaintiffs and Benson.

Finally, contrary to her contention, Benson lacks the authority to enter into the Proposed Consent Decree on behalf of the State of Michigan. Plaintiffs and Benson rely extensively on *In re Certified Question from U.S. Dist. Court for E. Dist. of Michigan,* 465 Mich. 537 (2002), where the Michigan Supreme Court held

6

that "the Attorney General has broad authority to sue and settle with regard to matters of state interest, including the power to settle such litigation with binding effect on Michigan's political subdivisions." *Id.* at 547. But the Proposed Consent Decree would not have a binding effect on a political subdivision—it would invalidate maps approved and enacted by the Michigan Legislature. And the Michigan Constitution gives the Michigan Legislature, not any political subdivision, authority to "enact laws to regulate the time, place and manner of all . . . elections." MI CONST Art. 2, § 4. Accordingly, Benson lacks the authority—absent the express consent of the Michigan Legislature, which she lacks—to enter into the Proposed Consent Decree.

Therefore, the Joint Motion to Approve Consent Decree (ECF No. 211) is **DENIED.** Because the Court finds that Benson lacks the authority to enter into the Proposed Consent Decree under these circumstances, the Court will not hold a Fairness Hearing to further consider the merits of the Proposed Consent Decree.

IT IS SO ORDERED.

Dated: February 1, 2019

/s/ Eric L. Clay
Signed for and on behalf of the panel:

HONORABLE ERIC L. CLAY
United States Circuit Judge

HONORABLE DENISE PAGE HOOD
United States District Judge

HONORABLE GORDON J. QUIST
United States District Judge