UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK" G.
LASALLE, RICHARD "DICK" W.
LONG, LORENZO RIVERA and
RASHIDA H. TLAIB,

    Plaintiffs,

v.

JOCELYN BENSON, in her official
Capacity as Michigan
Secretary of State,

    Defendant.

No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

---

### DEFENDANT'S RESPONSE IN OPPOSITION TO CONGRESSIONAL AND LEGISLATIVE DEFENDANTS-INTERVENORS' MOTION FOR APPOINTMENT OF A REPLACEMENT OF THE SECRETARY AS A DEFENDANT

For the reasons set forth in the accompanying brief, Defendant Jocelyn Benson, in her official capacity as Michigan Secretary of State, by her counsel, Miller, Canfield, Paddock and Stone, P.L.C., respectfully requests that this Court deny the Congressional and Legislative Defendants-Intervenors' Motion for Appointment of a Replacement of the Secretary as a Defendant (ECF 236).

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/Scott R. Eldridge*
Michael J. Hodge (P25146)
Scott R. Eldridge (P66452)
Erika L. Giroux (P81998)
*Attorneys for Defendant Secretary of State*
One Michigan Avenue, Suite 900
Lansing, MI  48933
(517) 487-2070
hodge@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com

Dated: February 4, 2019

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

LEAGUE OF WOMEN VOTERS
OF MICHIGAN, ROGER J. BRDAK,
FREDERICK C. DURHAL, JR.,
JACK E. ELLIS, DONNA E.
FARRIS, WILLIAM "BILL" J.
GRASHA, ROSA L. HOLLIDAY,
DIANA L. KETOLA, JON "JACK" G.
LASALLE, RICHARD "DICK" W.
LONG, LORENZO RIVERA and
RASHIDA H. TLAIB,

    Plaintiffs,

v.

JOCELYN BENSON, in her official
Capacity as Michigan
Secretary of State,

    Defendant.

No. 2:17-cv-14148

Hon. Eric L. Clay
Hon. Denise Page Hood
Hon. Gordon J. Quist

# DEFENDANT'S BRIEF IN OPPOSITION TO CONGRESSIONAL AND LEGISLATIVE DEFENDANTS-INTERVENORS' MOTION FOR APPOINTMENT OF A REPLACEMENT OF THE <u>SECRETARY AS A DEFENDANT</u>

-i-

## STATEMENT OF QUESTION OR ISSUE PRESENTED

Where the Secretary, as Michigan's chief elections officer charged with administering the maps at issue, is an indispensable defendant and has repeatedly stated that she will staunchly oppose any special election remedy in this case, should the Court remove the Secretary as a defendant on the eve of trial in favor of an unidentified "someone else"?

**Plaintiffs' answer: no.**

**Defendant Secretary of State's answer: no.**

**Congressional and Legislative Defendant-Intervenors' answer: yes.**

# CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*I.N.S. v. Chadha*, 462 U.S. 919 (1983)

*In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395, 401 (E.D. Mich. 2003)

*Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015)

*United States v. Windsor*, 570 U.S. 744 (2013)

## BACKGROUND

The Intervenors' eleventh-hour motion to replace the Secretary of State is not supported by law or logic. The parties have been vigorously litigating this case for more than a year; extensive discovery has been taken; dispositive motions have been briefed, argued, and decided; and witnesses and exhibits have been finalized for trial. Now, just two business days before trial, the Intervenors seek to remove the Secretary from this case altogether, without articulating any controlling legal authority for doing so, simply because they disagree with her litigation strategies. What is more, the Intervenors do not propose a viable substitute, instead asking this Court to find an unidentified "someone else."

The Intervenors cannot legitimately claim surprise at the Secretary's litigation strategies in this case differ from theirs or her predecessor. Secretary Benson was elected to the office nearly three months ago and has been a long-time proponent of non-partisan redistricting for years. As explained below, a change to the litigation strategy by the new Secretary of State, after a full review and due consideration of the briefing and evidence, is not grounds for removing the Secretary as a Defendant; it is simply the reality of litigation. If there is any doubt as to whether the Secretary remains sufficiently adverse to the Plaintiffs, the Secretary has emphasized several times in her recent court submissions that she does not believe the facts of this case warrant a special election and she will

oppose any such remedy – a remedy the Plaintiffs seek. Trial in this case is imminent, and the Secretary's participation is critical to protecting the interests of her office – which is charged under Michigan law with overseeing and administering Michigan elections. As such, the Secretary is an indispensable defendant in this case, and the Intervenors' motion should be denied.

### A. The Secretary is a Necessary Party to this Case.

The Secretary of State is a constitutional officer in Michigan charged with administering the State's electoral system. Mich. Comp. Laws § 168.21 ("The secretary of state shall be the chief election officer of the state and shall have supervisory control over local election officials."); *see also* Const. 1963, art. V, §§3, 21. As the chief election officer, the Secretary's duties include promulgating rules for the conduct of elections, publishing information and forms relating to elections, and advising and directing local election officials regarding the conduct of elections. *See* Mich. Comp. Laws § 168.31 (enumerating duties of Secretary under Michigan's Election Law); *See also Elections in Michigan*, MICH. SECRETARY OF STATE, https://www.michigan.gov/sos/0,4670,7-127-1633---,00.html (providing extensive information regarding elections and voting in Michigan).

In the course of exercising oversight over the election process, the Secretary also enforces and administers the district lines demarcated by the 2011 maps that

Plaintiffs challenge. *See* 2011 PA 128 (congressional redistricting statute stating: "The secretary of state shall prepare a map and a legal description of each district constituted under this act." M.C.L. § 3.53); 2011 PA 129 (legislative redistricting statute stating: "The secretary of state shall prepare a map and a legal description of each district constituted under this act." M.C.L. § 4.2003); *see also* Const. 1963, art. IV, §6 (as amended). Plaintiffs consequently seek to "[e]njoin Defendant and her employees and agents from administering, preparing for, and in any way permitting the nomination or election of members of Michigan's Legislature and Michigan Members of Congress from the unconstitutional Current Apportionment Plan that now exists" as a component of the relief they seek in this case. ECF 1, Compl., PageID.33 ¶ (c).

If Plaintiffs succeed in proving their claims at trial, any resulting injunction to prohibit enforcement of the maps would be issued against the Secretary of State, *not* against the Intervenors or the Legislature, neither of which has any role in administering the elections process. *See also LeRoux v. Sec'y of State*, 640 N.W.2d 849 (Mich. 2002) (challenging validity of redistricting plan and naming Secretary as principal defendant); *League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723, 732 (N.D. Ohio 2005), *aff'd in part, rev'd in part sub nom. on other grounds*, *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) (finding that secretary of state, as "chief elections officer of the state of

Ohio R.C. § 3501.04" was a proper defendant); Complaint, *Whitford v. Gill*, 218 F. Supp. 3d 837 (W.D. Wis. 2016), *vacated and remanded*, 138 S. Ct. 1916 (2018) (Case No. 3:15-cv-00421) (naming chair of government agency given "'general authority" over and 'responsibility for the administration of . . . [the State's laws relating to elections and election campaigns'" as defendant). The Secretary is therefore a necessary and proper Defendant in this case – irrespective of the outcome.

### B. The Secretary Remains an Adverse Party to the Plaintiffs.

The Intervenors also significantly misapprehend the adversarial posture of this case. The Secretary has made very clear that she intends to protect her interests in this case as the State's chief election officer and that those interests are distinct from both the Plaintiffs and the Intervenors. *See, e.g.*, ECF 222, Secretary's Trial Br., PageID.8190. That includes opposing any special election remedy sought by Plaintiffs, as the Secretary firmly believes that the facts of this case do not warrant a special election for the Michigan Senate in the 2020 election cycle. *See id.*, PageID.8191–95. In that way, the Secretary's interests remain concretely adverse to the Plaintiffs, regardless of the Secretary's decision not to expend state resources to continue to defend the maps in the same way as her predecessor in office.

Moreover, the Secretary's decision not to defend the maps does not change her adversarial status vis-à-vis the Plaintiffs as a named Defendant. For example, in *I.N.S. v. Chadha*, a nonimmigrant alien challenged the constitutionality of an immigration law that allowed one house of Congress to override a decision by the Attorney General to cancel an alien's deportation proceedings. 462 U.S. 919, 925–27 (1983). Although the INS and Chadha *both* argued that the statute was unconstitutional, the Court held that the parties remained sufficiently adverse because the INS had abided by the House's decision not to cancel Chadha's deportation. *Id.* at 939–40. In other words, regardless of its position on the statute's legitimacy, the INS retained a sufficient stake in the controversy to satisfy Article III because the INS would have continued to follow the statute's mandate absent a decision from the courts striking it down as unconstitutional. *Id.*

Similarly, in *United States v. Windsor*, the executive branch declined to continue defending a federal tax statute that denied estate tax exemptions and refunds to the surviving spouse of a same-sex couple. 570 U.S. 744, 752–53 (2013). At the same time, the executive branch continued to enforce the statute by denying the petitioner the refund she sought, and the legislature intervened to defend the statute. *Id.* Because the executive continued to abide by the statute at issue and would suffer a "real and immediate" injury if ordered to pay the refund—even if it might welcome a court order to do so—the executive retained standing as

a defendant in the case. *Id.* at 756–58. *See also Doe No. 1 v. Putnam Cty.*, 344 F. Supp. 3d 518, 534 (S.D.N.Y. 2018) (finding that, contrary to intervenor attorney general's argument, defendant county had standing as a defendant even where it agreed with plaintiff that names of firearm permit holders should not be made public, since county would release names absent court order to the contrary).

*Chadha* and *Windsor* are instructive here. Regardless of whether the Secretary agrees with the Plaintiffs' arguments as to whether the maps at issue are the result of partisan gerrymandering, in the absence of a finding by this Court that the maps are unconstitutional, the Secretary will continue to administer Michigan's redistricting statutes (Mich. Comp. Laws §§ 3.51–3.55 and 4.2001–4.2006). In addition, unlike the agencies in *Chadha* and *Windsor* that supported the declaratory and remedial aspects of the plaintiffs' cases, in contesting the propriety of a special election, the Secretary here actually opposes a significant component of the relief sought by the Plaintiffs here. The Secretary, thus, properly remains a defendant in this case.

### C. A Change in Litigation Strategy Following a Change in Administration is Not Uncommon and Does Not Require Removing the Government Defendant.

Contrary to the Intervenors' implication, a government defendant altering its litigation strategy after a new elected official takes office is not particularly novel, nor does it destroy the adversarial posture of the case. The Congressional

Intervenors in fact refer to a number of cases in their Sixth Circuit briefing where such a change occurred post-election. *See* Appellants' Br. at 45–48, *League of Women Voters of Mich. v. Johnson* (Case No. 18-1437) (6th Cir. 2018) (collecting cases in which governmental defendant has changed its substantive arguments and defense strategy when new official assumed office after election); *see id.* at 47 (quoting colloquy at Supreme Court oral argument during which Justice asks "What happened? Was there an election in between or something?" and state attorney general responds "Yes, and I won overwhelmingly.").

It is a relatively unexceptional reality that changes in political administrations often portend changes in the government's litigation strategy; but such a shift does not negate that government defendant's interest in the case. *See, e.g.*, Appellants' Reply Br., *Nevada v. U.S. Dep't of Labor*, Case No. 16-41606 (5th Cir. June 30, 2017) (announcing that federal government would no longer defend Fair Labor Standards Act overtime regulations implemented by previous administration); Fed. Defs.' Mem. in Resp. to Pls.' Appl. for Prelim. Inj., *Texas v. United States*, 340 F. Supp. 3d 579 (N.D. Tex. 2018) (Case No. 4:18-cv-00167-O) (announcing that federal government would no longer defend individual mandate of Affordable Care Act); *Floyd v. City of New York*, 302 F.R.D. 69, 77 (S.D.N.Y.), *aff'd in part, appeal dismissed in part*, 770 F.3d 1051 (2d Cir. 2014) (noting that "in January 2014, newly-elected Mayor Bill de Blasio announced the City's

intention to withdraw the appeals and settle the cases" challenging stop-and-frisk techniques). *Cf. Campuzano v. Ill. State Bd. of Elections*, 241 F. Supp. 2d 892, 893–94 (N.D. Ill. 2003). The Secretary thus remains a proper defendant, and her opposition to a special election remedy serves as yet another factor distinguishing her position from the Plaintiffs

### D. The Intervenors Will Suffer No Prejudice from the Secretary Remaining in this Case, Whereas Removing the Secretary Would Severely Prejudice Her Interests.

The Secretary's continued participation in this case does not hinder the Intervenors' ability to present evidence or defend against the merits of the claims. Indeed, the Secretary has agreed that the Intervenors may present any of the evidence or witnesses previously identified by the Secretary for use at trial (*see* ECF 213-1, Proposed Amend. to Proposed Suppl. to Proposed Final Pretrial Order ¶¶ 2, 3(a)). This Court has confirmed that arrangement:

> Intervenors may rely upon and incorporate the witnesses and exhibits identified by the Secretary in the Proposed Supplement to the Joint and Final Pretrial Order. Intervenors shall be permitted to: (i) call any such witness at trial; (ii) submit any such witness's deposition transcript as part of the trial record, subject to any restrictions relating to deposition testimony agreed upon by the parties; (iii) submit any such expert witness's report and corresponding schedules, attachments, and affidavits as part of the trial record; and/or (iv) introduce any exhibits at trial or as part of the trial record.

ECF 234, PageID.8370 ¶ 11 (emphasis added). Removing the Secretary as a defendant, therefore, has no impact on the Intervenors' ability to present their case.

Notwithstanding the styling of their motion, Intervenors' real objection is that the Secretary's defense will not adequately represent their interests – a concern that has already been remedied by the Court's granting of their (and the State Senators') intervention in this case.

By contrast, granting the Intervenors' motion would severely prejudice the Secretary's ability to defend her interests as the chief elections officer. The Intervenors have waited until a mere *two* business days before trial to attempt to remove the Secretary from this matter, after all pretrial briefing has been completed and while the parties are intensively preparing for trial. Significantly, the Intervenors' motion says nothing about the Secretary's continued ability to participate in that trial in order to protect her interests. As the Secretary has previously stated, and contrary to what the Intervenors apparently believe, "the Secretary's interests in defending this case are not fully aligned with either, and differ in important ways from both, the Intervenors *or the Plaintiffs*." ECF 222, Secretary's Trial Br., PageID.8190 (emphasis added). Unlike the Plaintiffs, the Secretary believes that a special election for State Senate offices during the upcoming State House election cycle in 2020 is not an appropriate remedy under the circumstances, and would be a substantial disruption to the normal electoral process. Throughout this case, the Secretary has staunchly opposed any special election remedy and will continue to do so. The Secretary's ability to participate in

the trial, preserving the right to cross-examine witnesses, is critical to her continued defense of those interests, and the Intervenors have presented no compelling reason for curtailing that defense.

### E. The Intervenors Fail to Explain How this Case Would Proceed in the Secretary's Absence.

The Intervenors' motion is also notably devoid of specificity as to what the Intervenors actually want this Court to do.  The Intervenors offer no guidance as to whether they seek to have the Secretary dismissed from this case entirely, or who they even want to have "appoint[ed]" as the named Defendant, other than indicating that they would prefer an unidentified "someone else."  ECF 236, PageID.8383.  Tellingly, the Intervenors offer no suggestions or principles as to how that determination would be made.  The only authority cited in their motion for doing so is a nonbinding, one-line dictum from two Sixth Circuit judges commenting on a question that was never presented, briefed, or argued before that court.

As the Sixth Circuit phrased it, the question before it was "whether it was an abuse of discretion for the district court to deny permissive intervention as the case stood in February 2018, when the Congressmen moved to intervene," *without* taking into account any subsequent developments in the case. *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 580 (6th Cir. 2018).  That phrasing is consistent with the questions the Intervenors presented to the panel.  Appellants'

-10-

Br. at 13–14, *League of Women Voters of Mich. v. Johnson* (Case No. 18-1437) (6th Cir. 2018) (seeking review of three-judge panel's decision to deny mandatory and permissive intervention). The panel was not asked to determine what should happen following the November 2018 election—which, at the time, was months away—and had no facts before it on which to base any such determination. Thus, any pronouncement on that issue therefore amounts to an advisory opinion. *See Flast v. Cohen*, 392 U.S. 83, 96 (1968). Nor did the Sixth Circuit explain how such an action would affect the relief sought in this case, since the Secretary is the judicial officer charged with enforcing the maps at issue and any resulting injunction would necessarily include the Secretary.

In short, "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential . . . is dicta is not binding in subsequent cases." *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 395, 401 (E.D. Mich. 2003); *see also See Scarber v. Palmer*, 808 F.3d 1093, 1096 (6th Cir. 2015) ("Of course, neither dicta nor an unpublished decision is binding precedent."); *Coca-Cola Co. v. Procter & Gamble Co.*, 822 F.2d 28, 30 (6th Cir. 1987) ("Any statements [that] were not essential to the court's holding . . . are dicta that is not binding precedent in this case."); *DXS, Inc. v. Siemens Med. Sys., Inc.*, 991 F. Supp. 859, 863 (E.D.

Mich. 1997) ("If a question was not necessarily decided on appeal, then any statement regarding it is dicta that is not binding on the lower court.").

The Sixth Circuit was not—nor, given the absence of relevant facts in April to August of 2018, should it have been—presented with the question of whether and how the 2018 election would affect the Secretary's interest in this case. The statement on which the Intervenors rely is dicta, and there is therefore no legal basis for removing the Secretary as a Defendant in this matter, particularly when the Intervenors have not identified any other party better suited to represent the Secretary's interests at stake.

## CONCLUSION

For all of the foregoing reasons, the Secretary remains a proper Defendant in this case, and the Congressional and Legislative Defendants-Intervenors' Motion for Appointment of a Replacement of the Secretary as a Defendant (ECF 236) should be denied.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/Scott R. Eldridge*
Michael J. Hodge (P25146)
Scott R. Eldridge (P66452)
Erika L. Giroux (P81998)
*Attorneys for Defendant Secretary of State*
One Michigan Avenue, Suite 900
Lansing, MI  48933
(517) 487-2070
hodge@millercanfield.com
eldridge@millercanfield.com
giroux@millercanfield.com

Dated: February 4, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record in this matter.

Respectfully submitted,

*/s/ Scott R. Eldridge*

32912313.3\088888-04644

-13-